BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

In re:

WEBLOYALTY PRIVACY LITIGATION                    MDL Docket No. _____

_____/

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE ACTIONS
UNDER 28 U.S.C. § 1407

In Re: Webloyalty.com, Inc., Marketing and Sales Practices Litigation                    Doc. 12 Att. 1

| | |
|---|---|
| **LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** | **LEE & AMTZIS, P.L.** |
| Paul J. Geller | Eric A. Lee |
| David J. George | 5550 Glades Road, Suite 401 |
| Stuart A. Davidson | Boca Raton, FL 33431 |
| 120 E. Palmetto Park Road, Suite 500 | Telephone: (561) 981-9988 |
| Boca Raton, FL 33432 | Fax: (561) 981-9980 |
| Telephone: (561) 750-3000 | |
| Fax: (561) 750-3364 | **PHILLIPS & GARCIA, LLP** |
| | Carlin J. Phillips |
| | Andrew J. Garcia |
| | 13 Ventura Drive |
| | North Dartmouth, MA 02747 |
| | Telephone: (508) 998-0800 |
| | Fax: (508) 998-0919 |

*Counsel for Massachusetts Plaintiffs*

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure on Multidistrict Litigation, plaintiffs in the actions styled *Kuefler v. Webloyalty.com, Inc. and Fandango, Inc. d/b/a Fandango.com,* CASE NO. 06-CA-11620-JLT, United States District Court for the District of Massachusetts, *Krouse v. Webloyalty.com, Inc. and Priceline.com, Inc. d/b/a/ Priceline.com,* CASE NO. 06-CA-11834-JLT, United States District Court for the District of Massachusetts, and *Staaf v. Webloyalty.com, Inc., Nelson Shane Garrett, Individually and d/b/a JustFlowers.com and Giftbasketsasap.com; and Maxim O. Khokhlov, Individually and d/b/a JustFlowers.com and Giftbasketsasap.com,* CASE NO. 06-CA-11835-JLT, United States District Court for the District of Massachusetts (collectively, the "Massachusetts Plaintiffs" or "Movants"), respectfully submit this Memorandum in Support of Massachusetts Plaintiffs' Motion for Transfer and Coordination or Consolidation. For the reasons set forth below, Movants' lawsuits and the related lawsuit identified in the accompanying Schedule of Actions should be transferred to and consolidated in the District of Massachusetts.

## I.    INTRODUCTION

The Massachusetts Plaintiffs bring their respective class actions to remedy the harm caused by Webloyalty.com, Inc.'s ("Webloyalty") "Coupon Click Fraud" scheme. This scheme involves the fraudulent and deceptive sale of its Reservation Rewards and similar Shopper Discount products to unwitting consumers who make legitimate online purchases from various web retailers, including defendants Priceline.com, Inc. ("Priceline"), Fandango, Inc. ("Fandango"), and JustFlowers.com, and the unauthorized transfer and/or interception of private credit and debit card account information by the web retailers to Webloyalty.

Webloyalty perpetuates its fraudulent scheme when consumers enter into online transactions with one of Webloyalty's 75 or more e-commerce clients, including defendants Fandango, Priceline,

and JustFlowers. During the check-out process, a "pop-up" window appears on the consumer's computer screen that promises a $10 cash back reward from the web retailer on the consumer's next purchase. Once the consumer clicks the "pop-up" window and enters their e-mail address to redeem their free $10 discount, their personal information, including their credit or debit card number, is automatically transferred to and/or intercepted by Webloyalty. Webloyalty then automatically bills the consumer's credit card a flat monthly fee of up to $10 for a membership in its "discount club" on a purported 30-day trial basis. Webloyalty completes its "bait and switch" by using a "negative option" sales tactic whereby it allegedly e-mails consumers to notify them that they can only cancel their "membership" by contacting Webloyalty within 30 days, or they will be charged a recurring monthly membership fee on their credit or debit card account. Consumers' credit or debit accounts are then billed month after month for this "membership program," of which consumers had no knowledge and never accepted.

To add insult to injury, the "membership program" does not provide consumers with any cognizable benefits. Webloyalty retains the consumers' payments and then pays its web retailer clients, such as defendants Fandango, Priceline, and JustFlowers, a "per customer" fee for each consumer who allegedly "signs up," resulting in substantial revenues for both Webloyalty and its retailer clients. Hundreds, if not thousands, of consumers have complained to Webloyalty and local, state and federal consumer protection agencies about the deceptive nature of its sales of its Reservation Rewards and similar Shopper Discount club products and its unauthorized access to their credit and debit card information.

