## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOE W. KUEFLER, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

v.

WEBLOYALTY.COM, INC. and
FANDANGO, INC. d/b/a
FANDANGO.COM,

                Defendants.

CIVIL ACTION NO. 06-cv-11620-JLT

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

A consumer who, as here, accepts an optional offer after having been provided full information about it, has no claim. Before Plaintiff Kuefler signed up for the Reservation Rewards program (a discount program offered by Webloyalty) on December 25, 2005, he had received extensive and complete disclosure of the terms of membership, including the fact that his credit card would be charged a monthly fee after an initial free trial period. Not until Mr. Kuefler had unambiguously and affirmatively taken several steps to join the program and given his consent to its terms was (a) he enrolled in Reservation Rewards, (b) his credit card information transferred or used in any way, or (c) he charged any membership fee after his free trial period.

Mr. Kuefler affirmatively chose to join the Reservation Rewards program by typing his email address two times into a web-based enrollment form and clicking a button marked "YES! I want my

Reservation Rewards benefits and $10.00 Cash Back Award!"[1]  Directly above this portion of the enrollment screen, in large type and clear text, the basic parameters of the Reservation Rewards program were prominently disclosed – including each of the aspects of the program about which Mr. Kuefler now claims he had no knowledge:



There is no way Mr. Kuefler could have joined Reservation Rewards without having received the full details about the program beforehand, having a full opportunity to read and consider the terms of the program before joining, and deliberately typing his email address twice into the confirmation and acceptance boxes and then clicking the "YES!" button.   Before Mr. Kuefler enrolled in the program, or his credit card information was transferred or used, he received full and accurate disclosures concerning the terms of program and he assented to them.  After Mr. Kuefler

---

[1]     See Exhibits A and B, attached hereto, which are copies of the Enrollment page and the scroll box contained on the Enrollment page.

joined Reservation Rewards, he received the program's benefits at no charge for one month.  When, shortly thereafter, Mr. Kuefler decided to cancel his membership, his request was promptly honored and he was given a full refund.

Because the offer and billing details of the Reservation Rewards program were accurately disclosed and Mr. Kuefler chose to accept them, he now has no viable causes of action. *E.g.,*  I.Lan Systems, Inc. v. Netscout Srv. Level Corp., 183 F.Supp.2d 328, 338 (D. Mass. 2002) (enforcing clickwrap license agreement where the purchaser had clicked "I agree" button).  This remains the case even if – for whatever reason –  Mr. Kuefler later decided he no longer wanted to remain a member, or later felt that he no longer wanted to receive the benefits of membership, or (if that is the case) he decided that membership did not hold sufficient value to him, or even if he signed up for the program without paying attention to its terms.  Accordingly, Defendants respectfully request that judgment be entered in their favor on all claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The facts related to Plaintiff's transaction with Defendants are straightforward and cannot be genuinely disputed.  These facts plainly show that Plaintiff consented to join Reservation Rewards after receiving full disclosure of the program's cost.  Perhaps it is no surprise, then, that in his lengthy 31-page, 102-paragraph complaint, the actual allegations regarding Plaintiff's transaction with Defendants take up only 5 paragraphs and approximately 2 pages.

On December 25, 2005, Plaintiff visited the Fandango web site to purchase movie tickets. 56.1 State. ¶ 1.[2]   After he used the Fandango service to identify the film and showing for which he wished to purchase tickets, Mr. Kuefler visited the "Select Tickets" page of the Fandango

---

[2]    All references herein to "56.1 State." relate to Defendants' Local Rule 56.1 Statement of Undisputed Facts and the declarations and exhibits submitted at the same time as this brief.

website, which asked him to confirm the movie he wanted to purchase tickets to, and to enter the number of tickets he wished to buy.  56.1 State. ¶ 2.

In the lower third of the Select Tickets page was a large box, conspicuously and clearly labeled "Optional Offer".  The box contained a blank square box that Plaintiff was required affirmatively to check off in order to learn more about the Reservation Rewards program and claim a $10 cash back reward.  Plaintiff **was not required to** click this box in order to proceed with purchasing his selected movie tickets, and the box was "unchecked" by default.   56.1 State. ¶ 3.

Plaintiff checked the box for more information and then clicked "Continue" at the bottom of the Select Tickets page.  Neither action by Plaintiff resulted in his being enrolled in Reservation Rewards or in the transfer of his credit card or other personal information from Fandango to Reservation Rewards.  56.1 State. ¶ 4.  Plaintiff was next directed to a Fandango sign-in page.  After signing in, Plaintiff was directed to the Payment page of the Fandango website.  56.1 State. ¶ 5.

