UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE W. KUEFLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WEBLOYALTY.COM, INC. and FANDANGO, INC. d/b/a FANDANGO.COM,<br><br>Defendants. | CIVIL ACTION NO. 06-cv-11620-JLT |

**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants respectfully submit the following Statement of Undisputed Facts pursuant to Local Rule 56.1. These facts are undisputed and demonstrate that Defendants are entitled to judgment as a matter of law.

1. On December 25, 2005, Plaintiff visited the Fandango web site to purchase movie tickets. See Declaration of Shane O'Neill in Support of Defendants' Motion for Summary Judgment (O'Neill Declaration) ¶ 3.

2. After he used the Fandango service to identify the film and showing for which he wished to purchase tickets, Kuefler visited the "SELECT TICKETS" page of the Fandango website, which asked him to confirm the film that he wanted to purchase tickets to, and to enter the number of tickets he wished to buy. O'Neill Declaration ¶ 5; Declaration of Tamara Lichtman in Support of Defendants' Motion for Summary Judgment (Lichtman Declaration) ¶ 6.

- 1 -

3. In the lower third of the Select Tickets page was a large gray box, conspicuously and clearly labeled "**Optional Offer**" (bold in the original). The box contained a blank square box which Plaintiff was required affirmatively to check off in order to learn more about the Reservation Rewards program and claim a $10 cash back reward. Plaintiff **was not required to** click this box in order to proceed with purchasing his selected movie tickets, and the box was "unchecked" by default. Lichtman Declaration ¶ 6; O'Neill Declaration ¶ 5.

4. Plaintiff checked the box for more information and then clicked "Continue" at the bottom of the Select Tickets page. Neither action by Plaintiff resulted in his being enrolled in Reservation Rewards or in the transfer of his credit card or other personal information from Fandango to the Reservation Rewards program. Lichtman Declaration ¶ 7; O'Neill Declaration ¶ 9.

5. Plaintiff was next directed to a sign-in page. After signing in, Plaintiff was directed to the Payment page of the Fandango website. Lichtman Declaration ¶ 8; O'Neill Declaration ¶ 6.

6. Because Plaintiff previously had clicked "YES" and "Continue" in the Optional Offer box on the Select Tickets page, he was directed from the Payment page to the Reservation Rewards enrollment page ("Enrollment page").[1] When he arrived at the Enrollment page, Plaintiff still had not been enrolled in the Reservation Rewards program and his credit card information still had not been transferred from Fandango to Reservation Rewards. Lichtman Declaration ¶¶ 9, 11-14; O'Neill Declaration ¶¶ 6, 9.

---

[1] Had Plaintiff not checked the "YES" box indicating that he wanted to learn more about the program and the offered $10 cash reward, he would have been directed instead to the Fandango Order Review page. Lichtman Declaration ¶ 9.

7.      The Enrollment page clearly and conspicuously described the terms of membership in Reservation Rewards, including the cost of the program and the fact that, if he enrolled, Plaintiff's credit card information would be transmitted from Fandango to the Reservation Rewards program and that charges would be billed to that card.   Lichtman Declaration ¶ 10; O'Neill Declaration ¶ 6.

8.      The Enrollment page in at least **four** separate places clearly informed Mr. Kuefler that he would be charged a monthly $10 membership after an initial free one-month trial membership:

    a.     In the first paragraph of the main text, the Enrollment page states "Enjoy all this FREE for the next 30 days and only $10 per month thereafter."

    b.     In bold type in the first line of a conspicuous shaded box, directly above the spot where Plaintiff twice entered his email address and clicked the colored "YES!" button, the Enrollment Page states "30 days FREE plus only $10 a month thereafter."

    c.     In the first line of a colored scroll box to the left of the spot where Plaintiff twice entered his email address and clicked the colored "YES!" button, under the bolded heading "**Offer and Billing Details**," the Enrollment page states "Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only $10 a month thereafter."

    d.     A few lines down, in the same colored box, the Enrollment Page further states "For your convenience until you call to cancel, we'll automatically continue your benefits for just $10 month billed by Reservation Rewards to the credit card or deducted from the debit card you use at Fandango today."

    See Exhibit 2 to Lichtman Declaration; Exhibit 2 to O'Neill Declaration.

9.      The Enrollment page also unambiguously stated that, if he chose to enroll, Plaintiff's credit card information would be transferred from Fandango to Reservation Rewards and would be charged the monthly membership fee:

    a.     Above the Sign-Up box where Plaintiff entered his email address twice and clicked the colored "YES!" button, the Enrollment page states "By entering my email address as my electronic signature and clicking YES, *I have read and agree to the Offer and Billing Details and authorize Fandango to securely transfer my*

- 3 -

> *name, e-mail address and credit or debit card information to Reservation Rewards* for billing and benefit processing." (emphasis added)

    b.    In the colored scroll box to the left of the spot where Plaintiff twice entered his email address and clicked the colored "YES!" button, the Enrollment page further states "For your convenience until you call to cancel, we'll automatically continue your benefits for just $10 month billed by Reservation Rewards to the credit card or deducted from the debit card you use at Fandango today."

    See Exhibit 2 to Lichtman Declaration; Exhibit 2 to O'Neill Declaration.

10. An off-set colored box on the Enrollment page contained three highlighted bullet points. The bullets state:

- 30 Days FREE plus only $10 a month thereafter
- E-mail reminder before first monthly charge
- Cancel anytime hassle-free online or by phone

See Exhibit 2 to Lichtman Declaration; Exhibit 2 to O'Neill Declaration.

