UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE W. KUEFLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WEBLOYALTY.COM, INC. and FANDANGO, INC. d/b/a FANDANGO.COM,<br><br>Defendants. | CIVIL ACTION NO. 06-cv-11620-JLT |

**DECLARATION OF TAMRA LICHTMAN IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Tamra Lichtman, submit the following declaration in support of Defendants' Motion for Summary Judgment.

1. I have been employed at Webloyalty since June 1999. I am currently Vice President, Marketing, a position I have held since 2001. Previously, I served as the company's Marketing Director. In December 2005, as part of my responsibilities, I oversaw the marketing work done for Fandango, working directly with the creative and account management teams and Fandango personnel. I have detailed knowledge about the world-wide-web page flows and enrollment process that were in place for customers who joined Reservation Rewards through the Fandango Internet-based movie ticket service during December 2005.

2. This Declaration is based on my personal knowledge of Webloyalty's systems and transaction processes, and their relationship to the systems and processes of Fandango, and on my

- 1 -

review of Webloyalty's records regarding Plaintiff Joe Kuefler's enrollment in Reservation Rewards on December 25, 2005.

3. Plaintiff joined Reservation Rewards through an offer presented on a world-wide-web page for the Fandango Internet-based movie ticket service on December 25, 2005. See Exhibit 1 to this Declaration, which is a true and correct copy of Plaintiff's account page in Webloyalty's Customer Service Administration Tool ("CSAT") screen, listing a "join date" of 12/25/05.

4. To join Reservation Rewards from an online retailer's world-wide-web site, such as Fandango's movie ticket service, a customer must navigate a specific series of world-wide-web pages. This collection of related web pages is referred to as a "screen flow."

5. Each specific Reservation Rewards enrollment process within a retailer's screen flow that is in effect at a particular time on a particular retailer's web site has a unique identifying number, referred to as its Campaign ID, or CPID. Webloyalty's customer service records show that Plaintiff enrolled in Reservation Rewards through CPID 56192, as reflected in the first five digits of the campaign code listed on the CSAT. See Exhibit 1 to this Declaration (CSAT identifying the campaign as "56192-fan-rr-pob-10cli-1mf-10m-rc350-530-T23").[1]

6. Under this screen flow, Plaintiff first visited the Fandango "Select Tickets" page. On this page, he was asked to confirm that he wanted to purchase tickets and to confirm the number of tickets that he wanted to buy. In the lower third of this page was a large gray inset box labeled **"Optional Offer"** in bold. The box contained a blank square box to the left of the phrase "Yes - I want my Thank You Reward! Check this box to claim your $10.00 Cash Back Reward plus Money-

---

[1] Each component of this code describes particular details about the offer accepted by Plaintiff. For example, after the CPID, the abbreviations "fan" and "rr" indicates that this was a Fandango solicitation for membership in Reservation Rewards, "1mf" indicates that the customer will receive one month of free service, and "10m" indicates that the price to join Reservation Rewards at this time through this solicitation was $10 per month after the trial period expired.

Saving Discounts," which Plaintiff was required affirmatively to check off in order to learn more about Reservation Rewards. Below that text, the box offered further details about the discounts and benefits of the Reservation Rewards program, and stated "By checking the box you can find out how to claim your $10.00 Cash Back Reward and Money-Saving Discounts from our preferred partner, Reservation Rewards, during your ticket purchase." Plaintiff was not required to click this box in order to proceed with purchasing his movie tickets, and the box was "unchecked" by default.

7. To receive more information about Reservation Rewards, Plaintiff checked the box for more information and then clicked "Continue" at the bottom of the Select Tickets page. Neither action by Plaintiff caused his personal identifying information or his credit card information to be transferred to the Reservation Rewards program, nor was Plaintiff at this time enrolled in Reservation Rewards.

8. Under this screen flow, Plaintiff was next directed to a Fandango sign-in page and a Fandango payment page that did not contain any information regarding his enrollment in Reservation Rewards.

9. Because he clicked the box regarding the Optional Offer to join Reservation Rewards, Plaintiff was next directed to the Reservation Rewards enrollment page, a true and correct copy of which is attached as Exhibit 2 to this Declaration ("Enrollment page"). If he had not clicked that box, he would instead have bypassed the Enrollment page and proceeded directly to the Fandango "Order Review" page.

10. The Enrollment page contained a detailed description of the Reservation Rewards program, including multiple disclosures regarding the cost of the program, the fact that, on enrollment, Plaintiff's credit card and other personal information would be transferred from Fandango to the Reservation Rewards program, and that he could cancel at any time.

11. To enroll in Reservation Rewards from this Enrollment page, Plaintiff was required to take several steps. First, he was required to type his email address into the empty box under the statement "Sign up for Reservation Rewards by entering your e-mail address and clicking YES below." Beneath this phrase, the Enrollment page continued: "By entering my e-mail address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize Fandango to securely transfer my name, e-mail address, and credit or debit card information to Reservation Rewards for billing and benefit processing." See Exhibit 2.

12. Second, Plaintiff was required to again enter the same email address in a confirmation box. Third, he was required to click the button next to the highlighted word "YES!" and the phrase "I want my Reservation Rewards benefits and $10.00 Cash Back Award!" Finally, he was required to click on the "Continue with ticket purchase" button at the bottom of the page. See Exhibit 2.

