UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE W. KUEFLER, Individually and on Behalf of All Others Similarly Situated,  )<br>)<br>)<br>Plaintiff,   )<br>)<br>vs.   )<br>)<br>WEBLOYALTY.COM, INC. and   )<br>FANDANGO, INC. d/b/a FANDANGO.COM   ) | Docket No: 06 CA 11620 JLT |

**PLAINTIFF'S MOTION FOR RULE 56(f) DISCOVERY AND INCORPORATED MEMORANDUM OF LAW**

NOW COMES the Plaintiff, Joe W. Kuefler ("Kuefler"), individually and on behalf of all those similarly situated, and pursuant to Rule 56(f) files this motion seeking discovery from the Defendants, Webloyalty.com, Inc. ("Webloyalty") and Fandango, Inc. d/b/a Fandango.com ("Fandango") regarding numerous material issues raised in their very recently filed Motion for Summary Judgment (the "Motion") (Docket Entry #16).[1] In support of this motion, Kuefler states as follows:

**I.   PROCEDURAL HISTORY AND STATEMENT OF FACTS**

Because this case is in its infancy, the procedural history of this putative class action case is very short. On September 11, 2006, Kuefler filed his Class Action Complaint (the "Complaint"). Service of process on the Defendants was effected between September 18, 2006 and September 21, 2006. (See Docket Entry #6-7). Then, on November 13, 2006, Defendants filed their Answer (DE #13) and the Motion. Since the case is only a little more than two months

---

[1] Defendants also filed a purported Statement of Undisputed Facts (DE #18), and declarations of a Webloyalty employee and Fandango employee (DE #19-20) in support of the Motion.

1

old, no discovery whatsoever has taken place. Indeed, a Rule 16.1 Scheduling Conference has not even been conducted before the Court. Consequently, Kuefler is in need of substantial discovery from the Defendants and numerous third parties in order to be given a fair opportunity to effectively oppose the Motion.

Kuefler brings this class action to remedy the ongoing harm caused by Webloyalty's "Coupon Click Fraud" scheme. According to Kuefler and numerous confidential witnesses quoted in the Complaint, this scheme (which reaps hundreds of millions of dollars in illicit revenue for Defendants) involves the fraudulent and deceptive sale of Webloyalty's "Reservation Rewards" and other similar "Shopper Discount" products to unwitting consumers like Kuefler who make legitimate online purchases from various web retailers including the co-Defendant, Fandango, and the unauthorized transfer and/or interception of private credit and debit card account information by Fandango to Webloyalty. (See Cmplt ¶¶ 1, 12).

Kuefler alleges that Webloyalty perpetuates its scheme when consumers enter into online transactions with one of Webloyalty's 75 or more e-commerce clients including Fandango. (Id. ¶¶2, 12). During the check-out process, a "pop-up" window appears on the consumer's computer screen that promises a $10 cash back reward from the web retailer on the consumer's next purchase. (Id.). Once the consumer clicks the "pop-up" window and enters their e-mail address to redeem their "free" $10 discount, their personal information, including their credit or debit card number, is automatically transferred to and/or intercepted by Webloyalty. (Id.). Webloyalty then automatically bills the consumer's credit card a flat monthly fee of up to $10 for a membership in its "discount club" on a purported 30-day trial basis. (Id.). Webloyalty completes its "bait and switch" by using a "negative option" sales tactic whereby it allegedly e-

2

mails consumers to notify them that they can only cancel their "membership" by contacting Webloyalty within 30 days or they will be charged a recurring monthly membership fee on their credit or debit card account. (Id.¶¶2, 20-21). Consumers' credit or debit accounts are then billed monthly for this "membership program" of which consumers had no knowledge and never accepted. (Id. ¶3).

Kuefler also alleges that the "membership program" does not provide consumers with any cognizable benefits. (Id.). Webloyalty retains a consumer's payments and then pays its web retailer a "per customer" fee for each consumer who allegedly "signed up." (Id. ¶4). This arrangement results in substantial revenues for Webloyalty and its retailer clients. Hundreds, if not thousands, of consumers have complained to Webloyalty and local, state and federal consumer protection agencies about the deceptive nature of the Reservation Rewards and similar Shopper Discount club products and its unauthorized access to their credit and debit card information. (Id. ¶¶4, 22). Kuefler alleges that such complaints are a normal, expected and accepted part of Webloyalty's business plan. Webloyalty anticipates and lives with these complaints, and any refunds it makes to attempt to avoid further scrutiny, because the illegal profits reaped from consumers who never discover Webloyalty's and its retailers' scheme amount to hundreds of millions of dollars. (Id. ¶¶30, 33-36).

