# EXHIBIT A

## to Rule 56(f) Motion

## "Discovery List"

Dockets.Justia.

## LIST OF DISCOVERY FOR RULE 56(f) MOTION

I. **WITNESSES**

    A. **Webloyalty Witnesses Plaintiff Seeks to Depose**

| Name | Position |
|---|---|
| Richard Fernandes | CEO & Founding Partner |
| Vincent D'Agostino | President & Founding Partner |
| Shane Spitzer | Senior Vice President, Strategic Alliances |
| Jeffrey Kendall | Senior Vice President, IT and Operations |
| Gary Cacace | Chief Technology Officer |
| Martin Isaac | Senior Vice President, Marketing |
| Eli Chalfin | Senior Vice President, Account Management |
| David Lynch | Senior Vice President, Corporate Dev. & Corporate Marketing |
| Matt Gilbert | Senior Vice President, Business Development |
| Gina Carey | Vice President, Finance |
| Tamara Lichtman | Vice President Marketing and Declarant in support of Motion for Summary Judgment |
| Rule 30(b)(6) | Person with the most knowledge of Webloyalty's agreements, negotiations and business relationships with Fandango |
| Rule 30(b)(6) | Person with the most knowledge of the integration of software or other programming between Webloyalty and Fandango |
| Rule 30(b)(6) | Person with the most knowledge of the methods used by Webloyalty to obtain credit card, debit card, or other personal information of users of Fandango.com |
| Rule 30(b)(6) | Person with the most knowledge of complaints made by consumers to Webloyalty, including refunds made to consumers and cancellations by consumers of their enrollment in any of Webloyalty's programs, including Reservation Rewards |
| Rule 30(b)(6) | Person with the most knowledge of how Webloyalty stores the personal information of consumers, including credit card and debit card information. |
| Rule 30(b)(6) | Person with the most knowledge of the design principles behind the look and feel of the Reservations Rewards signup process. |
| Rule 30(b)(6) | Person with the most knowledge of the fair market value of the discounts, coupons and other benefits offered within the Reservation Rewards umbrella of benefits that are actually utilized (i.e. paid to or on behalf of) by consumers. |

1

| | |
|---|---|
| Rule 30(b)(6) | Person with the most knowledge of any training by Webloyalty of its consumer web retailer customers/partners regarding how to: (1) transfer data to Webloyalty; (2) integrate code on the consumer retailer customers/partners' retail websites; and (3) provide notice to consumers of potential interaction with Webloyalty in site privacy policies or similar agreements. |
| Rule 30(b)(6) | Person with the most knowledge of any revisions to the signup agreements (between consumers and Webloyalty), including the dates of use of each version of any such signup agreement. |
| Rule 30(b)(6) | Person with the most knowledge of any studies, analyses, reports or the like concerning, discussing or evidencing customer retention rates. |
| Rule 30(b)(6) | Person with the most knowledge of any studies, analyses, reports or the like concerning, discussing or evidencing signup rates with and without audio prompting, with different variations of wording and/or with different variations of the look and feel of the websites. |
| Rule 30(b)(6) | Person with the most knowledge of compliance with Payment Card Industry Data Security Standards and audit findings (whether such audits were conducted by third-parties or internally). |
| Rule 30(b)(6) | Person with the most knowledge of the design and design documentation of Webloyalty's data collection systems, both from consumers and retailers, including but not limited to specifications, use cases, feature solicitations, high-level design, detailed level design and implementation notes. |
| | Chief privacy officer, if any, employed by Webloyalty. |
| | International Association of Privacy Professionals (IAPP) members, if any, employed by Webloyalty. |
| | Chief security officer, if any, employed by Webloyalty. |
| Rule 30(b)(6) | Person with the most knowledge of the security policy creation and enforcement by Webloyalty. |
| Rule 30(b)(6) | Person with the most knowledge of any copyrights with respect to the "signup" text used by Webloyalty. |

