UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE W. KUEFLER, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>vs.<br><br>WEBLOYALTY.COM, INC. and FANDANGO, INC. d/b/a FANDANGO.COM,<br><br>       Defendants. | No. 06 CA 11620 JLT<br><br>PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RULE 56(f) DISCOVERY |

Plaintiff Joe W. Kuefler, on behalf of himself and all others similarly situated, hereby files this reply memorandum in support of his Motion for Rule 56(f) Discovery, [Docket ("Dkt.") No. 24], and states:

## I. INTRODUCTION

The Court should ask itself, in the midst of defendants Webloyalty, Inc.'s ("Webloyalty") and Fandango, Inc.'s ("Fandango") motion for summary judgment and opposition to plaintiff's Rule 56(f) motion, [Dkt. No. 26], why defendants choose not to make the following very simple and clear disclosure to its potential customers:

> **CAUTION. BY ENTERING YOUR CREDIT CARD NUMBER, YOU ARE REGISTERING FOR WEBLOYALTY'S RESERVATION REWARDS MEMBERSHIP PROGRAM AND YOUR CREDIT CARD WILL BE CHARGED $10 PER MONTH FOR THIS SERVICE UNTIL YOU CANCEL YOUR MEMBERSHIP.**
>
> **ENTER CREDIT CARD NUMBER HERE: _____**
> **EXPIRATION DATE: _____.**

The answer is as obvious as nefarious – if customers had to re-type their credit card numbers, they would know that they were registering for a monthly, fee-based service and defendants would not be able to get rich by fooling people into signing-up for services they do not know about. Viewed in that light, defendants' opposition to plaintiff's Rule 56(f) motion is predictable and, indeed, necessary to keep up the farce that their' "disclosures" sufficiently inform consumers of anything.

This is a putative class action, not an individual case. There is no bifurcation order with respect to discovery. Most importantly, the conduct giving rise to plaintiff's claims also supports class-wide claims. Despite all of this, or perhaps in an attempt to strategically focus the Court elsewhere, it is suggested by defendants that only discovery pertaining to Kuefler, individually, should be permitted. The glaringly obvious flaw in this argument is that this consumer fraud case

not just about one man's solitary experience with defendants. Far from it. This case alleges a nationwide con perpetrated on thousands of America's consumers by Webloyalty with the assistance of its e-commerce clients, such as Fandango. Indeed, one need only type in the words "Webloyalty" and "scam" into the Google™ search engine to see that consumers are fed up with being ripped off by Webloyalty,[1] a company that, between 2001 and 2005, saw its revenues (*i.e.*, money from consumers) soar by an astonishing ***15,151%*** (no, this is not a typo).[2]

Now, having finally been brought to court by one of the thousands of Webloyalty's aggrieved "customers" to obtain some measure of justice,[3] defendants, by their opposition, seek to ensure that this Court hears nothing about, among other things, the slew of consumer complaints (many by people in tears) and requests for full refunds received by defendants – facts that numerous confidential witnesses have attested to and are quoted extensively in plaintiff's Complaint (which defendants completely ignore).[4] Among the other items of discovery defendants seek to prevent plaintiff from obtaining are documents and information showing how many of Webloyalty's "customers" have actually ***used*** its membership rewards programs after having $10 per month automatically deducted from their credit and debit card accounts by Webloyalty.

---

[1]     *See http://www.google.com/search?hl=en&q=Webloyalty+scam.*
[2]     *See* Press Release dated Oct. 13, 2006, Webloyalty Named Connecticut's Fastest Growing Technology Company for Second Consecutive Year in Deloitte's Technology Fast 50 Program, *available at http://www.webloyalty.com/about-customer-loyalty/news-events/press-release/fast50-2006*.
[3]     There are three other class action lawsuits pending against Webloyalty, which, along with this case, are now before the Judicial Panel on Multidistrict Litigation (the "MDL Panel"), in a case styled *In re Webloyalty.com, Inc. Marketing & Sales Practices Litig.,* No. MDL-1820. Although the MDL Panel has not yet ruled, all of the parties in the MDL proceeding have consented to the centralization of every action and any tag-along actions to this Court for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.
[4]     *See* Class Action Complaint ("Compl."), [Dkt. No. 1], ¶¶28-39.

