# EXHIBIT 5



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO • SAN FRANCISCO
LOS ANGELES • NEW YORK • BOCA RATON
WASHINGTON, DC • HOUSTON
PHILADELPHIA • SEATTLE

David J. George
Dgeorge@lerachlaw.com

February 1, 2007

VIA E-MAIL & U.S. MAIL

Gabrielle R. Wolohojian
WILMERHALE
60 State Street
Boston, MA 02109

Re: *In re Webloyalty Marketing & Sales Practices Litig.*

Dear Gabrielle:

On January 30, 2007, I called you to discuss the fact that we had mistakenly served a subpoena (the "Subpoena") on the Connecticut Better Business Bureau (the "BBB") and that we had also inadvertently failed to serve a copy of the Subpoena on your firm.

As I explained to you in that conversation, I called you as soon as I learned of the fact that we had failed to serve you. I went on to explain to you that we had received objections from counsel for the BBB and that, although the BBB had agreed to produce some documents, no documents had been produced. At the conclusion of our telephone conversation, I immediately sent you an e-mail confirming the substance of our conversation, providing you with copies of the Subpoena and the BBB's objections and confirming that we would not accept production of any documents until such time as you had had an opportunity to review everything and inform me of your position. A copy of my January 30, 2007 e-mail is attached as Exhibit "A."

I anticipated that you would either raise objections to the documents being sought in the Subpoena, ask us to abate enforcement of the Subpoena until the Court held a case management conference, or simply agree that we were entitled to the documents and request copies of them. In either case, although a mistake was made and I take responsibility for that mistake, there could be no prejudice to your clients.

Yesterday, I received an e-mail from you by which you requested that we "withdraw the [S]ubpoena as well as [our] Rule 56(f) motion." A copy of your e-mail is attached as Exhibit "B." Thus, it appears that your response to our error and our good faith effort to resolve it without prejudicing your clients in any way is to make an effort to exploit the mistake to gain an unfair advantage in the litigation. While I am sure that Webloyalty would love to prevent the evidence of its cannibalistic business practices from ever seeing the light of day, such a draconian "remedy" is

120 East Palmetto Park Road, Suite 500 • Boca Raton, Florida 33432-4809 • 561.750.3000 • Fax 561.750.3364 • www.lerachlaw.com

® 202  115



Gabrielle R. Wolohojian
February 1, 2007
Page 2

surely not justified and lacks any sound basis. Indeed, your e-mail fails to state the grounds for the relief you threaten to seek. I called you this morning to explore the basis of your demand, but am told that you are not available.

Given the fact that Webloyalty's entire business model is built on taking advantage of consumers, perhaps this blatant attempt to manipulate an innocent mistake to its advantage should not be so astonishing. However, given my heretofore high opinion of you and the professionalism that you have displayed in all of our dealings to this point, I was quite literally floored by the audacity of your demands. I trust that any Court would react with equal distain for such tactics.

So, let me make very clear what our position is regarding your demands. First, consider the subpoena withdrawn. We have informed counsel for the BBB of the situation and instructed them not to produce any documents whatsoever. A copy of the letter to counsel for the BBB is attached as Exhibit "C."

Second, we will not withdraw our Rule 56(f) motion. Your clients' have taken the position that the "disclosures" that they "provide" to consumers are sufficient to justify the unilateral imposition of recurring monthly fees to tens of thousands of unsuspecting consumers, reaping hundreds of millions of dollars in revenue. The Rule 56(f) motion was filed in order to allow us to undertake the discovery to respond to a premature summary judgment motion. We firmly believe that such class-wide discovery will result in overwhelming evidence to supplement what we have already learned in our pre-suit investigation – that Webloyalty's "customers" are being duped into "subscribing" for services that they do not want and are being charged without their knowledge and consent (<u>a circumstance that could be instantly cured if your clients simply required consumers to re-enter their credit or debit card numbers as a condition to being "enrolled"</u>). Such evidence will go to the very heart of your clients' motion for summary judgment.

As to your not so veiled threat to file some motion if we do not acquiesce to your ridiculous demands, go ahead and file whatever motion you see fit.

                                                        Very truly yours,

                                                        *David J. George*
                                                        David J. George

DJG/cd

cc:   Mark Tamblyn, Esq.
      Andrew Garcia, Esq.
      Stuart Davidson, Esq.