UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOE W. KUEFLER, Individually and on Behalf of All Others Similarly Situated | ) ) ) | No. 06-CA-11620-JLT |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | |
| WEBLOYALTY.COM, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |
| | ) | |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS</u>

Plaintiff Joe W. Kuefler ("Plaintiff" or "Mr. Kuefler") opposes Defendants' Motion for Sanctions filed with this Court on February 20, 2007 (the "Motion for Sanctions") [Docket Entry 31] because it grossly mischaracterizes the facts surrounding the erroneous issuance of a subpoena (and inadvertent failure to serve the subpoena on Defendants) (the "Subpoena") to the Connecticut Better Business Bureau (the "BBB") and, despite acknowledging the absence of any prejudice whatsoever to Defendants, seeks the draconian sanction of prohibiting Mr. Kuefler (and, by extension, the class of defrauded consumers he seeks to represent) from obtaining essential discovery that goes to the very heart of his claims.

## PRELIMINARY STATEMENT

Plaintiff's counsel acknowledges and makes no excuses for the errors by which the Subpoena was prematurely issued and not timely served on Defendants. Despite the myriad of sinister labels applied to these errors by the Defendants, as well as the attacks on the truthfulness and integrity of Plaintiff's counsel, David George ("Mr. George"), the reality is that they were innocent mistakes that have already been rectified, without any prejudice whatsoever to Defendants.

Despite Defendants' obvious attempt to poison this Court's view of Plaintiff, Plaintiff's counsel and the merits of this case, the undeniable fact remains that, as soon as Mr. George realized the problems with the circumstances surrounding the Subpoena, he immediately called Gabrielle Wolohojian, counsel for Defendants ("Ms. Wolohojian"), informed her of and admitted to the errors, and made every effort to resolve them. As a result, not a single document was produced by the BBB pursuant to the Subpoena.

Had Plaintiff's counsel, as the Defendants would apparently have the Court believe, actually been conducting a malicious covert discovery operation, it would have been successful had he simply remained silent and obtained from the BBB the six hundred seventy seven (677) paper complaints and two hundred twenty nine (229) electronic complaints that have been filed by defrauded consumers who have been ripped-off in the same manner as Plaintiff. Contrary to the mischaracterization they now attempt to proliferate, Defendants did not "discover this course of conduct" purportedly undertaken by Plaintiff's counsel. Instead, Plaintiff's counsel fully disclosed the circumstances regarding the Subpoena and took the reasonable and necessary steps to correct them.

The true motivation behind the filing of this Motion for Sanctions is not to remedy any prejudice caused by the issuance of the Subpoena because no such prejudice exist.  Rather, Defendants' motivation is to exploit an innocent set of circumstances that has already been voluntarily remedied in order to make additional arguments with respect to Plaintiff's pending Rule 56(f) motion (the "Rule 56(f) Motion") [Docket Entry 24], to attribute "admissions" to Plaintiff regarding Defendants' ongoing fraudulent conduct, and to convince the Court to accept Defendants' factually untenable and legally insupportable position that this case is not a class action.

After all, no discovery was necessary to access the BBB's website (www.connecticut.bbb.org) and learn that Webloyalty "has an unsatisfactory record with the Bureau due to a pattern of complaints concerning deceptive marketing/selling practices and unauthorized charges to consumer's credit cards" and that there have been hundreds upon hundreds of consumer complaints lodged against Webloyalty in the state of Connecticut alone. These *publicly available* facts therefore cast a bright spotlight on the true purpose for Defendants' filing of this Motion for Sanctions, despite disguising their ulterior motives in a cloak of righteous indignation.

While Plaintiff's counsel takes full responsibility for the premature issuance of the Subpoena and assures the Court that such circumstances will not be repeated, he respectfully submits that the Court should reject Defendants' attempt to use the circumstances to effectively deprive Mr. Kuefler of obtaining the discovery that will prove that Webloyalty's entire business model is designed to and in practice does mislead and take advantage of consumers.

It is obvious why Defendants are so desperate to have this Court focus solely on the individual transactions undertaken by Mr. Kuefler rather than on its class-wide conduct, and to

prohibit discovery beyond Mr. Kuefler's individual transaction. There is every reason to believe that such class-wide discovery will result in overwhelming evidence to supplement what was already learned during Plaintiff's pre-suit investigation – that Webloyalty's "customers" are being duped into "subscribing" for services that they do not want and are being charged without their knowledge and consent *(a circumstance that could be instantly cured if Defendants simply required consumers to re-enter their credit or debit card numbers as a condition to being "enrolled")*.

