UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE W. KUEFLER, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>WEBLOYALTY.COM, INC., et al.,<br><br>Defendants. | No. 06-CA-11620-JLT<br><br><u>CLASS ACTION</u> |

**<u>DECLARATION OF DAVID J. GEORGE</u>**

Pursuant to 28 U.S.C. § 1746, I, David J. George, hereby declare under penalty of perjury that the following declaration is true and correct:

1.  My name is David J. George.

2.  I am over twenty-one years of age, and am fully competent to make the statements contained in this Declaration.

3.  I am a Partner with the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") working out of our firm's Boca Raton, Florida office.

4.  I have practiced law for sixteen years and I am AV rated by Martindale-Hubbell.

5.      Lerach Coughlin is co-counsel for the plaintiff Joe W. Kuefler ("Mr. Kuefler") in the above-captioned class action, along with the Boca Raton, Florida law firm of Lee & Amtzis, P.L. ("Lee & Amtzis") and the North Dartmouth, Massachusetts law firm of Phillips & Garcia, LLP ("Phillips & Garcia").

6.      In addition to this case, we are co-counsel with Lee & Amtzis and Phillips & Garcia with respect to two other virtually identical class actions brought in the District of Massachusetts against Defendant Webloyalty.com, Inc. ("Webloyalty") and various of its retailer partners, including Justflowers.com and Priceline.com.

7.      There is a fourth virtually identical case which was brought against Webloyalty and an additional retailer partner, 123injets.com, which was originally brought in the Northern District of California by Wexler Toriseva Wallace LLP ("Wexler Toriseva") and its co-counsel, McCallum Hoaglund Cook & Irby LLP ("McCallum Hoaglund") and Green Welling LLP ("Green Welling").

8.      Recently, the Judicial Panel on Multidistrict Litigation issued an order transferring all of the Webloyalty cases to the District of Massachusetts. As a result of an agreement among counsel for plaintiffs in the various Webloyalty matters, it is our intention to petition this Court for appointment of Lerach Coughlin and Wexler Toriseva as co-lead counsel for plaintiffs in all of the Webloyalty cases, with Phillips & Garcia acting as local counsel.

9.      Although there are more than a dozen lawyers working on this case and the related Webloyalty cases, I had primary and supervisory responsibility for the prosecution of this case at all times relevant to the issues raised in Defendants' Motion for Sanctions filed with this Court on February 20, 2007 (the "Motion for Sanctions") [Dkt. No. 30], and take full responsibility for the circumstances which culminated in the premature service of a subpoena (the "Subpoena") on the Connecticut Better Business Bureau (the "BBB") as well as our failure to timely serve the Subpoena

on Defendants.

10. I submit this Declaration in opposition to the Motion for Sanctions. As explained herein and in our Opposition to Defendants' Motion for Sanctions (the "Opposition"), the Motion for Sanctions, in addition to all but calling me a liar, contains substantial distortions of the truth regarding the circumstances which resulted in the premature service of the Subpoena on the BBB and our failure to timely serve the Subpoena on Defendants.

11. To be clear, I will not attempt to justify the innocent errors which caused this situation. The Subpoena should not have been issued. However, I do submit that the fact that there has been no prejudice whatsoever to Defendants, because the Subpoena was withdrawn and not a single document was produced, is a very strong indication that the Motion for Sanctions and Defendants' audacious request for "relief" is driven not by a need to remedy any prejudice that they have suffered, but instead to exploit this situation in order to gain an unfair advantage in these proceedings.

12. On January 11, 2007, the Subpoena was served on the BBB. While there is a litany of circumstances that aligned to allow the Subpoena to be issued prematurely, there is little point in dissecting them here. Plaintiff's counsel will not make excuses or seek to lay blame. Instead, Plaintiff's counsel reiterates that the errors were just that, errors, and not an attempt to obtain discovery covertly or surreptitiously or to circumvent the authority of the Court.

13. While I do not recall the exact date upon which I learned that the Subpoena had been served, until January 30, 2007, I did not realize that the Subpoena should not have been served and I was under the mistaken belief that Defendants' counsel had been served with the Subpoena and did not have any objections to the production of the documents being sought. As a result, my colleague, Stuart Davidson ("Mr. Davidson") and counsel for the BBB had several discussions regarding the

number of responsive documents in the possession of the BBB, as well as the means and timing of the production. I was included in some but not all of those conversations.

