## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 07-01820 - JLT<br><br>Lead Case: 06-11620-JLT |

## DEFENDANTS' ANSWER TO
## CONSOLIDATED AMENDED COMPLAINT

Defendants, Webloyalty.com, Inc. ("Webloyalty"), Fandango, Inc. d/b/a Fandango.com ("Fandango"), Priceline.com., Inc. d/b/a Priceline.com ("Priceline"), E-Babylon. Inc. ("E-Babylon"), ValueClick, Inc. ("ValueClick"), Nelson Shane Garrett ("Garrett"), individually and d/b/a JustFlowers.com and Giftbasketsasap.com, and Maxim O. Khokhlov ("Khokhlov"), individually and d/b/a JustfFlowers.com and Giftbasketsasap.com (together, "JustFlowers"), pursuant to Fed. R. Civ. P. 8(b), hereby respectfully submit this Answer to the Consolidated Amended Complaint ("Consolidated Complaint"). Because the Consolidated Complaint goes beyond a short and plain statement as provided under Rule 8, Defendants respond in similar form in this Answer.

### I. NATURE OF CASE

1.    Admitted only that Plaintiffs have filed the Consolidated Complaint as a putative class action against the named Defendants. Otherwise, the allegations of this paragraph are denied.

2.    The allegations of this paragraph are denied. Further responding, Defendants state that the offers regarding the Reservation Rewards program, as made to each of the named Plaintiffs, were multi-step processes that made numerous, clear, complete and accurate

Dockets.Justia.com

disclosures.  The process neither enrolled the named Plaintiffs (nor any other customer)

automatically in the Reservation Rewards program (or any other program offered by

Webloyalty), nor did it enroll them (or any other customer) without their knowledge or consent.

Nor did the process entail the use or transfer of the named Plaintiffs' (or any other customer's)

credit or debit card information without informed and affirmative consent.  No customer is

enrolled in the Reservation Rewards program (or any other program offered by Webloyalty) nor

is his or her credit or debit card information used or transferred until a full and accurate

disclosure of the program's terms has been made and the customer's consent and authorization

has been given.  Rather, each named Plaintiff (as is the case with all other customers) received

full and accurate disclosures about the Reservation Rewards program, including the billing

terms, and affirmatively chose to enroll in the program after receiving those disclosures.  Each

named Plaintiff's enrollment process and subsequent communications with Reservation Rewards

is described below:

## PLAINTIFF KUEFLER

### Fandango Purchase and Enrollment in Reservation Rewards

(a)    Mr. Kuefler purchased movie tickets through Fandango on December 25,

2005.  In order to select the show time, date, and number of tickets, Mr. Kuefler

proceeded to the "Select Tickets" page of the Fandango website.  At the bottom of the

"Select Tickets" page was a box conspicuously and clearly labeled "Optional Offer" in

large, bold typeface.  The box provided an option – which Plaintiff Kuefler needed

affirmatively to choose if he was interested – to learn more about the offer.  No customer

– including Mr. Kuefler – was required to click on the box in order to proceed with

purchasing his movie tickets through Fandango.  The box was unclicked by default.  Thus

the customer would not be directed at this point to a page containing more information about the program unless, as Mr. Kuefler did, he or she affirmatively chose to learn more. Clicking on the box did nothing more than allow Mr. Kuefler to see a page giving full information about the terms and conditions of joining Reservation Rewards. Clicking on the box did <u>not</u> enroll Mr. Kuefler automatically in the Reservation Rewards program. Nor did it result in the transfer or use of any credit or debit card information.

(b)    Mr. Kuefler clicked on the "Yes" box in the "Optional Offer" box on the "Select Tickets" page and, as a result, expressed his interest in learning more about the terms of the Reservation Rewards program. After making this choice, Mr. Kuefler was next directed to a page that asked him to sign in to Fandango.

(c)    Mr. Kuefler signed in as a new Fandango customer on the sign-in page and thus was directed to a "Payment" page on which he could enter the credit or debit card information to be used for his ticket purchase. Regardless of what Mr. Kuefler filled in on the Fandango sign-in page, it did not result either in his being enrolled in the Reservation Rewards program or in the transfer or use of his credit or debit card information.

(d)    Because he clicked "Yes" in the "Optional Offer" box on the "Select Tickets" page, he was next directed to an enrollment page ("Enrollment page") setting forth all the details of the Reservation Rewards program.   A true and accurate copy of the Enrollment page is attached as Exhibit 1. The Enrollment page clearly and conspicuously notified Mr. Kuefler of the terms of membership in the Reservation Rewards program. The Enrollment page prominently disclosed that the amount would be charged to the credit or debit card provided by the customer to Fandango:

- 3 -

For your convenience until you call to cancel, we'll automatically continue your benefits for just $10 a month billed by Reservation Rewards to the credit card or deducted from the debit card you use at Fandango today.

Moreover – directly above the area in which the customer must enter his or her information in order to become a member of Reservation Rewards -- the Enrollment page prominently disclosed that, by accepting the offer, the customer was authorizing the transfer of his "name, e-mail address and credit or debit card information to Reservation Rewards for billing and benefit processing."  The Enrollment page also disclosed four times that the customer would be billed a $10 monthly membership after the initial trial membership.  More specifically, the page clearly and repeatedly disclosed:

-- "Enjoy all this FREE for the next 30 days and only **$10 per month thereafter**" (first paragraph of the Enrollment page) (emphasis added);

-- "30 days FREE plus only **$10 a month thereafter**" (immediately above the place where the customer is required to enter his or her email address twice and click "YES!" if he or she wishes to join Reservation Rewards) (emphasis added);

-- "enjoy ongoing savings for only **$10 a month thereafter**" (in the scroll box immediately to the left of where the customer is required to twice enter his or her email address) (emphasis added);  and

-- "For your convenience until you call to cancel, we'll automatically continue your benefits for just **$10 a month billed by Reservation Rewards to the credit card or deducted from the debit card you use at Fandango today**." (In the scroll box immediately to the left of where the customer is required to twice enter his or her email address)  (emphasis added).

A true and accurate copy of the Enrollment page is set out below:


[remainder of page intentionally left blank]



**Click YES to claim your Optional Offer below.**
**Get your $10.00 Cash Back on your next Fandango purchase plus much more!**


You're Good To Go.

**Purchase Tickets**     SELECT TICKETS    PAYMENT  >>  REVIEW ORDER    CONFIRMATION

**Thanks for being a valued Fandango shopper...**
To thank you for being a valued Fandango shopper today, click YES below to sign up for all the money-saving benefits of Reservation Rewards, the premier online travel discounts and protection club! Plus get your $10.00 Cash Back Award just for trying Reservation Rewards. Enjoy all this FREE for the next 30 days and only $10 per month thereafter...

**Shopping Savings up to 50%** — Save at participating Portrait Studios, Sports Stores, Eyewear Stores and more. Choose from 70,000 locations!

**Savings at Top Attractions** — Save at popular locations like Theme Parks, Museums, Aquariums, Zoos and more than 15,000 locations!

**"Buy 1 Get 1 On Us" Dining Discounts** — Save at participating Family Restaurants, Fast Food Chains, Local Diners and many more. Over 70,000 locations!



**$10.00 Cash Back Award**
Good for your next Fandango purchase!
Enjoy your $10.00 Cash Back Award just for trying Reservation Rewards.

*Get Money-Saving Discounts at...*
Portrait Studios   Sports Stores   Museums
Theme Parks   Zoos   Family Restaurants
Fast Food Chains   Plus more!

**Plus get $10.00 Cash Back on your next Fandango purchase!** As a Reservation Rewards member just make another purchase anytime in the next 3 months, send Reservation Rewards your order confirmation and we'll send the Cash. Details.

**Offer and Billing Details:**
Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only $10 a month thereafter. Plus get your $10.00 Cash Back Award on your next Fandango purchase. It's a Special Reward for being a valued Fandango shopper today! For your convenience until you call to cancel, we'll automatically continue your benefits for just $10 a month billed by Reservation Rewards to the credit card or deducted from the debit card you use at Fandango today. Reservation Rewards will also use the contact information you use at Fandango today for billing and benefit processing. Benefits may be modified without prior notice; but if we change your membership fee, you'll be notified before billing. If at anytime you are not satisfied, call Reservation Rewards at 1-800-732-7031 to cancel and owe nothing further.

Consent to receive electronic disclosures. Please read and save for your records. Reservation Rewards will convey your membership

Terms of Service apply. Reservation Rewards is owned and operated by webloyalty.com.

Click here for more benefit information.

- **30 days FREE plus only $10 a month thereafter**
- **E-mail reminder before first monthly charge**
- **Cancel anytime hassle-free online or by phone**

**Sign up for Reservation Rewards by entering your e-mail address and clicking YES below**
By entering my e-mail address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize Fandango to securely transfer my name, e-mail address and credit or debit card information to Reservation Rewards for billing and benefit processing.

**Enter e-mail address:**          **Confirm e-mail:**

○ **YES!** I want my Reservation Rewards benefits and $10.00 Cash Back Award!
○ **No Thanks**

❓ Help with Purchasing Tickets

**Continue with ticket purchase >**

About Us | Partners | Affiliates | Advertising | Promo Codes | Policies | How Fandango Works | Help | Contact Us

Get Fandango on your wireless device!
Copyright © 2005 Fandango. All rights reserved.
Fandango, Inc., 12200 W. Olympic Blvd, Suite 150, Los Angeles, CA 90064

(e)    The scroll-down box (i.e., the yellow box above) clearly disclosed to Mr. Kuefler the offer and billing details of the Reservation Rewards program, as well as the fact that, by choosing to enroll, he was expressly authorizing the transfer and use of his credit or debit card information.  More specifically, the scroll-down box disclosed: (a) the fact that the customer would be charged $10 per month after the 30-day trial membership; (b) that the credit or debit card information provided by the customer to Fandango would be billed by Reservation Rewards for the $10 monthly charge; (c) that the contact information provided by the customer to Fandango would be used for billing and benefit processing; and (d) that the customer could contact Reservation Rewards (at a toll-free number provided) at any time to cancel his or her membership and "owe nothing further." An enlarged copy of the disclosures contained in the scroll-down box on the Enrollment page is set out below:

[remainder of page intentionally left blank]

**Offer and Billing Details:**

Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only **$10 a month thereafter**. Plus get your $10.00 Cash Back Award on your next Fandango purchase. It's a Special Reward for being a valued Fandango shopper today! **For your convenience until you call to cancel, we'll automatically continue your benefits for just $10 a month billed by Reservation Rewards to the credit card or deducted from the debit card you use at Fandango today.** Reservation Rewards will also use the contact information you use at Fandango today for billing and benefit processing. Benefits may be modified without prior notice; but if we change your membership fee, you'll be notified before billing. **If at anytime you are not satisfied, call Reservation Rewards at 1-800-732-7031 to cancel and owe nothing further.**

Consent to receive electronic disclosures. Please read and save for your records. Reservation Rewards will convey your membership info and payment authorization via email and postings on our site. Your Membership Kit email will include a copy of the Offer and Billing Details. To view this info in electronic form you must have Internet browser version IE 5.5 or Netscape 4.7 or higher. To receive Reservation Rewards you must agree to receive communications electronically and by clicking Yes you consent to do so. You may withdraw consent by canceling the service. If you want a free printed copy of this information simply email us at customerservice@reservationrewards.com. You can update your email address on the Reservation Rewards profile page.

**Reservation Rewards Terms of Service**

Offer only available to residents of the U.S., Puerto Rico and the U.S. Virgin Islands and is not available to current Reservation Rewards members. Terms of Service apply. Reservation Rewards is owned and operated by webloyalty.com. All trademarks and or copyrights are the property of their respective owners, and unless otherwise noted, Reservation Rewards is not affiliated with the respective owners. Apple computer users need to print coupons using Netscape Navigator or Communicator. Merchants participating in this program vary by location. Reservation Rewards benefits cannot be accessed via WebTV. **Privacy Policy** ©2005, webloyalty inc.

