UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 07-01820 - JLT<br><br>Lead Case: 06-11620-JLT |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Each of the named Plaintiffs in this consolidated action voluntarily entered into a contract after having received full and accurate disclosures about its terms – including the costs of the Reservation Rewards program, the billing arrangements of the program, and the fact that the credit or debit card information they provided would be billed. There was no constraint placed on the amount of time the Plaintiffs could take to read and consider the terms of the offer. Plaintiffs were not required to enter into the contract or to enroll in the Reservation Rewards program: each Plaintiff's internet purchase would take place whether or not he or she decided to enroll in the program. Perhaps most significantly, not only was each of the Plaintiffs provided full disclosures about the terms of the Reservation Rewards program at the time of contract formation, each needed to take several affirmative steps in order to enter into the contract, including providing his or her electronic signature *twice* to signify assent. In addition to twice providing their electronic signature, Plaintiffs needed to (and did) click on a button prominently labeled "YES!" before they were enrolled. Plaintiffs were also expressly told that taking these actions would constitute their electronic signature. Directly above the location where Plaintiffs were required to twice enter their electronic signatures was the following language, which clearly alerted Plaintiffs to the significance of their electronic signature, the authorization they were giving, and their consent:

> By entering my e-mail address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize [e-tailer's name] to securely transfer my name, address[1] and credit or debit card information[2] to Reservation Rewards for billing and benefit processing.

Local Rule 56.1 Statement of Undisputed Facts ("56.1 State.") ¶¶ 15, 38, 62, 87.  Not until Plaintiffs had unambiguously and affirmatively taken several steps to join the program and given their consent to its terms were they enrolled in Reservation Rewards or was their credit card or debit card information transferred or used by Defendants for purposes of the Reservation Rewards program.

Where, as here, Plaintiffs have chosen to enter into a contract having received full and accurate information about its terms at the time of its formation and having taken several affirmative steps to signify their agreement and assent, they have no claim.  *E.g.,*  I.Lan Systems, Inc. v. Netscout Srv. Level Corp., 183 F. Supp. 2d 328, 338 (D. Mass. 2002) (enforcing clickwrap license agreement where the purchaser had clicked "I agree" button).  This remains the case even if – for whatever reason – Plaintiffs later decided that they no longer wanted to remain as members of the Reservation Rewards program, or later felt that they no longer wanted to receive the benefits of membership, or (if that is the case) they decided that membership did not hold sufficient value to them, or even if they signed up for the program without paying attention to its terms.  DeJohn v. The TV Corp. Int'l, 245 F. Supp. 2d 913, 919 (C.D. Ill. 2003) (plaintiff entered into a binding online click-wrap agreement by clicking on an "I Agree" icon, which indicated he had read, understood, and agreed to the terms of the parties' contract; fact that plaintiff claimed he did not read the contract was irrelevant).

---

[1]   Before the word "address" in this text as it was displayed to Plaintiff Kuefler was inserted the word "email."  56.1 State. ¶ 15.

[2]   At this point in the disclosure to plaintiff Staaf, the words "used for my purchase at flower.com" were included.  56.1 State. ¶ 62.

The fact that the agreements at issue here were entered into on the internet does not alter the ordinary law of contracts: an offer was made; the terms of the offer were disclosed; Plaintiffs were free to accept or decline the offer; and Plaintiffs affirmatively chose to accept. The Uniform Electronic Transactions Act provides that a contract is of equal force even if entered into or signed electronically. *Codified in 46 states, including at* Mass. Gen. L. c. 110G, §§ 7 (a) & (b) ("A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation" and "A record or signature may not be denied legal effect or enforceability solely because it is in electronic form"); Conn. Gen. Stat. §§ 1-272(a) & (b) (same); Cal. Civil Code §§ 1633.7(a) & (b) (same); Texas Bus. and Commerce Code ch. 43, §§ 43.007(a) & (b). Likewise, federal law provides that a "signature [or] contract may not be denied legal effect, validity, or enforceability solely because it is in electronic form." 15 U.S.C. §7001(a)(1).

For these reasons, and those set out in more detail below, Defendants respectfully request that summary judgment be entered in their favor on all claims.

## SUMMARY OF UNDISPUTED MATERIAL FACTS

In this brief, Defendants set out only a summary of the core undisputed facts that are common to all named Plaintiffs. A full recitation of the undisputed facts is contained in the Rule 56.1 Statement and affidavits submitted herewith, to which the Court and Special Master are respectfully referred.

