# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 07-01820 - JLT<br><br>Lead Case: 06-11620-JLT |

## DECLARATION OF TAMRA LICHTMAN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Tamra Lichtman, submit the following declaration in support of Defendants' Motion for Summary Judgment.

1.    I have been employed at Webloyalty since June 1999.  I am currently Vice President, Marketing, a position I have held since 2001.  Previously, I served as the company's Marketing Director.  As part of my responsibilities, I oversaw the marketing work done for Fandango.com, Priceline.com, 123inkjets.com, and to the group of websites operated by Defendants Garrett and Khokhlov, including Flower.com, JustFlowers.com, and GiftBasketsASAP.com.  I have detailed knowledge about the world-wide-web page flows and enrollment process that were in place for customers who joined Reservation Rewards while shopping at Fandango.com, Priceline.com, 123inkjets.com, and the group of websites operated by Defendants Garrett and Khokhlov.

2.    This Declaration is based on my personal knowledge of Webloyalty's systems and transaction processes, and their relationship to the systems and processes of Fandango.com, Priceline.com, 123inkjets.com, and the group of websites operated by Defendants Garrett and Khokhlov, and on my review of Webloyalty's records regarding the plaintiffs' enrollment in Reservation Rewards.

- 1 -

Dockets.Justia.com

**Plaintiff Kuefler's Transaction**

3.      Plaintiff Kuefler joined Reservation Rewards through an offer presented on a world-wide-web page for the Fandango Internet-based movie ticket service on December 25, 2005.  See Exhibit 1 to this Declaration, which is a true and correct copy of Plaintiff Kuefler's account page in Webloyalty's Customer Service Administration Tool ("CSAT") screen, listing a "join date" of 12/25/05.

4.      To join Reservation Rewards from an online retailer's world-wide-web site, such as Fandango's movie ticket service, a customer must navigate a specific series of world-wide-web pages.  This collection of related web pages is referred to as a "screen flow."

5.      Each specific Reservation Rewards enrollment process within a retailer's screen flow that is in effect at a particular time on a particular retailer's web site has a unique identifying number, referred to as its Campaign ID, or CPID.  Webloyalty's customer service records show that Plaintiff Kuefler enrolled in Reservation Rewards through CPID 56192, as reflected in the first five digits of the campaign code listed on the CSAT.  See Exhibit 1 to this Declaration (CSAT identifying the campaign as "56192-fan-rr-pob-10cli-1mf-10m-rc350-530-T23").[1]

6.      Under this screen flow, Plaintiff Kuefler first visited the Fandango "Select Tickets" page.  On this page, he was asked to confirm that he wanted to purchase tickets and to confirm the number of tickets that he wanted to buy.  In the lower third of this page was a large gray inset box labeled "**Optional Offer**" in bold.  The box contained a blank square box to the left of the phrase

---

[1]      Each component of this code describes particular details about the offer accepted by Plaintiff Kuefler.  For example, after the CPID, the abbreviations "fan" and "rr" indicates that this was a Fandango solicitation for membership in Reservation Rewards, "1mf" indicates that the customer will receive one month of free service, and "10m" indicates that the price to join Reservation Rewards at this time through this solicitation was $10 per month after the trial period expired.

"Yes - I want my Thank You Reward!  Check this box to claim your $10.00 Cash Back Reward plus Money-Saving Discounts," which Plaintiff Kuefler was required affirmatively to check off in order to learn more about Reservation Rewards.  Below that text, the box offered further details about the discounts and benefits of the Reservation Rewards program, and stated "By checking the box you can find out how to claim your $10.00 Cash Back Reward and Money-Saving Discounts from our preferred partner, Reservation Rewards, during your ticket purchase."  Plaintiff Kuefler was not required to click this box in order to proceed with purchasing his movie tickets, and the box was "unchecked" by default.

7.      To receive more information about Reservation Rewards, Plaintiff Kuefler checked the box for more information and then clicked "Continue" at the bottom of the Select Tickets page. Neither action by Plaintiff Kuefler caused his personal identifying information or his credit card information to be transferred to the Reservation Rewards program, nor was Plaintiff Kuefler at this time enrolled in Reservation Rewards.

8.      Under this screen flow, Plaintiff Kuefler was next directed to a Fandango sign-in page and a Fandango payment page that did not contain any information regarding his enrollment in Reservation Rewards.

9.      Because he clicked the box regarding the Optional Offer, Plaintiff Kuefler was next directed to the Reservation Rewards enrollment page, a true and correct copy of which is attached as Exhibit 2 to this Declaration ("Enrollment page").[2]  If he had not clicked that box, he would instead have bypassed the Enrollment page and proceeded directly to the Fandango "Order Review" page.

_____

[2] A copy of the full-text of the scroll-down box contained on the Enrollment page is also attached at Exhibit 2.

10.     The Enrollment page contained a detailed description of the Reservation Rewards program, including multiple disclosures regarding the cost of the program, the fact that, on enrollment, Plaintiff Kuefler's credit or debit card and other personal information would be transferred from Fandango to the Reservation Rewards program, and that he could cancel at any time.  There was no limit on the amount of time a customer could review the Enrollment page.

11.     To enroll in Reservation Rewards from this Enrollment page, Plaintiff Kuefler was required to take several steps.  First, he was required to type his email address into the empty box under the statement "Sign up for Reservation Rewards by entering your e-mail address and clicking YES below."  Beneath this phrase, the Enrollment page continued:  "By entering my e-mail address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize Fandango to securely transfer my name, e-mail address, and credit or debit card information to Reservation Rewards for billing and benefit processing."  See Exhibit 2.  Second, Plaintiff Kuefler was required to again enter the same email address in a confirmation box.  Third, he was required to click the button next to the highlighted word "YES!" and the phrase "I want my Reservation Rewards benefits and $10.00 Cash Back Award!"  Finally, he was required to click on the "Continue with ticket purchase" button at the bottom of the page.  See Exhibit 2.

