UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL 07-01820 <br><br> Lead Case: 06-11620-JLT |

**PLAINTIFFS' MOTION FOR RULE 56(F) DISCOVERY AND**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND PRELIMINARY STATEMENT.................................................1

II.   STATEMENT OF FACTS .......................................................................................5

    A.    Summary of the Allegations Against Webloyalty and Its Retail Partners..............5

    B.    Defendants' Summary Judgment Motion .................................................................8

III.  ARGUMENT ........................................................................................................10

    A.    Plaintiffs Have a Substantial and Legitimate Need to Depose Various Witnesses and Obtain Substantial Documents.......................................................16

    B.    Plaintiffs Have a Substantial and Legitimate Need to Take Third-Party Depositions and Obtain Third-Party Documents....................................................18

IV.   CONCLUSION.....................................................................................................19

V.    CERTIFICATION BY COUNSEL – L.R. D. Mass. 7.1(2) .............................................20

# TABLE OF AUTHORITIES

## CASES

*Adorno v. Crowley Towing & Transp. Co.*,
  443 F.3d 122 (1st Cir. 2006) ................................................................................12

*Berkovitz v. Home Box Office, Inc.*,
  89 F.3d 24 (1st Cir. 1996) ....................................................................................10

*Carmona v. Toledo*,
  215 F.3d 124 (1st Cir. 2000) ................................................................................10

*F.T.C. v. Cyberspace.com, LLC*,
  453 F.3d 1196 (9th Cir. 2006) .......................................................................18, 19

*Fennell v. First Step Designs, Ltd.*,
  83 F.3d 526 (1st Cir. 1996) ............................................................................12, 17

*Kuefler v. Webloyalty.com, Inc., et al.*,
  Case No. No. 06 CA 11620 JLT (D. Mass.) .....................................................2, 3

*Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*,
  840 F.2d 985 (1st Cir. 1988) ................................................................................11

*Price v. Gen. Motors Corp.*,
  931 F.2d 162 (1st Cir. 1991) ................................................................................11

*Sanford v. Memberworks, Inc.*,
  483 F.3d 956 (9th Cir. 2007) ...............................................................................10

*Velez v. Awnings Windows, Inc.*,
  375 F.3d 35 (1st Cir. 2004) ...........................................................................11, 16

## RULES

Fed. R. Civ. P. 56(f) ..................................................................................... *passim*

Rule 30(b)(6) ................................................................................................16

Rule 16.1 ......................................................................................................12

Rule 23 .........................................................................................................11

NOW COMES the plaintiffs Joe Kuefler ("Kuefler"), Monica Staaf ("Staaf"), Kim Crouse ("Crouse"), and Alcides Melo ("Melo") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, and pursuant to Fed. R. Civ. P. 56(f) ("Rule 56"), file this motion seeking discovery from the defendants Webloyalty.com, Inc. ("Webloyalty"), Fandango, Inc. d/b/a Fandango.com ("Fandango"), Priceline.com, Inc. d/b/a Priceline.com ("Priceline"), Nelson Shane Garrett ("Garrett"), Maxim O. Khokhlov ("Khokhlov"), ValueClick, Inc. ("ValueClick"), and E-Babylon, Inc. d/b/a 123Inkjets.com ("E-Babylon") (collectively, "Defendants") regarding numerous disputed genuine issues of material fact raised in their Motion for Summary Judgment [Dkt. No. 56]. In support of this motion, Plaintiffs state as follows:

## I.    INTRODUCTION AND PRELIMINARY STATEMENT

Webloyalty's business model is to prey upon unsuspecting consumers by "subscribing" them, without their knowledge or consent, in various sham programs, the purpose of which programs is nothing more than to provide Defendants with vehicles by which to charge consumers' credit cards monthly amounts small enough to avoid detection. Defendants' predatory business practices are uniform and wide-reaching, as evidenced by the more than 1,000 complaints lodged against them by consumers throughout the United States.

This consolidated class action is brought on behalf of consumers whose hard-earned dollars have been cannibalized by Webloyalty and its retail partners, all of whom have profited at the expense of those very consumers.

Defendants' strategy, however, is to ignore the fact that this is a proposed class action, ignore the fact that they consistently and uniformly employ the identical scheme to prey upon the unsuspecting and convince the Court and the Special Master to decide this case in a vacuum, focusing on a single transaction undertaken by each named Plaintiff rather than Defendants' class-wide course of conduct.

- 1 -

Defendants' goal – a death knell summary judgment on the merits at the very infancy of this case – has already been soundly rejected by Judge Tauro, who expressly advised Defendants' counsel at an April 24, 2007 status conference that this case is **not** "in a summary judgment posture right now" and that this case "**does require discovery**." *See* Transcript of Status Conference on April 24, 2007 at 5:23-6:13, attached hereto as Exhibit A.[1]  Not content with Judge Tauro's pronouncement, Defendants now seek their "second bite at the apple," by making the same plea for summary judgment.  Like Judge Tauro, the Special Master should reject Defendants' ploy.

