# EXHIBIT A

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. MDL 07-1820

IN RE:                          )
                                )   TRANSCRIPT OF STATUS CONFERENCE
                                )
WEBLOYALTY.COM, INC.,           )
MARKETING and SALES             )
PRACTICES LITIGATION            )
                                )

BEFORE:  The Honorable Joseph L. Tauro,
         District Judge

John J. Moakley United States Courthouse
Courtroom No. 20
One Courthouse Way
Boston, Massachusetts  02210
Tuesday, April 24, 2007
2:15 p.m.

Marcia G. Patrisso, RPR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3507
Boston, Massachusetts  02210

(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

IN RE: WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 3

```
 1            THE CLERK:  All rise for the Honorable Court.
 2            THE COURT:  Good afternoon, everybody.  I have a
 3   different cast here.
 4            THE CLERK:  This is MDL Number 07-1820, In Re:
 5   Webloyalty.com, Inc., Marketing Practices.
 6            Would counsel please identify themselves for the
 7   record.
 8            MR. GEORGE:  Good afternoon, your Honor.  David
 9   George from Lerach, Coughlin on behalf of all
10   plaintiffs.  With me is my colleague, Stewart Davidson,
11   also from Lerach, Coughlin; Andrew Garcia from
12   Phillips & Garcia, who is our local counsel; and, your
13   Honor, Mark Tamblyn, who's not yet been admitted pro hac
14   in this case, but is co-counsel, for Wexler, Roriseva,
15   in California.
16            THE COURT:  You're filing a motion to get him
17   admitted?
18            MR. GEORGE:  Yes, your Honor.
19            THE COURT:  I think it's a hundred bucks or
20   something, right?
21            MR. GEORGE:  Yes.
22            THE COURT:  You have to do that, because the
23   money comes to us.  Every Friday we see how much is
24   there.
25            (Laughter.)
```

1    MR. GEORGE: Excellent. We will take care of
2    that right away.
3    THE COURT: We'll look forward to having him.
4    How about the back table: Who's here?
5    MS. WOLOHOJIAN: Gabrielle Wolohojian, your
6    Honor, on behalf of all of the defendants. With me is
7    my partner, Jack Regan, also with WilmerHale; Steve
8    Lieberman of Rothwell, Figg, who is our co-counsel in
9    this matter; and my partner, Joan Mitrou, is on the end.
10    THE COURT: Okay. It's an interesting case. I
11    certainly don't have my arms around it the way you
12    people do, but I think I see how the case ought to be
13    managed, and let me just talk from that standpoint
14    rather than the merits of any, you know, summary
15    judgment motion.
16    I think that what you should do here is to
17    permit me to appoint a very qualified discovery master,
18    which I've done on cases like this. And there's a
19    certain -- sometimes, you know, the first gut reaction
20    is, "No, we want" -- "My client wants a federal judge to
21    do it, not a discovery master."
22    But when I've had an opportunity to -- most of
23    the time it's just agreeable to the parties. But when
24    there's been a little disagreement, once I explain to
25    them how it's really an economic benefit to the parties,

1  because it's cheaper -- less expensive, is a better way
2  to put it -- less expensive, in the long run, for you to
3  have a qualified person who really baby-sits your case.
4  Instead of having to file motions with me, you'll file
5  your motions with the master, and under my order the
6  master's decisions on all pretrial matters would be
7  final.  And you would move right along, much quicker
8  than if you have to keep waiting to come back to me.
9  You could get stuck in a 30-day trial the way we seem to
10 be occupied now.  You know, that means that we're not
11 going to see you.
12         So that's what I -- that's the first thing I
13 wondered.  And I'm springing it on you, and I think it's
14 too important for you to have to respond like a pop
15 quiz.
16         I could see that your associate here wants to
17 get your attention before you respond, so why -- do you
18 want to take a second and just sort of whisper it to
19 each other?
20         (Discussion off the record.)
21         THE COURT:  You split the cost.
22         MR. GEORGE:  Your Honor, we have no objection.
23         MS. WOLOHOJIAN:  Your Honor, we don't have an
24 objection to a discovery master once we reach the point
25 of having discovery disputes.  I don't think it resolves

1  the threshold issue that we believe we need the Court's

2  attention for, which is the summary judgment motion and

3  the Rule 56(f) motion that was filed in response.

4       What discovery would actually be entailed in

5  these cases will flow from a decision on the Rule 56(f)

6  motion. It therefore seems to me to make sense

7  administratively and just --

8       THE COURT: Let me just tell you this: that

9  without giving you a look at tomorrow's newspaper and

10 without deciding it definitely, I think it's unlikely

11 that I would allow your motion for summary judgment,

12 okay? I don't think the case is in a summary judgment

13 posture right now. I think it does require discovery.

14      And one thing I just -- you know, I'd just toss

15 out, which is not, you know, with the formality of an

16 opinion or a citation or, you know, that I want to be

17 held to, the way -- when you look at the little squibs

18 that are at issue here, you know, the one that said

19 you'll pay $10 a month or something like that,

20 whatever -- where is it here? The reservation reward

21 Fandango thing.

22      When you look at that, the first thing that

23 struck me is that it's really very similar to the

24 products liability cases that we have. I know that they

25 don't necessarily follow. But it's analogous, in a way,

1  to the products liability cases where the issue is not
2  was there a warning, but was the warning big enough; was
3  it the right color; was it deceiving; was it surrounded
4  by other material which may have made it less
5  meaningful?  And I think that's what you're stuck with
6  here.
7         And I'm having this conversation with you, you
8  know, because you are so professional.  Why should we --
9  you know, why should I kid you and take you down the
10 line?  I think that's -- I think that's what's going to
11 happen.  And I respectfully disagree with you.  I think
12 what you want to do is to get a discovery master in here
13 promptly who will serve you and make -- if there's going
14 to be a recommendation that something happen, you know,
15 that's something that the special master will be in a
16 position to jump right on it.
17         MS. WOLOHOJIAN:  Your Honor, if I may.
18         THE COURT:  Yes.
19         MS. WOLOHOJIAN:  With all due respect, I think
20 this is very different from a products liability case.
21         THE COURT:  I know it is.  I hesitated in
22 telling you and bringing that up because I didn't want
23 you to leap all over it, and then we're going to have an
24 argument about whether you have a case in -- I was
25 giving it to you as a reaction -- you know, as a