Despite these complaints, Webloyalty continues to automatically enroll new consumers in its Shopper Discount and Reservation Rewards discount clubs and to charge these consumers' credit and debit card accounts for its products. Indeed, such complaints are a normal, expected and

3

accepted part of Webloyalty's business plan. Webloyalty lives with these complaints (and any refunds it makes to attempt to avoid further scrutiny) because the illegal profits reaped from consumers who never discover Webloyalty's and its retailers' scheme amount to tens of millions of dollars. In fact, Webloyalty announced on October 20, 2006 that it earned the Number 12 slot on Deloitte's 2006 Technology Fast 500, a ranking of the 500 fastest growing technology, media, telecommunications and life sciences companies in North America.[1] From 2001-2005, Webloyalty grew a staggering 15,151 percent.[2]

## II.    HISTORY OF THE PENDING LAWSUITS

The related actions, identified in the accompanying Schedule of Actions, present common questions of law and fact, the common defendant of Webloyalty, and are brought on behalf of overlapping classes (*i.e.*, all persons and entities whose personal and/or credit card information was accessed by Webloyalty during online transactions as part of Webloyalty's sales of its Reservation Rewards and/or Shopper Discount products and all persons and entities who were charged fees for a Reservation Rewards and/or Shopper Discount membership when purchasing a product or service online from web retailers whose fees were not refunded in full, with interest, by Webloyalty). Transfer and consolidation of all existing actions, and all subsequently filed related cases, to the District of Massachusetts will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Each related action is briefly discussed below.

On or about September 11, 2006, Joe W. Kuefler, individually and on behalf of others similarly situated, filed the class action styled *Kuefler v. Webloyalty.com, Inc. and Fandango, Inc.*

---

[1]    http://www.webloyalty.com/about-customer-loyalty/news-events/press-release/fast500-2006/

[2]    http://www.webloyalty.com/about-customer-loyalty/news-events/press-release/fast500-2006/

*d/b/a Fandango.com,* CASE NO. 06-CA-11620-JLT, in the United States District Court for the District of Massachusetts (the "*Kuefler* Action"). This complaint seeks damages and equitable relief for violations of the Electronic Communications Privacy Act – Interception of Electronic Communications, 18 U.S.C. §2510, *et seq.* (the "ECPA"), unfair and deceptive acts and practices, unjust enrichment, invasion of privacy, money had and received and civil theft on behalf of all persons and entities whose personal and/or credit card information was accessed by Webloyalty during online transactions with Fandango as part of Webloyalty's sales of its Reservation Rewards and/or Shopper Discount products and all persons and entities who were charged fees for a Reservation Rewards and/or Shopper Discount membership when purchasing a product or service online from Fandango whose fees were not refunded in full, with interest, by Webloyalty.

On or about October 11, 2006, Kim Krouse, individually and on behalf of all others similarly situated, filed the class action complaint styled *Krouse v. Webloyalty.com, Inc. and Priceline.com, Inc. d/b/a/ Priceline.com*, CASE NO. 06-CA-11834-JLT, in the United States District Court for the District of Massachusetts (the "*Krouse* Action"). This complaint, like the *Kuefler* Action, seeks damages and equitable relief for violations of the ECPA, unfair and deceptive acts and practices, unjust enrichment, invasion of privacy, money had and received and civil theft on behalf of all persons and entities whose personal and/or credit card information was accessed by Webloyalty during online transactions with Priceline as part of Webloyalty's sales of its Reservation Rewards and/or Shopper Discount products and all persons and entities who were charged fees for a Reservation Rewards and/or Shopper Discount membership when purchasing a product or service online from Priceline whose fees were not refunded in full, with interest, by Webloyalty.

On or about October 11, 2006, Monica Staaf, individually and on behalf of all others similarly situated, filed the class action complaint styled *Staaf v. Webloyalty.com, Inc., Nelson*

*Shane Garrett, Individually and d/b/a JustFlowers.com and Giftbasketsasap.com; and Maxim O.*

*Khokhlov, Individually and d/b/a JustFlowers.com and Giftbasketsasap.com,* CASE NO. 06-CA-

11835-JLT, in the United States District Court for the District of Massachusetts (the "*Staaf* Action").

This complaint, like the *Kuefler* Action and the *Krouse* Action, seeks damages and equitable relief

for violations of the ECPA, unfair and deceptive acts and practices, unjust enrichment, invasion of

privacy, money had and received and civil theft on behalf of all persons and entities whose personal

and/or credit card information was accessed by Webloyalty during online transactions with

JustFlowers as part of Webloyalty's sales of its Reservation Rewards and/or Shopper Discount

products and all persons and entities who were charged fees for a Reservation Rewards and/or

Shopper Discount membership when purchasing a product or service online from JustFlowers whose

fees were not refunded in full, with interest, by Webloyalty.