Because Plaintiff previously had clicked "YES" and "Continue" in the Optional Offer box on the Select Tickets page, he was directed from the Payment page to the Reservation Rewards enrollment page ("Enrollment page").[3]  When he arrived at the Enrollment page, Plaintiff still had not been enrolled in the Reservation Rewards program and his credit card information still had not been transferred from Fandango to Reservation Rewards.  56.1 State. ¶ 6.  A true and accurate copy of the Enrollment page as seen by Mr. Kuefler follows:

---

[3]     Had Plaintiff not checked the "YES" box indicating that he wanted to learn more about the program and the offered $10 cash-back reward, he would have been directed instead to the Fandango Order Review page.  56.1 State. ¶ 6 n.1.



**Click YES to claim your Optional Offer below.**
**Get your $10.00 Cash Back on your next Fandango purchase plus much more!**



| Purchase Tickets | SELECT TICKETS | PAYMENT | >> | REVIEW ORDER | CONFIRMATION |
|---|---|---|---|---|---|

**Thanks for being a valued Fandango shopper...**
To thank you for being a valued Fandango shopper today, click YES below to sign up for all the money-saving benefits of Reservation Rewards, the premier online travel discounts and protection club! Plus get your $10.00 Cash Back Award just for trying Reservation Rewards. Enjoy all this FREE for the next 30 days and only $10 per month thereafter...

**Shopping Savings up to 50%** — Save at participating Portrait Studios, Sports Stores, Eyewear Stores and more. Choose from 70,000 locations!

**Savings at Top Attractions** — Save at popular locations like Theme Parks, Museums, Aquariums, Zoos and more than 15,000 locations!

**"Buy 1 Get 1 On Us" Dining Discounts** — Save at participating Family Restaurants, Fast Food Chains, Local Diners and many more. Over 70,000 locations!



$10.00 Cash Back Award
Good for your next Fandango purchase!
Enjoy your $10.00 Cash Back Award just for trying Reservation Rewards.

*Get Money-Saving Discounts at...*
*Portrait Studios   Sports Stores   Museums*
*Theme Parks   Zoos   Family Restaurants*
*Fast Food Chains   Plus more!*

**Plus get $10.00 Cash Back on your next Fandango purchase!** As a Reservation Rewards member just make another purchase anytime in the next 3 months, send Reservation Rewards your order confirmation and we'll send you the Cash. Details.

**Offer and Billing Details:**
Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only $10 a month thereafter. Plus get your $10.00 Cash Back Award on your next Fandango purchase. It's a Special Reward for being a valued Fandango shopper today! For your convenience until you call to cancel, we'll automatically continue your benefits for just $10 a month billed by Reservation Rewards to the credit card or deducted from the debit card you use at Fandango today. Reservation Rewards will also use the contact information you use at Fandango today for billing and benefit processing. Benefits may be modified without prior notice, but if we change your membership fee, you'll be notified before billing. If at anytime you are not satisfied, call Reservation Rewards at 1-800-732-7031 to cancel and owe nothing further.

Consent to receive electronic disclosures. Please read and save for your records. Reservation Rewards will convey your membership

Terms of Service apply. Reservation Rewards is owned and operated by webloyalty.com.

Click here for more benefit information.

• **30 days FREE plus only $10 a month thereafter**
• **E-mail reminder before first monthly charge**
• **Cancel anytime hassle-free online or by phone**

**Sign up for Reservation Rewards by entering your e-mail address and clicking YES below**
By entering my e-mail address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize Fandango to securely transfer my name, e-mail address and credit or debit card information to Reservation Rewards for billing and benefit processing.

**Enter e-mail address:**     **Confirm e-mail:**

○ **YES!** I want my Reservation Rewards benefits and $10.00 Cash Back Award!
○ **No Thanks**

Help with Purchasing Tickets                 Continue with ticket purchase >

About Us | Partners | Affiliates | Advertising | Promo Codes | Policies | How Fandango Works | Help | Contact Us

Get Fandango on your wireless device!
Copyright © 2005 Fandango. All rights reserved.
Fandango, Inc., 12200 W. Olympic Blvd, Suite 150, Los Angeles, CA 90064

The Enrollment page clearly and conspicuously described the terms of membership in Reservation Rewards, including the cost of the program and the fact that, if he enrolled, Plaintiff's credit card information would be transmitted from Fandango to the Reservation Rewards program and that charges would be billed to his card.  56.1 State. ¶ 7.