11. Under these bullets, in colored text, the Enrollment page explains how to enroll in Reservation Rewards: "Sign up for Reservation Rewards by entering your e-mail address and clicking YES below." Just beneath this direction, the Enrollment page explains that, by entering his email address twice and clicking "YES," Plaintiff was attesting that he "ha[d] read and agree[d] to the Offer and Billing Details and authorize Fandango to securely transfer my name, e-mail address and credit or debit card information to Reservation Rewards for billing and benefit processing." Lichtman Declaration ¶ 11; O'Neill Declaration ¶ 7.

12. Mr. Kuefler accepted the terms of the Reservation Rewards offer, attested that he had read and agreed to the Offer and Billing details, and authorized the transfer by Fandango to Reservation Rewards of his credit card information for billing purposes. He did so by (1) entering his email address in the box provided; (2) entering his email in the confirmation box

provided; and, finally, (3) clicking on the "YES!" button. Lichtman Declaration ¶¶ 11-13; O'Neill Declaration ¶ 7.[2]

13.   No customer was enrolled in Reservation Rewards merely by visiting the Enrollment page. If the customer clicked "No thanks" instead of "YES!," or if he simply clicked the "Continue with ticket purchase" button at the bottom of the page without filling in his email address in the two sign up boxes and clicking "YES!," he would continue with his Fandango purchase, without having enrolled. Lichtman Declaration ¶ 14; O'Neill Declaration ¶¶ 8-9.

14.   A customer could not enroll in Reservation Rewards without having entered his email address twice and clicking on the "YES!" button on the Enrollment page. Nor would a customer's email or credit card information be transmitted from Fandango to Reservation Rewards or used or billed unless the customer had taken the affirmative steps to authorize the transmission and use of that information. In addition, no credit card or personal information was transmitted to Reservation Rewards until the customer had completed his purchase transaction with Fandango. Lichtman Declaration ¶¶ 11-13; O'Neill Declaration ¶¶ 4, 7-9.

15.   A few minutes after enrollment, Reservation Rewards sent to Plaintiff an email prominently entitled so as to catch his attention: "As requested, your Membership Kit for Reservation Rewards, please login today." Among other things, the email described the benefits available to Reservation Rewards members and repeated the Offer and Billing details, stating:

> If you are completely satisfied during your trial, do nothing. All your Reservation Rewards discounts and protection will automatically continue for just $10 a month billed by Reservation Rewards to the credit or debit card you authorized [Visa, Last 4 digits: 2089]. For your convenience Reservation Rewards will use the contact and credit or debit card information you authorized for billing and benefit processing. . . . Your

---

[2]   After he clicked YES!, Plaintiff was directed to a Fandango Order Review page where he completed his ticket purchase transaction. Lichtman Declaration ¶ 13; O'Neill Declaration ¶ 8.

monthly fee will show up on your card statement as billed by WLI*RESERVATIONREWARDS 800-732-7031 CT.

Lichtman Declaration ¶¶ 15-16 and Exhibit 3 thereto.

16.     The confirming email also reiterated the previous disclosure that membership could be canceled at any time.  Exhibit 3 to Lichtman Declaration.

17.     Reservation Rewards sent Plaintiff another email on January 10, 2006, reminding him that, unless he cancelled his membership, his credit card would be charged a $10 membership fee.  The subject line of the email explicitly alerted Mr. Kuefler to the fact that it concerned billing and benefit information concerning the Reservation Rewards program: "Benefit and billing reminder notice for Reservation Rewards members."  The email identified by name and number the specific card that would be charged and stated the name under which the charge would appear.  The email also explained how Plaintiff could cancel his membership if he wished to do so before being charged and provided a toll-free number to reach Reservation Rewards customer service.  Lichtman Declaration ¶ 19 and Exhibit 6 thereto.

18.     On January 24, 2006, Plaintiff's trial membership expired and, as he had agreed, his credit card was charged $10.  On the same day, Reservation Rewards sent Plaintiff yet another reminder email confirming that he had enrolled in the program and describing some of its benefits.  Lichtman Declaration ¶ 20.

19.     Approximately one month later, on February 22, 2006, Plaintiff contacted Reservation Rewards' toll-free number and asked that his membership in Reservation Rewards be canceled and that he receive a refund of the $10 previously billed in January 2006.  His requests were promptly granted in full.  Lichtman Declaration ¶ 21.

Respectfully submitted,

WEBLOYALTY.COM, INC.
FANDANGO, INC.

By Their Attorneys


/s/ Gabrielle R. Wolohojian
Gabrielle R. Wolohojian, BBO # 555704
John J. Regan, BBO # 415120
Joan S. Mitrou, BBO # 664499
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: 617-526-6000
Fax: 617-526-5000

Samuel Broderick-Sokol
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6000
Fax: 202-663-6363

Steven Lieberman, *pro hac vice*
Anne M. Sterba, *pro hac vice*
C. Nichole Gifford, *pro hac vice*
Rothwell, Figg, Ernst & Manbeck P.C.
1425 K Street NW
Washington, DC 20005
Tel: 202-783-6040
Fax: 202-783-6031


Certificate of Service

I, Gabrielle R. Wolohojian, hereby certify that a true and accurate copy of the above document has been filed and served through the Court's electronic filing system, this 13th day of November, 2006.

/s/Gabrielle R. Wolohojian