13. Once Plaintiff entered his email twice into the enrollment form, clicked the button next to "YES!" and then clicked "Continue with ticket purchase," he was taken to a Fandango "Order Review" page. At this page, Plaintiff needed to click "Complete My Purchase" in order to finalize both his Fandango ticket purchase and his enrollment in Reservation Rewards. At this time, and not before, Fandango transmitted Plaintiff's credit card and identifying information to the Reservation Rewards program, and Plaintiff's unique member number 9773456009 was assigned. See Exhibit 1 (listing member number). It was not possible to join Reservation Rewards from this Fandango screen flow on December 25, 2005, without taking each of these five affirmative steps and, until Plaintiff chose to enroll in Reservation Rewards by taking these steps, no credit card or other personal identifying information of Plaintiff was transmitted from Fandango to the program.

14. A customer like Plaintiff who has checked the box regarding the Optional Offer on the Fandango Select Tickets page could easily leave the Enrollment page without joining Reservation

Rewards. For example, if the customer clicked "Continue with ticket purchase" without entering his email address and clicking "YES!" on the Enrollment page, he would be taken to the Fandango Order Review page and would not be enrolled in Reservation Rewards when he completed his ticket purchase. Or, the customer could simply click "No Thanks" and then continue with his ticket purchase.

15. Upon enrollment, Reservation Rewards sent Plaintiff an email welcoming him to the program and describing its benefits and the charges he would incur after his free thirty-day trial period expired. Attached as Exhibit 3 to this Declaration is a true and correct copy of the form of Welcome email sent to Plaintiff.[2] This email was sent at 5:44:27 PM, December 25, 2005, as shown in program records. See Exhibit 1 (CSAT screen listing email transmissions). The subject line to this email was "As requested, your Membership Kit for Reservation Rewards, please login today."

16. This welcome email prominently displayed Plaintiff's member number and the email address he had provided on enrollment, and informed Plaintiff of the Reservation Rewards password that had been generated for him, in Plaintiff's case "sail42star". See CSAT (listing the password); Exhibit 3 (form of email). It also explained how Plaintiff could claim his $10 cash back award. See Exhibit 3.

17. One week later, on January 1, 2006, Reservation Rewards sent Plaintiff a reminder email displaying his membership number and encouraging him to use his two-for-one dining benefits. Attached as Exhibit 4 is a true and correct copy of the form of reminder email sent to Plaintiff on January 1, 2006. See also Exhibit 1 (CSAT screen identifying this form of email as having been sent

---

[2] Program emails are automatically generated from computer templates and only transmission records are retained. The contents of the email forms attached to this Declaration are identical in all relevant respects to the ones sent to Plaintiff in connection with his enrollment in Reservation Rewards, except that sample customer profile data (e.g., name, credit card type, join date) are used to generate the sample documents.

on this date). The subject line to this email was "New member benefit update from Reservation Rewards."

18. On January 7, 2006, Reservation Rewards sent Plaintiff another reminder email, again displaying his membership number and encouraging him to claim his cash back award and to use his membership benefits. Attached as Exhibit 5 is a true and correct copy of the form of reminder email sent to Plaintiff on January 7, 2006. See also Exhibit 1 (CSAT screen identifying this form of email as having been sent on this date). The subject line to this email was "Your $10.00 Cash Back on next Fandango purchase."

19. On January 10, 2006, two weeks before his free trial period was to expire, Reservation Rewards sent Plaintiff an email reminding him that, unless he elected to cancel his membership, his credit card would be charged a $10 membership fee. The subject line to this email was "Benefit and billing reminder notice for Reservation Rewards members." This email also identified the credit card to be billed by its brand and last four digits. And the email explained how Plaintiff could cancel his membership if he wished to do so before being charged, and provided a toll-free number to facilitate a cancellation should Plaintiff wish. Attached as Exhibit 6 to this Declaration is a true and correct copy of the form of reminder email sent to Plaintiff on January 10, 2006. See also Exhibit 1 (CSAT screen identifying this form of email as having been sent on this date).

20. On January 24, 2006, Plaintiff's trial membership expired and his credit card was billed $10. See Exhibit 1 (CSAT screen reflecting this billing). On the same day, another reminder email was sent. Attached as Exhibit 7 to this Declaration is a true and correct copy of the form of reminder email sent to Plaintiff on January 24, 2006. See also Exhibit 1 (CSAT screen identifying this form of email as having been sent on this date). The subject line to this email was "Member benefit update from Reservation Rewards."

21. Approximately one month later, on February 22, 2006, Plaintiff contacted the Reservation Rewards toll free number and canceled his membership. He also requested a refund of the $10 previously billed in January 2006. This request was granted and processed the very next day. See Exhibit 1 (CSAT records showing that cancellation occurred on February 22, 2006). Emails were sent to the same address previously on file for Plaintiff confirming the cancellation and the refund that very same day. Attached as Exhibit 8 to this Declaration are true and correct copies of the form of cancellation emails sent to Plaintiff on February 22, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 10, 2006, at Norwalk, Connecticut.

_____/s/Tamra Lichtman_____
Tamra Lichtman