In a well-calculated strategic move designed to attempt to transform this class action into an individual case and severely narrow the Court's focus, Defendants filed the Motion, attached to which are numerous statements of facts and declarations of two employees claiming that Kuefler received numerous purported disclosures regarding the program. The gist of the Motion is that Webloyalty's alleged "disclosures" as they apply to Kuefler individually, created consent,

3

as to Kuefler individually, to Defendants enrolling him in their negative option "Reservations Reward" program.

Defendants would have the Court look at the factual allegations of the Motion (which, by the way, are contradicted by the allegations of the Complaint) in a vacuum. The allegations contained in the Complaint, which include numerous confidential witness statements by former Webloyalty employees, are vastly different than the "fact" claims being made in the Motion. For example, Kuefler alleges that when he made an on-line purchase of movie tickets from Fandango, he was presented with a "pop-up" window offering a "free" $10.00 gift voucher for use on his next purchase. (Cmplt ¶¶ 23-24). Only two months after the purchase, when he saw his credit card statement, did Kuefler become aware of the automatic monthly charges being made by Webloyalty. (Id. ¶25). According to Kuefler, neither Webloyalty nor Fandango disclosed to him that his personal credit card information was being transferred to and/or intercepted by Webloyalty or that he was being enrolled in Webloyalty's Reservations Rewards club for a monthly fee. (Id. ¶¶26-27).

The Defendants' Motion comes at the very beginning of this case, when Kuefler undisputedly has been afforded absolutely no discovery concerning the multitude of allegations contained in the Complaint, let alone with respect to the polar opposite "facts" alleged in the Motion. Because the case is at such an early stage, Kuefler requires significant discovery to effectively oppose the Motion and demonstrate to the Court that Defendants purported "disclosures" are insufficient, as a matter of law, to create "consent" to their unlawful scheme of charging unwitting consumers for non-existent benefits. A list of the discovery being sought by Kuefler is attached hereto as Exhibit "A." (the "Discovery List").

4

On November 30, 2006, a conference call was conducted with Defendants' counsel, to discuss the Discovery List and to attempt to narrow the issues and agree upon a discovery plan. As a result of the efforts of counsel, the parties have been able to agree as to some of the discovery sought by Kuefler. Nevertheless, there is still substantial disagreement as to the remaining items. To be candid, despite efforts of both parties' counsel, the parties' views on the scope of the discovery that should be permitted are miles apart. While Defendants' counsel concedes that discovery is warranted, Defendants essentially take the position that it should be limited to issues related primarily to Kuefler's transaction with Fandango and subsequent "enrollment" in Webloyalty's scheme.

However, as discussed more fully below, Kuefler believes that he needs much more substantial discovery to address the Motion and the myriad of issues that flow from it. The reasons behind the need for all of the discovery identified on the Discovery List are set forth below and in the Declaration of David J. George, Kuefler's co-counsel (the "George Declaration") which is attached hereto as Exhibit B.[2]

## II. ARGUMENT

It is fundamental that trial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery. See Carmona v. Toledo, 215 F.3d 124, 132-33, 135-36 (1st Cir. 2000); Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29-30 (1st Cir. 1996). It follows that when a party moves for summary judgment, the opposing party must be afforded a fair chance to obtain and synthesize available

---

[2] For the sake of complete candor to the Court, correspondence from Defendants' counsel containing a line-item response to the Discovery List is attached as Exhibit "C." (Defendants' Line-Item Response").

5

information before being required to file an opposition. <u>Velez v. Awnings Windows, Inc.</u>, 375 F.3d 35, 39 (1st Cir. 2004).

Rule 56(f) describes the means by which a party may obtain such discovery, when confronted by a summary judgment motion, but can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition. See <u>Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 988 (1st Cir. 1988). In this case, which has only recently been filed and in which <u>no</u> discovery has occurred, the protections of Rule 56(f) are essential and appropriate.

Rule 56(f) provides in relevant part that should it appear from the affidavits of a party opposing a motion for summary judgment that the party cannot present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Fed. R.Civ.P. 56(f). The rule is intended to safeguard against judges swinging the summary judgment axe too hastily. See <u>Price v. General Motors Corp.</u>, 931 F.2d 162, 164 (1st Cir. 1991). In this instance, Defendants would have that axe fall before the ink on the Complaint has dried.