B. **Fandango Witnesses Plaintiff Seeks to Depose**

| Name | Position |
|---|---|
| Chuck Davis | Chairman and Chief Executive Officer |
| Rick Butler | Senior Vice President and Chief Information Officer |
| Christopher Cunningham | Vice President, Business Development |
| Rajesh Duggal | Vice President, Finance/Controller |
| Bethany Ellis | Vice President, Human Resources |
| Ted Hong | Vice President, Marketing |
| Dan Mohler | Vice President, Sales |
| Shane O'Neill | Chief Technology Officer and Declarant in support of Motion for Summary Judgment |
| Robert Peralta | Vice President, Operations |
| Peter Phillips | Vice President, Product Development |
| Rule 30(b)(6) | Person with the most knowledge of Fandango's agreements, negotiations and business relationships with Webloyalty |
| Rule 30(b)(6) | Person with the most knowledge of the integration of software or other programming between Fandango and Webloyalty |
| Rule 30(b)(6) | Person with the most knowledge of the methods used by Webloyalty to obtain credit card, debit card, or other personal information of users of Fandango.com |
| Rule 30(b)(6) | Person with the most knowledge of complaints made by consumers to Fandango concerning Webloyalty |
| Rule 30(b)(6) | Person with the most knowledge of how Fandango stores the personal information of consumers, including credit card and debit card information. |
| Rule 30(b)(6) | Person with the most knowledge of any studies, analyses, reports or the like concerning, discussing or evidencing customer retention rates. |
| Rule 30(b)(6) | Person with the most knowledge of any studies, analyses, reports or the like concerning, discussing or evidencing signup rates with and without audio prompting, with different variations of wording and/or with different variations of the look and feel of the websites. |
| Rule 30(b)(6) | Person with the most knowledge of compliance with Payment Card Industry Data Security Standards and audit findings (whether such audits were conducted by third-parties or internally). |

3

|   |   |
|---|---|
|   | Chief privacy officer, if any, employed by Fandango. |
|   | International Association of Privacy Professionals (IAPP) members, if any, employed by Fandango. |
|   | Chief security officer, if any, employed by Fandango. |
| Rule 30(b)(6) | Person with the most knowledge of the security policy creation and enforcement by Fandango. |
| Rule 30(b)(6) | Person with the most knowledge of any copyrights with respect to the "signup" text used by Fandango. |

### C. Third Party Witnesses Plaintiff Seeks to Depose

(a) Representative of The Sutherland Group or Sutherland Global Services

(b) Connecticut Better Business Bureau

(c) Rule 30(b)(6) - Visa U.S.A., Inc. – Person with the most knowledge concerning consumer complaints policies and procedures, and concerning consumer complaints about Webloyalty and/or Fandango.

(d) Rule 30(b)(6) – Mastercard, Inc. - Person with the most knowledge concerning consumer complaints policies and procedures, and concerning consumer complaints about Webloyalty and/or Fandango.

(e) Rule 30(b)(6) - Discover Financial Services (Discover Card) - Person with the most knowledge concerning consumer complaints policies and procedures, and concerning consumer complaints about Webloyalty and/or Fandango.

(f) Rule 30(b)(6) – American Express - Person with the most knowledge concerning consumer complaints policies and procedures, and concerning consumer complaints about Webloyalty and/or Fandango.

(g) Rule 30(b)(6) - www.ripoffreport.com - Person with the most knowledge concerning consumer complaints about Webloyalty's and/or Fandango's business practices.

(h) Rule 30(b)(6) - www.investorial.com - Person with the most knowledge concerning consumer complaints about Webloyalty's and/or Fandango's business practices.

(i) Rule 30(b)(6) - www.complaints.com - Person with the most knowledge concerning consumer complaints about Webloyalty's and/or Fandango's business practices.

(j) Rule 30(b)(6) - www.consumerwebwatch.com - Person with the most knowledge concerning consumer complaints about Webloyalty's and/or Fandango's business practices.

(k) Rule 30(b)(6) – www.adam.rosi-kessel.org/weblog/the_man/webloyalty_aka_wli_reservations_is_a_scam.html - Person with the most knowledge concerning consumer complaints about Webloyalty's and/or Fandango's business practices.