Indeed, once Webloyalty unilaterally enrolls a consumer into one of its membership programs, it assigns a user name and password to that consumer, which the consumer then has the option of changing. Purchasers may also change their e-mail address. It is highly doubtful that more than a trivial number of Webloyalty's "customers" *ever* change this information (having had no idea they were even "members"), but defendants do not want this Court to ever hear about that either. The discovery sought by plaintiff, despite defendants' red-herring characterization of a "fishing expedition," are narrowly tailored to elicit highly relevant evidence.[5]

Here is more of what defendants do not want this Court to hear about in connection with their motion for final summary judgment, [Dkt. No. 16], which was filed before *any* discovery had taken place:[6]

- ➤ The revenues generated by Webloyalty and Fandango from membership fees charged to enrollees of Webloyalty's membership programs;

- ➤ The amount of money refunded by Webloyalty to enrollees of Webloyalty's membership programs;

- ➤ The cancellations of memberships in Webloyalty's membership programs;

- ➤ The training received by Webloyalty's employees concerning the sale of Webloyalty's membership programs, including, but not limited to, scripts or pre-approved language that are used during telephone or e-mail communications with consumers;

- ➤ The known transcripts and audio or video recordings of communications between Webloyalty employees and consumers;

---

[5] Defendants try to focus the Court on the disparity between plaintiff's claim that he never knew he was being "enrolled" in a monthly, fee-generating service by pointing to lines of ext in their lengthy, epic ads and to e-mails they allegedly sent. This misses the point. Whatever defendants point to as their "disclosures," they are inadequate and legally insufficient to have informed plaintiff, the Class or the general public that they would be enrolled in Webloyalty's programs and that their credit cards would be charged. Plaintiff's discovery is designed to elicit evidence that will prove that this is the case.

[6] The purpose of Rule 56(f) is to prevent the "railroading" of the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

> ➢ The names of Webloyalty employees who worked in or supervised Webloyalty's Quality Assurance Department and handled consumer complaints on a daily basis;

> ➢ The placement of Webloyalty on "non-compliance" status by the Connecticut Better Business Bureau ("Connecticut BBB");[7]

> ➢ The number of "charge-backs" conducted by Webloyalty on consumers' MasterCard, Visa, Discover and American Express credit or debit cards;

> ➢ The disciplinary actions taken by Webloyalty against its employees for, among other things, failure to follow Webloyalty's pre-approved scripts for handling consumer complaints;

> ➢ The actual benefit usage rates for Webloyalty's membership programs (*i.e.*, how many members have actually used Webloyalty's programs); and

> ➢ The litigation and investigations involving Webloyalty's business practices.

Defendants also want to hide from the Court those individuals who are and have been employed by defendants and who have the most knowledge of the allegations in the Complaint. For example, defendants do not want plaintiff to take the depositions of those individuals with the most knowledge of the consumer complaints received by both companies concerning Webloyalty's business practices. Nor do defendants want plaintiff to take the depositions of those individuals who head up Webloyalty's marketing, accounting and human resources departments. And, defendants also do not want this Court to hear from consumer watchdog companies and credit card companies whose collective knowledge of Webloyalty's unconscionable business practices is surely quite

---

[7] For example, attached hereto as **Exhibit "A"** is the Connecticut BBB's *Reliability Report* for Webloyalty, a company based in Norwalk, Connecticut. According to this report, Webloyalty has received an incredible *714* (also not a typo) complaints in the last three years alone. Not surprisingly, "due to a pattern of complaints concerning deceptive marketing/selling practices and unauthorized charges to consumers' credit cards," Webloyalty has an "unsatisfactory record" at the Connecticut BBB.

extensive.[8] Defendants do not even want this Court to hear from a representative of Sutherland Global Services, Inc., Webloyalty's customer service consultant. To the defendants, none of the information that would be generated by this discovery has any place in this case. Instead, defendants ask the Court to limit discovery to plaintiff's individual transaction.[9]