FACTS

**I.    This Case Is In Its Infancy, Defendants' Summary Judgment Motion Was Premature And The Rule 56(f) Motion Should Be Granted.**

Plaintiff's Complaint was filed on September 11, 2006 [Docket Entry 1] on behalf of himself and a class of similarly situated consumers (the "Class") in order to combat Defendants' scheme involving the fraudulent and deceptive sale of Defendant Webloyalty.com, Inc.'s ("Webloyalty") "Reservation Rewards" discount membership programs to unwitting consumers who make legitimate online purchases from various web retailers, including Defendant Fandango, Inc., d/b/a Fandango.com ("Fandango"), and the unauthorized transfer of private credit and debit card information by the web retailer to Webloyalty. (Complaint ¶1).

On November 13, 2006, Defendants filed their Answer [Docket Entry 13], together with a Motion for Summary Judgment (the "Motion for Summary Judgment") [Docket Entry 16], a strategy designed to induce the Court to ignore that this is a class action and essentially determine the merits of Plaintiff's substantive claims without ever addressing the fact that Defendants are taking advantage of a broad, nationwide class of consumers who are in the virtually identical position as Mr. Kuefler. The Motion for Summary Judgment invites the Court

to examine solely the "screen shots" and e-mails[1] that Defendants contend Mr. Kuefler saw when he made a purchase at Fandango's website and was unwittingly enrolled in Webloyalty's Reservations Rewards program, essentially transforming this case from a class action into an individual claim, when in fact such arguments apply to every other member of the Class.[2]

Because the Motion for Summary Judgment was premature and no discovery has been taken in this case, Plaintiff filed the Rule 56(f) Motion. *See* Declaration of David J. George (the "George Declaration") at 21. The Rule 56(f) Motion demonstrates that, despite Defendants' wish that the Court ignore that this is a class action, their deceptive and predatory business practices are deployed on unsuspecting consumers on a class-wide basis, causing thousands of consumers to be unwittingly and unwillingly "enrolled" in Webloyalty's Reservation Rewards program. Thus, in order to put Mr. Kuefler's individual transaction in context, and demonstrate that all of the elements of a class action have been satisfied, the discovery sought in the Rule 56(f) Motion is both reasonable and appropriate.

Without repeating, line by line, the entire list of items sought in the Rule 56(f) Motion, the recitation of just a handful of the categories of discovery sought demonstrates this point:

- Eleven (11) depositions of Webloyalty insiders with direct knowledge of, among other things, the structure of Webloyalty's business model, the development and implementation of its deceptive Internet marketing scheme and the number of consumers duped as a result;

- Fifteen (15) categories of Rule 30(b)(6) deposition topics with respect to Webloyalty designed to elicit, among other things, evidence regarding Webloyalty's relationship with Fandango, the integration of their computer systems and processes by which they illegally obtain and charge consumers credit cards, the number of consumers who

---

[1]    Further, contrary to Defendants' assertion in the Motion for Sanctions, Mr. Kuefler disputes not only the "facts" surrounding what alleged "disclosures" were made to him before he was unknowingly "enrolled" in Webloyalty's Reservation Rewards program, but the legal sufficiency of any such information Defendants claim he was given.

[2]    In fact, taken to its logical extreme, Defendants view appears to be that class actions simply do not exist with respect to Internet based consumer fraud, which is clearly not the case.

actually utilize Webloyalty's "services," and Webloyalty's knowledge of the deceptive nature of its business model;

- Eleven (11) depositions of Fandango insiders with direct knowledge of, among other things, the structure of Fandango's business model, the history of its relationship with Webloyalty, the financial benefits obtained by Fandango as a result of its participation in Defendants' deceptive practices and the number and nature of complaints by consumers;

- Ten (10) categories of Rule 30(b)(6) deposition topics with respect to Fandango designed to elicit, among other things, evidence regarding Fandango's role in Defendants' deceptive trade practices, the integration of Fandango's computer systems with Webloyalty's computer system and the manner in which consumers' credit card information is illegally obtained and used and the methods by which consumers are duped;

- Fifteen (15) depositions of third party witnesses with direct knowledge of, among other things, the scope of Defendants' deceptive trade practices, the number of consumers' taken in by Defendants' scheme, the methods by which the deceptive trade practices are designed and implemented and the magnitude of damages incurred by consumers; and

- Eighty-five (85) categories of documents from Webloyalty, Fandango and various third parties (among them, the BBB) narrowly tailored and reasonably calculated to lead to the discovery of admissible evidence regarding both the claims raised by Mr. Kuefler on behalf of himself and the Class and the issues raised in the Motion for Summary Judgment.