14. On January 30, 2007, I realized not only that the Subpoena had not been served on Defendants' counsel but that, in any event, the Subpoena had been issued prematurely.

15. Accordingly, on that very same day, I called Defendants' counsel, Gabrielle Wolohojian ("Ms. Wolohojian"), explained that the Subpoena had been erroneously issued and inadvertently not served, and attempted to resolve these errors so that Defendants would not be prejudiced in any way.

16. To be clear, and contrary to the assertions in the Motion for Sanctions, I did not claim during the January 30, 2007 telephone conference with Ms. Wolohojian (or in the subsequent e-mail confirmation) that I did not know that the Subpoena had been issued. Instead, I acknowledged the erroneous issuance of the Subpoena and explained that it was through internal miscommunication that the Subpoena had not been served on Defendants.

17. Defendants now attempt to distort and manipulate the substance and context of the January 30, 2007 telephone conference and e-mail in order to attempt to convince the Court that I was attempting to avoid rectifying the erroneous issuance of the Subpoena - essentially, Defendants are calling me a liar ("[i]t was difficult, if not impossible, to reconcile the history of numerous contacts and continued efforts by Plaintiff's counsel to obtain documents from the BBB with Plaintiff's counsel's statements that service of the subpoena on the BBB was "inadvertent" and "due to internal communications issues""). Motion for Sanctions at Pages 5-6.

18. It was my expectation, when I called Ms. Wolohojian on January 30, 2007, counsel for parties having previously had only the most professional of dealings, that she would understand and accept that the issuance of and failure to serve the Subpoena were innocent errors. I believed

that because the errors were disclosed to Ms. Wolohojian at the earliest possible opportunity, and remedied, and because not a single document was obtained pursuant to the Subpoena, that the issue would be closed. Indeed, given the fact that no documents had been produced by the BBB, I anticipated that Ms. Wolohojian would either raise objections to the documents being sought in the Subpoena, ask to have the Subpoena abated until the Court held a case management conference, or simply agree that the documents would be produced by the BBB so long as copies were provided to Defendants.

19.     Rather than any of those alternatives, Defendants and Defendants' counsel chose instead to attempt to parlay this innocent mistake by Plaintiff's counsel into leverage to coerce Plaintiff into withdrawing his Rule 56(f) Motion. This outrageous demand was first communicated to me in an e-mail from Ms. Wolohojian dated January 31, 2007. A copy of that e-mail is attached to the Declaration of Gabrielle R. Wolohojian dated February 20, 2007 (the "Wolohojian Declaration") as Exhibit 4.

20.     I was so taken back by this outlandish demand that I actually thought it was a joke and attempted to reach Ms. Wolohojian by telephone to see if that was the case.

21.     Unable to reach Ms. Wolohojian by telephone, I wrote to her on February 1, 2007. In that letter, a copy of which is attached to the Wolohojian Declaration as Exhibit 5, I agreed that, as requested in Ms. Wolohojian's January 31st e-mail, the Subpoena should be considered withdrawn. However, as to the demand that the Rule 56(f) Motion be withdrawn, I wrote:

> Second, we will not withdraw our Rule 56(f) motion. Your clients have taken the position that the "disclosures" that they "provide" to consumers are sufficient to justify the unilateral imposition of recurring monthly fees to tens of thousands of unsuspecting consumers, reaping hundreds of millions of dollars in revenue. The Rule 56(f) motion was filed in order to allow us to undertake the discovery to respond to a premature summary judgment motion. We firmly believe that such class-wide discovery will result in overwhelming evidence to supplement what we have already learned in our pre-suit investigation – that Webloyalty's "customers" are being duped into "subscribing" for

services that they do not want and are being charged without their knowledge and consent (*a circumstance that could be instantly cured if your clients simply required consumers to re-enter their credit or debit card numbers as a condition to being "enrolled"*). Such evidence will go to the very heart of your clients' motion for summary judgment.

As to your not so veiled threat to file some motion if we do not acquiesce to your ridiculous demands, go ahead and file whatever motion you see fit.