(Emphasis added.)

(f)      All pertinent information was disclosed to Mr. Kuefler prominently and accurately in close physical proximity to where he took the affirmative steps to join the Reservation Rewards program.  Specifically, the text immediately above the email signature boxes on the Enrollment page  explained that, by entering his email address as his electronic signature, he was attesting to his having read the Offer and Billing Details and also authorizing the transfer of his credit or debit card information to Reservation Rewards for billing and benefits processing.  In addition, immediately to the left of the signature boxes, was the "Offer and Billing Details" box, which was prominently offset by a different color and disclosed the fact that he would be billed $10 a month after an initial trial period and that the credit or debit card he used for his purchase would be used for that purpose.

(g)      Mr. Kuefler affirmatively took the following steps to authorize the transfer and use of his credit card information before enrolling in the Reservation Rewards program:

(1)      he clicked the "Yes" box in the "Optional Offer" box on the "Select Tickets" page, so as to receive more information about the Reservation Rewards program;

(2)      he clicked the "Continue" button on the "Select Tickets" page;

(3)      he typed his email address on the Enrollment page as specifically instructed;

(4)      he typed his email address a second time on the Enrollment page as required to proceed further;

(5)      he clicked the "YES!" button on the Enrollment page, as final confirmation of his consent.

Directly above the space in which the last three steps occurred was the following language that alerted Mr. Kuefler as to the significance of providing his electronic signature, the substance of what he was attesting to, and the consent he was giving:

> By entering my e-mail address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize Fandango to securely transfer my name, e-mail address and credit or debit card information to Reservation Rewards for billing and benefit processing.

(h)     It was easier for Mr. Kuefler to not join the Reservation Rewards program than it was for him to join.  If Mr. Kuefler wanted to choose to enroll in the program, he needed to scroll down through the text describing the program all the way to the bottom of the Enrollment page.  At that point, Mr. Kuefler was given the option of choosing not to enroll with a button marked "No Thanks".  If, however, he still wanted to join the program, he needed to take three affirmative steps:  (1) type his email address in the box provided; (2) re-type his email address in the verification box; and (3) click on the "YES!" button.

(i)     Plaintiff Kuefler was not enrolled in the Reservation Rewards program until all material terms of the program had been disclosed to him (including that the credit or debit card he used for his Fandango purchase would be charged $10 per month after the initial free trial period and that he could cancel his membership at any time), he had had the opportunity to read the terms of the offer, and he affirmatively took several steps to accept the offer, enroll in the program, and/or to authorize the billing of his credit or debit card.  The same is true of all other customers of Fandango who, at or around the same time period, enrolled in the Reservation Rewards program through the Fandango website.   No credit or debit card information was used or transferred until after Mr. Kuefler had taken the five affirmative steps listed above.

**Post-Enrollment Communications concerning Reservation Rewards**

(j)    At or about approximately 5:44 p.m. on December 25, 2005, shortly after he enrolled in the Reservation Rewards program, Mr. Kuefler was sent a confirmatory email with a subject line "As requested, your Membership Kit for Reservation Rewards, please login today", and describing the program and confirming its terms, including those concerning billing.  A true and accurate copy of this form of email is attached hereto as Exhibit 2.  Upon information and belief, Mr. Kuefler received this email and chose to ignore it.  Among other things, the email confirmed and re-stated that Mr. Kuefler's credit or debit card would be billed $10 per month after the initial free 30-day trial period.  In addition, the email explicitly and clearly told Mr. Kuefler that he could cancel his membership at any time and provided the toll-free telephone number that he could call should he wish to cancel his membership.

(k)    Seven days into Mr. Kuefler's trial period (i.e., on January 1, 2006), Webloyalty sent to Mr. Kuefler an email with a subject line "New member benefit update from Reservation Rewards" reminding him of his membership in the Reservation Rewards program.

(l)    Approximately a week later, on January 7, 2006, Webloyalty sent an email with a subject line "Your $10.00 Cash Back on next Fandango purchase" to Mr. Kuefler reminding him of his membership.

(m)    A few days later, on January 10, 2006, Webloyalty sent an email with a subject line "Benefit and billing reminder notice for Reservation Rewards Members" to Mr. Kuefler.  Among other things, this email reminded Mr. Kuefler that, unless he elected to cancel his membership, his credit or debit card would be charged a $10

monthly fee.  The email also stated the last four digits of his credit or debit card that

would be charged, and provided the name under which the charge would be made so that

it would be easily identifiable on Mr. Kuefler's credit or debit card statement.  The email

also again gave Mr. Kuefler the instructions and toll-free number to contact should he

wish to cancel his membership before being charged any amount at all.  A true and

accurate copy of this form of email is attached hereto as Exhibit 3.

(n)    On January 24, 2006, Mr. Kuefler's trial membership in the Reservation

Rewards program ended and, accordingly, he was charged his first $10 monthly

membership fee.  On the same date, he was also again sent yet another reminder email

confirming that he had enrolled in the program.

**Kuefler's Cancellation of Membership and Full Refund**

(o)    On February 22, 2006, Mr. Kuefler contacted Webloyalty's toll-free

number (which had been provided to him on numerous occasions over the previous two

months) and requested that his membership in the Reservation Rewards program be

terminated.  His request was promptly granted.  In addition, Mr. Kuefler requested a

refund of the $10 previously billed in January 2006.  This request, too, was granted and

was processed the following day, February 23, 2006.  Confirmation emails were sent to

Mr. Kuefler on the same day confirming the cancellation and refund.  Mr. Kuefler has not

incurred any damages as a result of being enrolled in the Reservation Rewards program.

(p)    Despite the numerous reminders of his enrollment in the Reservation

Rewards program, the repeated reminders of the terms of the program (including the fact

that his credit card would be billed), and the repeated instructions as to how to cancel his

membership and avoid any monthly charge, Mr. Kuefler did not seek to cancel his

membership before the first $10 monthly charge was posted.

**PLAINTIFF CROUSE**

**Priceline Purchase and Enrollment in Reservation Rewards**

(q)    Mr. Crouse conducted a transaction on the Priceline website on January 11, 2005.  On Priceline, customers offer to purchase travel products (such as airline flights or hotel rooms) at a particular price.  In Mr. Crouse's case, he purchased a hotel stay and, accordingly, was taken to a transaction acceptance screen ("Transaction Acceptance screen").  At that point, Mr. Crouse's Priceline transaction was complete and the Transaction Acceptance page contained information for his records.

(r)    The Transaction Acceptance screen contained two "banner advertisements" – or boxes of text containing an internet link – that would direct the customer to the Reservation Rewards Enrollment page, but only if the customer affirmatively chose to click on either one of the banners.  In the top third of the page, at the right side, was a banner advertisement that stated:  "Your request is complete.  Click here to claim Special Offer!" and that included a grey button with the words "Continue" inside.  At the bottom of the page, another banner read:  "Click here to claim your Special Offer for your request today!"    No customer – including Mr. Crouse – was required to click on either banner for any purpose with respect to his or her Priceline transaction. The banners were passive until activated by the customer, who needed to click on one or the other of the banners to indicate a desire to learn more about the offer.  The customer would not be directed at this point to a page containing more information about the Reservation Rewards program unless, as Mr. Crouse did, he or she affirmatively chose to learn more about the offer.  Clicking on either of the banners did nothing more than allow Mr. Crouse to see an enrollment page giving full information about the terms and

conditions of joining Reservation Rewards.  Clicking on the banner did not enroll Mr.

Crouse automatically in the Reservation Rewards program.  Nor did it result in the

transfer or use of any credit or debit card information.

      (s)     Mr. Crouse clicked on one of the banner advertisements on the

Transaction Acceptance screen and, in doing so, expressed his interest in learning more

about the offer.  After making this choice, Mr. Crouse was next directed to an Enrollment

page setting forth all the details of the Reservation Rewards program.   A true and

accurate copy of the Enrollment page is attached hereto as Exhibit 4.  The Enrollment

page clearly and conspicuously notified Mr. Crouse of the terms of membership in the

Reservation Rewards program.  Among other things, the Enrollment page disclosed that

membership in the program cost $9 per month, and also clearly disclosed that the amount

would be charged to the credit or debit card provided by Mr. Crouse to Priceline:

> For your convenience Reservation Rewards will use the contact
> and credit or debit card information you provided to Priceline.com
> today for billing and benefit processing.

Mr. Crouse was also informed that:

> Get your $10.00 Cash Back Award on your next Priceline.com
> reservation, Money-Saving Discounts for the next 30 days plus all
> the valuable benefits of Reservation Rewards for only $9, billed to
> the credit or debit card you used at Priceline.com today.

The Enrollment page disclosed four times that Mr. Crouse would be billed a $9 monthly

fee.  More specifically, the page clearly and repeatedly disclosed:

> -- "Try all the benefits for the next 30 days for only **$9** and see how much you
> save!  There's no obligation to continue.  If you are completely satisfied, do
> nothing and you'll enjoy ongoing savings for only **$9 a month**."  (paragraph in
> the middle of the Enrollment page) (emphasis added);
>
> -- "Money-Saving Discounts only **$9 a month!**"  (graphic on right-hand side of
> Enrollment page) (emphasis added);

-- "Get your $10.00 Cash Back Award on your next Priceline.com reservation, Money-Saving Discounts for the next 30 days plus all the valuable benefits of Reservation Rewards for only **$9**, billed to the credit or debit card you used at Priceline.com today." (in the Offer Details box immediately to the left of where the customer is required to twice enter his or her email address) (emphasis added); and

-- "All your Reservation Rewards discounts and protection will automatically continue for just **$9 a month** billed by Reservation Rewards to the credit card or deducted from the debit card you used at Priceline.com today. (in the Offer Details box) (emphasis added).

Moreover – directly above the area in which Mr. Crouse was required to affirmatively enter his information and electronic signature in order to become a member of Reservation Rewards -- the Enrollment page prominently disclosed that, by accepting the offer, Mr. Crouse was authorizing the transfer of his "name, address and credit or debit card information to Reservation Rewards for billing and benefit processing." A true and accurate copy of the bottom half of the Enrollment page is set out below.

[remainder of page intentionally left blank]

**Offer Details:**

Get your $10.00 Cash Back Award on your next Priceline.com reservation, Money-Saving Discounts for the next 30 days plus all the valuable benefits of Reservation Rewards for only $9, billed to the credit or debit card you used at Priceline.com today. It's a Special Reward for your request at Priceline.com today! If you are 100% satisfied during the next 30 days, do nothing. All your Reservation Rewards discounts and protection will automatically continue for just $9 a month billed by Reservation Rewards to the credit card or deducted from the debit card you used at Priceline.com today. For your convenience Reservation Rewards will use the contact and credit or debit card information you provided to Priceline.com today for billing and benefit processing. In the event your monthly membership fee were to ever change, you would be notified before you are billed. Reservation Rewards benefits may be enhanced or modified at any time without prior notice. And, you have our Money Back Guarantee! If at anytime you are not completely satisfied , simply call Reservation Rewards toll free at 1-888-688-5995 to let us know you wish to cancel your monthly membership benefits. If you cancel during the first 30 days you owe nothing further If you cancel after the first 30 days, let us know if you wish to receive a refund of the current month's fee and owe nothing further. All your benefits and access will then be canceled immediately. All the money you save is yours to keep!

Consent to receive electronic disclosures. Please read carefully and save or print a copy for your records. Reservation Rewards will communicate your benefit and other membership information to you, including payment authorization made by clicking Yes, by electronic communications, including email and electronic postings on our site. Your Membership Kit email will also include a copy of the Offer Details for your convenience. In order to view this membership and benefit information in electronic form, you need to have access to a computer with Internet browser version IE 5.5 or Netscape 4.7 or higher. In order to receive Reservation Rewards you must agree to receive these communications electronically and by clicking Yes you consent to do so. You may withdraw this consent by canceling the service. Of course if you would also like a printed copy of any membership information you can email us at customerservice@reservationrewards.com to request it and we will be happy to send it at no charge. You can update your email address on the Reservation Rewards profile page.