Each of the Plaintiffs visited one of the websites of the e-tailer Defendants, and made a purchase on those respective websites. Id. at ¶¶ 1, 25, 52, 77. Towards the end of their purchase processes, each Plaintiff was presented with an optional offer of enrolling in the Reservation Rewards program. Id. at ¶¶ 3, 28-29, 52, 53, 78. Although the process by which each of the named Plaintiffs was directed to the Enrollment page for Reservation Rewards varied, all four

Plaintiffs received an Enrollment page describing in detail the terms of the Reservation Rewards program.  Id. at ¶¶ 7, 29-30, 55, 78, 80.   Among other things, each Enrollment page:

- at least four times disclosed that there was a monthly fee[3] associated with becoming a member of Reservation Rewards (Id. at ¶¶ 8, 32, 56, 81);

- disclosed that the credit or debit card the Plaintiff used for his or her internet purchase would be used for the Reservation Rewards charges (Id. at ¶¶ 7, 31, 55, 80);

- disclosed that the credit or debit card information would be transferred by the e-tailer to Reservation Rewards for billing purposes (Id. at ¶¶ 7, 35, 61, 84);

- informed the Plaintiffs that by typing in their email address (twice), they were providing their electronic signature (Id. at ¶¶ 15, 38, 62, 87);

- informed Plaintiffs that, by providing their electronic signatures, they were authorizing the transfer of their credit or debit card information to Reservation Rewards for billing (Id. at ¶¶15, 38, 62, 87);

- informed Plaintiffs that charges would continue until they cancelled their membership (Id. at 11, 34, 58, 83);

- informed Plaintiffs that they could cancel their membership at any time and provided contact information should they wish to do so (Id. at ¶¶ 9, 11, 34, 58, 83);

- informed Plaintiffs that the email address they provided would be used to communicate with them (Exhibits 2, 11, 25, 37 to Declaration of Tamra Lichtman ("Lichtman Decl.") ; and

- required each Plaintiff to take no less than three affirmative steps to enroll in the program and signify their assent to the transfer and use of their credit or debit card information:  (1) type their full email address; (2) type their full email address a second time; and (3) click on the "YES!" button.  (56.1 State. ¶¶ 13-14, 36-37, 60-61, 85-86).

All material information -- including the fact that the Reservation Rewards program carried a monthly charge and that those charges would be posted to the credit or debit card the

---

[3]  The offers made to plaintiffs Kuefler, Staaf, and Melo provided for a 30-day free trial period before any monthly charge.  56.1 State. ¶¶ 11, 56, 83.

Plaintiff used for his or her internet purchase – was prominently displayed in close proximity to the boxes where the Plaintiffs were required to enter their electronic signatures should they choose to join the program.  See Exhibits 2, 11, 25, 37 to Lichtman Decl.  Moreover, the offer and billing details were offset in a box next to the electronic signature boxes and were displayed in a different color.  So, too, was the "YES!" button, which was both large and brightly colored.  See id.  Finally, directly above the signature boxes, was the text that explained that, by providing their email address (twice), Plaintiffs were providing their electronic signature and authorizing the transfer and use of their credit or debit card information.  56.1 State. ¶¶ 15, 38, 62, 87.  In short, Plaintiffs did not have to go hunting for any of the information they claim in this lawsuit they were not told.

No Plaintiff was enrolled in the Reservation Rewards program without receiving the disclosures set out above.  See id. at ¶¶ 16, 39, 63, 88.  Nor was any Plaintiff enrolled in the program without having to affirmatively type his or her electronic signature twice and clicking on the "YES!" button.  Id. at ¶¶ 13, 36, 60, 85.  Similarly, no credit or debit information was transferred or used before the disclosures and the affirmative steps of acceptance.  Id. at ¶¶ 16, 42, 66, 90.  Because of the number of steps Plaintiffs were required to take should they wish to accept the Reservation Rewards offer, it was easier for each Plaintiff not to join Reservation Rewards than it was to join.  See id. at ¶¶ 17, 40, 53, 64, 78, 89.