12.     Once Plaintiff Kuefler entered his email twice into the enrollment form, clicked the button next to "YES!" and then clicked "Continue with ticket purchase," he was taken to a Fandango "Order Review" page.  At this page, Plaintiff Kuefler needed to click "Complete My Purchase" in order to finalize both his Fandango ticket purchase and his enrollment in Reservation Rewards.  At this time, and not before, Fandango transmitted Plaintiff Kuefler's credit card and identifying information, with the information being encrypted, to the Reservation Rewards program, and Plaintiff Kuefler's unique member number 9773456009 was assigned.  See Exhibit 1 (listing

member number).   It was not possible to join Reservation Rewards from this Fandango screen flow on December 25, 2005, without taking each of these five affirmative steps and, until Plaintiff Kuefler chose to enroll in Reservation Rewards by taking these steps, no credit or debit card or other personal identifying information of Plaintiff Kuefler was transmitted from Fandango to the program.

13.     A customer like Plaintiff Kuefler who has checked the box regarding the Optional Offer on the Fandango Select Tickets page could easily leave the Enrollment page without joining Reservation Rewards.  For example, if the customer clicked "Continue with ticket purchase" without entering his email address and clicking "YES!" on the Enrollment page, he would be taken to the Fandango Order Review page and would not be enrolled in Reservation Rewards when he completed his ticket purchase. Or, the customer could simply click "No Thanks" and then continue with his ticket purchase.

14.     On the day he enrolled, Reservation Rewards sent Plaintiff Kuefler an email welcoming him to the program and describing its benefits and the charges he would incur after his free thirty-day trial period expired.  Attached as Exhibit 3 to this Declaration is a true and correct copy of the form of Welcome email sent to Plaintiff Kuefler.[3]  This email was sent at 5:44:27 PM, December 25, 2005, as shown in program records.  See Exhibit 1 (CSAT screen listing email transmissions).  The subject line to this email was "As requested, your Membership Kit for Reservation Rewards, please login today."

15.     This Welcome email prominently displayed Plaintiff Kuefler's member number and the email address he had provided on enrollment, and informed Plaintiff Kuefler of the Reservation

---

[3]     Program emails are automatically generated from computer templates and only transmission records are retained.  The contents of the email forms attached to this Declaration are identical in all relevant respects to the ones sent to the plaintiffs in connection with their enrollment in Reservation Rewards, except that sample customer profile data (e.g., name, credit card type, join date) are used to generate the sample documents.

Rewards password that had been generated for him, in his case "sail42star". <u>See</u> CSAT (listing the password); Exhibit 3 (form of email). It also explained how Plaintiff Kuefler could claim his $10 cash back award. <u>See</u> Exhibit 3.

16.     One week later, on January 1, 2006, Reservation Rewards sent Plaintiff Kuefler an email displaying his membership number and encouraging him to use his two-for-one dining benefits. Attached as Exhibit 4 is a true and correct copy of the form of email sent to Plaintiff Kuefler on January 1, 2006. <u>See</u> <u>also</u> Exhibit 1 (CSAT screen identifying this form of email as having been sent on this date). The subject line to this email was "New member benefit update from Reservation Rewards."

17.     On January 7, 2006, Reservation Rewards sent Plaintiff Kuefler another email, again displaying his membership number and encouraging him to claim his cash back award and to use his membership benefits. Attached as Exhibit 5 is a true and correct copy of the form of email sent to Plaintiff Kuefler on January 7, 2006. <u>See</u> <u>also</u> Exhibit 1 (CSAT screen identifying this form of email as having been sent on this date). The subject line to this email was "Your $10.00 Cash Back on next Fandango purchase."

18.     On January 10, 2006, two weeks before his free trial period was to expire, Reservation Rewards sent Plaintiff Kuefler an email reminding him that, unless he elected to cancel his membership, his credit card would be charged a $10 membership fee. The subject line to this email was "Benefit and billing reminder notice for Reservation Rewards members." This email also identified the credit card to be billed by its brand and last four digits. And the email explained how Plaintiff Kuefler could cancel his membership if he wished to do so before being charged, and provided a toll-free number to facilitate a cancellation should he wish. Attached as Exhibit 6 to this Declaration is a true and correct copy of the form of reminder email sent to Plaintiff Kuefler on

January 10, 2006.  See also Exhibit 1 (CSAT screen identifying this form of email as having been sent on this date).

19.     On January 24, 2006, Plaintiff Kuefler's trial membership expired and his credit card was billed $10.  See Exhibit 1 (CSAT screen reflecting this billing).  On the same day, another email was sent.  Attached as Exhibit 7 to this Declaration is a true and correct copy of the form of email sent to Plaintiff Kuefler on January 24, 2006.  See also Exhibit 1 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards."

20.     Approximately one month later, on February 22, 2006, Plaintiff Kuefler contacted the Reservation Rewards toll free number and canceled his membership.  He also requested a refund of the $10 previously billed in January 2006.  This request was granted and processed the very next day.  See Exhibit 1 (CSAT records showing that cancellation occurred on February 22, 2006).  Emails were sent to the same address previously on file for Plaintiff Kuefler confirming the cancellation and the refund that very same day.  Attached as Exhibit 8 to this Declaration are true and correct copies of the form of cancellation emails sent to Plaintiff Kuefler on February 22, 2006.