More specifically, Defendants attempted this same strategic end-around before these cases were consolidated by the Court following transfer by the Judicial Panel on Multidistrict Litigation ("MDL"), but were unsuccessful.  That is, Defendants filed a virtually identical summary judgment motion in the now consolidated case of *Kuefler v. Webloyalty.com, Inc., et al.*, Case No. No. 06 CA 11620 JLT (D. Mass.), [Dkt. No. 16], at the same time as their answer to the *Kuefler* complaint, and then tried to convince the Court at the April 24, 2007 status conference that Plaintiffs should not be entitled to file a consolidated complaint because their summary judgment motion in *Kuefler* raised a purported "threshold issue" that required the Court's initial attention.

As set forth above, the Court rejected this argument out of hand, and inherently understood that Defendants' desire to focus on individual transactions missed the point – that Defendants' uniform, class-wide conduct must be evaluated and considered from the perspective of the class of consumers being victimized.  Indeed, the Court certainly recognized the breadth of the discovery that would be necessary in this case in appointing a highly experienced Special Master to oversee, *inter alia*, all of the likely discovery issues.  [Dkt. No. 52].

---

[1]     Emphasis is added and citations are omitted unless otherwise noted.

Moreover, the Court viewed this case as exactly what it is – a case about whether the manner and method by which Defendants advertise for a monthly, fee-based membership program to consumers involved in legitimate online purchases is a scam and whether the disclosures in such advertisements are "meaningful" or not. *See id.* at 6:14-7:16. Thus, the Court "respectfully disagreed" with Defendants' counsel's view of the case (*id.* at 7:11) – the same view they are taking again here.

Defendants would have the Court and the Special Master view this case as a matter of a few disappointed consumers who simply failed to read certain purported "clear-as-day" disclosures on their computer screens when they attempted to redeem a "money off your next purchase" coupon but were instead enrolled into one of Webloyalty's monthly, fee-based Membership Programs.[2] Such a narrow view of this class action is transparently inadequate and should be rejected out of hand.

As the Consolidated Amended Complaint (the "Consolidated Complaint"), [Dkt. No. 53], alleges in great detail, this class action raises a panoply of issues (requiring extensive and directly relevant discovery) concerning the business model of Webloyalty and its relationships with its online retail partners, such as Fandango, Priceline, ValueClick and others. Plaintiffs intend to demonstrate to the Court and the trier-of-fact – ***through expert testimony*** and other methods – that not only does Webloyalty's advertising fail to meaningfully advise a reasonable consumer that they are being

---

[2]     To be clear, Plaintiffs do not concede that the alleged "screen shots" relied upon by Defendants are true and accurate. Further, Plaintiffs dispute that the purported e-mail "disclosures" which are the apparent lynchpins of Defendants' attempts to avoid liability were ever even provided to them by Defendants. Tellingly, Defendants are unable to provide ***even a single e-mail*** directed at an actual consumer, instead attempting to pass off "pro-forma" e-mails as what "would have been sent." *See* Declaration of Tamara Lichtman in Support of Defendants' Motion for Summary Judgment ("Lichtman Decl."), [Dkt. No. 59], ¶¶15-19, 32-42, 55-61, 76-83 (referring, exclusively, to "***form of email***" purportedly sent to Plaintiffs by Webloyalty following "enrollment" in Reservation Rewards).

enrolled into a monthly, fee-based Membership Program during their legitimate online transaction, but Webloyalty **and** its e-tailer partners are well aware of, and rely upon, this fact.  Indeed, as the Consolidated Complaint further alleges, in just a few years' time, Webloyalty's business has grown by a staggering **15,151 percent**.  *See* ¶39.[3]

Put simply, this is a class action lawsuit brought on behalf of thousands of ripped-off consumers nationwide who deserve to have their complaints heard by a jury.  It is not, as Defendants would like this Court to believe, a case where the Court can simply view a few pages of documents from Webloyalty's records – which **may have** been sent to Plaintiffs – and decide that, as a matter of law, such documents demonstrate that no reasonable consumer could possibly be deceived by Webloyalty's advertisements.  The import and meaning of these documents, and the manner in which they are purportedly presented to the consumer, are very much in material dispute in this case.

Contrary to Defendants' view of this case, these issues will require expert testimony and large-scale fact discovery concerning Webloyalty's business practice, including the manner in which Webloyalty compensates its e-tailer partners, such as Fandango, Priceline, ValueClick, and others.  Further, Plaintiffs are entitled to discovery regarding a variety of indicators that will be strong circumstantial evidence of the fact that the majority of Webloyalty's "subscribers" are ignorant of their "enrollment" in any of Webloyalty's programs.  Accordingly, in the event that the Court does not strike Defendants' Motion for Summary Judgment as premature, Plaintiffs' Motion for Rule 56(f) discovery should be granted in full.

---

[3]     "¶" refers to allegations in the Consolidated Complaint.

## II.     STATEMENT OF FACTS

### A.     Summary of the Allegations Against Webloyalty and Its Retail Partners

This consumer class action is brought on behalf of a large class of consumers and entities who were charged any fees, or paid interest, as a result of becoming subscribed to Webloyalty "Reservation Rewards" membership program, and any other membership programs maintained by Webloyalty (including, but not limited to "Shopper Discount," "Shopper Discount and Rewards," "Travel Values Plus," and "Wallet Shield") without their knowledge and consent, along with all those whose personal credit or bank debit card information was improperly used to create such subscriptions. ¶1.