On or about October 4, 2006, Alcides Melo, individually and on behalf of all others similarly

situated, filed a class action complaint in the Central District of California styled *Melo v.*

*Webloyalty.com, Inc. and ValueClick, Inc. d/b/a 123Inkjets.com,* Case No. CV06-06329 (the "*Melo*

Action"). This complaint closely mirrors the *Kuefler* Action and seeks damages and equitable relief

for violations of the ECPA and the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693,

unfair and deceptive acts and practices, unjust enrichment, money had and received and conversion

on behalf of all persons and entities whose personal and/or credit card information was accessed by

Webloyalty during online transactions with ValueClick as part of Webloyalty's sales of its

Reservation Rewards product and all persons and entities who were charged fees for a Reservation

Rewards membership when purchasing a product or service online from ValueClick whose fees were

not refunded in full, with interest, by Webloyalty.

6

### III.    ARGUMENT

In view of the facts outlined above, and the jurisprudence regarding multidistrict litigation set forth below, these cases should be centralized in the United States District Court for the District of Massachusetts. Transfer and consolidation is essential to permit the efficient and non-duplicative handling of these cases and the District of Massachusetts is the most appropriate venue for this multidistrict litigation.

### A.    THE SIMILARITY OF THESE CLASS ACTIONS WARRANTS COORDINATION AND CONSOLIDATION

28 U.S.C. § 1407(a) authorizes the transfer of multiple civil actions pending in various federal districts to a single federal district court when the actions involve "one or more common questions of fact...." Moreover, transfer is necessary "in order to eliminate duplicative discovery; prevent inconsistent rulings on pretrial motions, including those with respect to whether the actions should proceed as [class actions]...." *In re Starmed Health Personnel, Inc. Fair Labor Standards Act Litig.*, 317 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004); *see In re Comp. of Managerial Prof'l and Tech. Employees Antitrust Litig.*, 206 F. Supp. 2d 1374, 1375 (J.P.M.L. 2002) (noting that centralization is "necessary in order to... prevent inconsistent pretrial rulings (especially with regard to class certification issues")).

The requirements for transfer under section 1407 are satisfied here. As discussed above, each of these pending cases (i) purports to represent a large class of individuals who were unwittingly enrolled in one of Webloyalty's discount membership programs, (ii) asserts the same or similar claims against Webloyalty, and (iii) seeks to recover losses based upon the unfair and deceptive sales of Webloyalty's discount membership programs. To separately litigate each pending case (and subsequently filed related cases) would waste resources and present the danger of inconsistent pretrial rulings. Consolidation of these cases is particularly critical because these

7

related actions seek class action status on behalf of the same class or overlapping classes and, as a result, there is a significant potential for conflicting or inconsistent rulings on class certification issues. Accordingly, centralization and consolidation pursuant to 28 U.S.C. § 1407 is warranted.

The consolidation and transfer of these cases would further promote the efficient adjudication of these actions. As the class actions alleged in these related cases are similar if not identical, the discovery needed in each of these pending cases will unquestionably be duplicative. To have the parties engaged in duplicative discovery in multiple complex class actions would be singularly inefficient and an unnecessary burden on the judicial system and the parties. These factors again all weigh heavily in favor of consolidating and coordinating these cases.

### B.    THE DISTRICT OF MASSACHUSETTS IS THE PROPER FORUM FOR THESE COORDINATED PROCEEDINGS

Numerous factors may be considered by the Panel in determining the most appropriate transferee forum, including "convenience of the parties and witnesses" and location of the relevant "offices and records...." *See In re Computervision Corp. Sec. Litig.*, 814 F. Supp. 85, 86 (J.P.M.L. 1993). Here, the balance of relevant factors weighs strongly in favor of transferring these actions to the District of Massachusetts because three of the four known cases are pending there already, Webloyalty is located in nearby Connecticut, and United States District Court Judge Joseph L. Tauro has extensive experience with the ECPA and is uniquely positioned to handle these matters. *See In re Pharmatrak, Inc. Privacy Litigation*, 292 F. Supp. 2d 263 (D. Mass. 2003). Accordingly, the District of Massachusetts is conveniently located and easily accessible and has capacity to handle these cases.

8

1.  **The District of Massachusetts Is the Most Appropriate Forum for the Parties and Witnesses**

The convenience of the parties and witnesses is a critical factor in determining to which district related actions should be transferred. *See* 28 U.S.C. § 1407(a) (related actions may be transferred to a district for coordinated proceedings upon a determination that the transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"). In deciding whether a particular forum is convenient, the Panel examines factors such as: where the first filed and most advanced cases are pending; the location of the parties, documents and potential witnesses relative to that district; and the location where the majority of actions have been brought. *See In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 740 (J.P.M.L. 1984). These factors all weigh in favor of the District of Massachusetts.