More specifically, the Enrollment page in at least **four** separate places clearly informed Mr. Kuefler that he would be charged a monthly $10 membership after an initial free one-month trial membership:

    a.    In the first paragraph of the main text, the Enrollment page states "Enjoy all this FREE for the next 30 days and only $10 per month thereafter."

    b.    In bold type in the first line of a conspicuous shaded box, directly above the spot where Plaintiff twice entered his email address and clicked the colored "YES!" button, the Enrollment Page states "30 days FREE plus only $10 a month thereafter."

    c.    In the first line of a colored scroll box immediately to the left of the spot where Plaintiff twice entered his email address and clicked the colored "YES!" button, under the bolded heading "**Offer and Billing Details**," the Enrollment page states "Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only $10 a month thereafter."

    d.    A few lines down, in the same colored scroll box, the Enrollment Page further states "For your convenience until you call to cancel, we'll automatically continue your benefits for just $10 a month billed by Reservation Rewards to the credit card or deducted from the debit card you use at Fandango today."

See Exhibit A; Exhibit B; 56.1 State. ¶ 8

The Enrollment page also unambiguously stated that, if he chose to enroll, Plaintiff's credit card information would be transferred from Fandango to Reservation Rewards and would be charged the monthly membership fee:

    a.    Above the Sign-up box where Plaintiff entered his email address twice and clicked the colored "YES!" button, the Enrollment page states "By entering my e-mail address as my electronic signature and clicking YES, *I have read and agree to the Offer and Billing Details and authorize Fandango to securely transfer my name, e-mail address and credit or debit card information to Reservation Rewards* for billing and benefit processing."  (emphasis added)

- 6 -

      b.     In the colored scroll box directly to the left of where Plaintiff twice entered his email address and clicked the colored "YES!" button, the Enrollment page further states "For your convenience until you call to cancel, we'll automatically continue your benefits for just $10 a month billed by Reservation Rewards to the credit card or deducted from the debit card you use at Fandango today."

See Exhibit A; Exhibit B; 56.1 State. ¶ 9.

Immediately above the sign-up box on the Enrollment page are three highlighted bullet points. The bullets state:

- 30 Days FREE plus only $10 a month thereafter
- E-mail reminder before first monthly charge
- Cancel anytime hassle-free online or by phone

See Exhibit A; see also 56.1 State. ¶ 10.  Under these bullets, in colored text, the Enrollment page explains how to enroll in Reservation Rewards:  "Sign up for Reservation Rewards by entering your e-mail address and clicking YES below."  Just beneath this direction, the Enrollment page explains that, by entering his email address twice and clicking "YES," Plaintiff was attesting that he "ha[d] read and agree[d] to the Offer and Billing Details and authorize Fandango to securely transfer my name, e-mail address and credit or debit card information to Reservation Rewards for billing and benefit processing."  56.1 State. ¶ 11.

Mr. Kuefler accepted the terms of the Reservation Rewards offer, attested that he had read and agreed to the Offer and Billing details, and authorized the transfer by Fandango to Reservation Rewards of his credit card information for billing purposes.  He did so by (1) entering his email address in the box provided; (2) entering his email in the confirmation box provided; and, finally, (3) clicking on the "YES!" button.[4]  56.1 State. ¶ 12.

---

[4]    After he clicked YES!, Plaintiff was directed to a Fandango Order Review page where he completed his ticket purchase transaction.  56.1 State. ¶ 12 n.2.

No customer was enrolled in Reservation Rewards merely by visiting the Enrollment page. If the customer clicked "No thanks" instead of "YES!," or if he simply clicked the "Continue with ticket purchase" button at the bottom of the page without filling in his email address in the two boxes and clicking "YES!," he would continue with his Fandango purchase, without having enrolled. 56.1 State. ¶ 13. A customer could not enroll in Reservation Rewards without having entered his email address twice and clicking on the "YES!" button on the Enrollment page. Nor would a customer's email or credit card information be transmitted from Fandango to Reservation Rewards or used or billed unless the customer had taken the affirmative steps to authorize the transmission and use of that information. In addition, no personal information was transmitted to Reservation Rewards until the customer has completed his purchase transaction with Fandango. 56.1 State. ¶ 14. Only after the customer completed this enrollment process **and** finalized his movie ticket purchase was his credit card and other personal information transmitted to Reservation Rewards, as authorized. 56.1 State. ¶ 14.