When additional (in this case, initial) discovery is sought through a Rule 56(f) motion, the motion must (1) be presented in a timely manner; (2) show good cause for the failure to discover the necessary facts sooner; (3) set forth a plausible basis for believing that the necessary facts probably exist and can be learned in a reasonable time; and (4) establish that the sought facts, if found, will influence the outcome of the pending motion for summary judgment. <u>Adorno v. Crowley Towing & Transp. Co.</u>, 443 F.3d 122, 127 (1st Cir. 2006). In the present situation,

6

Kuefler satisfies all of these requirements.

First, the Defendants filed their Motion for Summary Judgment on November 13, 2006; a little more than two weeks before filing this Rule 56(f) motion. Indeed, but for the Thanksgiving holiday, this motion would have been filed even sooner. In addition, prior to the time the Motion was filed by the Defendants, David George discussed with Defendants' counsel that this Rule 56(f) motion would be filed in response. (George Declaration at ¶2). Thus, there can be no legitimate argument by the Defendants that Kuefler has not presented this motion in a timely manner.

Second, since the present case is in such an early stage of the litigation, Kuefler has not had any time to conduct any discovery whatsoever to be able to effectively oppose the Defendants' Motion. For all these reasons, plus the fact that the parties have not even had a Rule 16.1 Scheduling Conference to establish a discovery time line, there is certainly good cause for Kuefler's inability to discover necessary facts to oppose the Motion. (George Declaration at ¶3). Unquestionably, Rule 56(f) applies to this specific situation.

Finally, because the case raises complex issues of fact and law, Kuefler requests comprehensive discovery and has attached a list of requested witnesses to depose and documents to be produced both from the Defendants and various third parties. Kuefler urges that all of the requested discovery is relevant to the facts and issues raised in the Motion and in the case, and without this Court's authority to proceed with this discovery he will be unable to adduce facts essential to filing his opposition. See Velez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004). To be sure, Kuefler and his counsel will be severely prejudiced without discovery. (See George Declaration at ¶ 8).

A.  **Kuefler Needs to Depose Various Witnesses and Obtain Substantial Documents**

Kuefler seeks to depose a number of Webloyalty and Fandango officers and personnel, including the founding partners of Webloyalty, Richard Fernandes and Vincent D'Agostino, Tamara Lichtman, Vice President of Marketing at Webloyalty and Shane O'Neill, Technology Officer at Fandango, both of whom made declarations in support of the Defendants' Motion, and various Rule 30(b)(6) deponents who would be most knowledgeable about Webloyalty's web retailer business agreements, its computer integration systems, customer complaints, membership cancellations, knowledge by consumers of membership enrollment and related issues. Kuefler also seeks to take various third-party depositions that, on information and belief, will result in substantial evidence in opposition to the Motion, particularly that the purported "disclosures" are useless and legally insufficient to create "consent" to Defendants' scheme. (George Declaration at ¶5). Kuefler's counsel believes that the factual information that could be obtained from all of the individuals identified in his list is specifically relevant to the issues raised in the Motion, especially concerning Webloyalty and Fandango's computer systems, its claimed disclosures, and its policies and procedures regarding customer complaints and its knowledge that consumers are being duped into "memberships" in their programs. (George Declaration at ¶6). The discoverable facts that could be obtained from these witnesses would undoubtedly raise trial worthy issues.[3] Fennell v. First Step Designs, Ltd., 83 F.3d 526, 531 (1st Cir. 1996) (internal quotations and citations omitted).

---

[3] It has been recognized by the First Circuit that one of the other factors that counsel must demonstrate to enjoy the benefits of a Rule 56(f) order is good cause for failing to conduct the requested discovery. See Fennell, 83 F.3d at 531. Indeed, given that the Motion was filed so early in this case (well before any discovery had taken place), there would seem to be no need for Kuefler to demonstrate good cause for failing to have conducted the requested discovery.

Likewise, the documents requested are aimed at procuring relevant information that is necessary to opposing the Defendants' Motion, but also which is needed to fully prosecute this case. Simply by comparing the factual assertions in the Complaint with the computer screens and disclosures the Defendants claim that Kuefler and anyone being enrolled in the Reservation Rewards program saw, the Court can see that there is a vast discrepancy in the facts at this early stage in the litigation. Thus, the document requests are aimed at obtaining facts that tend to refute the Defendants' claims, and also that will show that the sheer number of complaints Webloyalty received from "enrollees" belies the claim that consumers were fully aware that they were being enrolled in the Reservation Rewards club. See e.g., F.T.C. v. Cyberspace.Com, LLC. 453 F.3d 1196, 1201 (9th Cir. 2006) (concluding that evidence indicating that less than 1% of 225,000 consumers ever used an internet service they allegedly accepted by cashing or depositing a solicitation check tended to show that a solicitation was deceptive).