(l) Rule 30(b)(6) – Any outside vendors/designers/site engineers responsible for the development and implementation of the Reservation Rewards signup process.

(m) Rule 30(b)(6) – Person with the most knowledge of the creation of any studies, analyses, reports or the like concerning, discussing or evidencing customer retention rates.

(n) Rule 30(b)(6) – Person with the most knowledge of the creation of any studies, analyses, reports or the like concerning, discussing or evidencing signup rates with and without audio prompting, with different variations of wording and/or with different variations of the look and feel of the websites.

(o) Rule 30(b)(6) – Person with the most knowledge of the undertaking of any audits of any defendant with respect to that defendant's compliance with Payment Card Industry Data Security Standards.

## II. DOCUMENTS

### A. Documents from Defendants Sought By Plaintiff

1. All documents concerning plaintiff Joe Kuefler, including, but not limited to, screen shots showing the exact computer screens shown to plaintiff when he purportedly signed up for Webloyalty's reservation rewards program, as well as the entire content of plaintiff's member profile at Webloyalty.

2. Documents which show the number of times that Kuefler used or accessed Reservation Rewards, including but not limited to the number of times that he logged on to the Reservations Rewards website, after he allegedly "signed-up" for the Reservations Rewards membership program.

3. All documents concerning contracts or agreements between Webloyalty and any web retailer (*i.e.*, Webloyalty's clients).

4. All documents concerning any communications between Webloyalty and Fandango concerning any membership in a Webloyalty program into which purchasers of Fandango products are enrolled.

5. All documents concerning any communications between Webloyalty and Fandango.

6. All documents concerning any communications between Webloyalty and any purchaser of any of Webloyalty's membership programs, including, but not limited to, any complaints received by Webloyalty or Fandango concerning such programs.

7. All documents concerning any complaints communicated to Webloyalty and Fandango concerning unsolicited or unauthorized charges to the credit or debit cards of purchasers of Webloyalty's membership programs.

8. Documents sufficient to show the number of complaints received concerning unsolicited or unauthorized charges to the credit or debit cards of purchasers of Webloyalty's membership programs.

9. All documents concerning any monies received by Webloyalty and Fandango for any membership fee charged to purchasers of Webloyalty's membership programs.

10. All documents concerning any monies refunded by Webloyalty to any purchaser of Webloyalty's membership programs.

11. All documents concerning the cancellation of any membership in any of Webloyalty's membership programs.

12. All documents concerning Webloyalty's procedures and policies for billing their customers' credit or debit cards.

13. All documents concerning Fandango's procedures and policies for billing their customers.

14. All documents concerning any training of Webloyalty's employees receive concerning the sales of Webloyalty's membership programs, including, but not limited to, any scripts or pre-approved language that are used during telephone or e-mail communications with consumers.

15. All transcripts and audio or video recordings of any communications between Webloyalty employees and consumer, including, but not limited to, all Quality Analyst tapes or recordings.

16. Documents sufficient to show the percentage of Webloyalty's customers who changed their e-mail address information following enrolling in one of Webloyalty's membership programs.

17. All scripts (including drafts) provided to Webloyalty employees for use in conversations with Webloyalty customers, including, but not limited to, scripts for use by Webloyalty employees for handling customer complaints.

18. Documents sufficient to identify all current and former employees of Webloyalty who worked in or supervised Webloyalty's Quality Assurance Department.

19. Documents sufficient to identify the Webloyalty employees responsible for the Enhansiv program.

20. All reports capable of being generated by the Enhansiv program.

21. All reports, spreadsheets or other compilation concerning customer complaints received by Webloyalty.

22. All "Action Sheets" for customers of Webloyalty who cancelled their membership and any documents concerning the "Action Sheets" produced.

23. All documents concerning Webloyalty being placed on "non-compliance" status by the Connecticut Better Business Bureau.

24. All documents concerning agreements between Webloyalty, Master Card, Visa, Discover Card and/or American Express.

25. All documents concerning agreements between Fandango, Master Card, Visa, Discover Card and/or American Express.

26. All documents concerning Webloyalty having exceeded the limit on the number of charge-backs allowed by MasterCard, Visa, Discover Card and/or American Express.