In sum, this is a complex class action in which defendants' nationwide business practices and relationships with consumers will be heavily scrutinized, by both plaintiff and the Court. Defendants' attempts to unilaterally morph the nature of this case into one about plaintiff's single experience should not be accepted by the Court. In order to properly respond to defendants' summary judgment motion and demonstrate to the Court that the "disclosures" provided to plaintiff and other similarly situated consumers were ineffective to put consumers on notice that they were being unilaterally enrolled into an online membership club for $10.00 per month, discovery concerning Webloyalty's entire business model is critical,[10] and the discovery sought in plaintiffs' Rule 56(f) motion is narrowly tailored to accomplish just that. Accordingly, defendants' attempts to drastically limit the scope of plaintiff's discovery should be rejected, and plaintiff's Rule 56(f) motion granted in its entirety.

---

[8]   *See, e.g., http://www.ripoffreport.com; http://www.investorial.com; http://www.complaints.com; http://www.consumerwebwatch.com.*

[9]   Neither defendants nor plaintiff have asked this Court to bifurcate merits and class discovery in this matter. Regardless, even if discovery was bifurcated, the discovery sought in plaintiff's Rule 56(f) motion would still go directly to the heart of the merits of this case.

[10]   If the discovery sought by plaintiff results in voluminous responsive documents, the size of the universe of such documents will be driven by the scope and breadth of defendants' fraudulent marketing, not by the wording of the discovery requests.

**II. REPLY ARGUMENT**

The crux of defendants' response to plaintiff's Rule 56(f) motion is that "[p]laintiff is not entitled to anything more" than discovery concerning plaintiff's individual experience with defendants. (Defs' Opp. at 1-2) Because this contention is false, defendants' arguments should be rejected.

Defendants have moved for ***final*** summary judgment in this case, contending, in essence, that any reasonable consumer would understand that they were being enrolled into Webloyalty's membership program based on the "disclosures" provided to them on the internet. However, under Rule 56(c), defendants are entitled to summary judgment only if they can establish, by competent evidence, that "there is no genuine issue ***as to any material fact*** and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);[11] *see also DePoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir. 2005). However, defendants' summary judgment motion does not set the parameters of discovery in this case – the complaint does, and the complaint here alleges a nationwide scheme by defendants (allegations that are supported by numerous former Webloyalty employees). *See Celotex*, 477 U.S. at 326 ("The parties had conducted discovery, and no serious claim can be made that [Catrett] was in any sense 'railroaded' by a premature motion for summary judgment. Any potential problem with such premature motions can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make ***full*** discovery"). As the First Circuit held in *Resolution Trust Corp. v. North Bridge Assocs., Inc.*, 22 F.3d 1198, 1208 (1st Cir. 1994), "the facts that the [Rule 56(f)] movant seeks to discover must be foreseeably capable of

---

[11] Emphasis is added and citations are omitted unless otherwise noted.

breathing life into his claim or defense. . . . [T]he threshold of materiality at this stage of a case is necessarily low."[12]

Here, one of the many material fact questions at issue in this litigation – if not *the* material fact question – is the adequacy and sufficiency of the "disclosures" defendants purport to provide to the nation's consumers – not just plaintiff. Defendants would like the Court to look solely at the disclosures provided to one person, in a vacuum, in connection with his transaction to decide this critical issue. This would be inappropriate. If, as plaintiff is sure defendants would agree, the disclosures provided to plaintiff were the very same disclosures provided to all other Webloyalty "members," then it is beyond cavil that discovery concerning, *inter alia*, consumer complaints made to Webloyalty, it's e-commerce clients, the major credit card companies, and governmental agencies would be "irrelevant." (Defs' Opp. at 6)  This could also be said about the rate of cancellation and refund at Webloyalty and the rate of "use" of Webloyalty's membership programs.[13]

Indeed, it is defendants' position in this case that the disclosures provided to plaintiff were "extensive and complete," (Defs' Opp. at 8), "clear," (*id.* at 8, 10), and "unambiguous on their face," (*id.* at 10). Yet, this is not the picture painted by numerous former employees of Webloyalty, who have stated, among other things:

---

[12] Cases cited by defendants on page 7 of their opposition brief do not support their request to limit discovery solely to Plaintiff's one transaction. Those cases merely require a Rule 56(f) movant to show how the discovery requested would affect the outcome of the summary judgment motion. This standard is easily met here, where Defendant is moving for *final* summary judgment as to each one of plaintiff's claims, and the discovery sought by plaintiff concerns facts that are material to this litigation. Defendants' seek to end this case, as a matter of law, based upon their position that what they characterize as "disclosures" is dispositive. Plaintiff's discovery will prove that those alleged "disclosures," in whatever form, do not inform consumers that they are being enrolled in Webloyalty's $10 per month perpetual "service." As such, plaintiff's requested discovery will clearly affect the outcome of the summary judgment motion.

[13] Indeed, if the Court simply removes the phrase "as they pertain to Mr. Kuefler" from Defendants' list of discovery they have agreed to provide to Plaintiff, the discovery requested by Plaintiff would be the same for every member of the Class.

- ➢ The number of consumers who called Webloyalty regarding something other than to make a complaint about being unwittingly enrolled into a membership program was "few and far between;"

- ➢ Complaints received by Webloyalty from the Better Business Bureau were so rampant that the company had to designate people solely to handle the BBB complaints;

- ➢ Webloyalty customer service representatives were disciplined for not following company-mandated scripts verbatim to handle customer complaints;

- ➢ Quality Analysts at Webloyalty were put in charge of monitoring "script consistency," where they listened to audio recordings of customer service representative conversations with consumers to see how consistent those contacts were with company standards;

- ➢ Each customer service representative at Webloyalty answered approximately 50-70 calls daily, only 2 of which could be categorized as positive or neutral;

- ➢ There was tremendously high turnover among the customer service representatives at Webloyalty;

- ➢ The granting of full refunds to consumers when demanded was "very much a normal procedure" at Webloyalty;

- ➢ Nearly every incoming call received by a Webloyalty customer service representative was from people wanting to cancel their membership and people who were unaware that they were members or how they became enrolled in Webloyalty's programs;

- ➢ 99% of the people calling Webloyalty were calling to cancel their membership because they did not know they were going to be charged for something; and

- ➢ The volume of calls into Webloyalty's customer service department seeking cancellations was "so high," with representatives receiving "well over 100 calls a day" from customers seeking to cancel their Webloyalty membership;

*See* Compl., ¶¶29-39 (quoting and citing to former Webloyalty employees).

Defendants completely ignore these allegations in their Rule 56(f) opposition, and, in seeking to significantly limit discovery, ask this Court to ignore them as well. These allegations are plainly sufficient to place the issue of Webloyalty's entire business model at issue in this case. *See FTC v. Cyberspace.Com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (concluding that evidence indicating that less than 1% of 225,000 consumers ever used an internet service they allegedly accepted by

cashing or depositing a solicitation check tended to show that a solicitation was deceptive); *see also Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 531 (1st Cir. 1996) (entitlement to Rule 56(f) discovery on any "trial worthy issue").

## XI. CONCLUSION

For the foregoing reasons, and the reasons stated in plaintiff's Rule 56(f) motion, plaintiff respectfully requests that the Court grant the motion in its entirety, permitting plaintiff to take discovery on the matters outlined therein.

DATED:  January 8, 2007

PHILLIPS & GARCIA, P.C.
CARLIN J. PHILLIPS
ANDREW J. GARCIA


   / s /  Andrew J. Garcia
Andrew J. Garcia

13 Ventura Drive
North Dartmouth, MA 02747
Telephone: 508/998-0800
508/998-0919 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
PAUL J. GELLER
DAVID J. GEORGE
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  561/750-3000
561/750-3364 (fax)
LEE & AMTZIS, P.L.
ERIC A. LEE
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: 561/ 981-9988
561/981-9980 (fax)

Attorneys for Plaintiff and the Class

G:\WPDocs\Cases & Clients A-L\Kuefler, Joe v. Webloyalty.com\Pleadings\070108.REP 56(f) Motion Fandango - FINAL.doc