Aside from the fact, as shown below, that Defendants have no legal support for their position that the Court should deny the Rule 56(f) Motion in its entirety because of the premature issuance of the Subpoena, from a factual standpoint, this request should be viewed as extraordinarily absurd in light of the fact that the information sought in the Subpoena is a miniscule fraction of the universe of discovery sought in the Rule 56(f) Motion. As the Court can readily see, the outrageousness of Defendants' position is magnified by the fact that they ask the Court to deny all discovery based upon the premature issuance of a single subpoena that resulted in the production of no documents whatsoever.[3]

---

[3]    Defendants make much of the fact that they have purportedly provided Plaintiff with documents that they say relate to Mr. Kuefler's individual transaction. Rather than being the magnanimous gesture Defendants would have the Court believe it is, this is a red-herring

In the Motion for Sanctions, the remainder of Section I of the "Facts" is, in reality, a thinly-disguised re-argument of Defendants' opposition to the Rule 56(f) Motion. While Defendants' recitation of the number of depositions, Rule 30(b)(6) deposition topics, categories of documents and third-party documents sought by Plaintiff is factually accurate, Defendants' characterization of those requests as a "burdensome fishing expedition in hopes of discovering some viable theory" smacks of Defendants' fear of what that discovery will undoubtedly show.

Far from a fishing expedition, the discovery sought by Plaintiff is reasonably calculated (and narrowly tailored) to lead to the discovery of admissible evidence with respect to the very essence of his claims and the claims of the Class, as well as the spurious arguments raised in Defendants' Motion for Summary Judgment. The point of this discovery, which apparently Defendants do not understand, is not to identify a "viable theory," as the Complaint already does that. Instead, it is to show, definitively and without question, that Defendants do not disclose, in a legally sufficient manner, to Plaintiff or any other consumer, that they are being "enrolled" in Webloyalty's Reservation Rewards program and are being charged monthly for that "service."

The scope and breadth of the discovery sought by Plaintiff is simply a result of the magnitude of Defendants' scheme to defraud consumers. Because of the sheer volume of defrauded consumers and the staggering amount of damages generated by Defendants' scheme, there are a wide variety of individuals and entities in possession of information that will defeat the Summary Judgment Motion and prove the claims brought by Mr. Kuefler on his own behalf and on behalf of the Class.

---

designed to further Defendants' strategy of ignoring that this is a class action and inviting the Court to do the same. While Plaintiff will not address the myriad of reasons why the documents provided by Defendants – if they ever were actually provided to Plaintiff during his transaction – are legally insufficient to have "disclosed" Defendants' scheme of deception, Plaintiff does dispute that they are sufficient to justify the prohibition of discovery or summary disposition sought by Defendants here.

## II.    The BBB Subpoena

On January 11, 2007, the Subpoena was served on the BBB.  Plaintiff's counsel acknowledges that the Subpoena was prematurely served and that it was not served on Defendants.  George Declaration at 12.[4]   Instead, Plaintiff's counsel reiterates that these were simple errors, and not an attempt to obtain discovery covertly or surreptitiously or to circumvent the authority of the Court.  George Declaration at 12.

Between January 11, 2007 and January 30, 2007, Mr. George was operating under the mistaken belief that Defendants' counsel had been served with the Subpoena and did not have any objections to the production of the documents being sought.  As a result, Plaintiff's counsel and counsel for the BBB had several discussions regarding the number of responsive documents in the possession of the BBB, as well as the means and timing of the production. George Declaration at 13.

On January 30, 2007, Plaintiff's counsel learned that the Subpoena had not been served on Defendants' counsel and realized that, in any event, the Subpoena had been issued prematurely. George Declaration at 14.  Accordingly, on that very same day, Mr. George called Ms. Wolohojian, explained that the Subpoena had been erroneously issued and inadvertently not served, and attempted to resolve these errors so that Defendants would not be prejudiced in any way.  George Declaration at 15.