22. In response, on February 5, 2007, Ms. Wolohojian wrote to me and reiterated her demand that the Rule 56(f) Motion be withdrawn. The gist of the February 5, 2007 letter was, essentially, to call me a liar, to miscast my disclosures of the circumstances surrounding the Subpoena as evidence of an intentional act, and, presumably, to create a document that Defendants could later show to this Court in an attempt to justify the filing of the Motion for Sanctions and its request that the Court punish an innocent mistake by not allowing Plaintiff to take any discovery whatsoever. A copy of the Ms. Wolohojian's February 5, 2007 letter is attached to the Wolohojian Declaration at Exhibit 6.

23. In response, on February 6, 2007, I again wrote to Ms. Wolohojian and declined to acquiesce to the demand for withdrawal of the Rule 56(f) Motion. In so doing, I reminded Ms. Wolohojian that the Subpoena had been withdrawn, that no documents had been produced by the BBB and that the only information that Plaintiff had obtained that originated from the BBB – Webloyalty's unsatisfactory business rating and the huge number of consumer complaints – had been obtained, without the necessity of a subpoena, from the BBB's website. A copy of my February 6, 2007 letter is attached to the Wolohojian Declaration at Exhibit 7.

24. In addition to my various communications with Ms. Wolohojian, I also instructed Mr. Davidson to inform the BBB not to produce any documents in connection with the Subpoena. Specifically, on February 1, 2007, Mr. Davidson sent counsel for the BBB a letter advising as follows:

> As we discussed this morning, in light of an error by us, having prematurely served the subpoena on the [BBB], we are requesting that the BBB abate the production of any documents in response to the subpoena until further notice from us. We will either resolve any issues relating to the BBB subpoena with defense counsel now, or will address them with the Court at the appropriate time. In any event, we expect that we will be in a position to reach out to you within the next few weeks.

A copy of Mr. Davidson's February 1, 2007 letter is attached hereto as Exhibit A.

25. Later that same day, after reviewing Ms. Wolohojian's letter, wherein she requests that we formally withdraw the Subpoena, I instructed Mr. Davidson to send a second letter to counsel for the BBB, advising as follows:

> Further to our conversation this morning regarding the subpoena served on the [BBB] in the above-referenced action, and in light of our error and defendants' request that we withdraw the subpoena, please consider this letter as a formal withdrawal of the subpoena. In the event we are permitted by the Court to re-issue and re-serve the subpoena at a later date, I will contact you or Rick Harris at the appropriate time to request that your firm accept service.

A copy of Mr. Davidson's second February 1, 2007 letter to counsel for the BBB is attached hereto as Exhibit B.

26. As a result, and as admitted by Defendants, the BBB never produced a single document in response to the Subpoena.

I have read the foregoing Declaration, and the statements set forth herein are, to the best of my knowledge, true and correct.

**FURTHER DECLARANT SAYETH NAUGHT**

Dated: this 5th day of March, 2007.    */s/ David J. George*
                                        David J. George

- 8 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *David J. George*
David J. George

# Mailing Information for a Case 1:06-cv-11620-JLT

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stuart A. Davidson**
  sdavidson@lerachlaw.com e_file_fl@lerachlaw.com

- **Andrew J. Garcia**
  agarcia@phillipsgarcia.com dmedeiros@phillipsgarcia.com;info@phillipsgarcia.com

- **David J. George**
  dgeorge@lerachlaw.com e_file_fl@lerachlaw.com

- **Eric A. Lee**
  lee@leeamlaw.com zallen@leeamlaw.com;leeamlawecf@gmail.com

- **Joan S. Mitrou**
  Joan.Mitrou@wilmerhale.com

- **Carlin J Phillips**
  cphillips@phillipsgarcia.com dmedeiros@phillipsgarcia.com;info@phillipsgarcia.com

- **John J. Regan**
  john.regan@wilmerhale.com

- **Gabrielle R. Wolohojian**
  gabrielle.wolohojian@wilmerhale.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
C. Nichole Gifford
Rothwell, Figg, Ernst & Manbeck, P.C.
Suite 800
1425 K Street, N.W.
Washington, DC 20005

Michael L. Greenwald
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
Suite 500
120 E. Palmetto Park Road
Boca Raton, FL 33432

Steven Lieberman
Rothwell, Figg, Ernst & Manbeck
1425 K Street, N.W.
Suite 800
Washington, DC 20005

Anne M. Sterba
```

Rothwell, Figg, Ernst & Manbeck
1425 K Street, N.W.
Suite 800
Washington, DC 20005