**Reservation Rewards Terms of Service**



**Enter your email address and click YES below**

By entering my email address as my electronic signature and clicking YES, I have read and agree to the Offer Details and authorize Priceline.com to securely transfer my name, address and credit or debit card information to Reservation Rewards for billing and benefit processing.

**Enter your email address here:**

**Verify email:**



**I want my Reservation Rewards discounts plus my $10.00 Cash Back Award!**

No thanks, please take me back to Priceline.com

Offer only available to residents of the U.S., Puerto Rico and the U.S. Virgin Islands and is not available to current Reservation Rewards members. Terms of Service apply. Reservation Rewards is owned and operated by webloyalty.com. All trademarks and or copyrights are the property of their respective owners, and unless otherwise noted, Reservation Rewards is not affiliated with the respective owners. Apple computer users need to print coupons using Netscape Navigator or Communicator. Merchants participating in this program vary by location. Reservation Rewards benefits cannot be accessed via WebTV. Privacy Policy ©2003, webloyalty.com, inc. 20646-1003

(t)    The "Offer Details" box (i.e., the yellow box above) clearly disclosed to Mr. Crouse the offer and billing details of the Reservation Rewards program, as well as the fact that, by choosing to enroll, he was expressly authorizing the transfer and use of his credit or debit card information.  More specifically, the "Offer Details" box disclosed: (a) the fact that the customer would be charged $9 per month; (b) that the credit or debit card information provided by the customer to Priceline would be billed by Reservation Rewards for the $9 monthly charge; (c) that the contact information provided by the customer to Priceline would be used for billing and benefit processing; (d) that the customer could contact Reservation Rewards (at a toll-free number provided) at any time to cancel his or her membership; and (e) that if the customer cancelled his membership during the first 30 days, the customer would "owe nothing further." An enlarged copy of the disclosures contained in the "Offer Details" box on the Enrollment page is set out below:

[remainder of page intentionally left blank]

**Offer Details:**

Get your $10.00 Cash Back Award on your next Priceline.com reservation, Money-Saving Discounts for the next 30 days plus all the valuable benefits of Reservation Rewards for only $9, billed to the credit or debit card you used at Priceline.com today. It's a Special Reward for your request at Priceline.com today! If you are 100% satisfied during the next 30 days, do nothing. All your Reservation Rewards discounts and protection will automatically continue for just $9 a month billed by Reservation Rewards to the credit card or deducted from the debit card you used at Priceline.com today. For your convenience Reservation Rewards will use the contact and credit or debit card information you provided to Priceline.com today for billing and benefit processing. In the event your monthly membership fee were to ever change, you would be notified before you are billed. Reservation Rewards benefits may be enhanced or modified at any time without prior notice. And, you have our Money Back Guarantee! If at anytime you are not completely satisfied , simply call Reservation Rewards toll free at 1-888-688-5995 to let us know you wish to cancel your monthly membership benefits. If you cancel during the first 30 days you owe nothing further If you cancel after the first 30 days, let us know if you wish to receive a refund of the current month's fee and owe nothing further. All your benefits and access will then be canceled immediately. All the money you save is yours to keep!

Consent to receive electronic disclosures. Please read carefully and save or print a copy for your records. Reservation Rewards will communicate your benefit and other membership information to you, including payment authorization made by clicking Yes, by electronic communications, including email and electronic postings on our site. Your Membership Kit email will also include a copy of the Offer Details for your convenience. In order to view this membership and benefit information in electronic form, you need to have access to a computer with Internet browser version IE 5.5 or Netscape 4.7 or higher. In order to receive Reservation Rewards you must agree to receive these communications electronically and by clicking Yes you consent to do so. You may withdraw this consent by canceling the service. Of course if you would also like a printed copy of any membership information you can email us at customerservice@reservationrewards.com to request it and we will be happy to send it at no charge. You can update your email address on the Reservation Rewards profile page.

**Reservation Rewards Terms of Service**





(v)     All pertinent information was disclosed to Mr. Crouse prominently and accurately in close physical proximity to where he took the affirmative steps to join the Reservation Rewards program. Specifically, the text immediately above the email signature boxes on the Enrollment page explained that, by entering his email address as his electronic signature, he was attesting to his having read the Offer and Billing Details and also authorizing the transfer of his credit or debit card information to Reservation Rewards for billing and benefits processing. In addition, immediately to the left of the signature boxes, was the "Offer Details" box, which was prominently offset by a different color and disclosed the fact that he would be billed $9 a month and that the credit or debit card he used for his purchase would be used for that purpose.

(w)     Mr. Crouse affirmatively took the following steps to authorize the transfer and use of his credit card information before enrolling in the Reservation Rewards program:

(1)     he clicked on one of the two banners on the Transaction Acceptance page, so as to receive more information about the Reservation Rewards program offer;

(2)     he typed his email address on the Enrollment page;

(3)     he typed his email address a second time on the Enrollment page as required to proceed further; and

(4)     he clicked the "YES!" button on the Enrollment page, as final confirmation of his consent.

Directly above the space in which the last three steps occurred was the following language that alerted Mr. Crouse as to the significance of providing his electronic signature, the substance of what he was attesting to, and the consent he was giving:

By entering my email address as my electronic signature and clicking YES, I have read and agree to the Offer Details and authorize

- 18 -

Priceline.com to securely transfer my name, address and credit or debit card information to Reservation Rewards for billing and benefit processing.

(x)    It was easier for Mr. Crouse to not join the Reservation Rewards program than it was for him to join.  If Mr. Crouse wanted to choose to enroll in the program, he needed to scroll down through the text describing the program all the way to the bottom of the Enrollment page.  At that point, Mr. Crouse was given the option of choosing not to enroll with a button marked "No Thanks, please take me back to Priceline.com".  If, however, he still wanted to join the program, he needed to take three affirmative steps: (1) type his email address in the box provided; (2) re-type his email address in the verification box; and (3) click on the "YES!" button.

(y)    Plaintiff Crouse was not enrolled in the Reservation Rewards program until all material terms of the program had been disclosed to him (including that the credit or debit card he used for his Priceline purchase would be charged $9 per month and that he could cancel his membership at any time), he had had the opportunity to read the terms of the offer, and he affirmatively took several steps to accept the offer, enroll in the program, and/or to authorize the billing of his credit or debit card.  The same is true of all other customers of Priceline who, at or around the same time period, enrolled in the Reservation Rewards program through the Priceline website.  No credit or debit card information was used or transferred until after Mr. Crouse had taken the four affirmative steps listed above.

(z)    Immediately upon affirmatively enrolling in the Reservation Rewards program, Mr. Crouse was taken in the same browser window to a Reservation Rewards welcome screen ("Welcome screen") that began with the prominent phrase:  "Welcome to Reservation Rewards!" and "Thank You Reward for Becoming a Reservation Rewards

member today!".  A true and accurate copy of the form of the Welcome screen is attached

hereto as Exhibit 5.  The Welcome screen contained detailed information concerning the

program and also repeated much of the information that had been disclosed to Mr. Crouse

on the Enrollment page.  More specifically, the Welcome screen repeated the details

concerning the costs of the program to Mr. Crouse and gave the brand name and last four

digits of the credit card he had authorized be billed.  The Welcome screen also notified

Mr. Crouse that charges to his credit card would be billed as

"WLI*RESERVATIONREWARDS.COM 888-688-5995 CT."  The Welcome screen

also alerted Mr. Crouse to the fact that he would receive an email containing his

membership kit.  In addition, the Welcome screen again informed Mr. Crouse that he

could cancel his membership at any time, and gave Mr. Crouse a toll-free number he

could call to cancel and an email address he could use to contact Reservation Rewards

customer service.

**Post-Enrollment Communications concerning Reservation Rewards**

(aa)    At or about approximately 7:35 p.m. on January 11, 2005, shortly after he

enrolled in Reservation Rewards, Mr. Crouse was sent a confirmatory email with a

subject line "As requested, your Membership Kit for Reservation Rewards, please login

today" describing the program and confirming its terms, including those concerning

billing.  Among other things, the email confirmed and re-stated that Mr. Crouse's credit

or debit card would be billed $9 per month.  In addition, the email explicitly and clearly

told Mr. Crouse that he could cancel his membership at any time and provided the toll-

free telephone number that he could call should he wish to cancel his membership.  A

true and accurate copy of this form of email is attached hereto as Exhibit 6.

(bb)     On January 12, 2005, Reservation Rewards sent Mr. Crouse another email with a subject line "Benefit and billing reminder notice for Reservation rewards members" describing the program and reminding him that "your next $9.00 membership fee will be billed by Reservation Rewards to the credit card or deducted from the debit card you used to join and authorized Reservation Rewards to use for billing and benefit processing," and identifying that credit card by brand and its last four digits.  A true and accurate copy of this form of email is attached hereto as Exhibit 7.  The email further explained that the billing would occur on January 18, 2005, and provided a toll free number that Plaintiff could call if he wanted to cancel his membership and avoid billing.

(cc)     Reservation Rewards thereafter sent Mr. Crouse at least six additional reminder emails about his membership benefits.

**Crouse's Cancellation of Membership and Full Refund**

(dd)     On February 8, 2006, Mr. Crouse used the Reservation Rewards automated phone system to cancel his membership.   Mr. Crouse later that day requested a full refund, which was promptly granted.  Confirmation emails were sent to Mr. Crouse on the same day confirming the cancellation and refund.  Mr. Crouse has not incurred damages as a result of being enrolled in the Reservation Rewards program.

(ee)     Despite the numerous reminders of his enrollment in the Reservation Rewards program, the repeated reminders of the terms of the program (including the fact that his credit card would be billed), and the repeated instructions as to how to cancel his membership and avoid further charges, Mr. Crouse chose not to cancel his membership before February 8, 2006.

**PLAINTIFF STAAF**

**JustFlowers Purchase and Enrollment in Reservation Rewards**

       (ff)    Ms. Staaf conducted a transaction on the GiftBasketsasap.com website on December 19, 2005.  At the end of her transaction, Ms. Staaf was taken to a confirmation page that contained a banner advertisement stating:  "Your purchase is complete.  Click here to claim your $10.00 Reward Certificate for your next purchase!"  Below this banner was a "Continue" button on which Ms. Staaf was required to click if she wanted to receive further information about this offer.  Only if a customer affirmatively chose to click on the "Continue" button would he or she be directed to the Reservation Rewards Enrollment page.

       (gg)    No customer at any JustFlowers web site – including Ms. Staaf – was required to click on the "Continue" button for any purpose with respect to his or her transaction.  Indeed, as the banner made clear, the customer's purchase was already complete.  The banner was passive until activated by the customer, who needed to click on the "Continue" button to indicate a desire to learn more about the offer.  The customer would not be directed at this point to a page containing more information about the Reservation Rewards program *unless*, as Ms. Staaf did, he or she took affirmative steps in order to learn more.  Clicking on the "Continue" button did nothing more than allow Ms. Staaf to see an enrollment page giving full information about the terms and conditions of joining Reservation Rewards.  Clicking on the "Continue" button did not enroll Ms. Staaf automatically in the Reservation Rewards program.  Nor did it result in the transfer or use of any credit or debit card information.

(hh)    Ms. Staaf clicked on the "Continue" button and, by doing so, expressed her interest in learning more about the offer. After making this choice, Ms. Staaf was next directed to an Enrollment page setting forth all the details of the offer. A true and accurate copy of the Enrollment page is attached as Exhibit 8. The Enrollment page clearly and conspicuously notified Ms. Staaf of the terms of membership in the Reservation Rewards program. Among other things, the Enrollment page disclosed that membership in the program costs $9 per month after a 30-day free trial period, and also clearly disclosed that the amount would be charged to the credit or debit card provided by the customer for her purchase:

> For your convenience Reservation Rewards will use the contact and credit or debit card information you provided to flower.com today for billing and benefit processing.