After enrollment, no Plaintiff was immediately charged any fee.  Plaintiffs Kuefler, Staaf, and Melo had a 30-day free trial period before any charges were posted to their credit or debit card for the Reservation Rewards program.  Id. at ¶¶ 23, 73, 102.  Plaintiff Crouse was not charged until one week after his enrollment.  Id. at ¶ 46.  Before any charge was posted to any Plaintiff's card, Reservation Rewards sent emails to each Plaintiff reiterating the terms of the

program – including (a) the fact that charges would be incurred and posted to Plaintiff's credit or debit card; and (b) information on how to cancel their membership (by phone or internet) and avoid any fees. Exhibits 3, 13, 27, 40 to Lichtman Decl.  All of these emails were sent to the addresses provided by the Plaintiffs on the Enrollment page as their electronic signature and carried intelligible subject lines alerting Plaintiffs that they contained information about the Reservation Rewards program.  See 56.1 State. ¶¶ 20-23, 46, 48-49, 70-72, 97, 98, 100, 101. Thereafter, each Plaintiff received additional emails concerning their membership. Id. at ¶¶ 20-23, 46, 48-49, 70-72, 97, 98, 100, 101.  Despite receiving these emails,[4] no Plaintiff chose to cancel his or her membership before the first charge was posted.  See id. at ¶¶ 24, 50, 75, 104.

Ultimately, each Plaintiff contacted Reservation Rewards and asked that his or her membership be cancelled.  Id.   Plaintiffs Kuefler and Crouse also asked Reservation Rewards to refund their membership fees; Plaintiff Staaf's credit card issuer did so on her behalf.  Id. at ¶¶ 24, 50, 76.  All of these requests were promptly honored. Id. at ¶¶ 24, 50, 75, 104.  Accordingly, Plaintiffs, Kuefler, Crouse, and Staaf have not incurred any damages as a result of having chosen to become members of the Reservation Rewards program.  See id. at ¶¶ 24, 50, 76.

There is no genuine dispute as to the truth of the matters set out above.

---

[4]   The Uniform Electronic Transactions Act provides that an electronic communication is received when "it enters an information processing system that the recipient has designated or uses for the purpose of receiving electronic records or information of the type sent and from which the recipient is able to retrieve the electronic record." *Codified in 46 states, e.g. at* Mass. Gen. L. c. 110G, § 15(b)(1); Conn. Gen. Stat. § 1-280(b)(1); Cal. Civil Code § 1633.15 (b) (same); Texas Bus. and Commerce Code ch. 43, § 43.015(b).  Because all emails were sent to the email addresses provided by Plaintiffs themselves, all those emails were also "received."

**STANDARD FOR MOTION**

A court must grant summary judgment where, as here, the moving party shows that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The fact dispute must be "genuine" and it must concern a "material" fact in order to defeat such a motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Conclusory assertions, legal opinions, and naked allegations unsupported by admissible evidence do not establish genuine issues of material fact and cannot defeat summary judgment. See Fed. R. Civ. P. 56(e); Nicholson v. Promoters On Line Listing, 159 F.R.D. 343, 348 (D. Mass. 1994) (Court must "reject responses by nonmovants that adduce statements not based on personal knowledge or that adduce conjectural or conclusory allegations").

Plaintiffs cannot rest on their pleadings or on unsupportable assertions or speculation to avoid summary judgment; their claims can proceed only if they present admissible evidence as to each element. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). Because the Plaintiffs' individual claims lack merit, the entire action must be dismissed. See Great Rivers Coop. of Southeastern Iowa v. Farmland Industries, Inc., 120 F.3d 893, 899 (8th Cir. 1997) (once claims of named Plaintiff are dismissed, entire action should be dismissed).

**ARGUMENT**

Because not all claims are asserted by the same Plaintiffs or against the same Defendants, the argument below is organized as follows: First, claims asserted by all Plaintiffs are discussed, with the statutory claim under the Electronic Communications Privacy Act ("ECPA") discussed first and the common law claims next. Second, the claims asserted by Plaintiff Melo are addressed.

I.  **PLAINTIFFS' CLAIM (Count II) UNDER THE ECPA FAILS AS A MATTER OF LAW**

   A.  **Plaintiffs' ECPA Claim Fails Because They Consented to the Transmission of Their Credit Card Information to Reservation Rewards**

The ECPA prohibits a person from "intentionally intercept[ing] . . . [any] electronic communication" or from intentionally disclosing the contents of such an intercepted communication. 18 U.S.C. § 2511(1)(a), 2511(1)(c). However, the statute contains a clearly-stated exception where one of the parties to the communication has given prior consent to the purported interception. 18 U.S.C. § 2511(2)(d); see also U.S. v. McDowell, 918 F.2d 1004, 1006 (1st Cir. 1990) ("The statute specifically provides that telephone calls may be intercepted 'where one of the parties to the communication has given prior consent to such interception.' 18 U.S.C. § 2511(2)(d).").