**Plaintiff Crouse's Transaction**

21.     Plaintiff Crouse joined Reservation Rewards through an offer presented at a Priceline.com transaction page on January 11, 2005.  See Exhibit 9 to this Declaration, which is a true and correct copy of Plaintiff Crouse's account page in Webloyalty's Customer Service Administration Tool ("CSAT") screen, listing a "join date" of 1/11/05.

22.     Webloyalty's customer service records show that Plaintiff Crouse enrolled in Reservation Rewards through CPID 20646, as reflected in the first five digits of the campaign code

listed on the CSAT.  <u>See</u> Exhibit 9 to this Declaration (CSAT identifying the campaign as "20646-prc-rr-pob-cof-10tra-1m9-9m-rc42-492-plchg."[4]

23.     Once a customer's Priceline transaction is complete, the customer is taken to a transaction acceptance screen which contains itinerary information for the customer's records. Attached as Exhibit 10 to this Declaration is a true and correct copy of the form of Transaction Acceptance page visited by Plaintiff on January 11, 2005.  This page contained two "banner advertisements" -- or boxes of text containing an internet link that would direct the customer to the Reservation Rewards Enrollment page.  In the top third of the page, at the right side, was a banner advertisement that stated:  "Your request is complete.  Click here to claim Special Offer!" and that included a grey button with the words "Continue" inside.  At the bottom of the page, another banner read:  "Click here to claim your Special Offer for your request today!"

24.     Plaintiff Crouse clicked on one of these banner advertisements and was then taken to the Reservation Rewards Enrollment page coded CPID 20646, a true and correct copy of which is attached as Exhibit 11 to this Declaration ("Enrollment page").  (Both banners led to the same Enrollment page.)  That Exhibit 11 is the Enrollment page coded CPID 20646 is shown by the presence of that code number at the very bottom of the page.

25.     The Enrollment page contained a detailed description of the Reservation Rewards program, including multiple disclosures regarding the cost of the program, the fact that, on enrollment, Plaintiff Crouse's credit or debit card and other personal information would be transferred from Priceline.com to the Reservation Rewards program, and that he could cancel at any

---

[4]     Each component of this code describes particular details about the offer accepted by Plaintiff Crouse.  For example, after the CPID, the abbreviations "prc" and "rr" indicates that this was a priceline.com solicitation for membership in Reservation Rewards and "9m" indicates that the price to join Reservation Rewards at this time through this offer was $9 per month.

time.  There was no limit on the amount of time a customer could review the Enrollment page.  <u>See</u> Exhibit 11.

26.     To enroll in Reservation Rewards from this Enrollment page, Plaintiff Crouse was required to take several steps.  First, he was required to type his email address into the empty box under the statement:  "By entering my email address as my electronic signature and clicking YES, I have read and agree to the Offer Details and authorize Priceline.com to securely transfer my name, address and credit or debit card information to Reservation Rewards for billing and benefit processing."  <u>See</u> Exhibit 11.  Second, Plaintiff Crouse was required to again enter the same email address in a confirmation box under the words "Verify email:"  Third, he was required to click the large red button containing the word "YES!" and above the phrase in red text "I want my Reservations Rewards discounts plus my $10.00 Cash Back Award!"  <u>See</u> Exhibit 11.

27.     A Priceline customer, like Plaintiff Crouse, could easily leave the Enrollment page without joining Reservation Rewards.  Because his Priceline transaction had already been completed, he could simply close the Enrollment page without entering his email address twice and clicking the "YES!" button.  Or he could simply click the "back" button on his web browser, and he would be returned to the Priceline.com Transaction Acceptance page.  Finally, he could click the phrase in blue text just below the email signature boxes and enrollment button, "No thanks, please take me back to Priceline.com" and he would also be returned to the home page of www.priceline.com.

28.     Once Plaintiff Crouse had entered his email twice into the enrollment form and clicked the "YES!" button, he was enrolled in Reservation Rewards.  At this time, and not before, Priceline.com transmitted Plaintiff Crouse's credit card and identifying information to the Reservation Rewards program, and Plaintiff Crouse's unique member number 7222982007 was

assigned.  <u>See</u> Exhibit 9 (listing member number).  It was not possible to join Reservation Rewards

from this Priceline.com screen flow on January 11, 2005, without taking each of these three

affirmative steps and, until Plaintiff Crouse chose to enroll in Reservation Rewards by taking these

steps, no credit or debit card or other personal identifying information of Plaintiff Crouse's was

transmitted from Priceline to the program.

29.     The data transferred from Priceline.com to Reservation Rewards at this point

consisted of the customer's name and address and credit or debit card information, with the

information being encrypted before transmission.  Crouse's email address as he provided it to

Priceline may have also been transmitted.  However, the email address he provided to Priceline

(kcrouse@sympatico.ca) was not recorded or used by Reservation Rewards.  Instead, Reservation

Rewards used the email address Crouse entered twice on the Enrollment page,

(asshifmohamed@hotmail.com), until, as described further below, Crouse later changed his email

address to kcrouse@freshdelmonte.com.

30.     On Plaintiff Crouse's enrollment in Reservation Rewards, he was taken in the same

browser window to a Reservation Rewards welcome screen ("Welcome screen").  A true and correct

copy of the form of this Welcome screen is attached as Exhibit 12 to this Declaration.  This page

contained detailed information how to claim Plaintiff Crouse's $10 cash back off his next

Priceline.com reservation, and repeated much of the information regarding Reservation Rewards that

was presented to him on the Enrollment page, including the program's cost and the fact that, after

the trial period expired, the credit or debit card he had used for his Priceline.com transaction would

be billed for Reservation Rewards.  The Welcome screen also informed Plaintiff Crouse that an

email containing his Membership Kit would be arriving shortly, and suggested he print the page for

his records.  It also directed Plaintiff Crouse's attention to a Frequently Answered Questions section

of the Reservation Rewards web page, and provided a link to email Reservation Rewards customer service with any questions he might have.  <u>See</u> Exhibit 12.