Through partnerships it creates with online retailers (commonly referred to by Webloyalty as "e-tailers" or "retail partners"), Webloyalty uniformly sells memberships – by unilaterally "subscribing" consumers without their knowledge or consent – in sham programs such as "Reservation Rewards" for which it charges members a monthly fee, typically between $7.00 and $10.00 per month. ¶2.     Reservation Rewards is the subscription-based program Webloyalty induced Plaintiffs to join, but, upon information and belief, Webloyalty also uses the ***same uniform tactics*** described in the Consolidated Complaint to induce unwitting consumers to join other membership programs such as Travel Values Plus, Shopper Discounts & Rewards, Buyer Assurance and Wallet Shield (collectively referenced as the "Membership Programs"). ¶2.

The Membership Programs each purportedly provide benefits such as discounts on dining and tourist attractions, along with "travel protection" such as roadside assistance, hotel overbooking and baggage insurance, but, upon information and belief, such Membership Programs provide virtually ***no benefit at all***, either because the purported "benefits" do not exist or because the

unwitting "subscribers" never attempt to access them.  ¶3.[4]  The uniform business practice by which Webloyalty and its partners sell the Membership Programs constitutes theft, pure and simple. Worse, this process compromises the confidential billing information (including credit and debit card information) of unsuspecting consumers who are tricked into clicking on a Membership Program advertisement.  ¶4.

The uniform business practice at issue in this case is as simple as it is deceptive.  During the course of a legitimate and intended online retail transaction with a Webloyalty retail partner, an advertisement appears on the consumer's computer screen, offering a monetary next purchase discount or coupon reward.  All the consumer needs to do is click on a button and enter his or her e-mail address twice to redeem it.  ***Defendants never simply require the consumer to <u>re-enter</u> their credit or debit card number***, which is most telling.  When he or she does enter their email address and click their mouse button, their confidential credit card or bank debit card information – submitted to carry out the original, legitimate retail transaction – is secretly obtained and/or intercepted by Webloyalty.  Webloyalty then uses this confidential information to enroll these individuals in one of Webloyalty's Membership Programs for which Webloyalty collects monthly charges, usually after the expiration of an alleged 30-day "free trial" basis, but sometimes immediately.  ¶4.

The enrollment is on a "negative option" basis, meaning that the consumer is continuously billed the monthly charge until he or she discovers it and manages to convince Webloyalty to cancel. The only reference to the charges on a consumer's bank or credit card statement is

---

[4]    These factors, among others, will provide compelling evidence in support of Plaintiffs' claims and, therefore, as set forth more fully below, are included in the discovery Plaintiffs need to respond to the Motion for Summary Judgment.

"WLI*RESERVATIONREWARDS.COM" for the Reservation Rewards, or a similar entry for the other Membership Programs.  ¶4.  Because the amount charged (i.e., between $7.00 and $10.00) is so small, many months often go by with these Webloyalty charges going unnoticed.  ¶5.  Webloyalty then pays its e-tailer for each "subscriber" that is ensnared by this deceptive business practice.  On information and belief, Webloyalty's retail partners are paid $2.00 for each consumer who is duped.  ¶6.

**DEFENDANTS' INTENT TO DECEIVE IS, WITHOUT QUESTION, EVIDENCED BY THEIR ABJECT REFUSAL TO REQUIRE CONSUMERS TO RE-ENTER THEIR CREDIT CARD NUMBERS AS A CONDITION OF BEING "ENROLLED" IN ANY WEBLOYALTY PROGRAM.  IF DEFENDANTS WERE NOT MOTIVATED TO PREY ON CONSUMERS, THEY COULD ELIMINATE ANY AND ALL QUESTIONS REGARDING CONSUMERS' KNOWLEDGE BY SIMPLY REQUIRING EVERY CONSUMER TO RE-ENTER THEIR CREDIT OR DEBIT CARD NUMBER.**

Indeed, upon information and belief, and based on accounts of ***numerous confidential witnesses*** pled in the Consolidated Complaint, approximately 99% of people who call Webloyalty call to cancel their membership claiming that they did not know they were enrolled, and were not aware that they were going to be charged for any Membership Program when they clicked on an advertisement offering money off their next purchase.  ¶¶9, 76-86.  Attached hereto as Composite Exhibit B are just a handful of the consumer complaints lodged with various state attorneys general concerning Webloyalty and some of its e-tailer partners, which Plaintiffs' counsel obtained through public records act requests to those agencies.

Because consumer complaints to Webloyalty and its e-tailers (and to various governmental and consumer protection agencies about Webloyalty and the Retailer Partners) are so frequent,

uniform and voluminous, Webloyalty uses prepared scripts to respond to such complaints, and Webloyalty management monitors customer service telephone calls in order to ensure that the scripts are followed verbatim.  Webloyalty management even attends weekly meetings at the company's headquarters to listen to recordings of calls with consumers canceling their service and demanding refunds.  ¶¶42-45, 76-86.

With ready access to consumers' confidential billing information, Webloyalty's online retail partners, like the other Defendants in this case, exploit this confidential information to generate additional revenue for themselves by obtaining a kickback fee from Webloyalty for Membership Program accounts generated through advertising that the retail partners facilitate through their retail websites.  ¶11.