Movants are aware of four related cases currently pending. Of these four cases, three are on file in the District of Massachusetts, including the first-filed lawsuit – the *Kuefler* Action. These facts indicate that the District of Massachusetts is a convenient and appropriate forum. *See In re Computervision Corp. Sec. Litig.*, 814 F. Supp. 85, 86 (J.P.M.L. 1993) (transferring the litigation to Massachusetts after noting that "fourteen of the seventeen actions filed in this docket were brought in the Massachusetts district").

Many of the parties and potential witnesses are similarly located in close proximity to the District of Massachusetts, including plaintiff Kuefler, the first plaintiff to file suit, who is a resident of Massachusetts. Likewise, defendants Webloyalty and Priceline are based in nearby Norwalk, Connecticut. The Panel has routinely transferred related cases to courts that are situated in close proximity to a defendant's headquarters because witnesses and documents are likely to be found there. *See, e.g., In re Service Corp. Int'l Sec. Litig.*, 323 F. Supp. 2d 1377, 1378 (J.P.M.L. 2004) (noting that "SCI is headquartered in Houston, Texas, and witnesses and documents relating to these

9

alleged securities violations will likely be found there"). Furthermore, as all but one of these cases is already filed in the District of Massachusetts, counsel for the putative classes and counsel for the defendants are similarly located in the Massachusetts area.

### 2. The Accessibility of the District of Massachusetts Warrants Transfer

As discussed above, the Massachusetts Plaintiffs anticipate that many of the parties to this litigation may work or reside in the New England area, making the District of Massachusetts courthouse in Boston easily accessible to them. Further, those parties residing outside New England will also find the courthouse convenient and accessible by all forms of transportation. The courthouse is located near the Boston's Logan International Airport, which has direct flights on many airlines to numerous cities across the United States. Traveling from the airport to the courthouse is also simple due to the varieties of ground transportation available. *See In re Comp. of Managerial, Prof'l and Tech. Employees Antitrust Litig.*, 206 F. Supp. 2d at 1375 (transferring cases to the District of New Jersey and noting that the District of New Jersey is an "accessible" metropolitan location that is geographically convenient for litigants and counsel). On balance, the accessibility factor favors centralization of related actions in the District of Massachusetts.

### 3. The District of Massachusetts has the Capacity and Expertise to Handle these Related Cases

A comparison of the relative MDL case loads of potential transferee districts demonstrates that the District of Massachusetts is a suitable forum. As of October 30, 2006, while there are 12 pending MDL proceedings in that district, Judge Tauro – currently presiding over three of the four actions – has only one and has the experience to handle multiple MDLs at one time. In addition, as the presiding judge in the seminal ECPA case of *In re Pharmatrak, Inc. Privacy Litig.*, 292 F. Supp.

10

2d 263 (D. Mass. 2003), Judge Tauro has extensive experience with the ECPA and is uniquely positioned to handle these matters.

<strong>C.    NO PARTY IS PREJUDICED BY THE TRANSFER AND CONSOLIDATION OF THESE LAWSUITS</strong>

Each of the related lawsuits is in its infancy. To Movants' knowledge, no party has served discovery, filed disclosures or engaged in substantive motion practice regarding these lawsuits. Because these related cases are all in their early stages, no party will be prejudiced by the transfer to the District of Massachusetts. Furthermore, since no discovery has occurred, an Order transferring these cases to the District of Massachusetts can truly eliminate the expenses associated with the duplicative discovery that would otherwise occur in District Courts across the country.

### III.    CONCLUSION

For the reasons discussed above, the Massachusetts Plaintiffs respectfully request that the related actions identified on the accompanying Schedule of Actions be transferred to and consolidated in the District of Massachusetts. Accordingly, the Massachusetts Plaintiffs respectfully request that this Panel enter an Order transferring the related actions, and any future related actions, to the District of Massachusetts.

11

Respectfully submitted,

DATED:  November __1__, 2006

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
PAUL J. GELLER
DAVID J. GEORGE
STUART A. DAVIDSON

_____
Stuart A. Davidson

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  561/750-3000
561/750-3364 (fax)

PHILLIPS & GARCIA, LLP
CARLIN J. PHILLIPS
ANDREW J. GARCIA
13 Ventura Drive
North Dartmouth, MA 02747
Telephone: 508/998-0800
508/998-0919 (fax)

LEE & AMTZIS, P.L.
ERIC A. LEE
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: 561/ 981-9988
561/981-9980 (fax)

*Attorneys for Massachusetts Plaintiffs*

I:\Webloyalty (General)\Memo of law in support of MDL MOT-FINAL.doc

12