A few minutes after enrollment, Reservation Rewards sent to Plaintiff an email prominently entitled so as to catch his attention: "As requested, your Membership Kit for Reservation Rewards, please login today." Among other things, the email described the benefits available to Reservation Rewards members and repeated the Offer and Billing details, stating:

> If you are completely satisfied during your trial, do nothing. All your Reservation Rewards discounts and protection will automatically continue for just $10 a month billed by Reservation Rewards to the credit or debit card you authorized [Visa, Last 4 digits: 2089]. For your convenience Reservation Rewards will use the contact and credit or debit card information you authorized for billing and benefit processing. . . . Your monthly fee will show up on your card statement as billed by WLI*RESERVATIONREWARDS 800-732-7031 CT.

56.1 State. ¶ 15. The confirming email also reiterated the previous disclosure that membership could be canceled at any time and provided information on how to do so. 56.1 State. ¶ 16.

Reservation Rewards sent Plaintiff another email on January 10, 2006, reminding him that, unless he cancelled his membership, his credit card would be charged a $10 membership fee. The subject line of the email explicitly alerted Mr. Kuefler to the fact that it concerned billing and benefit information concerning the Reservation Rewards program: "Benefit and billing reminder notice for Reservation Rewards members." The email identified by name and number the specific card that would be charged and stated the name under which the charge would appear. The email also explained how Plaintiff could cancel his membership if he wished to do so before being charged and provided a toll-free number to reach Reservation Rewards customer service. 56.1 State. ¶ 17.

On January 24, 2006, Plaintiff's trial membership expired and, as he had agreed, his credit card was charged $10. On the same day, Reservation Rewards sent Plaintiff yet another reminder email confirming that he had enrolled in the program and describing some of its benefits. 56.1 State. ¶ 18.

Approximately one month later, on February 22, 2006, Plaintiff contacted Reservation Rewards' toll-free number and asked that his membership in Reservation Rewards be canceled and that he receive a refund of the $10 previously billed in January 2006. His requests were promptly granted in full. 56.1 State. ¶ 19.

## STANDARD FOR MOTION

A court must grant summary judgment where, as here, the moving party shows that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The fact dispute must be "genuine" and it must concern a "material" fact in order to defeat such a motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Conclusory assertions, legal opinions, and naked allegations unsupported by admissible evidence do not

establish genuine issues of material fact and cannot defeat summary judgment.  See Fed. R. Civ. P. 56(e); Nicholson v. Promoters On Line Listing, 159 F.R.D. 343, 348 (D. Mass. 1994) (Court must "reject responses by nonmovants that adduce statements not based on personal knowledge or that adduce conjectural or conclusory allegations").  As the First Circuit has held:

> The test for summary judgment is steeped in reality. Although the remedy must be withheld if material facts are authentically disputed, there is a burden of production: the party opposing the motion 'must set forth specific facts showing that there is a genuine issue for trial.'  We have interpreted Rule 56 to mean that the evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

 Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (internal citations, quotation marks, and brackets omitted).  Accordingly, Plaintiff cannot rest on his pleadings or on unsupportable assertions or speculation to avoid summary judgment; his claims can proceed only if he presents admissible evidence as to each element.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986).  Because Plaintiff's individual claim lacks merits, the entire action must be dismissed.  See Great Rivers Coop. of Southeastern Iowa v. Farmland Industries, Inc., 120 F.3d 893, 899 (8th Cir. 1997) (once claims of named plaintiff are dismissed, entire action should be dismissed).

## ARGUMENT

## I.    PLAINTIFF'S CLAIM UNDER THE ECPA FAILS AS A MATTER OF LAW

### A.    Plaintiff's ECPA Claim Fails Because He Consented to the Transmission of his Credit Card Information to Reservation Rewards

The ECPA prohibits a person from "intentionally intercept[ing] . . . [any] electronic communication" or from intentionally disclosing the contents of such an intercepted communication.  18 U.S.C. § 2511(1)(a), 2511(1)(c).  However, the statute contains a clearly-stated exception where one of the parties to the communication has given prior consent to the interception. 18 U.S.C. § 2511(2)(d); see also U.S. v. McDowell, 918 F.2d 1004, 1006 (1st

Cir. 1990) ("The statute specifically provides that telephone calls may be intercepted 'where one of the parties to the communication has given prior consent to such interception.' 18 U.S.C. § 2511(2)(d).").