Finally, because the parties have not even made their initial document disclosures, Kuefler has been unable to obtain any documentary evidence to effectively oppose the Defendants' Motion. Kuefler's counsel believes that documents obtained from the parties and third-parties will directly, effectively and substantially contradict Defendants' positions. (George Declaration at ¶7).

**B.     Kuefler Needs to Take Third-Party Depositions and Obtain Third-Party Documents**

Kuefler also seeks depositions and documentary evidence from third parties which include the Connecticut Better Business Bureau, the four major national credit card companies and websites that track and serve as a forum for information regarding Defendants' scheme. The

9

information that Kuefler anticipates to receive from these entities is directly relevant to the disclosure claims raised by the Defendants in their Motion.

Specifically, in their Motion, the Defendants argue that Kuefler, and presumably the thousands of other consumers whom he seeks to represent, affirmatively enrolled in Webloyalty's Reservation Rewards program after seeing a series of extensive and complete disclosures of the terms of the membership and the charges that would be made against his credit card account. Yet, Kuefler expects that the evidence that will be obtained from these various third parties will show that literally thousands of consumers have complained about Webloyalty's practices to their credit card companies and to the Better Business Bureau that they never agreed to be enrolled in Webloyalty's Reservation Rewards club, never mind take advantage of the so-called benefits of the membership. In other words, the anticipated evidence will show that neither Kuefler, nor his fellow class members, were provided with <u>sufficient</u> disclosures to know they were being enrolled in anything, let alone to consent to it. Evidence concerning the sufficiency of a solicitation goes directly to the issue of whether the solicitation provides consumers with enough material information that would affect their choice of, or conduct regarding a product. <u>F.T.C. v. Cyberspace.Com, LLC.</u> 453 F.3d at 1201 (quoting <u>Cliffdale Assocs., Inc</u>, 103 F.T.C. 110, 165 (1984)). All of this discoverable information would shine a glaring spotlight on the material factual issues that exist, and would be a powerful opposition to the Motion. Kuefler believes that this evidence would be important to the Court in deciding the Motion. (George Declaration at ¶5).

### III.     CONCLUSION

Kuefler is entitled to substantial discovery in this action prior to responding to the

Defendants' Motion. Because the case is so new, Kuefler has "been afforded no opportunity for discovery" to be able to effectively oppose the Motion. For these reasons, Kuefler seeks an Order to conduct the discovery requested herein. Kuefler also requests an extension of time to file an opposition to the Motion and respectfully requests thirty (30) days from the completion of discovery as ordered by the Court within which to file his opposition. Should the Court deny this Rule 56(f) motion, then Kuefler respectfully requests thirty (30) days from such denial within which to file his opposition to the Motion.

### IV.    CERTIFICATION BY COUNSEL - LR D.Mass. 7.1(2)

The undersigned counsel hereby certifies to the Court that prior to filing this motion counsel for the parties conferred and attempted in good faith to resolve or narrow the issues raised in this motion. (See George Declaration at ¶9).

Respectfully submitted,
On behalf of the Plaintiff and the Class,

PHILLIPS & GARCIA, P.C.
Carlin J. Phillips
Andrew J. Garcia

_____
Andrew J. Garcia
13 Ventura Drive
North Dartmouth, MA  02747
Telephone: (508) 998-0800
(508) 998-0919 (facsimile)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
David J. George
Stuart A. Davidson
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  561/750-3000
(561) 750-3364 (facsimile)

11

LEE & AMTZIS, P.L.
Eric A. Lee
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: 561/ 981-9988
(561) 981-9980 (facsimile)

**Attorneys for Plaintiff and the Class**

## CERTIFICATE OF SERVICE

I, Andrew J. Garcia, co-counsel for the Plaintiff, hereby certify that a true copy of the foregoing document, including all exhibits, was served by regular mail, postage pre-paid upon all counsel of record for the parties on this 1st day of December, 2006.

_____
Andrew J. Garcia
PHILLIPS & GARCIA, P.C.