27. All documents concerning any disciplinary action taken by Webloyalty against any employee that address the issue of consumer complaints.

28. All grading reports or sheets for any Webloyalty employee that address consumer complaints.

29. All action plans or reports for any Webloyalty employee that address consumer complaints.

30. Any minutes, recordings (audio and video), or notes of any meeting (during which consumer complaints were discussed) in which any Webloyalty executive was present, including but not limited to, those meetings held once per week in Norwalk, CT.

31. Each insurance policy and each document concerning or relating to each insurance policy taken out by, or for the benefit of, Webloyalty and Fandango, which provides, or may provide, for coverage for any claims asserted by plaintiff, including

directors' and officers' liability and indemnity policies or comprehensive liability policies or reinsurance policies.

32. All documents concerning any policy, procedure or practice concerning the preservation or destruction of the documents (or types of documents) sought by these Requests.

33. All documents concerning any lawsuits, arbitrations or governmental investigations (including Better Business Bureau investigations) that have been initiated against Webloyalty and Fandango.

34. All documents concerning any settlements or other agreements Webloyalty and Fandango have entered to resolve lawsuits, arbitrations or other investigations pending against either defendant.

35. All documents concerning any disputes with retailers, merchants or service providers who are not providing customers with the alleged benefits of any of Webloyalty's membership programs.

36. All documents concerning correspondence from credit and/or debit card companies regarding unauthorized charges related to any Webloyalty membership program.

37. All documents concerning the percentage of customers who, after being enrolled in a Webloyalty membership, had zero activity in any year of membership.

38. All documents concerning the benefit usage rates for each of Webloyalty's membership programs (this should include a breakdown by each Webloyalty membership program), including, but not limited to, documents from Webloyalty's Rebate Department.

39. Documents sufficient to identify the names and current addresses of all Webloyalty employees who worked in or Supervised Webloyalty's Quality Assurance and Rebate Departments.

40. Copies of any and all correspondence and reports issued by Webloyalty to consumer protection agencies and attorneys general reflecting the percentage of memberships marketed by Webloyalty to consumers after the effective date of any order, agreement or assurance of voluntary compliance entered into with any state in which Webloyalty does business.

41. Any and all documents provided in response to subpoenas or requests for information issued by any and all attorney general investigations of Webloyalty.

42. Documents produced in any litigation concerning Webloyalty's Reservations Rewards or Shoppers Discount memberships or programs.

43. Documents produced by Webloyalty in any governmental investigation concerning any Webloyalty membership.

44. Documents concerning any Webloyalty memberships for which Webloyalty employees read scripts to consumers nationwide.

45. Forms of any membership kits mailed to persons residing in any state in the United States concerning any Webloyalty memberships.

46. Documents concerning revenue Webloyalty and Fandango received concerning the business relationship between Webloyalty and Fandango.

47. Documents concerning any monies Webloyalty and Fandango refunded to any person for any Webloyalty membership.

48. Complete and final monthly detailed general ledgers containing revenue accounts for Webloyalty's Reservation Rewards and Shopper's Discount programs.

49. Bank statements concerning disbursements by Webloyalty to Fandango.

50. Reports, analyses and spreadsheets concerning revenue derived from the business relationship between Webloyalty and Fandango.

51. State and Federal income tax returns for Webloyalty.

52. Documents concerning communications with Webloyalty's and Fandango's auditors reflecting revenues concerning the marketing and sale of Webloyalty's membership programs.

53. Documents concerning communications with Webloyalty's auditors reflecting revenues received nationwide.

54. Documents concerning any training Webloyalty's employees receive or received concerning the sale of Webloyalty's memberships.

55. Copies of all training videos shown to any Webloyalty employee.

56. All documents received by Webloyalty from any credit card or billing company concerning Webloyalty's billing practices.

57. Documents concerning any and all of the "money-saving discounts" offered by or through Webloyalty or one of Webloyalty's membership programs.