To be clear, and contrary to the assertions in the Motion for Sanctions, Mr. George did not claim during the January 30, 2007 telephone conference with Ms. Wolohojian (or in the subsequent e-mail confirmation) that he did not know that the Subpoena had been issued.

---

[4]    While there is a litany of circumstances that aligned to allow the Subpoena to be issued prematurely, there is little point in dissecting them here.  Plaintiff's counsel will not make excuses or seek to lay blame.  George Declaration at 12.

Instead, Mr. George acknowledged the erroneous issuance of the Subpoena and explained that it was through internal miscommunication that the Subpoena had not been served on Defendants. George Declaration at 16.

Defendants now attempt to distort and manipulate the substance and context of the January 30, 2007 telephone conference and e-mail in order to attempt to convince the Court that Plaintiff's counsel was attempting to avoid rectifying the erroneous issuance of the Subpoena -- essentially, Defendants are calling Mr. George a liar ("[i]t was difficult, if not impossible, to reconcile the history of numerous contacts and continued efforts by Plaintiff's counsel to obtain documents from the BBB with Plaintiff's counsel's statements that service of the subpoena on the BBB was "indavertent" and "due to internal communications issues"). Motion for Sanctions at Pages 5-6; George Declaration at 17.

It was Mr. George's expectation, when he called Ms. Wolohojian on January 30, 2007, that she would understand and accept that the issuance of and failure to serve the Subpoena were innocent errors. George Declaration at 18. It was the further expectation of Mr. George that because the errors were disclosed to Ms. Wolohojian at the earliest possible opportunity, and remedied, and because not a single document was obtained pursuant to the Subpoena, that the issue would be closed. George Declaration at 18. Indeed, given the fact that no documents had been produced by the BBB, Mr. George believed that Ms. Wolohojian would either raise objections to the documents being sought in the Subpoena, ask to have the Subpoena abated until the Court held a case management conference, or simply agree that the documents would be produced by the BBB so long as copies were provided to Defendants. George Declaration at 18.

Obviously, Mr. George's reasonable expectations were misplaced. Defendants and Defendants' counsel have chosen to attempt to take advantage of the issuance of the Subpoena

and use it as leverage to coerce Plaintiff into withdrawing his Rule 56(f) Motion. This outrageous demand was first communicated to Plaintiff's counsel in an e-mail from Ms. Wolohojian dated January 31, 2007. George Declaration at 19 (attached to Declaration of Gabrielle R. Wolohojian dated February 20, 2007 (the "Wolohojian Declaration") as Exhibit 4). Mr. George was so taken back by this outlandish demand that he actually thought it was a joke and attempted to reach Ms. Wolohojian by telephone to see if that was the case. George Declaration at 20.[5]

Unable to reach Ms. Wolohojian by telephone, Mr. George wrote a letter to her, dated February 1, 2007, by which he agreed that, as requested in the January 31st e-mail, the Subpoena should be considered withdrawn. George Declaration at 21. As to the demand that the Rule 56(f) Motion be withdrawn, Plaintiff's counsel wrote:

> Second, we will not withdraw our Rule 56(f) motion. Your clients' have taken the position that the "disclosures" that they "provide" to consumers are sufficient to justify the unilateral imposition of recurring monthly fees to tens of thousands of unsuspecting consumers, reaping hundreds of millions of dollars in revenue. The Rule 56(f) motion was filed in order to allow us to undertake the discovery to respond to a premature summary judgment motion. We firmly believe that such class-wide discovery will result in overwhelming evidence to supplement what we have already learned in our pre-suit investigation – that Webloyalty's "customers" are being duped into "subscribing" for services that they do not want and are being charged without their knowledge and consent (*a circumstance that could be instantly cured if your clients simply required consumers to re-enter their credit or debit card numbers as a condition to being*

---

[5] On February 1, 2007, Mr. George instructed his colleague and co-counsel, Stuart Davidson ("Mr. Davidson") to send counsel for the BBB a letter advising as follows:

> ...[I]n light of an error by us, having prematurely served the subpoena on the [BBB], we are requesting that the BBB abate the production of any documents in response to the subpoena until further notice from us. We will either resolve any issues relating to the BBB subpoena with defense counsel now, or will address them with the Court at the appropriate time. In any event, we expect that we will be in a position to reach out to you within the next few weeks.