Ms. Staaf was also informed that:

> All your Reservation Rewards discounts and protection will automatically continue for just $9 a month billed by Reservation Rewards to the credit card or deducted from the debit card you used at flower.com today.

The Enrollment page disclosed five times that the customer would be billed a $9 monthly fee after the initial 30-day trial membership. More specifically, the page clearly and repeatedly disclosed:

> -- "Plus enjoy all this FREE for the next 30 days and only **$9 per month thereafter**." (first paragraph of the Enrollment page) (emphasis added);

> -- "There's no obligation to continue. If you are completely satisfied, do nothing and you'll enjoy ongoing savings for only **$9 a month** . . ." (paragraph in the middle of the Enrollment page) (emphasis added);

> -- "30 DAYS FREE plus only **$9 a month thereafter**" (in the green box on the left-hand side of the Enrollment page) (emphasis added);

-- "Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only **$9 a month thereafter**." (opening sentence of the Offer and Billing Details box) (emphasis added); and

-- "All your Reservation Rewards discounts and protection will automatically continue for just **$9 a month** billed by Reservation Rewards to the credit card or deducted from the debit card you used at flower.com today."  (in the first paragraph of the Offer and Billing Details box) (emphasis added).

Moreover – directly above the area in which the customer must enter his or her information in order to become a member of Reservation Rewards -- the Enrollment page prominently disclosed that, by accepting the offer, the customer was authorizing the transfer of her "name, address and credit or debit card information used for my purchase at flower.com to Reservation Rewards for billing and benefit processing."  An enlarged copy of the bottom third of the Enrollment page is set out below:

[remainder of page intentionally left blank]

**Offer and Billing Details:**

Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only $9 a month thereafter. Get your $10.00 Reward Certificate toward your next purchase at flower.com, Money-Saving Discounts plus all the valuable benefits of Reservation Rewards. It's a Special Reward for your purchase at flower.com today! If you are 100% satisfied during your trial, do nothing. All your Reservation Rewards discounts and protection will automatically continue for just $9 a month billed by Reservation Rewards to the credit card or deducted from the debit card you used at flower.com today. For your convenience Reservation Rewards will use the contact and credit or debit card information you provided to flower.com today for billing and benefit processing. In the event your monthly membership fee were to ever change, you would be notified before you are billed. Reservation Rewards benefits may be enhanced or modified at any time without prior notice. And, you have our Guarantee! If at anytime you are not completely satisfied during your trial or thereafter, simply call Reservation Rewards toll free at 1-800-732-7031 to let us know you wish to cancel your monthly membership benefits and owe nothing further. All your benefits and access will be canceled. All the money you save is yours to keep!

Consent to receive electronic disclosures. Please read carefully and save or print a copy for your records. Reservation Rewards will communicate your benefit and other membership information to you, including payment authorization made by clicking Yes, by electronic communications, including email and electronic postings on our site. Your Membership Kit email will also include a copy of the Offer and Billing Details for your convenience. In order to view this membership and benefit information in electronic form, you need to have access to a computer with Internet browser version IE 5.5 or Netscape 4.7 or higher. In order to receive Reservation Rewards you must agree to receive these communications electronically and by clicking Yes you consent to do so. You may withdraw this consent by canceling the service. Of course if you would also like a printed copy of any membership information you can email us at customerservice@reservationrewards.com to request it and we will be happy to send it at no charge. You can update your email address on the Reservation Rewards profile page.

[Reservation Rewards Terms of Service](#)

**Enter your email address and click YES below**

By entering my email address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize the secure transfer of my name, address and credit or debit card information used for my purchase at flower.com to Reservation Rewards for billing and benefit processing.

**Enter your email address here:**

[                              ]

**Verify email:**

[                              ]



**I want my Reservation Rewards discounts plus my $10.00 Reward Certificate!**

No Thanks





(ii)     The "Offer and Billing Details" box (i.e., the blue box above) clearly disclosed to Ms. Staaf the offer and billing details of the Reservation Rewards program, as well as the fact that, by choosing to enroll, she was expressly authorizing the transfer and use of her credit or debit card information.  More specifically, the "Offer and Billing Details" box disclosed: (a) the fact that the customer would be charged $9 per month after an initial free trial period; (b) that the credit or debit card information used for her JustFlowers purchase would be billed by Reservation Rewards for the $9 monthly charge; (c) that the contact information provided by the customer during her purchase would be used for billing and benefit processing; (d) that the customer could contact Reservation Rewards (at a toll-free number provided) at any time to cancel her membership; and (e) that if the customer cancelled her membership during the initial trial period or thereafter, the customer would "owe nothing further." Both the phone number and email address for Reservation Rewards's customer service department were provided on that page.  An enlarged copy of the disclosures contained in the "Offer and Billing Details" box on the Enrollment page is set out below:

[remainder of page intentionally left blank]

**Offer and Billing Details:**

Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only $9 a month thereafter. Get your $10.00 Reward Certificate toward your next purchase at flower.com, Money-Saving Discounts plus all the valuable benefits of Reservation Rewards. It's a Special Reward for your purchase at flower.com today! If you are 100% satisfied during your trial, do nothing. All your Reservation Rewards discounts and protection will automatically continue for just $9 a month billed by Reservation Rewards to the credit card or deducted from the debit card you used at flower.com today. For your convenience Reservation Rewards will use the contact and credit or debit card information you provided to flower.com today for billing and benefit processing. In the event your monthly membership fee were to ever change, you would be notified before you are billed. Reservation Rewards benefits may be enhanced or modified at any time without prior notice. And, you have our Guarantee! If at anytime you are not completely satisfied during your trial or thereafter, simply call Reservation Rewards toll free at 1-800-732-7031 to let us know you wish to cancel your monthly membership benefits and owe nothing further. All your benefits and access will be canceled. All the money you save is yours to keep!

Consent to receive electronic disclosures. Please read carefully and save or print a copy for your records. Reservation Rewards will communicate your benefit and other membership information to you, including payment authorization made by clicking Yes, by electronic communications, including email and electronic postings on our site. Your Membership Kit email will also include a copy of the Offer and Billing Details for your convenience. In order to view this membership and benefit information in electronic form, you need to have access to a computer with Internet browser version IE 5.5 or Netscape 4.7 or higher. In order to receive Reservation Rewards you must agree to receive these communications electronically and by clicking Yes you consent to do so. You may withdraw this consent by canceling the service. Of course if you would also like a printed copy of any membership information you can email us at customerservice@reservationrewards.com to request it and we will be happy to send it at no charge. You can update your email address on the Reservation Rewards profile page.

**Reservation Rewards Terms of Service**

(jj)    All pertinent information was disclosed to Ms. Staaf prominently and accurately in close physical proximity to where she took the affirmative steps to join the Reservation Rewards program.  Specifically, the text immediately above the email signature boxes on the Enrollment page  explained that, by entering her email address as her electronic signature, she was attesting to her having read the Offer and Billing Details and also authorizing the transfer of her credit or debit card information to Reservation Rewards for billing and benefits processing.  In addition, immediately to the left of the signature boxes, was the "Offer and Billing Details" box, which was prominently offset by a different color and disclosed the fact that she would be billed $9 a month after an initial trial period and that the credit or debit card she used for her purchase would be used for that purpose.

(kk)    Ms. Staaf affirmatively took the following steps to authorize the transfer and use of her credit card information before enrolling in the Reservation Rewards program:

(1)    she clicked on the "Continue" button on the banner advertisement on her confirmation page, so as to receive more information about the Reservation Rewards offer;

(2)    she typed her email address on the Enrollment page;

(3)    she typed her email address a second time on the Enrollment page as required to proceed further; and

(4)    she clicked the "YES!" button on the Enrollment page, as final confirmation of her consent.

Directly above the space in which the last three steps occurred was the following language that alerted Ms. Staaf as to the significance of providing her electronic signature, the substance of what she was attesting to, and the consent she was giving:

> By entering my email address as my electronic signature and clicking
> YES, I have read and agree to the Offer and Billing Details and authorize
> the secure transfer of my name, address and credit or debit card
> information used for my purchase at flower.com to Reservation Rewards
> for billing and benefit processing.

(ll)    It was easier for Ms. Staaf to not join the Reservation Rewards program than it was for her to join.  If Ms. Staaf wanted to choose to enroll in the program, she needed to scroll down through the text describing the program all the way to the bottom of the Enrollment page.  At that point, Ms. Staaf was given the option of choosing not to enroll with a button marked "No Thanks".   If, however, she still wanted to join the program, she needed to take three affirmative steps:  (1) type her email address in the box provided; (2) re-type her email address in the verification box; and (3) click on the "YES!" button.

(mm)   Plaintiff Staaf was not enrolled in the Reservation Rewards program until all material terms of the program had been disclosed to her (including that the credit or debit card she used for her purchase would be charged $9 per month after an initial trial period and that she could cancel his membership at any time), she had had the opportunity to read the terms of the offer, and she affirmatively took several steps to accept the offer, enroll in the program, and/or to authorize the billing of her credit or debit card.  The same is true of all other customers who, at or around the same time period, enrolled in the Reservation Rewards program through this website.  No credit or debit card information was used or transferred until after Ms. Staaf had taken the four affirmative steps listed above.

(nn)    Immediately upon affirmatively enrolling in the Reservation Rewards program, Ms. Staaf was automatically taken to a Reservation Rewards Welcome screen that had the prominent phrase "Thank You Reward for becoming a Reservation Rewards

member today!" at its top.  A true and accurate copy of the Welcome screen is attached

hereto as Exhibit 9.  The Welcome screen contained detailed information concerning the

program and also repeated much of the information that had been disclosed to Ms. Staaf

on the Enrollment page.  More specifically, the Welcome screen repeated the details

concerning the costs of the program to Ms. Staaf and gave the brand name and last four

digits of the credit card she had authorized be billed.  The Welcome screen also notified

Ms. Staaf that charges to her credit card would be billed as

"WLI*RESERVATIONREWARDS.COM 800-732-7031 CT."  The Welcome screen

also alerted Ms. Staaf to the fact that she would receive an email containing her

membership kit.  In addition, the Welcome screen again informed Ms. Staaf that she

could cancel her membership at any time, and that upon cancellation she would owe

nothing further.  The Welcome screen also gave Ms. Staaf a toll-free number she could

call to cancel and an email address she could contact.  Finally, the Welcome screen

informed Ms. Staaf of the precise date on which her free trial membership would expire.

**<u>Post-Enrollment Communications concerning Reservation Rewards</u>**

(oo)     At or about approximately 1:13 p.m. on December 19, 2005, shortly after

she enrolled in Reservation Rewards, Ms. Staaf was sent a confirmatory email with a

subject line "As requested, your Membership Kit for Reservation Rewards, please login

today" describing the program and confirming its terms, including those concerning

billing.  Among other things, the email confirmed and re-stated that Ms. Staaf's credit or

debit card would be billed $9 per month after an initial free trial period.  In addition, the

email explicitly and clearly told Ms. Staaf that she could cancel her membership at any

time and provided the toll-free telephone number that she could call should she wish to

cancel her membership.  A true and accurate copy of this form of email is attached hereto as Exhibit 10.

(pp)    On December 26, 2005 and January 1, 2006, Reservation Rewards sent Ms. Staaf additional emails, encouraging her to claim her reward certificate and to use her membership benefits.

(qq)    On January 4, 2006, Reservation Rewards sent Ms. Staaf another email with a subject line  "Benefit and billing reminder notice for Reservation Rewards members" describing the program and reminding her that "your next $9.00 membership fee will be billed by Reservation Rewards to the credit card or deducted from the debit card you used to join and authorized Reservation Rewards to use for billing and benefit processing," and identifying that credit card by brand and its last four digits.  A true and accurate copy of this email is attached hereto as Exhibit 11.  The email further explained that the billing would occur on January 18, 2006, and provided a toll free number that Plaintiff could call if she wanted to cancel her membership and avoid billing.