Here, the undisputed facts establish that the Plaintiffs consented to the transmission of their credit card or debit card information to Reservation Rewards. The Plaintiffs took multiple affirmative steps to indicate their desire to enroll in the Reservation Rewards program on an enrollment form that contained repeated descriptions of the terms of membership. When the Plaintiffs typed their email address two times into the enrollment form, they did so immediately beneath this legend: "By entering my e-mail address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and ***authorize*** [relevant e-tailer] ***to securely transfer my name,*** [] ***address and credit or debit card information to Reservation Rewards*** for billing and benefit processing." 56.1 State. ¶¶ 15, 38, 62, 87. (emphasis added)[5]

---

[5]   In the case of Plaintiff Staaf, this text read: "By entering my email address as my electronic signature and clicking, YES, I have read and agree to the Offer and Billing Details and authorize the secure transfer of my name, address and credit or debit card information used for my purchase at flower.com to Reservation Rewards for billing and benefit processing." 56.1 State. ¶ 62.

To the extent the Plaintiffs claim that they did not read or understand the full and accurate disclosures and descriptions of the relevant terms presented to them before they twice entered their email address and clicked "YES!," their ECPA claim still fails. A party's consent is not vitiated simply because he claims not to have read the relevant contract terms. E & F Construction Co., Inc. v. Rissil Construction Assocs., 181 Conn. 317, 321 (1980); Boynton v. American Exp. Co., 221 Mass. 237, 240 (1915); Tarulli v. Circuit City Stores, 333 F.Supp.2d 151, 156 (S.D.N.Y. 2004); Izzi v. Mesquite Country Club, 231 Cal. Rptr. 315, 319 (Ct. App. 1986). Defendants have no way of knowing – and cannot be held to the burden of knowing – what any customer may or may not choose to read. Thus, as a matter of law, consent is determined objectively from the undisputed manifestations of assent: Plaintiffs typing their email addresses twice and clicking "YES!". See Restatement (Second) Torts § 892 ("If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact."). These outward manifestations of assent were placed as close as possible to – indeed, immediately adjacent to – the relevant disclosures so as to maximize the likelihood that the Plaintiffs would read the disclosures. Defendants cannot be, and are not, required to do more.

      **B.**    **The ECPA Claim Also Fails Because there was no "Interception" By Webloyalty within the Meaning of the Statute**

The District of Massachusetts has recognized that interception "requires the electronic communication to be acquired before it reaches its intended destination, *i.e.,* during transmission." Eagle Investment Sys. Corp. v. Tamm, 146 F. Supp. 2d 105, 112 (D. Mass. 2001). Here, the undipusted facts are that the information Plaintiffs intentionally transmitted to the website with which they purchased an item was later re-transmitted to Reservation Rewards – after Plaintiffs consented to such transfer. Such post-transmission use does not constitute a claim

under the ECPA.  See Tamm, 146 F. Supp. 2d at 113 ("Because the acquisition occurred after - not during - transmission, Plaintiff fails to state facts to support a Wiretap-Act violation."); United States v. Moriarty, 962 F. Supp. 217, 221 (D. Mass. 1997) (adopting Magistrate Judge's Report and Recommendation) ("Only the interception of voice mail while in transmission, like a wiretap of a telephone, can amount to a violation of Section 2511.").  For this reason too, judgment should be entered on the ECPA claim.

## II. PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR UNJUST ENRICHMENT (COUNT IV) [6]

Plaintiffs each entered into a contract with Webloyalty governing their membership in Reservation Rewards, and there is nothing "unjust" about requiring them to honor their side of the bargain.  The existence of a contract between the parties forecloses assertion of an equitable claim of unjust enrichment.  See Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 162 (1st Cir. 2005); Ruiz v. Bally Total Fitness Holding Corp., 447 F. Supp. 2d 23, 29 (D. Mass. 2006).  Because a contract governs the relations between the parties, Plaintiffs' unjust enrichment claim cannot be maintained.  See Platten v. H.G. Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006) ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment."); see also Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (same under California law); McIntosh v. Wiley, No, 5:04-cv-120, 2006 U.S. Dist. LEXIS 89589, at *17 (S.D. Tex. Dec. 11, 2006) (same under Texas law); Meaney v. Connecticut Hospital Assn, Inc., 250 Conn. 500, 517 (1999) (same under

---

[6] The question of which law should be applied to Plaintiffs' common-law claims need not be decided at this juncture because the laws of Massachusetts, Connecticut, New York, Texas, and California lead to the same result with respect to the issues presented by this motion.  To demonstrate the lack of conflict among the various jurisdictions' laws on these particularly issues, decisions from each jurisdiction are cited.