31.    As indicated on the Welcome screen, Reservation Rewards then sent Plaintiff Crouse an email welcoming him to the program and describing its benefits and confirming the offer details including the charges he would incur and that the credit or debit card he had authorized would be used for billing purposes.  Attached as Exhibit 13 to this Declaration is a true and correct copy of the form of Welcome email sent to Plaintiff Crouse.  This email was sent at 7:35:12 PM, January 11, 2005, as shown in program records.  <u>See</u> Exhibit 9 (CSAT screen listing email transmissions).  The subject line to this email was "As requested, your Membership Kit for Reservation Rewards, please login today."

32.    This welcome email prominently displayed Plaintiff Crouse's member number and the email address he had provided on enrollment, and informed him of the Reservation Rewards password that had been generated for him, in his case "penny39hat".  <u>See</u> Exhibit 9 (listing the password); Exhibit 13 (form of email).  It also explained how Plaintiff Crouse could claim his $10 cash back award.  <u>See</u> Exhibit 13.

33.    On January 12, 2005, Reservation Rewards sent Plaintiff Crouse another email describing the Reservation Rewards program and reminding him that "your next $9.00 membership fee will be billed by Reservation Rewards to the credit card or deducted from the debit card you used to join and authorized Reservation Rewards to use for billing and benefit processing," and identifying that credit card by brand and the last four digits of the card number.  The email further explained that the billing would occur on January 18, 2005, and provided a toll free number that Plaintiff Crouse could call if he wanted to cancel his membership and avoid billing.  Attached as Exhibit 14 is a true and correct copy of the form of reminder email sent to Plaintiff on January 12,

2005.  <u>See</u> <u>also</u> Exhibit 9 (CSAT screen identifying this form of email as having been sent on this

date).  The subject line to this email was "Benefit and billing reminder notice for Reservation

Rewards members."

34.    On January 12, 2005, Plaintiff Crouse logged onto the Reservation Rewards web page

and visited the shopping discounts page.   To log in at this time, Plaintiff Crouse would either have

clicked a link in one of the emails sent to him by Reservation Rewards, which would have

automatically logged him in to the Reservation Rewards system, or he would have needed to visit

the Reservation Rewards home page and log in using his email address and the password provided in

his Welcome email.

35.    On January 18, 2005, Plaintiff Crouse's credit card was charged $9 for his first

membership fee.  <u>See</u> Exhibit 9 (CSAT screen reflecting this billing).  As Plaintiff Crouse had

agreed, monthly $9 membership fees were billed until he canceled his membership as described

below.  Also on January 18, 2005, another email was sent.  Attached as Exhibit 15 to this

Declaration is a true and correct copy of the form of email sent to Plaintiff Crouse on January 18,

2005.  <u>See</u> <u>also</u> Exhibit 9 (CSAT screen identifying this form of email as having been sent on this

date).  The subject line to this email was "Member benefit update from Reservation Rewards."

36.    On January 24, 2005, Reservation Rewards sent Plaintiff Crouse another email, this

time encouraging him to claim his cash back award and to use his membership benefits.  Attached as

Exhibit 16 is a true and correct copy of the form of email sent to Plaintiff Crouse on January 24,

2005.  <u>See</u> <u>also</u> Exhibit 9 (CSAT screen identifying this form of email as having been sent on this

date).  The subject line to this email was "Your $10.00 Cash Back on next Priceline.com

reservation".

37.     On February 10, 2005, Reservation Rewards sent Plaintiff Crouse another email, this time encouraging him to use his movie ticket discounts.  Attached as Exhibit 17 to this Declaration is a true and correct copy of the form of email sent to Plaintiff Crouse on February 10, 2005.  See also Exhibit 9 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards".

38.     On March 12, 2005, Reservation Rewards sent Plaintiff Crouse another email, this time encouraging him to use his travel protection and other similar protective benefits.  Attached as Exhibit 18 to this Declaration is a true and correct copy of the form of email sent to Plaintiff on March 12, 2005.  See also Exhibit 9 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards".

39.     On June 10, 2005 Reservation Rewards sent Plaintiff Crouse another email, this time encouraging him to use his two-for-one dining benefits.  Attached as Exhibit 19 to this Declaration is a true and correct copy of the form of email sent to Plaintiff on June 10, 2005.  See also Exhibit 9 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards".

40.     On September 8, 2005 Reservation Rewards sent Plaintiff Crouse an email, this time encouraging him to use his membership benefits.  Attached as Exhibit 20 to this Declaration is a true and correct copy of the form of email sent to Plaintiff Crouse on September 8, 2005.  See also Exhibit 9 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards".

41.     On December 7, 2005 Reservation Rewards sent Plaintiff Crouse yet another email, this time encouraging him to use his membership benefits.  Attached as Exhibit 21 to this

- 13 -

Declaration is a true and correct copy of the form of email sent to Plaintiff Crouse on December 7, 2005.  See also Exhibit 9 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards".