### B. Defendants' Summary Judgment Motion

Notwithstanding (a) the Court's admonition that this was ***not*** a summary judgment case and that broad discovery was necessary, (b) the fact that this is a proposed ***class action*** lawsuit brought on behalf of thousands of consumers nationwide, not merely four aggrieved consumers, ***and*** (c) the ***uniformity*** of Defendants' unlawful conduct toward all members of the Class, Defendants still decided to re-file their Motion for Summary Judgment, [Dkt. No. 56], making the identical argument it made before – that, as a matter of law, the disclosures made to Plaintiffs were sufficient to give them fair warning that they were signing up for one of Webloyalty's Membership Programs.  *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs' Mem."), [Dkt. No. 57], at 2 (arguing that "Plaintiffs have chosen to enter into a contract ***having received full and accurate information about its terms at the time of formation***").[5]

---

[5]    *See also* Defs' Mem. at 1 ("Each of the named Plaintiffs . . . voluntarily consented into a contract after ***having received full and accurate disclosures*** about its terms."  "[N]ot only was each

Defendants couch their motion as one requiring the Court to simply eyeball these screenshots and form e-mails and decide the issue of the adequacy of the disclosures to Plaintiffs before permitting full-blown discovery on the facts, issues and allegations in the Consolidated Complaint. *Id.* at 4-5. According to Defendants, by simply looking at the ***form/template*** e-mails (*i.e.*, not e-mails that were sent to anyone in particular) purportedly sent to Plaintiffs, this Court has enough information before it to grant summary judgment for Defendants. *Id.* at 5-6 (citing Lichtman Declaration, Exhibits 3, 13, 27 & 40).

Defendants' Motion for Summary Judgment ignores various facts, which are not only relevant to the Court's ultimate summary judgment decision, but also as to whether Defendants should be permitted to pigeonhole Plaintiffs' case by limiting the discovery Plaintiffs should be entitled to obtain before being required to respond to the Motion for Summary Judgment:

1.    This case is not an individual case brought solely by the four named Plaintiffs. Rather, this is a putative class action brought on behalf of thousands of consumers nationwide similarly aggrieved by Defendants' scheme;

2.    The question of whether the disclosures were adequate to apprise a reasonable consumer that they were signing up for a monthly, fee-based Membership Program is undoubtedly a

---

Plaintiff ***provided full disclosures*** about the terms of the Reservation Rewards program[.]");*id.* at 4-5 (arguing that "[a]ll material information – including the fact that the Reservation Rewards program carried a monthly charge and that those charges would be posted to the credit or debit card the Plaintiff used for his or her internet purchase – ***was prominently displayed in close proximity to the boxes where the Plaintiffs were required to enter their electronic signatures should they choose to join the program.***"); *id.* at 5 ("No Plaintiff was enrolled in the Reservation Rewards program ***without receiving the disclosures set out above.***"); *id.* at 11 ("Defendants fully satisfied their obligations to Plaintiffs ***by providing full and accurate information to them***.").

highly-contextualized question of fact that will require **expert testimony** from, among others, consumer behaviorists;[6]

3.      In order to render their expert opinions, these experts will require discovery concerning, among other things, the number and extent of complaints received by Defendants concerning unauthorized charges on their credit and debit accounts, refunds issued by Defendants to consumers, the manner and method of website and advertisement design by Webloyalty, the internal operations of Webloyalty, including its customer service operations, and the number of consumers who actually utilize Webloyalty's Membership Programs after they are charged the monthly fee and the extent of such use, if any.[7]

## III.    ARGUMENT

It is fundamental that trial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery.  *See Carmona v. Toledo*, 215 F.3d 124, 132-33, 135-36 (1st Cir. 2000); *Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29-30 (1st Cir. 1996).  It follows, then, that when a party moves for summary

---

[6]      For example, in an interesting recent case involving a similar scam whereby consumers who purchased fitness tapes over the phone were unwittingly enrolled in Memberworks' membership program called "Essential" for "a 20% discount at certain retailers for an annual fee of $72," the Ninth Circuit Court of Appeals noted that "[e]ven assuming that Rule 56 procedures are applicable . . ., we cannot say that the evidence MemberWorks proffered in support of its motion shows the absence of a genuine issue of material fact."  *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 963 n.9 (9th Cir. 2007).  The court made this remark even though, like Defendant here, "MemberWorks introduced a declaration that its business records indicated that [the plaintiff] was enrolled in the Essentials program and sent a membership kit, along with copies of the kit and of MemberWorks' sales script."  *Id.*

[7]      Indeed, should it be determined that, for example, a small percentage of all of Webloyalty's "members" actually **utilize** the Membership Programs to obtain discounts at other websites, restaurants or theme parks, a Court would be hard-pressed to conclude that the disclosures of the monthly, fee-based Membership Program were adequate as a matter of law to a reasonable consumer.

judgment, the opposing party must be afforded a fair chance to obtain and synthesize available information before being required to file an opposition. *Velez v. Awnings Windows, Inc.*, 375 F.3d 35, 39 (1st Cir. 2004).