Here, the undisputed facts establish that Plaintiff consented to the transmission of his credit card information to Reservation Rewards.[5]  He took multiple affirmative steps to indicate his desire to enroll in the Reservation Rewards program on an enrollment form that contained repeated descriptions of the terms of membership.  When he typed his email address two times into the enrollment form, he did so immediately beneath this legend:  "By entering my e-mail address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and *authorize Fandango to securely transfer my name, e-mail address and credit or debit card information to Reservation Rewards* for billing and benefit processing." 56.1 State. ¶¶ 9, 11 (emphasis added).

To the extent Plaintiff claims that he did not read or understand the full and accurate disclosures and descriptions of the relevant terms presented to him before he twice entered his email address and clicked "YES!," his ECPA claim still fails.  A party's consent is not vitiated simply because he claims not to have read the relevant contract terms.  Boynton v. American Exp. Co., 221 Mass. 237, 240 (1915); E & F Construction Co., Inc. v. Rissil Construction Assocs., 181 Conn. 317, 321 (1980); Caron v. Waterford Sports Ctr., Inc. , 2002 WL 31898081 at * 3 (Conn. Super. Ct. Dec. 13, 2002) ("failure to read a contract before signing it in no way diminishes its binding force") (attached as Exhibit C).  Defendants have no way of knowing – and cannot be held to the burden of knowing – what any customer (including Plaintiff) may or

---

[5]     Mr. Kuefler's dual entry of his email address and clicking on the "YES!" button constituted a valid electronic signature under the E-Signature Act, 15 U.S.C. §7001.

may not choose to read.  Thus, as a matter of law, consent is determined objectively from the undisputed manifestations of assent: Plaintiff typing his email address twice and clicking "YES!"  See Restatement (Second) Torts § 892 ("If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact.").  These outward manifestations of assent were placed as close as possible to – indeed, immediately adjacent to – the relevant disclosures so as to maximize the likelihood that plaintiff would read the disclosures.  Defendants cannot be, and are not, required to do more.

> **B.    Plaintiff's ECPA Claim Fails Because His Information Was Not "Intercepted" By Webloyalty**

This Court has previously recognized that interception "requires the electronic communication to be acquired before it reaches its intended destination, *i.e.,* during transmission."  Eagle Investment Sys. Corp. v. Tamm, 146 F. Supp. 2d 105, 112 (D. Mass. 2001).  Here, Plaintiff does not, and cannot, allege that Defendants acquired any communication "before it reache[d] its intended destination."  Instead, Plaintiff at most alleges only that information he intentionally transmitted to Fandango was later re-transmitted to Reservation Rewards.  Such post-transmission use does not constitute a claim under the ECPA.  See Tamm, 146 F. Supp. 2d at 113 ("Because the acquisition occurred after - not during - transmission, Plaintiff fails to state facts to support a Wiretap-Act violation."); United States v. Moriarty, 962 F. Supp. 217, 221 (D. Mass. 1997) (adopting Magistrate Judge's Report and Recommendation) ("Only the interception of voice mail while in transmission, like a wiretap of a telephone, can amount to a violation of Section 2511.").  For this reason too, the ECPA claim must be dismissed as a matter of law.

## II.    PLAINTIFF'S COMMON-LAW CLAIMS FAIL AS A MATTER OF LAW[6]

### A.    Plaintiff Cannot Maintain a Claim for Unjust Enrichment

Plaintiff entered into a contract with Webloyalty governing his membership in Reservation Rewards, and there is nothing "unjust" about requiring both parties to honor their side of the bargain.  Where a contract governs the relations between the parties, a claim of unjust enrichment cannot be maintained as a matter of law.  See Platten v. H.G. Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006) (affirming dismissal of action; "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment."); see also Ben Elfman & Son, Inc. v. Criterion Mills, Inc., 774 F. Supp. 683, 687 (D. Mass. 1991) (granting summary judgment on unjust enrichment claim where plaintiffs failed to demonstrate that the subject matter of the claim was distinguishable from the parties' express agreement); Meaney v. Connecticut Hospital Assn, Inc., 250 Conn. 500, 517 (1999) ("express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter") (internal quotations omitted).  Because a contract exists between the parties here, Plaintiff's unjust enrichment claim cannot be maintained.  See, e.g., Okmyansky v. Herbal Life Int'l of Am., Inc., 415 F.3d 154, 162 (1st Cir. 2005) (affirming summary judgment for the defendants; the existence of an express contract forecloses the applicability of equitable claims); Ruiz v. Bally Total Fitness Holding Corp., 447 F. Supp. 2d 23, 29 (D. Mass 2006) (dismissing claims for