58. Documents concerning all of the "over 35,000 popular family restaurants" for which Webloyalty offers coupons through its membership programs.

59. Documents concerning all of the "over 17,000 top leisure attractions" for which Webloyalty offers coupons through its membership programs.

60. Documents showing the terms and conditions of all insurance benefits offered by Webloyalty through its membership programs, including, but not limited to, all coverage terms, exclusions and policy limits of all insurance policies.

61. Documents concerning communications between Fandango and Webloyalty in connection with complaints received by Fandango's customers concerning Webloyalty, including, but not limited to, spreadsheets and e-mails received by Webloyalty employees from Fandango.

62. Documents in connection with communications between web retailers and Webloyalty regarding complaints received by the web retailer's customers concerning Webloyalty, including, but not limited to, spreadsheets and e-mails received by Webloyalty employees from the web retailers.

63. All documents concerning any changes made to any advertisements and disclosures by Webloyalty to consumers making purchases from any of Webloyalty's clients, including, but not limited to, Fandango.

64. Documents sufficient to identify the total number of customers who signed up for Webloyalty's membership programs through Fandango.

65. Documents sufficient to identify the total number of customers who cancelled their Webloyalty membership before the first charge to their debit or credit card account.

66. Documents sufficient to identify the retention rates for Webloyalty's customers.

67. Documents sufficient to identify the total number of customers who cancelled their Webloyalty membership after the first charge to their debit or credit card account, but before the second charge to their debit or credit card account.

68. Documents which show the percentage of Reservation Rewards "members" who actually use or access Reservations Rewards, including but not limited to the number of times "members" log on to the Reservations Rewards website, after they allegedly "sign-up" for the Reservations Rewards service.

69. Documents that show that Defendants had knowledge of the fact that certain Reservation Rewards "members" did not know that they "signed-up" to be "members." This should include but not be limited to any reports, memoranda or the like that reflect the reasons given by consumers to Defendants' costumer service departments for "canceling" memberships and demanding refunds.

70. Documents reflecting the percentage of solicited consumers who understood the alleged "disclosures" that Defendants contend evidence their consent to "membership" in Reservations Rewards.

71. Documents sufficient to identify the employees of Webloyalty responsible for the following:

   (a) Customer service

   (b) Rebate Department

   (c)  Quality Assurance Department

   (d)  Internet website design

   (e)  Information Technology

  72. Marketing brochures, documentation, etc., from the process that led retailers into an agreement with Webloyalty.

  73. Instructions from Webloyalty to the retailer about how:

   (a)  To transfer data to Webloyalty

   (b)  To integrate code on to the retailers' site

   (c)  To provide notice to consumers of the potential interaction with Webloyalty in site privacy policies or similar agreements.

  74. Documents which show all revisions of the signup agreements (between consumer and Webloyalty) under which consumers joined Webloyalty, with dates of use.

  75. Documents which show all studies, analyses, etc., of customer retention rates.

  76. Documents which show all studies, analyses, etc., to show sign up rates with and without audio prompting, and with different variations of wording, etc.

  77. Documents which show Payment Card Industry Data Security Standard internal self-audit findings.

  78. Documents which show the design of Webloyalty data collection systems, both from consumers and retailers. (This includes specifications, use cases, feature solicitations, high-level design, detailed-level design, and implementation notes).

## B.  Documents From Third Parties Sought by Plaintiff

  1. CT Better Business Bureau – Complaints and investigations

  2. The Sutherland Group / Sutherland Global Services

  3. Visa U.S.A., Inc. – copies of documents concerning any consumer complaints regarding Webloyalty and/or Fandango.

  4. Mastercard, Inc. - copies of documents concerning any consumer complaints regarding Webloyalty and/or Fandango.

  5. Discover Financial Services (Discover Card) - copies of documents concerning any consumer complaints regarding Webloyalty and/or Fandango.

6. American Express - copies of documents concerning any consumer complaints regarding Webloyalty and/or Fandango.

7. Documents which show Payment Card Industry Data Security Standard external audit findings.

G:\sdavidson\Webloyalty\List of Discovery for 56(f).doc