George Declaration at 24.

*"enrolled"*).  Such evidence will go to the very heart of your clients' motion for summary judgment.

As to your not so veiled threat to file some motion if we do not acquiesce to your ridiculous demands, go ahead and file whatever motion you see fit.

Wolohojian Declaration at Exhibit 5.[6]

On February 5, 2007, Ms. Wolohojian wrote to Mr. George and reiterated her demand that the Rule 56(f) Motion be withdrawn.  The gist of the February 5, 2007 letter was to call Mr. George a liar, to miscast Mr. George's disclosures of the circumstances surrounding the Subpoena as evidence of an intentional act, and to create a document that Defendants could later show to this Court in an attempt to justify this Motion for Sanctions and its request that the Court punish an innocent mistake by not allowing Plaintiff to take any discovery whatsoever. Wolohojian Declaration at Exhibit 6; George Declaration at 22.

In response, on February 6, 2007, Mr. George again wrote to Ms. Wolohojian and declined to acquiesce to the demand for withdrawal of the Rule 56(f) Motion.  In so doing, Mr. George reminded Ms. Wolohojian that the Subpoena had been withdrawn, that no documents had been produced by the BBB and that the only information that Plaintiff had obtained that originated from the BBB – Webloyalty's unsatisfactory business rating and the huge number of

---

[6]    Later that same day, after reviewing Ms. Wolohojian's letter, wherein she requests that Plaintiff's counsel formally withdraw the Subpoena, Mr. Davidson sent a second letter to counsel for the BBB, advising as follows:

> Further to our conversation this morning regarding the subpoena served on the [BBB] in the above-referenced action, and in light of our error and defendants' request that we withdraw the subpoena, please consider this letter as a formal withdrawal of the subpoena.  In the event we are permitted by the Court to re-issue and re-serve the subpoena at a later date, I will contact you or Rick Harris at the appropriate time to request that your firm accept service.

George Declaration at 25.

consumer complaints – had been obtained, without the necessity of a subpoena, from the BBB's

website. Wolohojian Declaration at Exhibit 7; George Declaration at 23.

Without further discussion, this Motion for Sanctions followed.

## ARGUMENT

I.    **The Issuance And Non-Service Of The Subpoena Were Innocent Errors**

Plaintiff's counsel has candidly and honestly admitted to this Court the errors that

resulted in the issuance of the Subpoena to the BBB and the failure to serve the Subpoena on

Defendants.    This is the same frankness with which Plaintiff's counsel disclosed the

circumstances surrounding the issuance of the Subpoena to Defendants' counsel and took all

reasonable steps to insure that no prejudice occurred.  The fact of the matter is that Defendants

have not been prejudiced in any way as a result of the Subpoena.

In the Motion for Sanctions, Defendants' entire "Facts" section as well as the majority of

its "Argument" section is devoted to distorting the innocent circumstances surrounding the

Subpoena into a nefarious and intentional abuse of our entire system of justice.  The laundry list

of painstakingly specific violations of the applicable rules of civil procedure does nothing to

transform innocent errors into atrocious acts – it simply grossly and unfairly attempts to magnify

the true consequence of those errors in hopes of agitating the Court into imposing sanctions that

are not justified in light of the lack of any prejudice whatsoever to the Defendants.

While the Subpoena was admittedly issued prematurely, Plaintiff's counsel takes great

umbrage with Defendants' characterization of him as a liar and schemer.  As soon as he learned

that a problem existed, Plaintiff's counsel attempted to resolve the problem in an expeditious and

ethical manner, disclosing the errors and offering to correct them in a reasonable and appropriate

way.

Defendants' and Ms. Wolohojian's attempt to gain a strategic advantage in this case by capitalizing on innocent errors, and, in the process, attempting to prevent Plaintiff from obtaining the discovery sought in the Rule 56(f) Motion is, at best, stretching the boundaries of good faith and, at worst, intellectually obscene. Plaintiff's counsel had no intention of or desire to circumvent the authority of the Court or undercut the Court's evaluation of the Rule 56(f) Motion. Indeed, if this were the intent of Plaintiff's counsel, he could have simply stood silent, at which point the BBB would have produced the nine hundred (900) or so consumer complaints that are responsive to the Subpoena. Plaintiff's counsel instead took responsibility for the circumstances surrounding the Subpoena and made sure that no documents were produced.