(rr)    Reservation Rewards thereafter sent Ms. Staaf at least three additional reminder emails about her membership benefits.

**Staaf's Cancellation of Membership and Full Refund**

(ss)    Despite the numerous reminders of her enrollment in the Reservation Rewards program, the repeated reminders of the terms of the program (including the fact that her credit card would be billed), and the repeated instructions as to how to cancel her membership and avoid any monthly charge, Ms. Staaf chose not to cancel her membership during her free trial period.  In fact, she chose to continue as a member of the Reservation Rewards program until March 22, 2006, when she contacted the Reservation Rewards toll free number and used the automated system to cancel her

membership.  A confirmation email was sent to Ms. Staaf on the same day confirming the

cancellation.  On April 22, 2006, Plaintiff Staaf's credit card company notified

Reservation Rewards that she had disputed the charges reflecting her three prior monthly

membership fees.  On that same day, Reservation Rewards credited those billings back to

the credit card issuer.  As a result,  Ms. Staaf has not incurred any damages as a result of

being enrolled in the Reservation Rewards program.

### PLAINTIFF MELO

### 123inkjets.com Purchase and Enrollment in Reservation Rewards

(tt)    On August 3, 2005, Mr. Melo conducted a transaction on the

123inkjets.com website.  During the "check-out" process of his transaction, Mr. Melo

was directed to a webpage that asked him to provide shipping, billing and other

information concerning his purchase.  If Mr. Melo wished to complete his transaction, he

needed to click on the "submit my order" button at the bottom of this webpage.  On

information and belief, Mr. Melo clicked on the "submit my order" button.

(uu)    Mr. Melo was then directed to the Reservation Rewards Enrollment page,

a true and accurate copy of which is attached as Exhibit 12.  This multi-colored page

automatically was displayed on Mr. Melo's computer screen.  At the very top of the

Enrollment page was a statement that made clear that Mr. Melo's 123inkjets.com

purchase was complete and that the Enrollment page was an optional offer from another

provider:  "Your purchase is complete . . . here's a Special Reward from a preferred

partner of 123inkjets.com!"

(vv)    Mr. Melo was not automatically enrolled in the Reservation Rewards

program.  Indeed, at the top of the Enrollment page, there was a clearly-displayed option

to decline joining the program.  All Mr. Melo had to do was to click on the button clearly marked "No Thanks" next to the text "Just take me to the confirmation page" if he did not want to join the Reservation Rewards program.

(ww)   It was easier for Mr. Melo to not join the Reservation Rewards program than it was for him to join.  All he needed to do to choose not to join was to click on the "No Thanks" button at the top of the Enrollment page.  By contrast, if Mr. Melo wanted to choose to enroll in the program, he needed to scroll down through the text describing the program all the way to the bottom of the Enrollment page.  At that point, Mr. Melo was again given the option of choosing not to enroll with a button marked "No Thanks" above the text "I want to get my confirmation page without the Reservation Rewards program or $10.00 Cash Back Award."  If, however, he still wanted to join the program, he needed to take three affirmative steps:  (1) type his email address in the box provided; (2) re-type his email address in the verification box; and (3) click on the "YES!" button. An enlarged copy of the bottom half of the Enrollment page is set out below:

[remainder of page left intentionally blank]

email address. Try all the benefits for the next 30 days FREE and see how much you save! There's no obligation to continue. If you are completely satisfied, do nothing and you'll enjoy ongoing savings for only $9 a month and of course you have our Guarantee as described in the Offer and Billing Details! You can print out up to 100 discount coupons every year for your favorite places whenever you want!



- Email reminder before first monthly charge
- Cancel anytime hassle-free, online or by phone

Click here for more benefit information.

 **Plus you get even more than discounts... you also get valuable Travel Protection with Trip Delay Protection, Hotel Over-Booking Protection, 24-Hour Road & Tow Protection and more!**

**Offer and Billing Details:**
Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only $9 a month thereafter. Get your $10.00 Cash Back Award on your next 123inkjets.com purchase, Money-Saving Discounts plus all the valuable benefits of Reservation Rewards. It's a Special Reward for your purchase at 123inkjets.com today! If you are 100% satisfied during your trial, do nothing. All your Reservation Rewards discounts and protection will automatically continue for just $9 a month billed by Reservation Rewards to the credit card or deducted from the debit card you used at 123inkjets.com today. For your convenience Reservation Rewards will use the contact and credit or debit card information you provided to 123inkjets.com today for billing and benefit processing. In the event your monthly membership fee were to ever change, you would be notified before you are billed. Reservation Rewards benefits may be enhanced or modified at any time without prior notice. And, you have our Guarantee! If at anytime you are not completely satisfied during your trial or thereafter, simply call Reservation Rewards toll free at 1-800-732-7031 to let us know you wish to cancel your monthly membership benefits and owe nothing further. All your benefits and access will be canceled. All the money you save is yours to keep!

Consent to receive electronic disclosures. Please read carefully and save or print a copy for your records. Reservation Rewards will communicate your benefit and other membership information to you, including payment authorization made by clicking Yes, by electronic communications, including email and electronic postings on our site. Your Membership Kit email will also include a copy of the Offer and Billing Details for your convenience. In order to view this membership and benefit information in electronic form, you need to have access to a computer with Internet browser version IE 5.5 or Netscape 4.7 or higher. In order to receive Reservation Rewards you must agree to receive these communications electronically and by clicking Yes you consent to do so. You may withdraw this consent by canceling the service. Of course if you would also like a printed copy of any membership information you can email us at customerservice@reservationrewards.com to request it and we will be happy to send it at no charge. You can update your email address on the Reservation Rewards profile page.

Reservation Rewards Terms of Service

**Enter your email address and click YES below**

By entering my email address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize 123inkjets.com to securely transfer my name, address and credit or debit card information to Reservation Rewards for billing and benefit processing.

**Enter your email address here:**

**Verify email:**



**I want my Reservation Rewards discounts and my $10.00 Cash Back Award plus get my confirmation page!**



I want to get my confirmation page without the Reservation Rewards program or $10.00 Cash Back Award.





Offer only available to residents of the U.S., Puerto Rico and the U.S. Virgin Islands and is not available to current Reservation Rewards members. Terms of Service apply. Reservation Rewards is owned and operated by webloyalty.com. All trademarks and or copyrights are the property of their respective owners, and unless otherwise noted, Reservation Rewards is not affiliated with the respective owners. Apple computer users need to print coupons using Netscape Navigator or Communicator. Merchants participating in this program vary by location. Reservation Rewards benefits cannot be accessed via WebTV. Privacy Policy @2004, webloyalty.com, inc. 51283-0405

(xx)    Mr. Melo did not click on the "No Thanks" button at the top of the Enrollment page.  Instead, he scrolled down through the text describing the Reservation Rewards program on the Enrollment page.  At that point, he again did not choose to decline the offer by clicking on the additional "No Thanks" button at the bottom of the page.  Instead, he chose to enroll in the program by typing his email address twice and then clicking on the "YES!" button.

(yy)    In at least five places on the Enrollment page, Mr. Melo was clearly and accurately informed that, should he choose to enroll in the Reservation Rewards program, he would be charged $9 a month after an initial 30-day trial period.

- "Plus enjoy all this FREE for the next 30 days and only **$9 per month thereafter . . ."** (top of Enrollment page) (emphasis added)

- "Try all of the benefits for the next 30 days FREE and see how much you save!  There's no obligation to continue.  If you are completely satisfied, do nothing and you'll enjoy ongoing savings for only **$9 a month** . . ." (middle of Enrollment page) (emphasis added)

- "30 DAYS FREE plus only **$9 a month thereafter**" (middle bright green graphic) (emphasis added)

- "Sign up for Reservation Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only **$9 a month thereafter**."  (Offer and Billing Details box) (emphasis added)

- "All your Reservation Rewards discounts and protection will automatically continue for just **$9 a month** billed by Reservation Rewards to the credit card or deducted from the debit card you used at 123inkjets.com today."  (Offer and Billing Details box) (emphasis added)

(zz)    Moreover, Mr. Melo was explicitly and accurately informed that, by entering his email address twice and clicking on the "YES!" button, he was attesting to his having read the Offer and Billing details, and was "authorize[ing] 123inkjets.com to securely transfer my name, address and credit or debit card information to Reservation Rewards for billing and benefit processing."  He was also clearly and accurately informed

that "[a]ll your Reservation Rewards discounts and protection will automatically continue

for just $9 a month billed by Reservation Rewards to the credit card or deducted from the

debit card you used at 123inkjets.com today.  For your convenience Reservation Rewards

will use the contact and credit or debit card information you provided to 123inkjets.com

today for billing and benefit processing."

(aaa)   All pertinent information was disclosed to Mr. Melo prominently and

accurately in close physical proximity to where he took the affirmative steps to join the

Reservation Rewards program.  Specifically, the text immediately above the email

signature boxes on the Enrollment page  explained that, by entering his email address as

his electronic signature, he was attesting to his having read the Offer and Billing Details

and also authorizing the transfer of his credit or debit card information to Reservation

Rewards for billing and benefits processing.  In addition, immediately to the left of the

signature boxes, was the "Offer and Billing Details" box, which was prominently offset

by a different color and disclosed the fact that he would be billed $9 a month after an

initial trial period and that the credit or debit card he used for his 123inkjets.com

purchase would be used for that purpose.

(bbb)   The "Offer and Billing Details" on the Enrollment page clearly disclosed

to Mr. Melo the offer and billing details of the Reservation Rewards program, as well as

the fact that, by choosing to enroll, he was expressly authorizing the transfer and use of

his credit or debit card information.  More specifically, the "Offer and Billing Details"

box disclosed: (a) the fact that Mr. Melo would be charged $9 per month after the 30-day

trial membership; (b) that the credit or debit card information provided by Mr. Melo to

123inkjets.com would be billed by Reservation Rewards for the $9 monthly charge; (c)

- 36 -

that the contact information he provided to 123inkjets.com would be used for billing and benefit processing; and (d) that Mr. Melo could contact Reservation Rewards (at a toll-free number provided) at any time to cancel his membership and "owe nothing further."

(ccc)    Mr. Melo affirmatively took the following steps to authorize the transfer and use of his debit card information before enrolling in the Reservation Rewards program:

> (i)    he typed his email address in the box provided on the Enrollment page;
>
> (ii)   he typed his email address a second time in the verification box on the Enrollment page; and
>
> (iii)  he clicked the "YES!" button on the Enrollment page, as final confirmation of his consent.

Directly above the space in which these three steps occurred was the following language that alerted Mr. Melo as to the significance of providing his electronic signature, the substance of what he was attesting to, and the consent he was giving:

> By entering my email address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize 123inkjets.com to securely transfer my name, address and credit or debit card information to Reservation Rewards for billing and benefit processing.

(ddd)   Mr. Melo was not enrolled in the Reservation Rewards program until all material terms of the program had been disclosed to him (including that the credit or debit card he used for his 123inkjets.com purchase would be charged $9 per month after the initial trial period and that he could cancel his membership at any time), he had had the opportunity to read the terms of the offer, and he affirmatively took several steps to accept the offer, enroll in the program, and to authorize the billing of his credit or debit card. The same is true of all other customers of 123inkjets.com who, at or around the

- 37 -

same time period, enrolled in the Reservation Rewards program through the 123inkjets.com website.

(eee)    As soon as Mr. Melo completed the Enrollment page a Welcome screen appeared automatically on his computer.  A true and accurate copy of the Welcome screen ("Welcome screen") is attached as Exhibit 13.  The Welcome screen, among other things, repeated the offer and billing details contained on the Enrollment Page.  The Welcome screen appeared on Mr. Melo's computer automatically immediately after he completed his 123inkjets.com purchase and not only repeated the material terms of the Reservation Rewards program, but also repeated the information as to how he could cancel his membership at any time:

> If at anytime you are not completely satisfied during your trial or thereafter, simply call Reservation Rewards toll free at 1-800-732-7031 to let us know you wish to cancel your monthly membership benefits and owe nothing further.