Connecticut law); Eagle Comtronics v. Pico Prods., 682 N.Y.S.2d 505, 506 (N.Y. App. Div. 1998) (same under New York law).

The terms of the Reservations Rewards program were contained in a written agreement described on the Enrollment pages presented to each Plaintiff. The Plaintiffs assented to the terms of the Reservation Rewards program, including the use and transmission of their credit or debit card information and the monthly membership fee. Where the Plaintiffs entered into a contract, the terms of which were fully disclosed to them, there can be no claim for unjust enrichment when – as here – Defendants received nothing other than what they were entitled to under the terms of the contract itself. See Platten, 437 F.3d at 130; Feng v. Dart Hill Realty, Inc., 601 A.2d 547, 548, 549 (Conn. App. Ct. 1992) (reversing jury verdict for plaintiff where the verdict permitted recovery for unjust enrichment in a relationship between parties governed by an express contract); see also Paracor, 96 F.3d at 1167; McIntosh, 2006 U.S. Dist. LEXIS 89589 at *17; Eagle Comtronics, 682 N.Y.S.2d at 506.

Plaintiffs cannot create a claim by claiming that they did not read, pay attention to, or understand the terms of the agreement. Defendants fully satisfied their obligations to Plaintiffs by providing full and accurate information to them. Plaintiffs' decision not to read that information, or to skim it, or to ignore it, or to sign up for the program without understanding its terms, or whatever other reason they may come up with for their claim that they signed up without knowing the terms of the program, are no basis for liability. Whether Plaintiffs reviewed and completely understood the terms of the agreement is of no legal consequence. See DeJohn v. The .TV Corp. Int'l, 245 F. Supp. 2d at 919 (plaintiff entered into a binding online click-wrap agreement by clicking on an "I Agree" icon, which indicated he had read, understood, and agreed to the terms of the parties' contract; fact that plaintiff claimed he did not read the contract was

- 11 -

irrelevant); Greenwich Contracting Co., Inc. v. Bonwit Construction Co., Inc., 156 Conn. 123, 130 (1968) (where the parties entered into a contract and neither party engaged in inequitable or fraudulent conduct, the doctrine of unjust enrichment did not apply); see also Tarulli v. Circuit City Stores, 333 F.Supp.2d 151, 156 (S.D.N.Y. 2004) (parties are bound by contracts whether or not they read them); Boynton, 221 Mass. at 240 (failure to read contract, where no fraud or concealment by defendants appear, does not estop reliance in its terms); Izzi, 231 Cal. Rptr. at 319 ("One who assents to a contract cannot avoid its terms on the ground he failed to read it."); First City Mortgage Co. v. Gillis, 694 S.W.2d 144, 146-47 (Tex.App.-Houston [14th Dist.] 1985) (absent fraud, "one who signs an agreement without knowledge of its contents is presumed to have consented to its terms and is charged with knowledge of the agreement's legal effect").

Finally, with respect to Plaintiffs Kuefler, Crouse, and Staaf, the claim should also be dismissed for the additional independent reason that they undisputedly asked for and received complete refunds. Accordingly, the Defendants have retained no benefit with respect to those Plaintiffs, nor have those Plaintiffs suffered any detriment. CSX Transp., Inc. v. Recovery Express, Inc., 415 F. Supp. 2d 6, 12 (D. Mass. 2006) (granting summary judgment on unjust enrichment claim where Plaintiff presented no evidence that the defendants retained any benefit); Paulsen v. Kronberg, 786 A.2d 453, 455 (Conn. App. Ct. 2001) (affirming judgment for defendant where a contract governed and Plaintiff had been paid what was due him under that contract); Van de Kamp v. Bank of America Nat'l Trust & Sav. Ass'n, 251 Cal. Rptr. 530, 547 (Ct. App. 1988) ("Unjust enrichment presupposes the *acceptance and retention* of a benefit by one party."); Allen v. Berrey, 645 S.W.2d 550, 553 (Tex. App. 1982) (term unjust enrichment refers to the "failure to make restitution of benefits").