42.    On February 8, 2006, Plaintiff Crouse contacted the Reservation Rewards toll free number and used the automated system to cancel his membership.  After completing this transaction, Plaintiff Crouse hung up, phoned back to Reservation Rewards customer service, and requested a refund of prior billings.  This request was granted and the requested refunds were processed the very next day.  See Exhibit 9 (CSAT records showing that cancellation occurred on February 8, 2006 and that refunds were processed on February 9, 2006).  An email confirming the cancellation of Plaintiff Crouse's membership was sent to the email address then on file with Reservation Rewards -- asshifmohamed@hotmail.com -- and a second email confirming the refund of his membership fees was sent to a new email address that Plaintiff Crouse provided for his account that day -- kcrouse@freshdelmonte.com.  Attached as Exhibit 22 to this Declaration are true and correct copies of the form of cancellation emails sent to Plaintiff Crouse on February 8, 2006.

**Plaintiff Staaf's Transaction**

43.    Plaintiff Staaf joined Reservation Rewards through an offer presented on December 19, 2005.  See Exhibit 23 to this Declaration, which is a true and correct copy of Plaintiff Staaf's account page in Webloyalty's Customer Service Administration Tool ("CSAT") screen, listing a "join date" of 12/19/05.  Our records identify all members who joined through any of the websites operated by Defendants Garrett and Khokhlov as having joined from "Flower.com," and we do not further identify the particular retail website at which the transaction originated.  I understand that the transaction through which Plaintiff Staaf joined originated at GiftBasketsASAP.com; however, I will refer to the website in this declaration as "Flower.com" for simplicity.

44.    Webloyalty's customer service records show that Plaintiff Staaf enrolled in Reservation Rewards through CPID 54939, as reflected in the first five digits of the campaign code listed on the CSAT.  See Exhibit 23 to this Declaration (CSAT identifying the campaign as "54939-flr-rr-pob-cof-10pin-1mf-9m-rc328-708".[5]

45.    Under the screen flow used by Flower.com on the date of Plaintiff Staaf's enrollment, after the customer completed her retail transaction, she was taken to a confirmation page that displayed the transaction's Order Number for the customer's records.

46.    That confirmation page contained a Reservation Rewards "banner" advertisement -- a box of text containing an internet link - that would direct the customer to the Reservation Rewards offer and Enrollment page.  The banner was located in the very center of the top third of the page, and stated:  "Your purchase is complete.  Click here to claim your $10.00 Reward Certificate for your next purchase!"  Below this text was a large grey button containing the word "Continue" and below that was the further statement "By clicking above, you can claim your reward from the reward provider, Reservation Rewards." Exhibit 24 to this Declaration is a true and correct copy of the banner advertisement.

47.    Once Plaintiff Staaf clicked that banner advertisement, she was taken in a new browser window to the Reservation Rewards offer and Enrollment page coded 54939 ("Enrollment page").  Attached as Exhibit 25 to this Declaration is a true and correct copy of the form of Enrollment page displayed to Plaintiff Staaf.  That Exhibit 25 is the Enrollment page coded CPID 54939 is shown by the presence of that code number at the very bottom of the page.

[5]    Each component of this code describes particular details about the offer accepted by Plaintiff Staaf.  For example, after the CPID, the abbreviation "rr" indicates that this was an offer to join Reservation Rewards, "1mf" means that the customer would receive one free month of service on a trial basis, and "9m" indicates that the price to join Reservation Rewards at this time through this offer was $9 per month after the trial period expired.

- 15 -

48.     The Enrollment page contained a detailed description of the Reservation Rewards program, including multiple disclosures regarding the cost of the program, the fact that, on enrollment, Plaintiff Staaf's credit or debit card and other personal information would be transferred to the Reservation Rewards program, and that she could cancel at any time. There was no limit on the amount of time a customer could review the Enrollment page.  See Exhibit 25.

49.     To enroll in Reservation Rewards from this Enrollment page, Plaintiff Staaf was required to take several steps.  First, she was required to type her email address into the empty box under the statement:  "By entering my email address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize the secure transfer of my name, address and credit or debit card information for my purchase at flower.com to Reservation Rewards for billing and benefit processing."  See Exhibit 25.  Second, Plaintiff Staaf was required to again enter the same email address in a confirmation box under the words "Verify email:"  Third, she was required to click the large red button containing the word "YES!" and above the phrase in blue text "I want my Reservations Rewards discounts plus my $10.00 Reward Certificate!"  See Exhibit 25.

50.     A  Flower.com customer, like Plaintiff Staaf, could easily leave the Enrollment page without joining Reservation Rewards.  Because her retail transaction was already complete, she could simply close the Enrollment page without entering her email address twice and clicking the "YES!" button.  Or she could click the underlined phrase "No Thanks" just below the email signature boxes and enrollment button.

51.     Once Plaintiff Staaf had entered her email twice into the enrollment form and clicked the "YES!" button, she was enrolled in Reservation Rewards.  At this time, and not before, Plaintiff Staaf's credit card and identifying information was transmitted to the Reservation Rewards program, and Plaintiff Staaf's unique member number 9718091005 was assigned.  See Exhibit 23 (listing

member number).  It was not possible to join Reservation Rewards from this Enrollment page on

December 19, 2005, without a customer: (1) typing in her email address as her electronic signature,

(2) typing in the same email address in the confirmation box, and (3) clicking on the "YES!" button.

See Exhibit 25.  Until Plaintiff Staaf chose to enroll in Reservation Rewards by taking these steps,

no credit or debit card or other personal identifying information of Plaintiff Staaf was transmitted to

the program.

52.    The data transferred to Reservation Rewards at this point consisted of Plaintiff Staaf's

name, address, and credit card information with the information sent encrypted.  One piece of

information that was not passed from to Reservation Rewards was Plaintiff Staaf's email address.