Rule 56(f) describes the means by which a party may obtain such discovery, when confronted by a summary judgment motion, but can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 988 (1st Cir. 1988). In this case, in which the consolidated complaint was filed only four weeks ago and in which no discovery has occurred, the protections of Rule 56(f) are essential and appropriate.[8]

Rule 56(f) provides in relevant part that should it appear from the affidavits of a party opposing a motion for summary judgment that the party cannot present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Fed. R. Civ. P. 56(f). The rule is intended to safeguard against judges swinging the summary judgment axe too hastily. *See Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991). In this instance, Defendants would have that axe fall before the ink on the consolidated complaint has dried and, in the face of the myriad of factual issues Plaintiffs believe will ultimately make summary judgment impossible.

---

[8]     Further, it is not Defendants who determine the scope of discovery to which Plaintiffs are entitled. Here, Defendants seek to limit discovery to the individual transactions by which Plaintiffs were scammed. Instead, Plaintiffs' theory of the case – that Defendants' scheme is uniform, misleading and class-wide – should be fully explored in discovery and Plaintiffs should be permitted to undertake the discovery they deem necessary and which the Court would be required to consider in connection with a Rule 23 class certification motion.

When additional (in this case, initial) discovery is sought through a Rule 56(f) motion, the motion must (1) be presented in a timely manner; (2) show good cause for the failure to discover the necessary facts sooner; (3) set forth a plausible basis for believing that the necessary facts probably exist and can be learned in a reasonable time; and (4) establish that the sought facts, if found, will influence the outcome of the pending motion for summary judgment. *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 127 (1st Cir. 2006). In the present situation, Plaintiffs easily satisfy all of these requirements.

*First*, Defendants filed their Motion for Summary Judgment on July 20, 2007; a little more than one week before filing this Rule 56(f) motion. Indeed, the Special Master assigned to this case specifically ordered that Plaintiffs' Rule 56(f) motion be filed by August 1, 2007 [Dkt. No. 54]. Thus, there can be no legitimate argument by Defendants that Plaintiffs have not presented this motion in a timely manner.

*Second*, since the present case is in such an early stage of the litigation, Plaintiffs have not had ***any time*** to conduct any discovery whatsoever to be able to effectively oppose the Defendants' Motion. *See* Declaration of David J. George ("George Decl."), ¶5. For all these reasons, plus the fact that the parties have not even had a Rule 16.1 Scheduling Conference to establish a discovery time line, *id.*, there is certainly good cause for Plaintiffs' inability to discover necessary facts to oppose the Motion. Unquestionably, Rule 56(f) applies to this specific situation.

*Finally*, because the case raises complex issues of fact and law – ***as this Court has already recognized***, Plaintiffs request comprehensive discovery which is both relevant and reasonably calculated to lead to the discovery of admissible evidence and is, in fact, essential to the prosecution of this case, including the issue of whether class certification is appropriate. In this regard, Plaintiffs have attached hereto the following proposed discovery requests and third party subpoenas (attached

- 12 -

hereto as Composite Exhibit C) they intend to serve in this matter in order to discover the facts

necessary to demonstrate that Defendants' Motion for Summary Judgment is frivolous at best:

(a)    Plaintiffs' First Request for Production of Documents to Defendant
Webloyalty;

(b)    Plaintiffs' First Request for Production of Documents to Defendant Fandango;

(c)    Plaintiffs' First Request for Production of Documents to Defendant Priceline;

(d)    Plaintiffs' First Request for Production of Documents to Defendant
ValueClick;

(e)    Plaintiffs' First Request for Production of Documents to Defendants E-
Babylon d/b/a 123Inkjets.com;

(f)    Plaintiffs' First Request for Production of Documents to Defendant Khokhlov;

(g)    Plaintiffs' First Request for Production of Documents to Defendant Garrett;

(h)    Plaintiffs' First Set of Interrogatories to Defendant Webloyalty;

(i)    Plaintiffs' First Set of Interrogatories to Defendant Fandango;

(j)    Plaintiffs' First Set of Interrogatories to Defendant Priceline;

(k)    Plaintiffs' First Set of Interrogatories to Defendant ValueClick;

(l)    Plaintiffs' First Set of Interrogatories to Defendant E-Babylon;

(m)    Plaintiffs' First Set of Interrogatories to Defendant Khokhlov;

(n)    Plaintiffs' First Set of Interrogatories to Defendant Garrett;

(o)    Third-Party Subpoena *Duces Tecum* to American International Specialty
Lines Ins. Co.;[9]

---

[9]    American International Specialty Lines Ins. Co. and all of the companies listed in the
subpoenas attached hereto as Exhibits (o) through (z) are companies whose products or services

- 13 -

(p)     Third-Party Subpoena *Duces Tecum* to Wal-Mart Stores, Inc.;

(q)     Third-Party Subpoena *Duces Tecum* to ESPN, Inc.;

(r)     Third-Party Subpoena *Duces Tecum* to Amazon.com;

(s)     Third-Party Subpoena *Duces Tecum* to Apple;

(t)     Third-Party Subpoena *Duces Tecum* to Comcast;

(u)     Third-Party Subpoena *Duces Tecum* to Home Depot, Inc.;

(v)     Third-Party Subpoena *Duces Tecum* to Sanpeggio's;

(w)     Third-Party Subpoena *Duces Tecum* to Carmike Cinemas;