---

[6]    The question of which law should be applied to Plaintiff's claims need not be decided at this juncture because the laws of Massachusetts and Connecticut lead to the same result. Decisions from both jurisdictions are accordingly cited.

unjust enrichment and money had and received where a valid, express contract governed the relationship between the parties).[7]

In addition, the undisputed facts establish that the terms of the Reservations Rewards program were contained in a written agreement described on the Enrollment page. Plaintiff assented to the terms of the Reservation Rewards program, including the use and transmission of his credit card information and the $10 monthly membership fee after the initial trial period. Where Plaintiff entered into a contract, the terms of which were fully disclosed to him, there can be no claim for unjust enrichment when – as here – Defendants received nothing other than what they were entitled to under the terms of the contract itself. See Platten, 437 F.3d at 130; Feng v. Dart Hill Realty, Inc., 601 A.2d 547, 548, 549 (Conn. App. Ct. 1992) (reversing jury verdict for plaintiff where the verdict permitted recovery for unjust enrichment in a relationship between parties governed by an express contract).

Plaintiff cannot create a claim by claiming that he did not read, pay attention to, or understand the terms of the agreement. Defendants fully satisfied their obligations to Plaintiff by providing full and accurate information to him. His decision not to read that information, or to skim it, or to ignore it, or to sign up for the program without understanding its terms, or whatever other reason he may come up with for his claim that he signed up without knowing the terms of the program, are no basis for liability. Whether the Plaintiff reviewed and completely understood the terms of the agreement is of no legal consequence. See Greenwich Contracting Co., Inc. v. Bonwit Construction Co., Inc., 156 Conn. 123, 130 (1968) (where the parties entered

---

[7]    The existence of a contract between the parties forecloses assertion of any Plaintiff's equitable claims (i.e., his claims for unjust enrichment and money had and received). Because a contract exists, Plaintiff is not entitled to equitable relief. See Okmyansky, 415 F.3d at 162; Ruiz, 447 F. Supp. 2d at 29.

into a contract and neither party engaged in inequitable or fraudulent conduct, the doctrine of unjust enrichment did not apply); E & F Construction Co, Inc., 181 Conn. at 321 (absent accident, fraud, mistake or unfair dealing, party cannot "escape his contractual obligations by saying … that he did not read" provisions of the contract); see also Boynton, 221 Mass. at 240 (failure to read contract, where no fraud or concealment by defendants appear, does not estop reliance in its terms).

Finally, the claim should also be dismissed for the independent reason that Plaintiff undisputedly asked for and received a complete refund of the $10 he was charged. Accordingly, Defendants have retained no benefit nor has Plaintiff suffered any detriment. CSX Transp., Inc. v. Recovery Express, Inc., 415 F. Supp. 2d 6, 12 (D. Mass. 2006) (granting summary judgment on unjust enrichment claim where plaintiff presented no evidence that the defendants retained any benefit); Paulsen v. Kronberg, 786 A.2d 453, 455 (Conn. App. Ct. 2001) (affirming judgment for defendant where a contract governed and plaintiff had been paid what was due him under that contract).

### B.    Plaintiff Has No Claim for Invasion of Privacy

Plaintiff cannot maintain his invasion of privacy claim because any disclosure of information was explicitly and affirmatively consented to by Mr. Kuefler. As set out above, Plaintiff unambiguously consented to the transmittal of his credit card information from Fandango to Reservation Rewards. Consent is a complete defense to a claim for invasion of privacy. See Dineen v. Dep't of Social Services, 11 Mass. L. Rep. 184, 2000 Mass. Super. LEXIS 18 at *5-6 (January 31, 2000) ("[c]onsent is an absolute defense" to a claim for invasion of privacy); Stewart v. Pantry, Inc., 715 F. Supp. 1361, 1368 (W.D. Ky. 1988) (same); see also Restatement (Second) Torts § 892A(1) ("[o]ne who effectively consents to conduct . . . cannot recover in an action of tort for the conduct…"). Even if Plaintiff maintains that he somehow did

not understand that he was consenting to the release or disclosure of information he contends was private, his subjective understanding, belief, or intent is irrelevant.  See Restatement (Second) Torts § 892 ("If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact.").