## II.    Neither The Denial Of Plaintiff's Rule 56(f) Motion Nor Any Other Sanction Is Appropriate or Warranted

Plaintiff does not dispute the Court's inherent power to sanction conduct that it deems to be egregious, abusive or prejudicial. However, for all Defendants' rhetoric, they do not cite to a single case which justifies the imposition of the sanctions being sought in this Motion for Sanctions.

In fact, Defendants concede that sanctions, if and when appropriate, may only be upheld where it is reasonably commensurate to the infraction. Motion for Sanctions at 11 (citing *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 47-48 (1st Cir. 2002)). Yet, Defendants do not and cannot articulate, let alone prove, that they have suffered an iota of prejudice as a result of the erroneous issuance and subsequent withdrawal of the Subpoena.

In the face of the indisputable fact that not one single sheet of paper has been produced by the BBB in response to the Subpoena, Defendants ask this Court to impose the severest possible sanction short of outright dismissal of Plaintiff's case on the basis of "phantom prejudice" that amounts to nothing at all – "...the ongoing harm done to this litigation, and to the

judicial process generally." Plaintiff's counsel does not take lightly his responsibility to maintain

the integrity of the judicial process, but the circumstances giving rise to the Motion for

Sanctions, simple errors that are being grossly distorted here, do not threaten the integrity of the

judicial process. In fact, the best evidence of Plaintiff's counsel's desire to protect that judicial

process is that he quickly and honestly took responsibility for the issuance of the Subpoena and

acted to prevent the production of any responsive documents.

Perhaps conceding that there is no legally cognizable prejudice to Defendants, the Motion

for Sanctions goes on to argue that no prejudice is required for the Court to impose sanctions.

Defendants then cite cases in which parties were sanctioned for intentional, unjustifiable and

egregious acts that are not even remotely similar to the circumstances here. The Court should

consider the severity of the conduct in those cases:

- Issuance of *ex parte* subpoenas in a civil case for purposes of discovery of evidence for use in a criminal trial where Court held that "there was no valid reason to resort to a pending civil case to discover evidence for the present criminal case." *See United States v. Santiago-Lugo*, 904 F. Supp. 43, 47 (D.P.R. 1995);

- *Pro se* plaintiff filed 75 actions in other courts to circumvent order issued in prior court attaching conditions to filing of additional documents. Under Rule 11, Court dismissed complaint with prejudice because 75 other actions were "frivolous," "vexatious," and made in "bad faith." *See Azubuko v. MBNA Am. Bank*, 396 F. Supp. 2d. 1, 6-7 (D. Mass. 2005);

- Sanctions imposed for "bad faith" where sanctioned party: (1) attempted to hide identities of potential witnesses; (2) installed a hidden camera and microphone in an attempt to record conversations of opposing counsel; (3) tampered with evidence prior to inspection; and (4) president of sanctioned party, during a deposition, assaulted videographer and threw hot coffee at opposing party. *See Pan Am. Grain Mfg. Co., Inc. v. P.R. Ports Auth.*, 295 F.3d 108, 117 (1st Cir. 2002); and

- Dismissal of case with prejudice where sanctioned party ignored Court-imposed deadline for production of documents. Court entered an additional order requiring sanctioned party to produce documents, which was also ignored. Court then entered an order requesting a proposed timeline for production of documents, which was also ignored. Eighty-one days after expiration of second deadline, Court ordered an order to show cause why case should not be dismissed. Sanctioned party gave no reason for disregard of Court's orders

other than general statement that counsel had been preoccupied with other matters. *See Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 47-48 (1st Cir. 2002).

If the Court contrasts the wrongful acts of the sanctioned parties in the cases relied upon by Defendants with the unintentional, innocent circumstances here, the temerity of Defendants' attempt to exploit the situation to gain an unfair advantage becomes clear. *See Davis v. U.S. Bancorp,* 383 F.3d 761, 765 (8th Cir. 2004) (district court did not abuse discretion by refusing to sanction a party for a discovery violation – failing to disclose a witness as a source of information in its initial disclosures under Rule 26(a)(1)(A) – where party's actions were harmless and opposing party suffered no unfair surprise).