The Welcome screen informed Mr. Melo that charges to his credit or debit card would appear as "WLI*RESERVATIONREWARDS 800-732-7031 CT".  The Welcome screen also provided an email address should Mr. Melo prefer to contact Reservation Rewards by that method instead of calling the toll-free number.  (*Id.*)

**Post-Enrollment Communications concerning Reservation Rewards**

(fff)    On August 3, 2005 (the date of his enrollment), at approximately 4:19 p.m., Mr. Melo was sent an email (Exhibit 14) with a subject line of "As requested, your Membership Kit for Reservation Rewards, please login today."  This email, among other things repeated the offer and billing details, repeated that he would be charged $9 a month after the initial trial period, that those charges would be posted to the credit or debit card he authorized, that he could cancel his membership at anytime should he wish

and avoid any charges. Furthermore, this email repeated Mr. Melo's membership number, the address he had provided, the email address he had provided, the name under which charges would be posted to his credit or debit card (*i.e.*, "WLI*RESERVATIONREWARDS 800-732-7031 CT"), the date on which his free trial period would end, and the name of his type of credit or debit card and its last four digits.

(ggg)   One week later, on August 10, 2005, Reservation Rewards sent Mr. Melo a reminder email entitled "New member benefit update from Reservation Rewards." This email again reminded Mr. Melo that he was a member of Reservation Rewards and urged him to take advantage of its benefits.

(hhh)   On August 16, 2005, Reservation Rewards sent Mr. Melo another reminder email concerning his membership in the Reservation Rewards program.

(iii)   Later on August 16, 2005, from the email address he had provided to enroll in the program, Mr. Melo sent Reservation Rewards an email. The fact that this email was sent by Mr. Melo from the email address he had provided as part of his enrollment indicates that (i) he was receiving Reservation Rewards' communications; and (ii) he knew how to get in touch with Reservation Rewards should he wish to do so— whether to cancel his membership or otherwise. As of this date, Mr. Melo was still in the complimentary trial membership period and had not been charged any monthly membership fee. Mr. Melo did not seek to cancel his membership at this time. Had he done so (which he clearly knew how to do should he have wished to), he would have avoided any monthly fee.

(jjj)   Later that same day, Reservation Rewards promptly responded to Mr. Melo's email but heard nothing back from Mr. Melo at that time.

(kkk)   On August 19, 2005, two full weeks before his complimentary trial period was to expire, Reservation Rewards sent Mr. Melo an email reminding him that, unless he elected to cancel his membership, his credit card would be charged a $9 monthly fee. The subject line of this email was "Benefit and billing reminder notice for Reservation Rewards members."  This email identified the credit card by its brand and last four digits. In addition, the email explained how Mr. Melo could cancel his membership should he wish to do so before incurring any monthly charges.  The email also provided a toll-free number to contact Reservation Rewards should Mr. Melo wish to cancel his membership. A true and accurate copy of the form of email Mr. Melo received on August 19, 2005 is attached as Exhibit 15.

**Mr. Melo's Cancellation of Membership**

(lll)   Despite the numerous reminders and informational emails from Reservation Rewards in which he was repeatedly informed of the fact that he would be charged a monthly fee after the initial trial period, Mr. Melo chose not to cancel his membership during the free trial period.  This was the case even though Mr. Melo knew how to get in touch with Reservation Rewards at the time, as demonstrated by his sending an email to Reservation Rewards on August 16, 2005 – two weeks before any charge was posted.

(mmm)On March 9, 2006, Mr. Melo contacted Reservation Rewards's toll-free number (which had been provided to him on numerous occasions previously) and requested that his membership in the Reservation Rewards program be terminated.  His request was promptly granted and processed.  A confirmation email was sent to Mr. Melo on the same day to the email address previously on file for Mr. Melo confirming the cancellation.

3.      The allegations of this paragraph are denied.   Webloyalty states that the Reservation Rewards program provides numerous benefits to its customers including: (a) online access to Entertainment® book benefits (including many thousands of discount coupons from restaurants and retailers); (b) discounts to theme parks; (c) discounts on movie tickets; (d) emergency roadside assistance; (e) trip delay protection; (f) lost/delayed luggage protection; (g) hotel overbooking protection; (h) credit card fraud protection; (i) damage/theft/loss protection; (j) discounts on hotels; (k) car rental discounts; and (l) airline discounts.

4.      The allegations of this paragraph are denied.  Further responding, Defendants state that the enrollment process differed for each of the named Plaintiffs and for other customers who enrolled in the Reservation Rewards program, although no customer was enrolled without full and accurate disclosures concerning the program and without taking several affirmative steps, including providing an electronic signature, to signify his or her consent and to enroll in the program.  The process of enrollment is accurately described in paragraph 2 above with respect to each of the named Plaintiffs.  No customer's credit or debit card information is transferred or used without the customer's express authorization, manifested through several affirmative steps, including electronic signature.

5.      Defendants lack information sufficient to admit the allegations of this paragraph, therefore those allegations are denied.  Further responding, Webloyalty states that it takes numerous steps to communicate with customers who have enrolled in Reservation Rewards to remind them of their enrollment, the terms of the program (including charges for membership), how the charges would appear on their credit or debit card bills, how they can cancel their membership should they wish, and the benefits available to them as members.  Each customer is typically sent several emails concerning his or her enrollment in the Reservation Rewards

program before he or she is charged any monthly membership fee. The emails are sent to the email address provided by the customer. Webloyalty relies on the accuracy of the email address provided by the customer. It is the customer's responsibility to read his or her emails and, to the extent that a customer chooses to ignore his or her emails concerning the Reservation Rewards program, the customer makes a choice that is not Defendants' responsibility.

6.      The allegations of this paragraph are denied. Further responding, Defendants state that consumers are not "duped," as alleged, but rather choose to join the Reservation Rewards program after receiving full and accurate disclosures concerning the program. Nor are any e-tailers paid any fee for "ensnared" "subscribers."

7.      The allegations of this paragraph are denied.

8.      This paragraph contains no allegations, but rather consists of inappropriate argument, and thus no answer is required. To the extent that any response may be required, the allegations of this paragraph are denied.

9.      Webloyalty admits only that some customers (including the named Plaintiffs) call and request that their membership be cancelled. Webloyalty states that it honors those requests promptly. The remaining Defendants lack information sufficient to admit the allegations of this paragraph and, therefore, those allegations are denied. Otherwise, the allegations of this paragraph are denied.

10.     Webloyalty admits only that it responds to customers who contact the company and have complaints. The remaining Defendants lack information sufficient to admit the allegations of this paragraph and, therefore those allegations are denied. Otherwise, the allegations of this paragraph are denied.

11.     The allegations of this paragraph are denied.

## II. JURISDICTION AND VENUE

12.     Because this paragraph consists solely of Plaintiff's legal conclusion regarding

jurisdiction, no answer is required.  To the extent that any answer is required, Defendants leave

Plaintiffs to their proof.

13.     Admitted only that the Judicial Panel on Multidistrict Litigation has referred the

actions to the District of Massachusetts for coordinated and consolidated pretrial proceedings.

14.     This paragraph appears to be a typographical error to which no response is

required.

15.     The allegations of this paragraph are denied.


## III.  PARTIES

16.     Defendants lack information sufficient to admit or deny the allegations of this

paragraph; therefore, the allegations are denied.

17.     Defendants lack information sufficient to admit or deny the allegations of this

paragraph; therefore, the allegations are denied.

18.     Defendants lack information sufficient to admit or deny the allegations of this

paragraph; therefore, the allegations are denied.

19.     Defendants lack information sufficient to admit or deny the allegations of this

paragraph; therefore, the allegations are denied.

20.     Webloyalty admits only that it has a place of business at 101 Merritt 7, Norwalk,

Connecticut; otherwise, the allegations of the first sentence of this paragraph are denied.

Defendants lack information sufficient to admit the allegations of the second sentence of this

paragraph; therefore, those allegations are denied.   Webloyalty admits the allegations of the

third sentence of this paragraph.  Webloyalty denies the remaining allegations of this paragraph.

The remaining Defendants lack information sufficient to admit or deny the allegations of this paragraph.

21.    Fandango admits only that it has a place of business at 12200 West Olympic Blvd., Suite 150, Los Angeles, California.  Fandango denies the remaining allegations of this paragraph.  The remaining Defendants lack information sufficient to admit or deny the allegations of this paragraph.

22.    Priceline admits only that it has a place of business at 800 Norwalk Avenue, Norwalk, Connecticut; otherwise the allegations of the first and second sentences of this paragraph are denied.  With respect to the third sentence of this paragraph, Priceline admits only that it is an online travel company that offers its customers a range of travel services, including airline tickets, hotel rooms, car rentals, vacation packages and cruises.  With respect to the fourth sentence of this paragraph, Priceline admits only that it owns a minority interest in Priceline Mortgage Company LLC, d/b/a pricelinemortgage.com, which offers financial services.  The remaining Defendants lack information sufficient to admit or deny the allegations of this paragraph.

23.    Garrett admits only that he resides in Los Angeles, California, that he is a resident of California, and that JustFlowers.com and Giftbasketssasap.com are related websites based in Los Angeles, California, that sell flowers, bouquets, stuffed animals, chocolates, cookies, wine and gift baskets for shipping to customers around the United States.  The remaining Defendants lack sufficient information to admit or deny the allegations of this paragraph.

24.    Khokhlov admits only that he resides in Los Angeles, California, that he is a resident of California, and that JustFlowers.com and Giftbasketssasap.com are related websites based in Los Angeles, California, that sell flowers, bouquets, stuffed animals, chocolates,

cookies, wine and gift baskets for shipping to customers around the United States.  The remaining Defendants lack sufficient information to admit or deny the allegations of this paragraph.

25.    ValueClick and E-Babylon admit that ValueClick is a corporation organized and existing under the laws of Delaware, with its principal executive offices located at 30699 Russell Ranch Road, Suite 250, Westlake Village, California, 91362.  ValueClick and E-Babylon admit that ValueClick's website has included the following statements:  "ValueClick, Inc. (NASDAQ: VCLK) is one of the world's largest integrated online marketing companies.  We deliver scalable solutions for advertisers to cost-effectively acquire customers and for publishers to maximize their revenue."  To the extent paragraph 25 relies on statements contained in a Form 10-Q filed by ValueClick, the document speaks for itself.  ValueClick and E-Babylon deny the remaining allegations of this paragraph.  The remaining Defendants lack sufficient knowledge or information to admit or deny the allegations of this paragraph.

26.    ValueClick and E-Babylon admit that E-Babylon is a corporation organized and existing under the laws of California, with its principal executive offices located at 30699 Russell Ranch Road, Suite 250, Westlake Village, California, 91362.  ValueClick and E-Babylon admit that E-Babylon is a wholly-owned subsidiary of ValueClick.  To the extent paragraph 26 relies on statements contained in a Form 10-Q filed by ValueClick, the document speaks for itself.  ValueClick and E-Babylon deny the remaining allegations of this paragraph.  Webloyalty lacks sufficient knowledge or information to admit or deny the allegations of this paragraph.

27.    This paragraph consists solely of Plaintiffs' definition of the term "Defendants" for purposes of the Amended Complaint and, therefore, no response is required.

28.    This paragraph consists solely of Plaintiffs' definition of the term "Defendants" for purposes of the Amended Complaint and, therefore, no response is required.

29.    The allegations of this paragraph are denied.

30.    The allegations of this paragraph are denied.

## IV.  FACTUAL ALLEGATIONS

31.    The allegations of this paragraph of denied.  Further responding, Defendants state that the process by which each of the named Plaintiffs enrolled in the Reservation Rewards program is set out accurately in paragraph 2 above and that the process differed from one person to another.  It is specifically denied that any consumer was enrolled in the Reservation Rewards program or that any consumer's credit or debit card information was used without his or her express and affirmative consent after have received all pertinent information.