**III.    PLAINTIFFS' CLAIM FOR MONEY HAD AND RECEIVED (COUNT V) FAILS**

In order to maintain a claim for money had and received, Plaintiffs must demonstrate that Defendants obtained money from them under circumstances that make it unfair not to return it. Blue Cross of Massachusetts, Inc. v. Travaline, 398 Mass. 582, 588 (1986) ("an action for money had and received will lie where the defendant has received money or its equivalent which in equity and good conscience belongs to the plaintiff") (internal quotations omitted); see also Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 125 (2d Cir. 1984) (same under New York law); Monroe Nat'l Bank v. Catlin, 82 Conn. 227, 231 (1909); Miller-Rogaska, Inc. v. Bank One, 931 S.W.2d 655, 662-63 (Tex. App. 1996); Traders' Finance Corp. v. Sanders, 33 P.2d 474, 476 (Cal. Ct. App. 1934). The claim sounds in equity and is available only to a Plaintiff who has no remedy at law. Because the relationships among the parties here are governed by an express contract, no claim in equity can be maintained. See Okmyansky, 415 F.3d at 162 (holding that the existence of an express contract forecloses a claim for money had and received); Ruiz , 447 F. Supp. 2d at 29 (same); Russell v. South Britain Society, 9 Conn. 508 at *8 (1833) (where a contract is in force, there can be no recovery for money had and received); see also Langley Partners, L.P. v. Tripath Technology, Inc., 2006 WL 563053 at *7 (N.D. Cal. 2006) (granting defendant's motion to dismiss plaintiff's claim for money had and received because of existence of a purchase agreement).

Further, Plaintiffs as a matter of law cannot establish that Defendants have done anything "unfair" because the undisputed facts show that, after full disclosure, Plaintiffs affirmatively contracted to join Reservation Rewards and received the benefits of membership. See DiMonda v. Freedom Federal Sav. & Loan Association, 385 Mass. 1012, 1012 (1982) (plaintiff's claim for money had and received failed where the plaintiff received value and the defendant was not wrongfully retaining money which belonged to the plaintiff); Monroe Nat'l Bank v. Catlin, 82

Conn. at 231 (claim for money had and received failed where plaintiff made payment with full knowledge of the facts, although he may not have understood the extent of his rights and obligations); Miller-Rogaska, 931 S.W. 2d at 662-32 (summary judgment granted for defendant bank where the proceeds of misapplied check were refunded by the incorrect payee to the original payor without ever being held by the intended payee); Aaron Ferer, 731 F.2d at 125 (no claim for money had and received where plaintiff's actions caused loss).

Finally, Plaintiffs Kuefler, Crouse, and Staaf were issued full refunds; thus, for the independent reason that the Defendants do not retain anything, the claim must fail with respect to those Plaintiffs. See Blue Cross of Massachusetts, 398 Mass. at 588; Weed v. Weed, 22 Conn. 364 at *3 (1853) (judgment for the defendants because they did not actually possess any money belonging to the plaintiff).

## IV. PLAINTIFFS' CLAIM (Count III) FOR CIVIL THEFT FAILS AS A MATTER OF LAW

To state a claim under Connecticut General Statutes § 52-564,[7] Plaintiffs must demonstrate that the Defendants committed larceny pursuant to Connecticut General Statutes §53a-119, see Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 44 (2000). Lack of consent is a required element of larceny. See, e.g., State v. Calonico, 256 Conn. 135, 153 (2001). Plaintiffs cannot maintain the claim because, as set out above, they consented to the terms and conditions of membership in Reservation Rewards, including the monthly fee. See Hi-Ho Tower, 255 Conn. at 44, 45 (the fact that the plaintiff authorized the defendant's actions was fatal to plaintiff's claim for civil theft); Swift v. Ball, 2005 Conn. Super. LEXIS 417 at *34

---

[7]    It is doubtful that Plaintiffs (none of whom is a Connecticut resident) have standing to assert a claim under the Connecticut Civil Theft statute against defendants who are not Connecticut residents.

(Conn. Super. Ct. Feb. 22 2005) (attached as Exhibit A) (former business partner did not commit civil theft by taking certain property of his brother-in-law's corporation where he took the items with the corporation's knowledge, consent, and permission, and reasonably believed that he could retain possession of the items pursuant to the division of the assets by the business partners).