Thus, the only way Reservation Rewards could have obtained the email address contained in its

records for Plaintiff Staaf -- monica@riliving.com -- was if she voluntarily typed it into the two

signature boxes on the Reservation Rewards Enrollment page.

53.    On Plaintiff Staaf's enrollment in Reservation Rewards, her web browser was taken

to a Reservation Rewards welcome screen ("Welcome screen").   A true and correct copy of the

form of this Welcome screen is attached as Exhibit 26 to this Declaration.  This page contained

detailed information how to claim Plaintiff Staaf's $10 off her next purchase, and repeated much of

the information regarding Reservation Rewards that was presented to her on the Enrollment page,

including the program's cost and the fact that, after the trial period expired, the credit or debit card

she had used for her retail transaction would be billed for her monthly membership fee.  The

Welcome screen also informed Plaintiff Staaf that an email containing her Membership Kit would be

arriving shortly, and suggested she print the page for her records.  It also directed Plaintiff Staaf's

attention to a Frequently Answered Questions section of the Reservation Rewards web page and

provided a link to that page, and provided an additional link to email Reservation Rewards customer service with any questions she might have.  See Exhibit 26.

54.     As indicated on the Welcome screen, Reservation Rewards then sent Plaintiff Staaf an email welcoming her to the program and describing its benefits and confirming the offer details including the charges she would incur and the fact that, once her free trial period expired, the credit or debit card she had used for her retail purchase would be billed by Reservation Rewards for her first $9 monthly membership fee.  Attached as Exhibit 27 to this Declaration is a true and correct copy of the form of Welcome email sent to Plaintiff Staaf.  This email was sent at 1:13:33 PM December 19, 2005, as shown in program records.  See Exhibit 23 (CSAT screen listing email transmissions).  The subject line to this email was "As requested, your Membership Kit for Reservation Rewards, please login today."

55.     This Welcome email prominently displayed Plaintiff Staaf's member number and the email address she had provided on enrollment, and informed her of the Reservation Rewards password that had been generated for her, in Plaintiff Staaf's case "dove88bow".  See Exhibit 23 (listing the password); Exhibit 27 (form of email).  It also explained how Plaintiff Staaf could claim her $10 reward certificate.  See Exhibit 27.

56.     On December 26, 2005, Reservation Rewards sent Plaintiff Staaf an email encouraging her to use her two for one dining benefits.  Attached as Exhibit 28 to this Declaration is a true and correct copy of the form of email sent to Plaintiff Staaf on December 26, 2005.  See also Exhibit 23 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "New Member benefit update from Reservation Rewards".

57.     On January 1, 2006, Reservation Rewards sent Plaintiff Staaf another email, this time encouraging her to claim her reward certificate and to use her membership benefits.  Attached as

Exhibit 29 is a true and correct copy of the form of email sent to Plaintiff Staaf on January 1, 2006.

<u>See</u> <u>also</u> Exhibit 23 (CSAT screen identifying this form of email as having been sent on this date).

58.    On January 4, 2006, Reservation Rewards sent Plaintiff Staaf another email

describing the Reservation Rewards program and stating that "your next $9.00 membership fee will

be billed by Reservation Rewards to the credit card or deducted from the debit card you used to join

and authorized Reservation Rewards to use for billing and benefit processing," and identifying that

credit card by brand and the last four digits of the card number.  The email further explained that the

billing would occur on January 18, 2006, and provided a toll free number that Plaintiff Staaf could

call if she wanted to cancel her membership and avoid billing.  Attached as Exhibit 30 to this

Declaration is a true and correct copy of the form of reminder email sent to Plaintiff Staaf on January

4, 2006.  <u>See</u> <u>also</u> Exhibit 23 (CSAT screen identifying this form of email as having been sent on

this date).  The subject line to this email was "Benefit and billing reminder notice for Reservation

Rewards members."

59.    On January 18, 2006, Plaintiff Staaf's credit card was charged $9 for her first

membership fee.  <u>See</u> Exhibit 23 (CSAT screen reflecting this billing).  As Plaintiff Staaf had

agreed, monthly $9 membership fees were billed until she canceled her membership as described

below.  Also on January 18, 2006, another email was sent to Ms. Staaf, this one encouraging her to

use her movie ticket discounts.  Attached as Exhibit 31 to this Declaration is a true and correct copy

of the form of email sent to Plaintiff Staaf on January 18, 2006.  <u>See</u> <u>also</u> Exhibit 23 (CSAT screen

identifying this form of email as having been sent on this date).  The subject line to this email was

"Member benefit update from Reservation Rewards".

60.    On February 17, 2006, Reservation Rewards sent Plaintiff Staaf another email, this

time encouraging her to use her travel protection and other similar protective benefits.  Attached as

Exhibit 32 to this Declaration is a true and correct copy of the form of email sent to Plaintiff Staaf on February 17, 2006.  See also Exhibit 23 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards".

61.    On March 19, 2006, Reservation Rewards sent Plaintiff Staaf yet another email, this time providing a broad description of the various sorts of discounts and benefits available to Reservation Rewards members.  Attached as Exhibit 33 to this Declaration is a true and correct copy of the form of email sent to Plaintiff on March 19, 2005.  See also Exhibit 1 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards".

62.    On March 22, 2006, Plaintiff Staaf contacted the Reservation Rewards toll free number and used the automated system to cancel her membership.  See Exhibit 23 (CSAT records showing that cancellation occurred on March 22, 2006).  Attached as Exhibit 34 to this Declaration is a true and correct copy of the form of cancellation email sent to Plaintiff Staaf on March 22, 2006.

63.    On April 22, 2006, Plaintiff Staaf's credit card company notified Reservation Rewards that she had disputed the charges reflecting her three prior monthly membership fees.  On that same day, Reservation Rewards credited those billings back to the credit card issuer.  See Exhibit 23 (CSAT reflecting charge backs).