(x)     Third-Party Subpoena *Duces Tecum* to AMC Theaters;

(y)     Third-Party Subpoena *Duces Tecum* to Alamo Car Rental/National Car Rental;

(z)     Third-Party Subpoena *Duces Tecum* to US Airways;

(aa)     Third-Party Subpoena *Duces Tecum* to RipOffReport.com/ Xcentric Ventures, LLC;[10]

(bb)     Third-Party Subpoena *Duces Tecum* to Complaints.com;

---

Webloyalty purports to offer discounts for its "members," such as Plaintiffs. Upon information and belief, very few, if any, consumers **ever** seek discounts from these companies as members of one of Webloyalty's Membership Programs, thus confirming the scam that is Webloyalty's entire business model. After all, consumers cannot seek benefits of a "membership" they do not know exists.

[10]     RipOffReport.com and the other websites, companies and individuals listed in the subpoenas attached hereto as Exhibit (aa) through (ff) all possess mountains of information concerning Webloyalty's scheme, including but not limited to the thousands of complaints by consumers who have been ripped-off by Defendants. For example, as of July 30, 2007, the Connecticut Better Business Bureau, in just the past 36 months, has recorded a confounding **942** consumer complaints against Webloyalty. *See* BBB Reliability Report for Webloyalty.com, Inc., *available at* http://www.connecticut.bbb.org/commonreport.html?compid=77000102 (last visited July 30, 2007).

- 14 -

(cc)    Third-Party Subpoena *Duces Tecum* to Consumerwebwatch.org/Consumers Union;

(dd)    Third-Party Subpoena *Duces Tecum* to Consumer Affairs;

(ee)    Third-Party Subpoena *Duces Tecum* to Adam Kessel;

(ff)    Third-Party Subpoena *Duces tecum* to the Connecticut Better Business Bureau;

(gg)    Third-Party Subpoena *Duces Tecum* to MasterCard;[11]

(hh)    Third-Party Subpoena *Duces Tecum* to Visa U.S.A.;

(ii)    Third-Party Subpoena *Duces Tecum* to Discover Card;

(jj)    Third-Party Subpoena *Duces Tecum* to Drugstore.com;[12]

(kk)    Third-Party Subpoena *Duces Tecum* to 1800Flowers;

(ll)    Third-Party Subpoena *Duces Tecum* to FTD.com;

(mm)   Third-Party Subpoena *Duces Tecum* to Classmates Online, Inc.; and

(nn)    Third-Party Subpoena *Duces Tecum* to Experian.

Plaintiffs further attached hereto, as Exhibit D, a list of requested witnesses to depose, in addition to those listed in the third-party subpoenas.

---

[11]    The three major credit card companies, MasterCard, Visa and Discover Card, all charge extra fees to merchants who have excessive charge-backs, such as occurs when a refund is given. Thus, these three entities will have knowledge of the number and extent of Webloyalty's refunds, which Plaintiffs posit will be an astronomical amount, together with additional information regarding consumer complaints.

[12]    Online retailers such as Drugstore.com, 1800Flowers and Classmates are companies that used to, but no longer, do business with Webloyalty. Information from these third parties will include the reasons why the business relationships ended which, on information and belief, will provide additional evidence that Webloyalty's business model is designed to scam consumers.

Plaintiffs urge the Special Master and the Court to permit all of the requested discovery as it is relevant to the facts and issues raised in the Motion for Summary Judgment and in the case, and without this Court's authority to proceed with this discovery Plaintiffs will be unable to adduce facts essential to filing their opposition. *See Velez*, 375 F.3d at 40. To be sure, Plaintiffs and their counsel will be severely prejudiced without this discovery. *See* George Decl., ¶13.

A.    **Plaintiffs Have a Substantial and Legitimate Need to Depose Various Witnesses and Obtain Substantial Documents**

Plaintiffs seek to depose a number of Webloyalty's officers and personnel, including, among others, the founding partners of Webloyalty, Richard Fernandes and Vincent D'Agostino, and Tamara Lichtman, Vice President of Marketing at Webloyalty, Shane O'Neill, Chief Technology Officer at Fandango, Michael Masone, Director of Interactive Marketing at Priceline, defendant Nelson Shane Garrett, President of Justflower.com, and Veronica Miller, director of e-commerce at ValueClick, each of whom made declarations in support of the Defendants' Motion for Summary Judgment [Dkt. Nos. 59-63], as well as officers and personnel of Webloyalty's e-tailer partners.

Plaintiffs further require the depositions of various Rule 30(b)(6) deponents who would be most knowledgeable about Webloyalty's web retailer business agreements, its computer integration systems, customer complaints, membership cancellations, knowledge by consumers of membership enrollment and related issues. Indeed, as the consumer complaints attached hereto as Exhibit B and the Connecticut BBB report amply demonstrate, contrary to Defendants' contentions in their Motion for Summary Judgment, the disclosures they make to consumers are ***not*** clear and adequate.[13] Were this true, the exhibits attached to this motion would not be three inches thick, as it is!