Furthermore, even if Plaintiff could create a triable issue as to whether some intrusion did occur without his consent -- which he cannot -- he still would not be able to show that the intrusion would have been "highly offensive to a reasonable person," as he must to survive summary judgment.  See Chance v. Cundy, 2004 WL 1497547 at *4 (D. Conn. June 25, 2004) (no privacy invasion alleged under Connecticut law where phone call to employer could not be "highly offensive to a reasonable person.") (attached as Exhibit D).  There can be nothing "highly offensive" to a reasonable person about the transfer of credit card information for billing purposes where, as here, the Plaintiff has voluntarily enrolled in a program and consented to the transfer and use of the information.  See, e.g., Pane v. City of Danbury, 267 Conn. 669, 690 (2004) (plaintiff's invasion of privacy claim failed; the release of personnel information was not highly offensive to a reasonable person); see also O'Donnell v. United States, 891 F.2d 1079, 1083 (3rd Cir. 1989) (no invasion of privacy where defendant believed it had the plaintiff's consent to commit the challenged act).   The information at issue here was used for the very limited purpose (i.e., billing) spelled out in the terms of the offer accepted by Plaintiff, and was consented-to beforehand.  In these circumstances, there can be no claim.

### C.    Plaintiff Cannot Maintain A Claim for Violation of The Implied Covenant of Good Faith and Fair Dealing

Plaintiff has no claim for breach of the implied covenant of good faith and fair dealing because he cannot establish that Defendants interfered with any of the benefits for which he contracted.  An action for a breach of the covenant of good faith and fair dealing requires proof

that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits, and that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits.  See De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2004) (outlining elements of the claim and affirming trial court's finding that there was no breach the implied covenant where plaintiff could not have expected defendant to continue to promote a shopping mall that was losing hundreds of thousands of dollars every year); Uno Restaurants, Inc. v. Boston Kenmore Realty Group, 441 Mass 376, 385 (2004) (reversing denial of motion for a directed verdict and entering judgment for defendant on implied covenant claim; the implied covenant may not be "invoked to create rights and duties not otherwise provided for in the existing contractual relationship").[8]

Plaintiff's contract to join Reservation Rewards contained simple and straightforward terms.  Plaintiff received access to a package of consumer discounts, travel protection, and other benefits and, in exchange, agreed to pay $10 a month once his thirty-day trial period had run out. Plaintiff has not and cannot allege -- let alone demonstrate -- that Defendants interfered with his right to receive any portion of those benefits.  See Dunkin Donuts Inc. v. Panagakos, 5 F. Supp. 2d 57, 64 (D. Mass. 1998) (granting summary judgment on breach of implied covenant claim; "The implied covenant of good faith cannot override the express terms of a contract."); Bank of Boston v. Scott Real Estate, Inc., 673 A.2d 558, 561 (Conn. App. Ct. 1996) (affirming summary judgment for counterclaim defendant where express, unambiguous contract governed, which counterclaim defendants did not breach).

---

[8]     No cause of action can be maintained for a breach of the implied covenant of good faith and fair dealing without an underlying contract. Hoskins v. Titan Value Equities Group, Inc., 252 Conn. 789, 794 (2000); Levenson v. L.M.I. Realty Corp., 575 N.E.2d 370, 372 (Mass. App. Ct. 1991).

In addition, the claim fails for the independent reason that Mr. Kuefler has no damages. See Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 388 (2005) (vacating judgment for the plaintiff on implied covenant claim where plaintiff did not demonstrate that she suffered a compensable loss); Middletown Comm. Associates Ltd. P'Ship v. City of Middletown, 730 A.2d 1201, 1205 (Conn. App. Ct. 1999) (where there was no injury to the plaintiffs' right to receive the benefits of the agreement, claim was without merit).  As discussed above, Plaintiff has received a full refund of the $10 that he was billed for his membership in Reservation Rewards.