No sanctions are warranted here.  Defendants attempt to bait the Court by suggesting that, even in the absence of any evidence of nefarious intent or resulting prejudice, the Court should nevertheless impose the sanction of prohibiting any of the discovery sought in the Rule 56(f) Motion, because to do otherwise would encourage Plaintiff's counsel to "push the envelope" in the future.  Plaintiff's counsel did not "push the envelope" here.  An error is not a journey into an ethical gray area, it is simply an error.

Further, Defendants' argument that the denial of the Rule 56(f) Motion, the prohibition of discovery and the determination of the Motion for Summary Judgment is a "reasonable and measured sanction" under the circumstances here is incredible in its audacity.

The Court should cut through Defendants' doomsday analysis and look at the reality of what happened.  Even had the BBB produced the hundreds and hundreds of complaints filed by defrauded consumers, those complaints (to which Plaintiff still believes he is entitled under applicable discovery standards) represent only a tiny fraction of the information sought in the Rule 56(f) Motion.  Defendants offer no credible factual argument, let alone legal support, as to

why the erroneous subpoena of a small sub-category of the discovery Plaintiff seeks justifies the blanket denial of his Rule 56(f) Motion.

The bottom line is that while Defendants fear, and would prefer, that the Court and the jury never see that multitude of consumer fraud complaints that have been filed with the BBB, that perhaps justified fear is no reason for the Court to give into Defendants' desire that those documents never see the light of day. No denial of legitimate discovery, however small, is justified here. Further, no award of attorneys' fees are justified, as all of the attorneys' fees incurred as a result of the filing of the Motion for Sanctions were manufactured because of Defendants' desire to exploit and take advantage of the situation and not a result of anything done by Plaintiff's counsel.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion for Sanctions in its entirety and for such other and further relief as the Court deems appropriate.


DATED: March 8, 2007                    **LERACH COUGHLIN STOIA GELLER
                                           RUDMAN & ROBBINS LLP**
                                        DAVID J. GEORGE
                                        STUART A. DAVIDSON
                                        MARISA N. DEMATO
                                        JAMES L. DAVIDSON


                                                    */s/ David J. George*
                                        DAVID J. GEORGE

                                        120 East Palmetto Park Road, Suite 500
                                        Boca Raton, FL  33432
                                        Telephone:  561/750-3000
                                        561/750-3364 (fax)

**PHILLIPS & GARCIA, P.C.**
CARLIN PHILLIPS
ANDREW J. GARCIA
13 Ventura Drive
Dartmouth, MA  02747
Telephone:  508/998-0800
508/998-0919 (fax)

**LEE & AMTZIS, P.L.**
ERIC A. LEE
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone:  561/ 981-9988
561/981-9980 (fax)

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ David J. George
David J. George

# Mailing Information for a Case 1:06-cv-11620-JLT

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stuart A. Davidson**
  sdavidson@lerachlaw.com e_file_fl@lerachlaw.com

- **Andrew J. Garcia**
  agarcia@phillipsgarcia.com dmedeiros@phillipsgarcia.com;info@phillipsgarcia.com

- **David J. George**
  dgeorge@lerachlaw.com e_file_fl@lerachlaw.com

- **Eric A. Lee**
  lee@leeamlaw.com zallen@leeamlaw.com;leeamlawecf@gmail.com

- **Joan S. Mitrou**
  Joan.Mitrou@wilmerhale.com

- **Carlin J Phillips**
  cphillips@phillipsgarcia.com dmedeiros@phillipsgarcia.com;info@phillipsgarcia.com

- **John J. Regan**
  john.regan@wilmerhale.com

- **Gabrielle R. Wolohojian**
  gabrielle.wolohojian@wilmerhale.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
C. Nichole Gifford
Rothwell, Figg, Ernst & Manbeck, P.C.
Suite 800
1425 K Street, N.W.
Washington, DC 20005

Michael L. Greenwald
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
Suite 500
120 E. Palmetto Park Road
Boca Raton, FL 33432

Steven Lieberman
Rothwell, Figg, Ernst & Manbeck
1425 K Street, N.W.
Suite 800
Washington, DC 20005

Anne M. Sterba
```

Rothwell, Figg, Ernst & Manbeck
1425 K Street, N.W.
Suite 800
Washington, DC 20005