32.    The allegations of this paragraph are denied.

33.    The allegations of this paragraph are denied.

34.    The allegations of this paragraph are denied.

35.    The allegations of this paragraph are denied.

36.    The allegations of this paragraph are denied.

37.    The allegations of this paragraph are denied.

38.    Webloyalty only admits that, in 2006, it had annual revenue of approximately $143 million; the allegations of this paragraph are denied.   The remaining Defendants lack information sufficient to admit or deny the allegations of this paragraph.

39.    Webloyalty only admits that it issued a press release dated October 20, 2006 concerning Deloitte's 2006 Technology Fast 500.  Webloyalty further admits that the October 20 press release stated that Webloyalty's revenue had grown 15,151 percent during the period 2001-

2005.  Webloyalty denies the remaining allegations of this paragraph.  The remaining Defendants lack information sufficient to admit or deny the allegations of this paragraph.

40.    The allegations of this paragraph are denied.

41.    Webloyalty only admits that it has business relationships with FTD.com, Classmates.com, and Allposters.com; the remaining allegations of this paragraph are denied. The remaining Defendants lack information sufficient to admit or deny the allegations of this paragraph.

42.    Webloyalty only admits that it has received complaints from some consumers. Webloyalty denies the remaining allegations of the first sentence of this paragraph and lacks information sufficient to admit the remaining allegations of this paragraph; therefore, those allegations are denied.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

43.    Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

44.    Webloyalty denies the allegations of this paragraph.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

45.    This paragraph requires no response because it consists solely of a supposed quotation from a non-party website.  The quotation is incorrect and incomplete.  To the extent any response is required, the allegations of this paragraph are denied.

46.    Defendants lack information sufficient to admit the allegations of this paragraph; therefore those allegations are denied.

47.    Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

## The Plaintiffs

48.    Fandango only admits the allegations of this paragraph.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

49.    Webloyalty and Fandango only admit that Plaintiff Kuefler was presented an "Optional Offer" box on the Fandango "Select Tickets" page and an Enrollment page offering $10 off his next Fandango purchase.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

50.    Webloyalty and Fandango only admit that Plaintiff Kuefler responded both to the "Optional Offer" box and to the Enrollment page.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

51.    The allegations of this paragraph are denied.  More specifically, it is denied that any confidential credit card information was transferred or used as a result of Plaintiff Kuefler responding to the "Optional Offer" box on Fandango's "Select Tickets" page.  It is further denied that Plaintiff Kuefler was enrolled in the Reservation Rewards program as a result of responding to the "Optional Offer" box.  Instead, the process by which Plaintiff Kuefler was enrolled is accurately set out in paragraph 2 above.

52.    Webloyalty and Fandango deny the allegations of this paragraph.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.  Further responding, Webloyalty states that, on February 22, 2006, Mr. Kuefler contacted Webloyalty's toll-free number (which had been provided to him on numerous

occasions over the previous two months) and requested that his membership in the Reservation Rewards program be terminated. His request was promptly granted. In addition, Mr. Kuefler requested a refund of the $10 previously billed in January 2006. This request, too, was granted and was processed the following day, February 23, 2006. As a result, Mr. Kuefler has not incurred any damages as a result of being enrolled in the Reservation Rewards program.

53.     The allegations of this paragraph are denied. Further responding, Webloyalty states that Mr. Kuefler was fully informed, as set out in paragraph 2 above, of the Reservation Rewards program and its terms (including the fact that he would be charged $10 per month after a free trial period), and he consented to those terms by taking several affirmative steps to signify his assent.

54.     Webloyalty and Fandango deny the allegations of this paragraph.   The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

55.     Justflowers only admits that Ms. Staaf made a purchase through the GiftBasketsasap.com website on December 19, 2005 and provided personal and billing information when she did so. Justflowers lacks information sufficient to admit the remaining allegations of this paragraph; therefore, those allegations are denied. The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

56.     Webloyalty and JustFlowers only admit that Plaintiff Staaf was presented a banner advertisement and an Enrollment page offering $10 off her next flower.com purchase. The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

57.    Webloyalty and JustFlowers only admit that Plaintiff Staaf responded to both the banner advertisement and the Enrollment page.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

58.    Webloyalty denies the allegations of this paragraph.  More specifically, it is denied that any confidential credit card information was transferred or used as a result of Plaintiff Staaf responding to the banner advertisement.  It is further denied that Plaintiff Staaf was enrolled in the Reservation Rewards program as a result of responding to that banner.  Instead, the process by which Plaintiff Staaf was enrolled is accurately set out in paragraph 2 above.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

59.    Webloyalty and JustFlowers only deny the allegations of this paragraph.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.  Further responding, Webloyalty admits only that, as she had agreed, Plaintiff Staaf's credit card was billed for $9 monthly charges in January, February, and March 2006.  On March 22, 2006, Ms. Staaf contacted the Reservation Rewards toll free number and used the automated system to cancel her membership.  On April 22, 2006, Ms. Staaf's credit card company notified Reservation Rewards's credit card processor that she had disputed her membership charges.  On that same day, those charges were credited back to the credit card issuer.  As a result, Ms. Staaf has not incurred any damages as a result of being enrolled in the Reservation Rewards program.

60.    Webloyalty and JustFlowers only deny the allegations of this paragraph.  Further responding, Webloyalty states that Plaintiff Staaf was fully informed, as set out in paragraph 2 above, of the Reservation Rewards program and its terms (including the fact that she would be

charged $9 per month after a free trial period), and she consented to those terms by taking several affirmative steps to signify her assent. The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

61. Webloyalty and Priceline deny the allegations of this paragraph. The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

62. Priceline only admits the allegations of this paragraph. The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

63. Webloyalty and Priceline only admit that Crouse was presented a banner advertisement and an Enrollment page offering $10 off his next Priceline reservation. The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

64. Webloyalty and Priceline only admit that Crouse responded to both the banner advertisement and the Enrollment page. The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

65. Webloyalty denies the allegations of this paragraph. More specifically, it is denied that any confidential credit card information was transferred or used as a result of Plaintiff Crouse responding to the banner advertisement. It is further denied that Plaintiff Crouse was enrolled in the Reservation Rewards program as a result of responding to that banner. Instead, the process by which Plaintiff Crouse was enrolled is accurately set out in paragraph 2 above. The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

66.    Webloyalty and Priceline deny the allegations of this paragraph.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.  Further responding, Webloyalty states that, as Mr. Crouse had agreed when he enrolled in Reservation Rewards, a $9 charge was billed to his credit card on some dates.  On February 8, 2006, Mr. Crouse used the Reservation Rewards automated phone system to cancel his membership.   Mr. Crouse later that day requested a full refund, which was promptly granted.  As a result, Mr. Crouse has not incurred any damages as a result of being enrolled in the Reservation Rewards program.

67.    Webloyalty and Priceline deny the allegations of this paragraph.  Further responding, Webloyalty states that Plaintiff Crouse was fully informed, as set out in paragraph 2 above, of the Reservation Rewards program and its terms (including the fact that he would be charged $9 per month), and he consented to those terms by taking several affirmative steps to signify his assent.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

68.    Webloyalty and Priceline deny the allegations of this paragraph.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

69.    The allegations of this paragraph are denied by E-Babylon, ValueClick and Webloyalty.  E-Babylon and Webloyalty state that the process by and date on which Mr. Melo enrolled in the Reservation Rewards program are correctly set forth in paragraph 2 above.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

70.     The allegations of this paragraph are denied by E-Babylon, ValueClick and Webloyalty.  E-Babylon and Webloyalty state that the process by and date on which Mr. Melo enrolled in the Reservation Rewards program are correctly set forth in paragraph 2 above.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

71.     The allegations of this paragraph are denied by E-Babylon, ValueClick and Webloyalty.  E-Babylon and Webloyalty state that the process by and date on which Mr. Melo enrolled in the Reservation Rewards program are correctly set forth in paragraph 2 above.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

72.     The allegations of this paragraph are denied by E-Babylon, ValueClick and Webloyalty.  E-Babylon and Webloyalty state that the process by and date on which Mr. Melo enrolled in the Reservation Rewards program are correctly set forth in paragraph 2 above.  The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

73.     Webloyalty admits only that in accordance with his enrollment and authorization, Mr. Melo's debit card was charged $9 a month after the initial 30-day trial period because Mr. Melo had affirmatively enrolled in the Reservation Rewards program and—despite repeated disclosures to Mr. Melo concerning his membership in the Reservation Rewards program—Mr. Melo chose to continue his membership and to not cancel his membership either by calling the toll-free number provided or by email.   The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

74.     The allegations of this paragraph are denied by E-Babylon, ValueClick and Webloyalty.  Further responding, Webloyalty states that Plaintiff Melo was fully informed, as set out in paragraph 2 above, of the Reservation Rewards program and its terms (including the fact that he would be charged $9 per month after a free trial period), and he consented to those terms by taking several affirmative steps to signify his assent.

75.     Webloyalty, ValueClick, and E-Babylon deny the allegations of this paragraph. The remaining Defendants lack information sufficient to admit the allegations of this paragraph; therefore, those allegations are denied.

### Plaintiffs' Confidential Witnesses

76.     The allegations in this paragraph are alleged to be based upon a so-called "investigation" supposedly conducted by Plaintiffs and/or their counsel before filing suit and about which Defendants lack information sufficient to admit the allegations.  Therefore, the allegations of this paragraph are denied.  Defendants also deny that Plaintiffs and/or their counsel conducted an adequate pre-suit investigation and aver that had they done so, they would have known that the allegations of the Consolidated Complaint are inaccurate and do not state any claim.  Moreover, the allegations of this paragraph are irrelevant to any claim and do not form the basis for any relief as a matter of law.

77.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

78.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

79.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

80.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

81.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

82.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

83.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

84.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

85.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

86.     Defendants incorporate their response to paragraph 76 as if fully made or repeated herein.

## V.  CLASS ACTION ALLEGATIONS

87.     Admitted only that Plaintiffs has filed the Consolidated Complaint individually and on behalf of three putative classes.  Denied that Plaintiffs are entitled to bring a claim either individually or on behalf of any class, including the classes identified in this paragraph.

88.     This paragraph merely contains a recitation of the purported class sought by Plaintiffs and of a supposed reservation to modify the definition of the purported class; therefore, no response is required,.  To the extent a response may be required, the allegations of this paragraph are denied.

89.     The allegations of this paragraph are denied.

90.     The allegations of this paragraph are denied.

91.     The allegations of this paragraph are denied.

92.     The allegations of this paragraph are denied.

93.     The allegations of this paragraph are denied.

94.     The allegations of this paragraph are denied.

95.     The allegations of this paragraph are denied.

96.     The allegations of this paragraph are denied.

97.     The allegations of this paragraph are denied.

98.     The allegations of this paragraph are denied.

## VI.  SUBSTANTIVE ALLEGATIONS

### COUNT I

**(Violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693e)**
**(Against Webloyalty Only)**

99.     Because this Count is asserted against Webloyalty only, no response is required by the other Defendants.  To the extent any response is required; the allegations are denied by those Defendants.  Webloyalty responds to the first sentence of this paragraph by repeating and realleging the denials and answers contained in each of the paragraphs above as if fully set forth herein.  The second sentence of this paragraph consists solely of Plaintiff Melo's description of this claim and, therefore no response is required.  To the extent any response is required, Webloyalty denies the allegations of the second sentence.

100.    Because this Count is asserted against Webloyalty only, no response is required by the other Defendants.  To the extent any response is required; the allegations are denied by those Defendants.  Webloyalty denies the allegations of this paragraph.

101.    Because this Count is asserted against Webloyalty only, no response is required by the other Defendants.  To the extent any response is required; the allegations are denied by those Defendants.  Webloyalty denies the allegations of this paragraph.

102.    Because this Count is asserted against Webloyalty only, no response is required by the other Defendants.  To the extent any response is required; the allegations are denied by those Defendants.  Webloyalty denies the allegations of this paragraph.