## V.   PLAINTIFF MELO'S CLAIM UNDER THE EFTA (Count I) FAILS

Plaintiff Melo's claim that Webloyalty violated section 1693(e) of the Electronic Fund Transfers Act ("EFTA") fails because Webloyalty complied with the requirements of section 1693(e), and Plaintiff Melo affirmatively consented to enrollment in the Reservation Rewards program.

Section 1693(e) of the EFTA requires that a "preauthorized electronic fund transfer . . . be authorized by the consumer in writing," and that "a copy of such authorization . . . be provided to the consumer." The undisputed facts demonstrate that Plaintiff Melo has not alleged, and cannot establish, any conduct violating section 1693(e). First, Mr. Melo provided written authorization for the transfer of Reservation Rewards monthly membership fee. Specifically, on August 3, 2005, Mr. Melo provided Webloyalty with his binding electronic authorization for enrollment in the Reservation Rewards program and for membership fees to be billed to the debit card he used for his 123inkjets.com transaction on that same day. See 56.1 State. ¶¶ 85-87. Second, Mr. Melo was provided with a copy of his authorization. Indeed, immediately after Mr. Melo enrolled in the Reservation Rewards program, a new browser window opened on his computer, which repeated the terms of the program, including the cost and the fact that, after the trial period expired, the debit card he used for his 123inkjets.com transaction (identified by debit card type and the last four digits of the card), would be billed for his enrollment. Lichtman Decl. ¶ 74. In addition, also on the same day that Mr. Melo enrolled in the Reservation Rewards

program, he received an email at the address he provided, confirming his electronic enrollment and billing authorization and again describing the charges that he would incur after the expiration of his thirty-day trial period.  Id. at ¶ 75.

In addition, where, as here, a Plaintiff electronically consents to incurring charges after receiving disclosures about them, there has been no violation of section 1693(e).  See Brown v. Bank of America, 457 F. Supp. 2d 82, 90 (D. Mass. 2006) (EFTA claim failed where plaintiffs had to affirmatively consent to being charged on a "click through" screen before a fee was charged to plaintiffs; electronic consent precluded establishment of a causal link between allegedly ill-placed disclosure and monetary loss).

## VI. PLAINTIFF MELO'S CLAIMS UNDER CALIFORNIA STATE STATUTES (Counts VI and VII) FAIL

Both California statutes asserted by Plaintiff Melo — the California Unfair Competition Law (the "UCL") and the Consumers Legal Remedies Act (the "CLRA") — require loss causation as a necessary element.  To assert a claim under the CLRA, a Plaintiff's injury must occur "*as a result of* the unlawful method, act, or practice."  Cal. Civ. Code § 1780(a) (emphasis added).  Likewise, to assert a claim under the recently-amended UCL statute, a Plaintiff's injury must be "*a result* of" the alleged unfair competition.  See Cal. Bus. & Prof. Code § 17204 (emphasis added).  Absent a showing of loss causation, the claim must be dismissed as a matter of law.  Brown v. Bank of Am., 457 F. Supp. 2d 82, 89 (D. Mass. 2006) (granting summary judgment in favor of Defendants because "absent a showing of a loss of money or property caused by a defendant's unfair practices, a Plaintiff may not proceed in a claim under California's consumer protection law."); see also Californians For Disability Rights v. Mervyn's, LLC, 138 P.3d 207, 210 (Cal. 2006) (Proposition 64 amends standing requirements of California's UCL and adds a requirement of loss causation).

Plaintiff Melo's affirmative steps to enter into the agreement and his consent to its terms break the causal connection between his alleged injury and any allegedly wrongful conduct. Since causation is a necessary element under both CLRA and UCL, both claims thus fail as a matter of law. See Bank of America, 457 F. Supp. 2d. at 89-90 (granting summary judgment in favor of defendants on UCL claim where the class members' affirmative consent to the fee on the click-through screen broke the chain of causation); Wilens v. TD Waterhouse Group, Inc., 15 Cal. Rptr. 3d 271, 276 (Ct. App. 2003) (denying class certification; causation is a necessary element of proof under CLRA); see also Cal. Civ. Code § 1780(a).