**Plaintiff Melo's Transaction**

64.    Plaintiff Melo joined Reservation Rewards through an offer presented at www.123inkjets.com on August 3, 2005.  See Exhibit 35 to this Declaration, which is a true and correct copy of Plaintiff Melo's account page in Webloyalty's Customer Service Administration Tool ("CSAT") screen, listing a "join date" of 8/3/05.

65.     Webloyalty's customer service records show that Plaintiff Melo enrolled in Reservation Rewards through CPID 51283, as reflected in the first five digits of the campaign code listed on the CSAT.  See Exhibit 35 to this Declaration (CSAT identifying the campaign as "51283-ink-rr-int-cof-10cli-1mf-9m-rc271-506").[6]

66.     Under this screen flow, Plaintiff Melo first visited the 123inkjets.com "Checkout" page.  On this page, he was asked to confirm the items for purchase in his shopping cart and to enter his billing and shipping information.  When he had entered and confirmed the required information regarding his 123inkjets.com transaction, Plaintiff Melo needed to click on a button marked "submit my order."  Attached as Exhibit 36 to this Declaration is a true and correct copy of the form of Checkout page visited by Plaintiff Melo on August 3, 2005.

67.     After he clicked "submit my order," Plaintiff Melo was next directed to the Reservation Rewards enrollment page, a true and correct copy of which is attached as Exhibit 37 to this Declaration ("Enrollment page").  Exhibit 37 is the Enrollment page coded CPID 51283, as shown by the presence of that code number at the very bottom of the page.

68.     The Enrollment page contained a detailed description of the Reservation Rewards program, including multiple disclosures regarding the cost of the program, the fact that, on enrollment, Plaintiff Melo's credit or debit card and other personal information would be transferred from 123inkjets.com to the Reservation Rewards program, and that he could cancel at any time.

---

[6]     Each component of this code describes particular details about the offer accepted by Plaintiff.  For example, after the CPID, the abbreviations "ink" and "rr" indicates that this was a 123inkjets.com solicitation for membership in Reservation Rewards, "1mf" indicates that the customer will receive one month of free service, and "9m" indicates that the price to join Reservation Rewards at this time through this solicitation was $9 per month after the trial period expired.

There was no limit on the amount of time a customer could review the Enrollment page.    <u>See</u> Exhibit 37.

69.    To enroll in Reservation Rewards from this Enrollment page, Plaintiff Melo was required to take several steps.  First, he was required to type his email address into the empty box under the statement:  "By entering my email address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize 123inkjets.com to securely transfer my name, address and credit or debit card information to Reservation Rewards for billing and benefit processing."  <u>See</u> Exhibit 37.  Second, Plaintiff Melo was required to again enter the same email address in a confirmation box under the words "Verify email."  Third, he was required to click the large red button containing the word "YES!"  <u>See</u> Exhibit 37.

70.    A customer of 123inkjets.com could easily leave the Enrollment page without joining Reservation Rewards.  The page clearly states at the top that "Your purchase is complete" and makes clear that it concerns an optional reward from "a partner of 123inkjets.com".  <u>See</u> Exhibit 37.  Also at the top of the page is a clearly marked "No Thanks" button, next to the words "Just take me to the confirmation page."  There is another "No Thanks" button directly under the email signature boxes and the YES! button, also clearly marked:  "I want to get my confirmation page without the Reservation Rewards program or $10.00 Cash Back Award."

71.    After Plaintiff Melo took the three steps described in paragraph 69, several things happened.  First, the window in which he was viewing the Enrollment page was taken to the 123inkjets.com purchase confirmation page, which contained the details regarding his 123inkjets.com transaction for his records.  Attached as Exhibit 38 to this Declaration is a true and correct copy of the form of Confirmation page visited by Plaintiff Melo on August 3, 2005.

72.     At the same time, because Plaintiff Melo had entered his email twice on the Enrollment page and clicked the "YES!" button, he was enrolled in Reservation Rewards.  At this time, and not before, 123inkjets.com transmitted Plaintiff Melo's debit card and identifying information to the Reservation Rewards program, and Plaintiff Melo's unique member number 8544085001 was assigned. See Exhibit 35 (listing member number).  It was not possible to join Reservation Rewards from this 123inkjets.com screen flow on August 3, 2005, without taking each of these three affirmative steps and, until Plaintiff Melo chose to enroll in Reservation Rewards by taking these steps, no credit or debit card or other personal identifying information of Plaintiff Melo was transmitted from 123inkjets.com to the program.

73.     The data transferred from 123inkjets.com to Reservation Rewards at this point consisted of the customer's name, address, and credit or debit card information, with the information being encrypted before transmission.  One piece of information that was not passed from 123inkjets.com to Reservation Rewards was the customer's email address.  Thus, the only way Reservation Rewards could have obtained the email address contained in its records for Plaintiff Melo -- almelo@optonline.net -- was if he voluntarily typed it into the two signature boxes on the Reservation Rewards Enrollment page.

74.     On Plaintiff Melo's enrollment in Reservation Rewards, a new browser window popped open on his computer containing a Reservation Rewards welcome screen ("Welcome screen").  A true and correct copy of this Welcome screen is attached as Exhibit 39 to this Declaration.  This page contained detailed information how to claim Plaintiff Melo's $10 cash back off his next 123inkjets.com purchase, and repeated much of the information regarding Reservation Rewards that was presented to him on the Enrollment page, including the program's cost and the fact that, after the trial period expired, the credit or debit card he had used for his 123inkjets.com

transaction, which was identified by debit card type and the last four digits of the card number, would be billed by Reservation Rewards. The Welcome screen also informed Plaintiff Melo that an email containing his Membership Kit would be arriving shortly, and suggested he print the page for his records. It also contained links to a Frequently Answered Questions section of the Reservation Rewards section, and provided a link to email Reservation Rewards customer service with any questions he might have. <u>See</u> Exhibit 39.