---

[13]    Because it is not necessary to the relief being sought herein, Plaintiffs do not attach the uniform, virtually ***verbatim*** responses that Webloyalty utilized in "responding" to consumer complaints to state attorneys general and the FTC. However, Plaintiffs affirmatively state that those

Plaintiffs also seek to take multiple third-party depositions that, on information and belief, will result in substantial evidence in opposition to the Motion for Summary Judgment, particularly that the purported "disclosures" are useless and legally insufficient to create "consent" to Defendants' scheme. *See* George Decl., ¶¶8-10.

Put simply, Plaintiffs' counsel believe that the factual information that could be obtained from all of the individuals identified in his list (Exhibit D hereto) is specifically relevant to the issues raised in the Motion for Summary Judgment, especially concerning Webloyalty and the e-tailer Defendants' computer systems, the claimed "disclosures," and Webloyalty's policies and procedures regarding customer complaints and its knowledge that consumers are being duped into "memberships" in their programs. *See* George Decl., ¶¶9-10. The discoverable facts that could be obtained from these witnesses would undoubtedly raise trial worthy issues.[14] *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 531 (1st Cir. 1996).

Likewise, the documents requested are aimed at procuring relevant information that is necessary to opposing the Defendants' Motion for Summary Judgment, but also which is needed to fully prosecute this consolidated case. Simply by comparing the factual assertions in the Consolidated Complaint with the computer screens and disclosures the Defendants *claim* that Plaintiffs and anyone being enrolled in the Membership Programs saw, the Court can see that there is

---

responses amounted to nothing more than rote e-mails and letters by which Webloyalty universally alleged that its purported disclosures were sufficient and that consumers who were billed for "services" consented to being billed. Plaintiffs would be happy to provide the Court these "form" responses by Webloyalty should it so desire.

[14]    It has been recognized by the First Circuit that one of the other factors that counsel must demonstrate to enjoy the benefits of a Rule 56(f) order is good cause for failing to conduct the requested discovery. *See Fennell*, 83 F.3d at 531. Indeed, given that the Motion was filed so early in this case (well before any discovery had taken place), there would seem to be no need for Plaintiffs to demonstrate good cause for failing to have conducted the requested discovery.

- 17 -

a vast discrepancy in the facts at this early stage in the litigation.  For example, Defendants have not attached one document to their Motion for Summary Judgment demonstrating that the ***Plaintiffs*** actually received the e-mails.  Rather, all the documents show is that Webloyalty possesses a ***template*** of e-mails purportedly sent to consumers.  Thus, the document requests are aimed at obtaining facts that tend to refute the Defendants' claims, and also that will show that the sheer volume of complaints Webloyalty received from "enrollees" belies the claim that consumers were fully aware that they were being enrolled in the Membership Programs.  *See*, *e.g.*, *F.T.C. v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (concluding that evidence indicating that less than 1% of 225,000 consumers ever used an internet service they allegedly accepted by cashing or depositing a solicitation check tended to show that a solicitation was deceptive).

Finally, because the parties have not yet made their initial document disclosures, Plaintiffs have been unable to obtain any documentary evidence to effectively oppose the Defendants' Motion for Summary Judgment, which this Court recognized was necessary in this case.  Plaintiffs' counsel believe that documents obtained from the parties and third-parties will directly, effectively and substantially contradict Defendants' positions.  *See* George Decl., ¶¶8-12.

**B.    Plaintiffs Have a Substantial and Legitimate Need to Take Third-Party Depositions and Obtain Third-Party Documents**

Plaintiffs also seek depositions and documentary evidence from third parties which include the Connecticut Better Business Bureau, the four major national credit card companies and websites that track and serve as a forum for information regarding Defendants' scheme.  The information that Plaintiffs anticipate receiving from these entities is directly relevant to the disclosure claims raised by the Defendants in their Motion for Summary Judgment, as well as to the prosecution of Plaintiffs' claims.

Specifically, in the Motion for Summary Judgment, Defendants argue that Plaintiffs, and presumably the thousands of other consumers whom they seek to represent, *affirmatively* enrolled in Webloyalty's Membership Programs after seeing a series of extensive and complete disclosures of the terms of the membership and the charges that would be made against their credit or debit card accounts. Yet, as evidenced by the voluminous complaints already received through FOIA requests and attached hereto as Exhibit B, Plaintiffs are confident that the evidence that will be obtained from these various third parties will show that thousands of more consumers have complained about Webloyalty's practices to their credit card companies and to the Better Business Bureau that they never agreed to be enrolled in Webloyalty's Membership Programs, let alone take advantage of the so-called benefits of the membership. In other words, the anticipated evidence will show that neither Plaintiffs, nor their fellow class members, were provided with sufficient disclosures to know they were being enrolled in anything, let alone to consent to it. Evidence concerning the sufficiency of a solicitation goes directly to the issue of whether the solicitation provides consumers with enough material information that would affect their choice of, or conduct regarding a product. *Cyberspace.com*, 453 F.3d at 1201. All of this plainly discoverable information would shine a glaring spotlight on the material factual issues that exist, and would be a powerful opposition to the Motion for Summary Judgment. Plaintiffs believe that this evidence would be important to the Court in deciding the Motion for Summary Judgment. *See* George Decl., ¶¶8-12.