### D.     Plaintiff's Claim for Money Had and Received Must Fail

In order to maintain a claim for money had and received, Plaintiff must demonstrate that Defendants obtained money from Plaintiff under circumstances that make it unfair not to return it.  Blue Cross of Massachusetts, Inc. v. Travaline, 398 Mass. 582, 588 (1986) ("an action for money had and received will lie where the defendant has received money or its equivalent which in equity and good conscience belongs to the plaintiff") (internal quotations omitted); Monroe Nat'l Bank v. Catlin, 82 Conn. 227, 231 (1909).  The claim sounds in equity and is available only to a plaintiff who has no remedy at law.  Because the relationships among the parties here are governed by an express contract, no claim in equity can be maintained.  See Okmyansky, 415 F.3d at 162 (holding that the existence of an express contract forecloses a claim for money had and received); Ruiz v. Bally Total Fitness Holding Corp., 447 F. Supp. 2d at 29 (same); Russell v. South Britain Society, 9 Conn. 508 at *8 (1833) (where a contract is in force, there can be no recovery for money had and received).

Further, Plaintiff as a matter of law cannot establish that Defendants have done anything "unfair" because the undisputed facts show that, after full disclosure, Plaintiff affirmatively contracted to join Reservation Rewards and received the benefits of membership.  See DiMonda v. Freedom Federal Sav. & Loan Association, 385 Mass. 1012, 1012 (1982) (plaintiff's claim for

- 18 -

money had and received failed where the plaintiff received value and the defendant was not wrongfully retaining money which belonged to the plaintiff); Monroe Nat'l Bank v. Catlin, 82 Conn. at 231 (claim for money had and received failed where plaintiff made payment with full knowledge of the facts, although he may not have understood the extent of his rights and obligations). Finally, Plaintiff was refunded his $10, and so Defendants do not possess anything that would be unfair to retain. See Blue Cross of Massachusetts, 398 Mass. at 588; Weed v. Weed, 22 Conn. 364 at *3 (1853) (judgment for the defendants because they did not actually possess any money belonging to the plaintiff).

## III.    PLAINTIFF'S CLAIM FOR CIVIL THEFT FAILS AS A MATTER OF LAW

To state a claim under Connecticut General Statutes § 52-564, Plaintiff must demonstrate that Defendants committed larceny pursuant to Connecticut General Statutes §53a-119, see Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 44 (2000). Lack of consent is a required element of larceny. See, e.g., State v. Calonico, 256 Conn. 135, 153 (2001). Plaintiff cannot maintain the claim because, as set out above, he consented to the terms and conditions of membership in Reservation Rewards, including the monthly fee after the initial trial period. See Hi-Ho Tower, 255 Conn. at 44, 45 (the fact that the plaintiff authorized the defendant's actions was fatal to plaintiff's claim for civil theft); Swift v. Ball, 2005 Conn. Super. LEXIS 417 at *34 (Conn. Super. Ct. Feb. 22 2005) (attached as Exhibit E) (former business partner did not commit civil theft by taking certain property of his brother-in-law's corporation where he took the items with the corporation's knowledge, consent, and permission, and reasonably believed that he could retain possession of the items pursuant to the division of the assets by the business partners).

## CONCLUSION

For each of the reasons set out above, Defendants Webloyalty and Fandango respectfully request that the Court grant their motion for summary judgment in their favor on all claims. Further, because Plaintiff's individual claims should be dismissed, Defendants request that judgment be granted in their favor with respect to the entire action.

Respectfully submitted,

WEBLOYALTY.COM, INC.
FANDANGO, INC.

By Their Attorneys

/s/ Gabrielle R. Wolohojian_____
Gabrielle R. Wolohojian, BBO # 555704
John J. Regan, BBO # 415120
Joan S. Mitrou, BBO # 664499
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
Tel:  617-526-6000
Fax:  617-526-5000

Samuel Broderick-Sokol
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel:  202-663-6000
Fax: 202-663-6363

Steven Lieberman, *pro hac vice*
Anne M. Sterba, *pro hac vice*
C. Nichole Gifford, *pro hac vice*
Rothwell, Figg, Ernst & Manbeck P.C.
1425 K Street NW
Washington, DC 20005
Tel:  202-783-6040
Fax: 202-783-6031

<u>Certificate of Service</u>

I, Gabrielle R. Wolohojian, hereby certify that a true and accurate copy of the above document has been filed and served through the Court's electronic filing system, this 13th day of November, 2006.

__/s/Gabrielle R. Wolohojian_____

<u>Certificate of Rule 7.1 Conference</u>

I, Gabrielle R. Wolohojian, hereby certify that on November 10, 2006, I conferred with counsel for the plaintiff in a good faith attempt to narrow or resolve the issues presented by this motion and that we were unable to do so.

\_\_\_/s/Gabrielle R. Wolohojian_____