WHEREFORE, it is denied that Plaintiff Melo, either individually or on behalf of a class, is entitled to any relief.  Defendants request that judgment be entered in their favor and that the Court award any and all other relief as is just and proper to Defendants.

## COUNT II

### (Violations of the Electronic Communications Privacy Act)
### (Against All Defendants)

103.    Defendants repeat and reallege the denials and answers contained in each of the paragraphs above as if fully set forth herein.

104.    Defendants deny that Plaintiffs, whether individually or on behalf of any class, are entitled to bring this claim or to any relief.

105.    The allegations of this paragraph are denied.

106.    The allegations of this paragraph are denied.

107.    The allegations of this paragraph are denied.

108.    The allegations of this paragraph are denied.

WHEREFORE, it is denied that Plaintiffs, either individually or on behalf of a class, are entitled to any relief.  Defendants request that judgment be entered in their favor and that the Court award any and all other relief as is just and proper to Defendants.

## COUNT III

### (Civil Theft – Treble Damages)
### (Against All Defendants)

109.    Defendants repeat and reallege the denials and answers contained in each of the paragraphs above as if fully set forth herein.

110.    Defendants deny that Plaintiffs, whether individually or on behalf of any class, are entitled to bring this claim or to any relief.

111.    Admitted only that Plaintiffs have alleged a claim under Connecticut General Statutes §52-564; Defendants deny that Plaintiffs are entitled to bring or maintain any such claim or that Plaintiffs have properly stated one.  The remaining allegations of this paragraph are denied.

112.    This paragraph consists only of a quotation from a statute and thus requires no response.  To the extent a response is required, the allegations of this paragraph are denied.

113.    The Allegations of this paragraph are denied.

114.    The allegations of this paragraph are denied.

115.    The allegations of this paragraph are denied.

116.    The allegations of this paragraph are denied.

117.    The allegations of this paragraph are denied.

118.    The allegations of this paragraph are denied.

119.    The allegations of this paragraph are denied.

120.    The allegations of this paragraph are denied.

WHEREFORE, it is denied that Plaintiffs, either individually or on behalf of a class, are entitled to any relief.  Defendants request that judgment be entered in their favor and that the Court award any and all other relief as is just and proper to Defendants.

## COUNT IV

### (Unjust Enrichment)
### (Against All Defendants)

121.    Defendants repeat and reallege the denials and answers contained in each of the paragraphs above as if fully set forth herein.

122.    The allegations of this paragraph are denied.

123.    The allegations of this paragraph are denied.

124.    The allegations of this paragraph are denied.

125.    The allegations of this paragraph are denied.

126.    The allegations of this paragraph are denied.

127.    The allegations of this paragraph are denied.

128.    The allegations of this paragraph are denied.

129.    The allegations of this paragraph are denied.

130.    The allegations of this paragraph are denied.

WHEREFORE, it is denied that Plaintiffs, either individually or on behalf of a class, are entitled to any relief.  Defendants request that judgment be entered in their favor and that the Court award any and all other relief as is just and proper to Defendants.

## COUNT V

### (Money Had & Received)
### (Against All Defendants)

131.    Defendants repeat and reallege the denials and answers contained in each of the paragraphs above as if fully set forth herein.

132.    The allegations of this paragraph are denied.

133.    The allegations of this paragraph are denied.

134.    The allegations of this paragraph are denied.

135.    The allegations of this paragraph are denied.

136.    The allegations of this paragraph are denied.

WHEREFORE, it is denied that Plaintiffs, either individually or on behalf of a class, are entitled to any relief.  Defendants request that judgment be entered in their favor and that the Court award any and all other relief as is just and proper to Defendants.

## COUNT VI

**(Violation of Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*)**
**(Against Defendants Webloyalty, E-Babylon, ValueClick Only)**

137.    Because this Count is asserted against Webloyalty, E-Babylon, and ValueClick only, no response is required by the other Defendants.  To the extent any response is required; the allegations are denied by those Defendants.  Webloyalty, E-Babylon, and ValueClick repeat and reallege the denials and answers contained in each of the paragraphs above as if fully set forth herein.

138.    Because this Count is asserted against Webloyalty, E-Babylon, and ValueClick only, no response is required by the other Defendants.  To the extent any response is required; the allegations are denied by those Defendants.  Webloyalty, E-Babylon, and ValueClick deny that Plaintiff Melo, whether individually or on behalf of any class, is entitled to bring this claim or to any relief.

139.    Because this Count is asserted against Webloyalty, E-Babylon, and ValueClick only, no response is required by the other Defendants.  To the extent any response is required; the allegations are denied by those Defendants.  Webloyalty, E-Babylon, and ValueClick admit

only that Plaintiff Melo has alleged a claim under the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.;* Webloyalty, E-Babylon, and ValueClick deny that he is entitled to bring or maintain any such claim or that he has properly stated one.

140.    This paragraph consists solely of a legal conclusion and, therefore no response is required.  To the extent any response is required, the allegations of this paragraph are denied.

141.    This paragraph consists solely of a legal conclusion and, therefore no response is required.  To the extent any response is required, the allegations of this paragraph are denied.

142.    This paragraph consists solely of a legal conclusion and, therefore no response is required.  To the extent any response is required, the allegations of this paragraph are denied.

143.    The allegations of this paragraph are denied.

144.    The allegations of this paragraph are denied.

145.    The allegations of this paragraph are denied.

146.    The allegations of this paragraph are denied.

147.    The allegations of this paragraph are denied.

148.    The allegations of this paragraph are denied.

WHEREFORE, it is denied that Plaintiff Melo, either individually or on behalf of a class, is entitled to any relief.  Defendants request that judgment be entered in their favor and that the Court award any and all other relief as is just and proper to Defendants.

### COUNT VII

**(Violation of the California Unfair Competition Law,
Business & Professions Code §§17200, *et seq.*)
(Against Defendants Webloyalty, E-Babylon, Value Click Only)**

149.    Because this Count is asserted against Webloyalty, E-Babylon, and ValueClick only, no response is required by the other Defendants.  To the extent any response is required;

the allegations are denied by those Defendants.  Webloyalty, E-Babylon, and ValueClick repeat

and reallege the denials and answers contained in each of the paragraphs above as if fully set

forth herein.

150.    Because this Count is asserted against Webloyalty, E-Babylon, and ValueClick

only, no response is required by the other Defendants.  To the extent any response is required;

the allegations are denied by those Defendants.  Webloyalty, E-Babylon, and ValueClick deny

that Plaintiff Melo, whether individually or on behalf of any class, is  entitled to bring this claim

or to any relief.

151.    The allegations of this paragraph are denied.

152.    The allegations of this paragraph are denied.

153.    The allegations of this paragraph are denied.

154.    The allegations of this paragraph are denied.

155.    The allegations of this paragraph are denied.

156.    The allegations of this paragraph are denied.

157.    The allegations of this paragraph are denied.

WHEREFORE, it is denied that Plaintiff Melo, either individually or on behalf of a class,

is entitled to any relief.  Defendants request that judgment be entered in their favor and that the

Court award any and all other relief as is just and proper to Defendants.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs, individually and on behalf of any class, have failed to state any claim for which

relief can be granted.

## Second Affirmative Defense

Plaintiffs' causes of action, whether asserted individually or on behalf of any class, are barred in whole or in part by Plaintiffs' (or the class members') comparative and/or contributory negligence.

## Third Affirmative Defense

Plaintiffs' recovery, whether on behalf of themselves or on behalf of a class, if any, should be reduced by Plaintiffs' (or the class members') comparative negligence.

## Fourth Affirmative Defense

Neither Plaintiffs' nor the alleged classes' alleged damages were proximately caused by any act or omission by Defendants.

## Fifth Affirmative Defense

Plaintiffs' claims, whether individual or on behalf of any class, are barred because there is no legally cognizable injury.

## Sixth Affirmative Defense

The claims of the Consolidated Complaint are barred, in whole or in part, by the doctrine of accord and satisfaction.

## Seventh Affirmative Defense

Plaintiffs' causes of action, individually and on behalf of any class, are barred because, at all relevant times, Plaintiffs were knowledgeable purchasers who were aware or should have been aware of the facts complained of and, therefore, Plaintiffs expressly or impliedly assumed the risk of any alleged damages.

## Eighth Affirmative Defense

Plaintiffs' causes of action, individually and on behalf of any class, are barred because a reasonable purchaser and/or consumer would have been aware of the facts complained of.

**Ninth Affirmative Defense**

Plaintiffs lacks standing.

**Tenth Affirmative Defense**

Plaintiffs' claims, whether asserted individually or on behalf of any class, are barred by the doctrine of estoppel.

**Eleventh Affirmative Defense**

Plaintiffs' claims, whether asserted individually or on behalf of any class, are barred by the doctrine of waiver.

**Twelfth Affirmative Defense**

Neither Plaintiffs nor the purported class have suffered any damages.

**Thirteenth Affirmative Defense**

Plaintiffs' claims, whether asserted individually or on behalf of any class, are barred by the defense disclosure and consent.

**Fourteenth Affirmative Defense**

Plaintiffs' claims, whether asserted individually or on behalf of any class, are barred because the disclosures made by Defendants satisfied legal requirements.

**Fifteenth Affirmative Defense**

No claim asserted can be maintained on behalf of any class because of Plaintiffs' failure to satisfy the requirements of Rule 23.

**Sixteenth Affirmative Defense**

Plaintiff Melo has failed to mitigate his alleged damages.

## Seventheenth Affirmative Defense

Plaintiff Melo's claims under California state law, whether asserted individually or on behalf of any class, are barred in whole or in part to the extent that they purport to apply to alleged conduct and/or injury occurring outside of California.

## Nineteenth Affirmative Defense

Plaintiff Melo's claim under the California Consumer Legal Remedies Act, whether asserted individually or on behalf of any class, is barred to the extent Plaintiff seeks damages because Plaintiff has not satisfied the applicable notice requirements for such claim.

## Twentieth Affirmative Defense

Plaintiff Crouse's claims are barred in whole or in part by the doctrine of unclean hands.

## Twenty-First Affirmative Defense

Plaintiffs' claims against non-Webloyalty defendants are barred by the Communications Decency Act.

Defendants reserve the right to amend their Affirmative Defenses.

Respectfully submitted,

WEBLOYALTY.COM, INC, FANDANGO, INC.,
VALUECLICK,INC., E-BABYLON, INC.,
PRICELINE.COM, INC., NELSON SHANE
GARRETT, AND MAXIM O. KHOKHLOV

By Their Attorneys

 /s/ Gabrielle R. Wolohojian
Gabrielle R. Wolohojian, BBO # 555704
John J. Regan, BBO # 415120
Joan S. Mitrou, BBO # 664499
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel:  617-526-6000
Fax:  617-526-5000

Steven Lieberman, *pro hac vice*
Anne M. Sterba, *pro hac vice*
C. Nichole Gifford, *pro hac vice*
Rothwell, Figg, Ernst & Manbeck P.C.
1425 K Street NW
Washington, DC 20005
Tel:  202-783-6040
Fax:  202-783-6031

Dated:  July 20, 2007

Certificate of Service

I, Joan Mitrou, hereby certify that a true and accurate copy of the above document has been filed and served through the Court's electronic filing system, this 20th day of July 2007.  I also certify that I caused the above document to be served by email upon the counsel listed on the attached Service List who do not receive electronically Notices of Electronic filing and that a copy of the foregoing document was served by hand on Mr. Gael Mahony.

__/s/ Joan Mitrou

# SERVICE LIST
# 1:07-md-01820-JLT

## Manual Notice List

**Michael L. Greenwald**
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
Suite 500
120 E. Palmetto Park Road
Boca Raton, FL 33432

**Mark R. Miller**
Wexler, Toriseva, Wallace
One North LaSalle Street
Suite 2000
Chicago, IL 60602

**Mark J. Tamblyn**
Wexler, Toriseva, Wallace
1610 Arden Way
Suite 290
Sacramento, CA 95815

US1DOCS 6233670v4