The undisputed facts demonstrate that in order to join the Reservations Rewards program, Plaintiff Melo had to take several affirmative steps and consent to its terms. In particular, Mr. Melo had to navigate a specific series of world-wide-web pages, which clearly disclosed the terms of enrollment in the program. 56.1 State. ¶¶ 78-95. First, he typed his email address into the electronic signature box under the statement: "By entering my email address as my electronic signature and clicking YES*, I have read and agree* to the Offer and Billing Details and *authorize 123inkjets.com to securely transfer my name, address and credit or debit card information* to Reservation Rewards for billing and benefit processing." Id. at 85-87 (emphasis added). Second, he entered the same email address in a confirmation box under the words "Verify email." Finally, he clicked the large red "YES!" button. Id. at ¶ 85. Plaintiff Melo could have chosen any of the two "No Thanks" buttons – one directly under the "YES!" button and the other at the top of the page to decline the offer – but he instead chose to enter his email address twice, click the "YES!" button, and thus consented to the terms of the Agreement. Id. at ¶¶ 79, 89. On the same day that Plaintiff Melo enrolled in the Program, he received an email informing him of the charges he would incur after his free trial period expired. Id. at ¶ 96. Two weeks

before his trial membership was to expire, Plaintiff received yet another email at the email address he entered into the Enrollment page as his electronic signature, reminding him of the charges that would be incurred and providing a toll-free number for cancellations. Id. at ¶ 101. Plaintiff Melo was aware of his enrollment in Reservation Rewards and knew how to communicate with the program; he sent an email to Reservation Rewards in the very first month of his enrollment --- **before** any charge was posted to his debit card. Id. at ¶ 99. Plaintiff Melo's express consent to the terms of the program and his choice to not cancel his membership before any charges were posted (despite his knowledge as to how to contact Reservation Rewards), break the chain of required causation between his alleged injury and the allegedly wrongful conduct.

      Finally, courts enforce internet agreements similar to the one at issue here where consumers manifest their assent to the terms of an agreement by clicking on an icon after the opportunity to review the terms and conditions of the agreement. See I. Lan. Sys., 183 F. Supp. at 336 (enforcing a clickwrap license agreement where the purchaser clicked "I agree" icon"); Novak, 309 F. Supp. 2d at 451 (enforcing a forum selection clause where plaintiff had to click button to accept terms of the agreement); DeJohn, 245 F. Supp. 2d at 919 (plaintiff entered into a binding online click-wrap agreement by clicking on an "I Agree" icon, which indicated he had read, understood, and agreed to the terms of the parties' contract). For these reasons, Plaintiff Melo's claims under the UCL and the CLRA fail as a matter of law.

## CONCLUSION

      For each of the reasons set out above, Defendants respectfully request that summary judgment be entered in their favor on all claims. Further, because Plaintiffs' individual claims

should be dismissed, Defendants request that judgment be granted in their favor with respect to the entire action.

        Respectfully submitted,
        DEFENDANTS
        By Their Attorneys


        /s/ Gabrielle R. Wolohojian
        Gabrielle R. Wolohojian, BBO # 555704
        John J. Regan, BBO # 415120
        Joan S. Mitrou, BBO # 664499
        Wilmer Cutler Pickering Hale and Dorr LLP
        60 State Street
        Boston, MA  02109
        Tel:  617-526-6000
        Fax:  617-526-5000

        Steven Lieberman, *pro hac vice*
        Anne M. Sterba, *pro hac vice*
        C. Nichole Gifford, *pro hac vice*
        Rothwell, Figg, Ernst & Manbeck P.C.
        1425 K Street NW
        Washington, DC 20005
        Tel:  202-783-6040
        Fax: 202-783-6031


<u>Certificate of Service</u>

I, Joan Mitrou, hereby certify that a true and accurate copy of the above document has been filed and served through the Court's electronic filing system, this 20th day of July, 2007.  I also certify that I caused the above document to be served by email upon the counsel listed on the attached Service List who do not receive electronically Notices of Electronic filing and that a copy of the foregoing document was served by hand on Mr. Gael Mahony.

        /s/ Joan S. Mitrou

# SERVICE LIST
# 1:07-md-01820-JLT

**Manual Notice List**

**Michael L. Greenwald**
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
Suite 500
120 E. Palmetto Park Road
Boca Raton, FL 33432

**Mark R. Miller**
Wexler, Toriseva, Wallace
One North LaSalle Street
Suite 2000
Chicago, IL 60602

**Mark J. Tamblyn**
Wexler, Toriseva, Wallace
1610 Arden Way
Suite 290
Sacramento, CA 95815