75. As indicated on the Welcome screen, Reservation Rewards then sent Plaintiff Melo an email welcoming him to the program and describing its benefits and the charges he would incur after his free thirty-day trial period expired. Attached as Exhibit 40 to this Declaration is a true and correct copy of the form of Welcome email sent to Plaintiff Melo. This email was sent at 4:19:59 PM, August 3, 2005, as shown in program records. <u>See</u> Exhibit 35 (CSAT screen listing email transmissions). The subject line to this email was "As requested, your Membership Kit for Reservation Rewards, please login today."

76. This welcome email prominently displayed Plaintiff Melo's member number and the email address he had provided on enrollment, and informed him of the Reservation Rewards password that had been generated for him, in his case "track76rain". <u>See</u> Exhibit 35 (listing the password); Exhibit 40 (form of email). It also explained how Plaintiff Melo could claim his $10 cash back award. <u>See</u> Exhibit 40.

77. One week later, on August 10, 2005, Reservation Rewards sent Plaintiff Melo an email encouraging him to use his two-for-one dining benefits. Attached as Exhibit 41 is a true and correct copy of the form of email sent to Plaintiff Melo on August 10, 2005. <u>See also</u> Exhibit 35 (CSAT screen identifying this form of email as having been sent on this date). The subject line to this email was "New member benefit update from Reservation Rewards."

78.     On August 16, 2005, Reservation Rewards sent Plaintiff Melo another email, this time encouraging him to claim his cash back award and to use his membership benefits. Attached as Exhibit 42 is a true and correct copy of the form of email sent to Plaintiff Melo on August 16, 2005. See also Exhibit 35 (CSAT screen identifying this form of email as having been sent on this date). The subject line to this email was "Your $10.00 Cash Back on next 123inkjets.com purchase."

79.     Later that same day, at 3:42 PM, Reservation Rewards received an email from the email address Plaintiff Melo had provided when he enrolled. Both the subject line and body of this email were blank. The fact that Plaintiff Melo sent an email to Reservation Rewards shows that he knew how to communicate with Reservation Rewards should he wish and that he had received Reservation Rewards' communications providing Reservation Rewards' email address. Exhibit 43 to this Declaration is a true and correct copy of the Reservation Rewards customer service screen that captured this email and that reflects the complete text and transmission information regarding this email. Reservation Rewards customer service responded by sending to Plaintiff Melo's email address an email explaining what he needed to do in order to claim his $10 Cash Back Award. The subject line to this email was "Reservation Rewards - Rebate Information." Exhibit 44 to this Declaration is a true and correct copy of the Reservation Rewards customer service screen capturing a portion of the text of this responsive email.

80.     On August 19, 2005, two weeks before his free trial period was to expire, Reservation Rewards sent Plaintiff Melo an email reminding him that, unless he elected to cancel his membership, his debit card would be charged a $9 membership fee. The subject line to this email was "Benefit and billing reminder notice for Reservation Rewards members." This email also identified the debit card to be billed by its brand and last four digits. And the email explained how Plaintiff Melo could cancel his membership if he wished to do so before being charged, and

provided a toll-free number to facilitate a cancellation should he wish.  Attached as Exhibit 45 to this Declaration is a true and correct copy of the form of reminder email sent to Plaintiff on August 19, 2005.  <u>See</u> <u>also</u> Exhibit 35 (CSAT screen identifying this form of email as having been sent on this date).

81.     On September 2, 2005, Plaintiff Melo's trial membership expired and his debit card was billed $9.  <u>See</u> Exhibit 35 (CSAT screen reflecting this billing).  On the same day, another email was sent.  Attached as Exhibit 46 to this Declaration is a true and correct copy of the form of email sent to Plaintiff Melo on September 2, 2005.  <u>See</u> <u>also</u> Exhibit 35 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards."

82.     On October 2, 2005, Reservation Rewards sent Plaintiff Melo another email, this time encouraging him to use his travel protection and other similar protective benefits.  Attached as Exhibit 47 to this Declaration is a true and correct copy of the form of email sent to Plaintiff Melo on October 2, 2005.  <u>See</u> <u>also</u> Exhibit 35 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member Benefit Update from Reservation Rewards"

83.     On December 31, 2005 Reservation Rewards sent Plaintiff Melo another email, this time encouraging him to use his two-for-one dining benefits.  Attached as Exhibit 48 to this Declaration is a true and correct copy of the form of email sent to Plaintiff Melo on December 31, 2005.  <u>See</u> <u>also</u> Exhibit 35 (CSAT screen identifying this form of email as having been sent on this date).  The subject line to this email was "Member benefit update from Reservation Rewards"

84.     On March 9, 2006, Plaintiff Melo contacted the Reservation Rewards toll free number and canceled his membership.  This request was granted and processed that same day.  <u>See</u> Exhibit

35 (CSAT records showing that cancellation occurred on March 9, 2006).  A confirmation email was sent that same day to the email address previously on file for Plaintiff Melo confirming the cancellation.  Attached as Exhibit 49 to this Declaration is a true and correct copies of the form of cancellation email sent to Plaintiff Melo on March 9, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2007, at Norwalk, Connecticut.

_/s/ Tamra Lichtman_____
Tamra Lichtman