## IV.    CONCLUSION

Plaintiffs are entitled to substantial discovery in this action prior to responding to the Defendants' Motion for Summary Judgment. Because the case is so new, Plaintiffs have "been afforded no opportunity for discovery" to be able to effectively oppose the Motion for Summary Judgment. For these reasons, Plaintiffs seek an Order to conduct the discovery requested herein. Plaintiffs further request an extension of time to file an opposition to the Motion for Summary

- 19 -

Judgment and respectfully requests thirty (30) days from the completion of discovery as ordered by the Court within which to file their opposition.  Should the Court deny this Rule 56(f) motion, then Plaintiffs respectfully request thirty (30) days from such denial within which to file their opposition to the Motion for Summary Judgment.

## V.    CERTIFICATION BY COUNSEL – L.R. D. Mass. 7.1(2)

The undersigned counsel hereby certifies to the Court that prior to filing this motion counsel for the parties conferred and attempted in good faith to resolve or narrow the issues raised in this motion.

Dated:  August 1, 2007                                   Respectfully submitted,

**LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP**
DAVID J. GEORGE (*Admitted Pro Hac Vice*)
STUART A. DAVIDSON (*Admitted Pro Hac Vice*)
MARISA N. DEMATO
JAMES L. DAVIDSON


*/s David J. George*
David J. George
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  561/750-3000
(561) 750-3364 (facsimile)

***Proposed Co-Lead Counsel for Plaintiffs and the
Class***

**WEXLER TORISEVA WALLACE LLP**
MARK J. TAMBLYN (*Admitted Pro Hac Vice*)
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone:  916/568-1100
916/568-7890 (fax)

**WEXLER TORISEVA WALLACE LLP**
KENNETH A. WEXLER (*Admitted Pro Hac Vice*)
MARK R. MILLER
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: 312/346-2222
312/346-0022 (fax)

*Proposed Co-Lead Counsel for Plaintiffs and the Class*

**PHILLIPS & GARCIA, LLP**
CARLIN J. PHILLIPS
ANDREW J. GARCIA
13 Ventura Drive
North Dartmouth, MA  02747
Telephone:  508/998-0800
508/998-0919 (fax)

*Proposed Liaison Counsel for Plaintiffs and the Class*

**LEE & AMTZIS, P.L.**
ERIC A. LEE
GINA GREENWALD
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone:  561/ 981-9988
561/981-9980 (fax)

**McCALLUM HOAGLUND COOK
  & IRBY LLP**
CHARLES M. MCCALLUM
R. BRENT IRBY
2062 Columbiana Road
Vestavia Hills, Alabama 35216
Telephone: 205/824-7768
205/824-7767 (fax)

**GREEN WELLING LLP**
ROBERT S. GREEN
CHARLES D. MARSHALL
595 Market Street, Suite 2750
San Francisco, California 94105
Telephone: 415/477-6700
415/477-6710 (fax)

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2007, I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this

day on all counsel of record or *pro se* parties identified on the attached Service List in the manner

specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some

other authorized manner for those counsel or parties who are not authorized to receive electronically

Notices of Electronic Filing.


*/s David J. George*
David J. George


I:\Webloyalty Consolidated\MOT Rule 56(f) Discovery FINAL.doc

# Mailing Information for a Case 1:06-cv-11620-JLT

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ethan J. Brown**
  ethan.brown@lw.com
- **Stuart A. Davidson**
  sdavidson@lerachlaw.com,e_file_fl@lerachlaw.com
- **Andrew J. Garcia**
  agarcia@phillipsgarcia.com,info@phillipsgarcia.com,dmedeiros@phillipsgarcia.com
- **David J. George**
  dgeorge@lerachlaw.com,e_file_fl@lerachlaw.com
- **Eric A. Lee**
  lee@leeamlaw.com,leeamlawecf@gmail.com,zallen@leeamlaw.com
- **Joan S. Mitrou**
  Joan.Mitrou@wilmerhale.com
- **Carlin J Phillips**
  cphillips@phillipsgarcia.com,info@phillipsgarcia.com,dmedeiros@phillipsgarcia.com
- **John J. Regan**
  john.regan@wilmerhale.com
- **Mark J. Tamblyn**
  mjt@wtwlaw.us
- **Kenneth A. Wexler**
  kaw@wtwlaw.us,ecf@wtwlaw.us,ehs@wtwlaw.us,amn@wtwlaw.us
- **Gabrielle R. Wolohojian**
  gabrielle.wolohojian@wilmerhale.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

C. Nichole Gifford
Rothwell, Figg, Ernst & Manbeck, P.C.
Suite 800
1425 K Street, N.W.
Washington, DC 20005

Michael L. Greenwald
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
Suite 500
120 E. Palmetto Park Road
Boca Raton, FL 33432

- 23 -

**Steven Lieberman**
Rothwell, Figg, Ernst & Manbeck
1425 K Street, N.W.
Suite 800
Washington, DC 20005

**Mark R. Miller**
Wexler, Toriseva, Wallace
One North LaSalle Street
Suite 2000
Chicago, IL 60602

**Anne M. Sterba**
Rothwell, Figg, Ernst & Manbeck
1425 K Street, N.W.
Suite 800
Washington, DC 20005

**Nathan L. Walker**
Wilmer, Cutler, Pickering, Hale & Dorr
1117 California Ave.
Palo Alto, CA 94304