# EXHIBIT C
# Part I

Dockets.Justia.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 07-01820 - JLT |
| | Lead Case: 06-11620-JLT |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFENDANT WEBLOYALTY.COM, INC.**

Plaintiffs, pursuant to Fed. R. Civ. P. 26 and 34, on behalf of themselves and all others similarly situated, hereby request that Defendant Webloyalty.com, Inc. produce the documents described below for inspection and copying at the offices of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 120 E. Palmetto Park Road, Suite 500, Boca Raton, Florida 33432, within the time specified in the Rule, or at such other location and date upon which the parties may mutually agree.

## I.    DEFINITIONS

1.    "Webloyalty" means Defendant Webloyalty.com, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

2.    "Fandango" means Defendant Fandango, Inc. d/b/a Fandango.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

3.    "Priceline" means Defendant Priceline.com, Inc. d/b/a Priceline.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

4.    "Justflowers" means Justflowers.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

5.      "Giftbasketsasap" means Giftbasketsasap.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

6.      "ValueClick" means Defendant ValueClick, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

7.      "E-Babylon" means Defendant E-Babylon, Inc. d/b/a 123Inkjets.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

8.      "Defendants" means Defendants Nelson Shane Garrett, Maxim O. Khokhlov, Webloyalty, Fandango, Priceline, E-Babylon, Valueclick, and their parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

9.      "Subscription-Based Program(s)" means Webloyalty's web-based programs, including, but not limited to: Reservation Rewards, Travel Values Plus, Buyer Assurance, Wallet Shield, Shopper Discounts & Rewards, and Distinct Privileges.

10.      "Complaint" means the Class Action Complaint filed in the above-captioned case.

11.      The term "document" or "documents" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs,

2

magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

12. The term "electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code

keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

13.    The term "person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and governmental agencies and other agencies.

14.    The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail (including any attachments), telegram, overnight delivery, telephone, facsimile or telex.

15.    The term "concerning" or "evidencing" means relating to, referring to, describing, concerning, evidencing or constituting. Requests for documents "concerning" or "evidencing" any subject matter include documents concerning or evidencing communications regarding that subject matter.

16.    And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17.    All/Each. The terms "all" and "each" shall be construed as all and each.

18.    The singular of any term shall include the plural, and the plural of any term shall include the singular.

## II.    INSTRUCTIONS

1.    In responding to these document requests, Defendants shall produce separately all documents available at the time of responding or which can be located or discovered by reasonably diligent efforts, including documents in the possession of its agents and representatives.

2.    References to an individual, partnership or corporation include any and all agents, employees, representatives and attorneys and all other persons or entities acting on his, her or its behalf or under his, her or its control.

3.    If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a privilege log identifying each document for which the privilege or other objection is claimed together with the following information: date, sender, recipient, persons to whom copies were furnished together with their job titles, subject matter, basis on which privilege or other objection is claimed, and the paragraph(s) of this request to which such document responds.  If you claim privilege or any other objection with regard to only part of a document, produce the part to which there is no objection.

4.    If any document that would otherwise be responsive to these document requests has been lost, stolen, or is for some reason beyond your control or no longer in your possession, please state and specify in detail for each such document: the type of document, the types of information contained therein, the date upon which it ceased to exist, the disposition that was made of it, the identity of all persons having knowledge of the circumstances of its disposition, and the identity of all persons having knowledge of the contents thereof.

5.    In responding to this request for production, produce all documents as kept in the normal course of business and identify the file from which each document was taken. This request is continuing in nature and requires you to supplement your production promptly if you obtain additional responsive documents.

## III.    RELEVANT PERIOD

Unless otherwise stated in this request, the "Relevant Period" for all requests is from September 11, 2000 until such time as production of responsive pleadings is complete.

## IV.    DOCUMENTS TO BE PRODUCED

REQUEST NO. 1:

All documents, including, but not limited to, screen shots showing the exact computer screens shown to the purchaser when they purportedly signed up for Webloyalty's Subscription-Based Program, as well as the entire content of the purchaser's member profile at Webloyalty, concerning:

    a.    Plaintiff Joe Kuefler;
    b.    Plaintiff Kim Krouse;
    c.    Plaintiff Monica S. Staaf; and
    d.    Plaintiff Alcides Melo.

REQUEST NO. 2:

Documents which show the number of times that Webloyalty's Subscription-Based Program was used or accessed, including, but not limited to, the number of times that the website of Webloyalty's Subscription-Based Program was logged onto, by:

    a.    Plaintiff Joe Kuefler;
    b.    Plaintiff Kim Krouse;
    c.    Plaintiff Monica S. Staaf; and
    d.    Plaintiff Alcides Melo.

REQUEST NO. 3:

All documents concerning contracts or agreements between Webloyalty and any web retailer who offers, or facilitates the offering of, any Subscription-Based Program.

REQUEST NO. 4:

All documents evidencing any communications between Webloyalty and any of the following entities concerning any membership in a Subscription-Based Program into which purchasers of said entity's products are enrolled:

    a.      Fandango;
    b.      Priceline;
    c.      E-Babylon;
    d.      Justflowers;
    e.      Giftbasketsasap; and
    f.      Valueclick.

REQUEST NO. 5:

All documents evidencing any communications between Webloyalty and any of the following entities:

    a.      Fandango;
    b.      Priceline;
    c.      E-Babylon;
    d.      Justflowers;
    e.      Giftbasketsasap; and
    f.      Valueclick.

REQUEST NO. 6:

All documents evidencing any communications between Webloyalty and any purchaser of any Subscription-Based Program through any of the following entities' websites:

    a.      Fandango;
    b.      Priceline;
    c.      E-Babylon;
    d.      Justflowers;
    e.      Giftbasketsasap; and
    f.      Valueclick.

REQUEST NO. 7:

All documents concerning any complaints communicated to Webloyalty concerning unsolicited or unauthorized charges to the credit or debit cards of purchasers of any Subscription-Based Program.

REQUEST NO. 8:

All documents evidencing content posted on Webloyalty's websites (including, but not limited to, the websites dedicated to each Subscription-Based Program) concerning any Subscription-Based Program.

REQUEST NO. 9:

Documents evidencing communications received by Webloyalty (including, but not limited to, complaint records) concerning charges for Subscription-Based Programs without the knowledge, permission or consent of the consumer.

REQUEST NO. 10:

Documents sufficient to show the total amount of money received by Webloyalty for any membership fee charged to purchasers of any Subscription-Based Program through any of the following entities' websites:

    a.      Fandango;
    b.      Priceline;
    c.      E-Babylon;
    d.      Justflowers;
    e.      Giftbasketsasap; and
    f.      Valueclick.

REQUEST NO. 11:

All documents concerning any monies refunded by Webloyalty to any purchaser of any

Subscription-Based Program offered through any of the following entities' websites:

     a.     Fandango;
     b.     Priceline;
     c.     E-Babylon;
     d.     Justflowers;
     e.     Giftbasketsasap; and
     f.     Valueclick.

REQUEST NO. 12:

All documents concerning the cancellation of any membership (including total amount of

cancellations) in any of Webloyalty's Subscription-Based Programs offered through any of the

following entities' websites:

     a.     Fandango;
     b.     Priceline;
     c.     E-Babylon;
     d.     Justflowers;
     e.     Giftbasketsasap; and
     f.     Valueclick.

REQUEST NO. 13:

All documents concerning Webloyalty's procedures and policies for billing their customers'

credit or debit cards.

REQUEST NO. 14:

All documents concerning Webloyalty's procedures and policies for cancellation of

membership in any Subscription-Based Program.

REQUEST NO. 15:

All documents concerning any training Webloyalty employees receive concerning the sales

of Subscription-Based Programs, including, but not limited to, any scripts, drafts of scripts, or pre-

approved language that are used during telephone or e-mail communications with consumers.

REQUEST NO. 16:

All transcripts and audio or video recordings of any communications between Webloyalty employees and consumers, including, but not limited to, all Quality Analyst tapes or recordings.

REQUEST NO. 17:

Documents sufficient to show the number of Webloyalty customers who changed their e-mail address information following enrollment in any Subscription-Based Program through any of the following entities' websites:

    a.    Fandango;
    b.    Priceline;
    c.    E-Babylon;
    d.    Justflowers;
    e.    Giftbasketsasap; and
    f.    Valueclick.

REQUEST NO. 18:

Documents sufficient to show the number of rejected e-mail communications, including "bounce-backs" to any consumer who enrolled in a Subscription-Based Program through any of the following entities' websites:

    a.    Fandango;
    b.    Priceline;
    c.    E-Babylon;
    d.    Justflowers;
    e.    Giftbasketsasap; and
    f.    Valueclick.

REQUEST NO. 19:

All scripts (including drafts) provided to Webloyalty employees for use in conversations with Webloyalty customers, including, but not limited to, scripts for use by Webloyalty employees for handling customer complaints.

10

REQUEST NO. 20:

Documents sufficient to identify the Webloyalty employees responsible for the Enhansiv program.

REQUEST NO. 21:

All exemplar reports capable of being generated by the Enhansiv program.

REQUEST NO. 22:

All reports, spreadsheets or other compilation concerning complaints received by Webloyalty concerning the marketing or sale of any Subscription-Based Program through any of the following entities' websites:

a.    Fandango;
b.    Priceline;
c.    E-Babylon;
d.    Justflowers;
e.    Giftbasketsasap; and
f.    Valueclick.

REQUEST NO. 23:

All "Action Sheets" for customers of Webloyalty who cancelled their membership and any documents concerning the "Action Sheets" produced.

REQUEST NO. 24:

All documents concerning Webloyalty being placed on "non-compliance" status by any Better Business Bureau, including, but not limited to, the Connecticut Better Business Bureau.

REQUEST NO. 25:

All documents concerning agreements between Webloyalty and any issuer of a credit, debit or stored value card, including, but not limited to, MasterCard, Visa, Discover and American Express.

11

REQUEST NO. 26:

All documents concerning Webloyalty having exceeded the limit on the number of charge backs allowed by MasterCard, Visa, Discover and American Express.

REQUEST NO. 27:

All grading reports or sheets for any Webloyalty employee.

REQUEST NO. 28:

All action plans or reports for any Webloyalty employee.

REQUEST NO. 29:

All documents concerning any incentives or commissions to Webloyalty employees for sales of memberships, or retention of memberships, in any Subscription-Based Program.

REQUEST NO. 30:

All documents reflecting the length of time that members of any Subscription-Based Program who sought to rescind or cancel a membership were charged for such membership prior to rescission or cancellation.

REQUEST NO. 31:

Any minutes, recordings (audio and video), or notes of any meeting in which any Webloyalty executive was present, including, but not limited to, those meetings held once per week in Norwalk, Connecticut.

REQUEST NO. 32:

Each insurance policy and each document concerning or relating to each insurance policy taken out by, or for the benefit of, any of the following entities, which provides, or may provide, for coverage for any claims asserted by Plaintiffs, including directors' and officers' liability and indemnity policies or comprehensive liability policies or reinsurance policies:

a.  Fandango;
b.  Priceline;
c.  E-Babylon;
d.  Justflowers;
e.  Giftbasketsasap; and
f.  Valueclick.

REQUEST NO. 33:

All documents concerning any policy, procedure or practice concerning the retention, preservation or destruction of documents, including, but not limited to, the documents (or type of documents) sought by these Requests.

REQUEST NO. 34:

All documents concerning any lawsuits, arbitrations or governmental investigations or enforcement actions (including Better Business Bureau investigations) that have been initiated against Webloyalty.

REQUEST NO. 35:

All documents concerning any disputes with retailers, merchants or service providers concerning any Subscription-Based Programs.

REQUEST NO. 36:

All documents concerning correspondence from credit and/or debit card companies regarding charges related to any Subscription-Based Programs.

REQUEST NO. 37:

All documents sufficient to identify retailers, merchants or services providers who have previously offered any Subscription-Based Program through their websites but no longer do so.

REQUEST NO. 38:

All documents concerning the total number of customers who, after being enrolled in any Subscription-Based Program, had no activity in any year of membership.

REQUEST NO. 39:

All documents concerning the usage rates for any Subscription-Based Program (this should include a breakdown by each program), including, but not limited to, documents from Webloyalty's Rebate Department.

REQUEST NO. 40:

Copies of any and all correspondence and reports issued by Webloyalty to consumer protection agencies and attorneys general reflecting the percentage of memberships marketed by Webloyalty to consumers after the effective date of any order, agreement or assurance of voluntary compliance entered into with any state in which Webloyalty does business.

REQUEST NO. 41:

Documents produced by Webloyalty in any legal proceeding, governmental investigation or enforcement action, Better Business Bureau investigation or inquiry, in response to a subpoena or any other request for information, concerning any Subscription-Based Program.

REQUEST NO. 42:

Documents concerning any Subscription-Based Program for which Webloyalty employees read scripts to consumers nationwide.

REQUEST NO. 43:

Exemplar membership kits mailed to persons residing in any state in the United States concerning any Subscription-Based Program.

REQUEST NO. 44:

Documents concerning revenue Webloyalty received concerning its business relationship between Webloyalty and the following entities, including, but not limited to, reports, analyses, spreadsheets, and bank statements showing fund transfers:

14

      a.       Fandango;
      b.       Priceline;
      c.       E-Babylon;
      d.       Justflowers;
      e.       Giftbasketsasap; and
      f.       Valueclick.

REQUEST NO. 45:

Documents concerning any monies Webloyalty refunded to any person for any Subscription-Based Program.

REQUEST NO. 46:

Complete and final monthly detailed general ledgers containing revenue accounts for any Subscription-Based Program.

REQUEST NO. 47:

State and Federal income tax returns for Webloyalty.

REQUEST NO. 48:

Documents concerning communications with Webloyalty's auditors and/or financial advisors reflecting revenues concerning the marketing and sale of Subscription-Based Programs.

REQUEST NO. 49:

Copies of all training videos shown to any Webloyalty employee.

REQUEST NO. 50:

All documents received by Webloyalty from any credit card, bank or billing company concerning Webloyalty's sales or billing practices.

REQUEST NO. 51:

All documents concerning any presentations, including PowerPoint materials, materials provided at conventions or trade shows, and any other informational materials, provided to web retailers concerning the offering of any Subscription-Based Program through web retailers' websites.

REQUEST NO. 52:

Documents concerning or describing any and all of the "money-saving discounts" offered by or through any Subscription-Based Program.

REQUEST NO. 53:

Documents identifying the "over 35,000 popular family restaurants" for which Webloyalty offers coupons through its Subscription-Based Programs.

REQUEST NO. 54:

Documents identifying the "over 17,000 top leisure attractions" for which Webloyalty offers coupons through its Subscription-Based Programs.

REQUEST NO. 55:

Documents showing the terms and conditions of all insurance benefits offered by Webloyalty through its membership programs, including, but not limited to, all coverage terms, exclusions and policy limits of all insurance policies.

REQUEST NO. 56:

Documents concerning communications between Webloyalty and the following entities concerning complaints received about Webloyalty, including, but not limited to, spreadsheets and e-mails received by Webloyalty:

    a.    Fandango;
    b.    Priceline;
    c.    E-Babylon;
    d.    Justflowers;
    e.    Giftbasketsasap; and
    f.    Valueclick.

REQUEST NO. 57:

Documents sufficient to identify the web retailers through which Webloyalty offers Subscription-Based Programs.

REQUEST NO. 58:

Documents sufficient to identify all third-party vendors or providers of any purported benefits made available through any Subscription-Based Program.

REQUEST NO. 59:

Documents sufficient to identify the number of consumers who redeemed any "Cash Back Reward" offer through any of the following entities' websites:

a.    Fandango;
b.    Priceline;
c.    E-Babylon;
d.    Justflowers;
e.    Giftbasketsasap; and
f.    Valueclick.

REQUEST NO. 60:

All documents concerning any changes made to any advertisements and disclosures by Webloyalty to consumers making purchases from any of Webloyalty's clients, including, but not limited to, the following entities:

a.    Fandango;
b.    Priceline;
c.    E-Babylon;
d.    Justflowers;
e.    Giftbasketsasap; and
f.    Valueclick.

REQUEST NO. 61:

Documents sufficient to identify the total number of customers who signed up for any Subscription-Based Program through any of the following entities:

a.    Fandango;
b.    Priceline;
c.    E-Babylon;
d.    Justflowers;
e.    Giftbasketsasap; and
f.    Valueclick.

REQUEST NO. 62:

Documents sufficient to identify the total number of customers who cancelled their membership in any Subscription-Based Program before the first charge to their debit or credit card account.

REQUEST NO. 63:

Documents sufficient to identify the retention rates for Webloyalty customers.

REQUEST NO. 64:

Documents sufficient to identify the total number of customers who cancelled their membership in any Subscription-Based Program after the first charge to their debit or credit card account, but before the second charge to their debit or credit card account.

REQUEST NO. 65:

Documents which show the percentage of Subscription-Based Program members who have used or accessed any Subscription-Based Program, including, but not limited to, the number of times members log on to a Subscription-Based Program website.

REQUEST NO. 66:

Documents that show the reasons given by consumers to Defendants' customer service departments for canceling memberships of Subscription-Based Programs and/or demanding refunds.

REQUEST NO. 67:

Documents constituting or concerning all agreements, terms of service or conditions, or other documents, reflecting any agreement between consumers and Webloyalty.

REQUEST NO. 68:

All documents reflecting the manner of notification by Webloyalty to consumers, including, but not limited to, screen-shots and e-mails, of the creation or activation of a membership in any

18

Subscription-Based Program.

REQUEST NO. 69:

Documents sufficient to identify, including by name and address, all current and former

employees of Webloyalty responsible for the following:

    a.    Customer Service;
    b.    Rebate Department;
    c.    Quality Assurance Department;
    d.    Internet website design; and
    e.    Information Technology.

Dated: _____, 2007          **PHILLIPS & GARCIA, LLP**
                                      CARLIN J. PHILLIPS
                                      ANDREW J. GARCIA


                                      _____
                                      Andrew J. Garcia, MA BBO # 559084
                                      13 Ventura Drive
                                      North Dartmouth, MA  02747
                                      Telephone:  508/998-0800
                                      508/998-0919 (fax)
                                      *Proposed Liaison Counsel for Plaintiffs*
                                      *and the Class*

                                      **LERACH COUGHLIN STOIA GELLER**
                                      **  RUDMAN & ROBBINS LLP**
                                      DAVID J. GEORGE
                                      STUART A. DAVIDSON
                                      MARISA N. DEMATO
                                      JAMES L. DAVIDSON
                                      120 E. Palmetto Park Road, Suite 500
                                      Boca Raton, FL  33432-4809
                                      Telephone:  561/750-3000
                                      561/750-3364 (fax)
                                      *Proposed Co-Lead Counsel for Plaintiffs*
                                      *and the Class*

                                      **WEXLER TORISEVA WALLACE LLP**
                                      MARK J. TAMBLYN
                                      1610 Arden Way, Suite 290
                                      Sacramento, CA  95815
                                      Telephone:  916/568-1100
                                      916/568-7890 (fax)

**WEXLER TORISEVA WALLACE LLP**
KENNETH A. WEXLER
MARK R. MILLER
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: 312/346-2222
312/346-0022 (fax)
***Proposed Co-Lead Counsel for Plaintiffs***
***and the Class***

**LEE & AMTZIS, P.L.**
ERIC A. LEE
GINA GREENWALD
5550 Glades Road, Suite 401
Boca Raton, FL  33431
Telephone:  561/ 981-9988
561/981-9980 (fax)

**McCALLUM HOAGLUND COOK**
**  & IRBY LLP**
CHARLES M. MCCALLUM
R. BRENT IRBY
2062 Columbiana Road
Vestavia Hills, AL  35216
Telephone: 205/824-7768
205/824-7767 (fax)

**GREEN WELLING LLP**
ROBERT S. GREEN
CHARLES D. MARSHALL
595 Market Street, Suite 2750
San Francisco, CA  94105
Telephone: 415/477-6700
415/477-6710 (fax)

***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I, Andrew J. Garcia, hereby certify that a true and correct copy of the foregoing has been

furnished by U.S. Mail this _____ day of _____, 2007, to the following:

Gabrielle R. Wolohojian
John J. Regan
Joan S. Mitrou
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  617/526-6000
617/526-5000 (fax)
***Counsel for Defendants***

Steven Lieberman
Anne M. Sterba
C. Nichole Gifford
ROTHWELL, FIGG, ERNST
  & MANBECK, P.C.
1425 K Street N.W., Suite 800
Washington, D.C.  20005
Telephone:  202/783-6040
202/783-6031 (fax)
***Co-Counsel for Defendants***


_____
Andrew J. Garcia
PHILLIPS & GARCIA, LLP


G:\jdavidson\Webloyalty\Pleadings\Request for Production to Webloyalty.doc

21

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 07-01820 - JLT  Lead Case: 06-11620-JLT |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFENDANT FANDANGO, INC.**

Plaintiffs, pursuant to Fed. R. Civ. P. 26 and 34, on behalf of themselves and all others similarly situated, hereby request that Defendant Fandango, Inc. produce the documents described below for inspection and copying at the offices of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 120 E. Palmetto Park Road, Suite 500, Boca Raton, Florida 33432, within the time specified in the Rule, or at such other location and date upon which the parties may mutually agree.

**I.     DEFINITIONS**

1.     "Webloyalty" means Defendant Webloyalty.com, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

2.     "Fandango" means Defendant Fandango, Inc. d/b/a Fandango.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

3.     "Priceline" means Defendant Priceline.com, Inc. d/b/a Priceline.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

4.     "Justflowers" means Justflowers.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

5.    "Giftbasketsasap" means Giftbasketsasap.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

6.    "ValueClick" means Defendant ValueClick, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

7.    "E-Babylon" means Defendant E-Babylon, Inc. d/b/a 123Inkjets.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

8.    "Defendants" means Defendants Nelson Shane Garrett, Maxim O. Khokhlov, Webloyalty, Fandango, Priceline, E-Babylon, Valueclick, and their parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

9.    "Subscription-Based Program(s)" means Webloyalty's web-based programs, including, but not limited to: Reservation Rewards, Travel Values Plus, Buyer Assurance, Wallet Shield, Shopper Discounts & Rewards, and Distinct Privileges.

10.    "Complaint" means the Class Action Complaint filed in the above-captioned case.

11.    The term "document" or "documents" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs,

magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

12.    The term "electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code

3

keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

13.     The term "person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and governmental agencies and other agencies.

14.     The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail (including any attachments), telegram, overnight delivery, telephone, facsimile or telex.

15.     The term "concerning" or "evidencing" means relating to, referring to, describing, concerning, evidencing or constituting. Requests for documents "concerning" or "evidencing" any subject matter include documents concerning or evidencing communications regarding that subject matter.

16.     And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17.     All/Each. The terms "all" and "each" shall be construed as all and each.

4

18.    The singular of any term shall include the plural, and the plural of any term shall include the singular.

## II.    INSTRUCTIONS

1.    In responding to these document requests, Defendants shall produce separately all documents available at the time of responding or which can be located or discovered by reasonably diligent efforts, including documents in the possession of its agents and representatives.

2.    References to an individual, partnership or corporation include any and all agents, employees, representatives and attorneys and all other persons or entities acting on his, her or its behalf or under his, her or its control.

3.    If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a privilege log identifying each document for which the privilege or other objection is claimed together with the following information: date, sender, recipient, persons to whom copies were furnished together with their job titles, subject matter, basis on which privilege or other objection is claimed, and the paragraph(s) of this request to which such document responds.  If you claim privilege or any other objection with regard to only part of a document, produce the part to which there is no objection.

4.    If any document that would otherwise be responsive to these document requests has been lost, stolen, or is for some reason beyond your control or no longer in your possession, please state and specify in detail for each such document: the type of document, the types of information contained therein, the date upon which it ceased to exist, the disposition that was made of it, the identity of all persons having knowledge of the circumstances of its disposition, and the identity of all persons having knowledge of the contents thereof.

5.     In responding to this request for production, produce all documents as kept in the normal course of business and identify the file from which each document was taken. This request is continuing in nature and requires you to supplement your production promptly if you obtain additional responsive documents.

## III.    RELEVANT PERIOD

Unless otherwise stated in this request, the "Relevant Period" for all requests is from September 11, 2000 until such time as production of responsive pleadings is complete.

## IV.    DOCUMENTS TO BE PRODUCED

REQUEST NO. 1:

All documents, including, but not limited to, screen shots showing the exact computer screens shown to the purchaser when they purportedly signed up for any Subscription-Based Program, as well as the entire content of the purchaser's member profile at Webloyalty, concerning:

    a.    Plaintiff Joe Kuefler;
    b.    Plaintiff Kim Krouse;
    c.    Plaintiff Monica S. Staaf; and
    d.    Plaintiff Alcides Melo.

REQUEST NO. 2:

Documents which show the number of times that any Subscription-Based Program was used or accessed, including, but not limited to, the number of times that the website of any Subscription-Based Program was logged onto, by:

    a.    Plaintiff Joe Kuefler;
    b.    Plaintiff Kim Krouse;
    c.    Plaintiff Monica S. Staaf; and
    d.    Plaintiff Alcides Melo.

REQUEST NO. 3:

All documents concerning contracts or agreements between Webloyalty and Fandango.

REQUEST NO. 4:

All documents evidencing any communications between Webloyalty and Fandango concerning any membership in a Subscription-Based Program into which purchasers of Fandango's products are enrolled.

REQUEST NO. 5:

All documents evidencing any communications between Webloyalty and Fandango.

REQUEST NO. 6:

All documents evidencing any communications between Fandango and any purchaser of any Subscription-Based Program through Fandango's websites.

REQUEST NO. 7:

All documents concerning any complaints communicated to Fandango concerning unsolicited or unauthorized charges to the credit or debit cards of purchasers of any Subscription-Based Program.

REQUEST NO. 8:

All documents evidencing content posted on Fandango's websites (including, but not limited to, the websites dedicated to each Subscription-Based Program) concerning any Subscription-Based Program.

REQUEST NO. 9:

Documents evidencing communications received by Fandango (including, but not limited to, complaint records) concerning charges for Subscription-Based Programs without the knowledge, permission or consent of the consumer.

REQUEST NO. 10:

Documents sufficient to show the total amount of money received by Fandango for any membership fee charged to purchasers of any Subscription-Based Program.

REQUEST NO. 11:

All documents concerning any monies refunded by Fandango to any purchaser of any Subscription-Based Program.

REQUEST NO. 12:

All documents concerning the cancellation of any membership (including total amount of cancellations) in any Subscription-Based Program.

REQUEST NO. 13:

All documents concerning Fandango's procedures and policies for billing their customers' credit or debit cards.

REQUEST NO. 14:

All documents concerning Fandango's procedures and policies for cancellation of membership in any Subscription-Based Program.

REQUEST NO. 15:

All documents concerning any training Fandango employees receive concerning the sales of Subscription-Based Programs, including, but not limited to, any scripts, drafts of scripts, or pre-approved language that are used during telephone or e-mail communications with consumers.

REQUEST NO. 16:

All transcripts and audio or video recordings of any communications between Fandango employees and consumers, including, but not limited to, all Quality Analyst tapes or recordings.

REQUEST NO. 17:

Documents sufficient to show the number of Webloyalty customers who changed their e-mail address information following enrollment in any Subscription-Based Program through Fandango.

REQUEST NO. 18:

Documents sufficient to show the number of rejected e-mail communications, including "bounce-backs" to any consumer who enrolled in a Subscription-Based Program through Fandango.

REQUEST NO. 19:

All scripts (including drafts) provided to Fandango employees for use in conversations with customers in relation to any Subscription-Based Programs, including, but not limited to, scripts for use by Fandango employees for handling customer complaints.

REQUEST NO. 20:

Documents sufficient to identify the Webloyalty employees responsible for the Enhansiv program.

REQUEST NO. 21:

All exemplar reports capable of being generated by the Enhansiv program.

REQUEST NO. 22:

All reports, spreadsheets or other compilation concerning complaints received by Webloyalty concerning the marketing or sale of any Subscription-Based Program through Fandango's websites.

REQUEST NO. 23:

All "Action Sheets" for customers of Webloyalty who cancelled their membership and any documents concerning the "Action Sheets" produced.

REQUEST NO. 24:

All documents concerning Webloyalty being placed on "non-compliance" status by any Better Business Bureau, including, but not limited to, the Connecticut Better Business Bureau.

REQUEST NO. 25:

All documents concerning agreements between Webloyalty and any issuer of a credit, debit or stored value card, including, but not limited to, MasterCard, Visa, Discover and American Express.

REQUEST NO. 26:

All documents concerning Webloyalty having exceeded the limit on the number of charge backs allowed by MasterCard, Visa, Discover and American Express.

REQUEST NO. 27:

All grading reports or sheets for any Webloyalty employee.

REQUEST NO. 28:

All action plans or reports for any Webloyalty employee.

REQUEST NO. 29:

All documents concerning any incentives or commissions to Fandango employees for sales of memberships, or retention of memberships, in any Subscription-Based Program.

REQUEST NO. 30:

All documents reflecting the length of time that members of any Subscription-Based Program who sought to rescind or cancel a membership were charged for such membership prior to rescission or cancellation.

REQUEST NO. 31:

Any minutes, recordings (audio and video), or notes of any meeting in which any Webloyalty executive was present, including, but not limited to, those meetings held once per week in Norwalk, Connecticut.

REQUEST NO. 32:

Each insurance policy and each document concerning or relating to each insurance policy taken out by, or for the benefit of, Webloyalty and/or Fandango, which provides, or may provide, for coverage for any claims asserted by Plaintiffs, including directors' and officers' liability and indemnity policies or comprehensive liability policies or reinsurance policies.

REQUEST NO. 33:

All documents concerning any policy, procedure or practice concerning the retention, preservation or destruction of documents, including, but not limited to, the documents (or type of documents) sought by these Requests.

REQUEST NO. 34:

All documents concerning any lawsuits, arbitrations or governmental investigations or enforcement actions (including Better Business Bureau investigations) that have been initiated against Webloyalty, or against Fandango due to their involvement with Webloyalty.

REQUEST NO. 35:

All documents concerning any disputes with retailers, merchants or service providers concerning any Subscription-Based Programs.

REQUEST NO. 36:

All documents concerning correspondence from credit and/or debit card companies regarding charges related to any Subscription-Based Programs.

REQUEST NO. 37:

All documents sufficient to identify retailers, merchants or services providers who have previously offered any Subscription-Based Program through their websites but no longer do so.

REQUEST NO. 38:

All documents concerning the total number of customers who, after being enrolled in any Subscription-Based Program, had no activity in any year of membership.

REQUEST NO. 39:

All documents concerning the usage rates for any Subscription-Based Program (this should include a breakdown by each program), including, but not limited to, documents from Webloyalty's Rebate Department.

REQUEST NO. 40:

Copies of any and all correspondence and reports issued by Fandango to consumer protection agencies and attorneys general reflecting the percentage of Webloyalty memberships marketed to consumers after the effective date of any order, agreement or assurance of voluntary compliance entered into with any state in which Webloyalty does business.

REQUEST NO. 41:

Documents produced by Fandango in any legal proceeding, governmental investigation or enforcement action, Better Business Bureau investigation or inquiry, in response to a subpoena or any other request for information, concerning any Subscription-Based Program.

REQUEST NO. 42:

Documents concerning any Subscription-Based Program for which Fandango employees read scripts to consumers nationwide.

REQUEST NO. 43:

Exemplar membership kits mailed to persons residing in any state in the United States concerning any Subscription-Based Program.

REQUEST NO. 44:

Documents concerning revenue Fandango received concerning its business relationship with Webloyalty, including, but not limited to, reports, analyses, spreadsheets, and bank statements showing fund transfers.

REQUEST NO. 45:

Documents concerning any monies Webloyalty refunded to any person for any Subscription-Based Program.

REQUEST NO. 46:

Complete and final monthly detailed general ledgers containing revenue accounts for any monies received in relation to any Subscription-Based Program.

REQUEST NO. 47:

State and Federal income tax returns for Fandango.

REQUEST NO. 48:

Documents concerning communications with Fandango's auditors and/or financial advisors reflecting revenues concerning the marketing and sale of any Subscription-Based Program.

REQUEST NO. 49:

Copies of all training videos shown to any Fandango employee concerning any Subscription-Based Program.

REQUEST NO. 50:

All documents received by Fandango from any credit card, bank or billing company concerning Webloyalty's sales or billing practices.

REQUEST NO. 51:

All documents concerning any presentations, including PowerPoint materials, materials provided at conventions or trade shows, and any other informational materials, provided to web retailers concerning the offering of any Subscription-Based Program.

REQUEST NO. 52:

Documents concerning or describing any and all of the "money-saving discounts" offered by or through any Subscription-Based Program.

REQUEST NO. 53:

Documents identifying the "over 35,000 popular family restaurants" for which Webloyalty offers coupons through its Subscription-Based Programs.

REQUEST NO. 54:

Documents identifying the "over 17,000 top leisure attractions" for which Webloyalty offers coupons through its Subscription-Based Programs.

REQUEST NO. 55:

Documents showing the terms and conditions of all insurance benefits offered by Webloyalty through its membership programs, including, but not limited to, all coverage terms, exclusions and policy limits of all insurance policies.

REQUEST NO. 56:

Documents concerning communications between Webloyalty and Fandango concerning complaints received about Webloyalty, including, but not limited to, spreadsheets and e-mails.

REQUEST NO. 57:

Documents sufficient to identify the web retailers through which Webloyalty offers Subscription-Based Programs.

REQUEST NO. 58:

Documents sufficient to identify all third-party vendors or providers of any purported benefits made available through any Subscription-Based Program.

REQUEST NO. 59:

Documents sufficient to identify the number of consumers who redeemed any "Cash Back Reward" regarding any Subscription-Based Program.

REQUEST NO. 60:

All documents concerning any changes made to any advertisements and disclosures by Webloyalty to consumers making purchases from Fandango.

REQUEST NO. 61:

Documents sufficient to identify the total number of customers who signed up for any Subscription-Based Program through Fandango.

REQUEST NO. 62:

Documents sufficient to identify the total number of customers who cancelled their membership in any Subscription-Based Program before the first charge to their debit or credit card account.

REQUEST NO. 63:

Documents sufficient to identify the retention rates for Webloyalty customers.

REQUEST NO. 64:

Documents sufficient to identify the total number of customers who cancelled their membership in any Subscription-Based Program after the first charge to their debit or credit card account, but before the second charge to their debit or credit card account.

REQUEST NO. 65:

Documents which show the percentage of Fandango customers who have used or accessed any Subscription-Based Program, including, but not limited to, the number of times members log on to a Subscription-Based Program website.

REQUEST NO. 66:

Documents that show the reasons given by consumers to Fandango's customer service department for canceling memberships in any Subscription-Based Program and/or demanding refunds.

REQUEST NO. 67:

Documents constituting or concerning all agreements, terms of service or conditions, or other documents, reflecting any agreement between consumers and Webloyalty.

REQUEST NO. 68:

All documents reflecting the manner of notification by Webloyalty to consumers, including, but not limited to, screen-shots and e-mails, of the creation or activation of a membership in any Subscription-Based Program.

REQUEST NO. 69:

Documents sufficient to identify, including by name and address, all current and former employees of Webloyalty responsible for the following:

a. Customer Service;
b. Rebate Department;
c. Quality Assurance Department;
d. Internet website design; and
e. Information Technology.

Dated: _____, 2007

**PHILLIPS & GARCIA, LLP**
CARLIN J. PHILLIPS
ANDREW J. GARCIA

_____

Andrew J. Garcia, MA BBO # 559084
13 Ventura Drive
North Dartmouth, MA  02747
Telephone:  508/998-0800
508/998-0919 (fax)
*Proposed Liaison Counsel for Plaintiffs and the Class*

**LERACH COUGHLIN STOIA GELLER**
  **RUDMAN & ROBBINS LLP**
DAVID J. GEORGE
STUART A. DAVIDSON
MARISA N. DEMATO
JAMES L. DAVIDSON
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  561/750-3000
561/750-3364 (fax)
*Proposed Co-Lead Counsel for Plaintiffs and the Class*

**WEXLER TORISEVA WALLACE LLP**
MARK J. TAMBLYN
1610 Arden Way, Suite 290
Sacramento, CA  95815
Telephone:  916/568-1100
916/568-7890 (fax)

17

**WEXLER TORISEVA WALLACE LLP**
KENNETH A. WEXLER
MARK R. MILLER
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: 312/346-2222
312/346-0022 (fax)
*Proposed Co-Lead Counsel for Plaintiffs*
*and the Class*

**LEE & AMTZIS, P.L.**
ERIC A. LEE
GINA GREENWALD
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: 561/ 981-9988
561/981-9980 (fax)

**McCALLUM HOAGLUND COOK**
   **& IRBY LLP**
CHARLES M. MCCALLUM
R. BRENT IRBY
2062 Columbiana Road
Vestavia Hills, AL 35216
Telephone: 205/824-7768
205/824-7767 (fax)

**GREEN WELLING LLP**
ROBERT S. GREEN
CHARLES D. MARSHALL
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: 415/477-6700
415/477-6710 (fax)

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Andrew J. Garcia, hereby certify that a true and correct copy of the foregoing has been

furnished by U.S. Mail this _____ day of _____, 2007, to the following:

Gabrielle R. Wolohojian
John J. Regan
Joan S. Mitrou
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  617/526-6000
617/526-5000 (fax)
***Counsel for Defendants***

Steven Lieberman
Anne M. Sterba
C. Nichole Gifford
ROTHWELL, FIGG, ERNST
  & MANBECK, P.C.
1425 K Street N.W., Suite 800
Washington, D.C.  20005
Telephone:  202/783-6040
202/783-6031 (fax)
***Co-Counsel for Defendants***


_____
Andrew J. Garcia
PHILLIPS & GARCIA, LLP


G:\jdavidson\Webloyalty\Pleadings\Request for Production to Fandango.doc

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 07-01820 - JLT |
| | Lead Case: 06-11620-JLT |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFENDANT PRICELINE.COM, INC.**

Plaintiffs, pursuant to Fed. R. Civ. P. 26 and 34, on behalf of themselves and all others
similarly situated, hereby request that Defendant Priceline.com, Inc. produce the documents
described below for inspection and copying at the offices of Lerach Coughlin Stoia Geller Rudman
& Robbins LLP, 120 E. Palmetto Park Road, Suite 500, Boca Raton, Florida 33432, within the time
specified in the Rule, or at such other location and date upon which the parties may mutually agree.

**I.    DEFINITIONS**

1.    "Webloyalty" means Defendant Webloyalty.com, Inc. and its parent companies,
predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or
anyone acting or purporting to act on their behalf.

2.    "Fandango" means Defendant Fandango, Inc. d/b/a Fandango.com and its parent
companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees,
agents, or anyone acting or purporting to act on their behalf.

3.    "Priceline" means Defendant Priceline.com, Inc. d/b/a Priceline.com and its parent
companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees,
agents, or anyone acting or purporting to act on their behalf.

4.    "Justflowers" means Justflowers.com and its parent companies, predecessors,
successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or
purporting to act on their behalf.

5.    "Giftbasketsasap" means Giftbasketsasap.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

6.    "ValueClick" means Defendant ValueClick, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

7.    "E-Babylon" means Defendant E-Babylon, Inc. d/b/a 123Inkjets.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

8.    "Defendants" means Defendants Nelson Shane Garrett, Maxim O. Khokhlov, Webloyalty, Fandango, Priceline, E-Babylon, Valueclick, and their parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

9.    "Subscription-Based Program(s)" means Webloyalty's web-based programs, including, but not limited to: Reservation Rewards, Travel Values Plus, Buyer Assurance, Wallet Shield, Shopper Discounts & Rewards, and Distinct Privileges.

10.    "Complaint" means the Class Action Complaint filed in the above-captioned case.

11.    The term "document" or "documents" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs,

magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

12.    The term "electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code

keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

13.    The term "person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and governmental agencies and other agencies.

14.    The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail (including any attachments), telegram, overnight delivery, telephone, facsimile or telex.

15.    The term "concerning" or "evidencing" means relating to, referring to, describing, concerning, evidencing or constituting. Requests for documents "concerning" or "evidencing" any subject matter include documents concerning or evidencing communications regarding that subject matter.

16.    And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17.    All/Each. The terms "all" and "each" shall be construed as all and each.

18.      The singular of any term shall include the plural, and the plural of any term shall include the singular.

## II.      INSTRUCTIONS

1.      In responding to these document requests, Defendants shall produce separately all documents available at the time of responding or which can be located or discovered by reasonably diligent efforts, including documents in the possession of its agents and representatives.

2.      References to an individual, partnership or corporation include any and all agents, employees, representatives and attorneys and all other persons or entities acting on his, her or its behalf or under his, her or its control.

3.      If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a privilege log identifying each document for which the privilege or other objection is claimed together with the following information: date, sender, recipient, persons to whom copies were furnished together with their job titles, subject matter, basis on which privilege or other objection is claimed, and the paragraph(s) of this request to which such document responds.  If you claim privilege or any other objection with regard to only part of a document, produce the part to which there is no objection.

4.      If any document that would otherwise be responsive to these document requests has been lost, stolen, or is for some reason beyond your control or no longer in your possession, please state and specify in detail for each such document: the type of document, the types of information contained therein, the date upon which it ceased to exist, the disposition that was made of it, the identity of all persons having knowledge of the circumstances of its disposition, and the identity of all persons having knowledge of the contents thereof.

5.      In responding to this request for production, produce all documents as kept in the normal course of business and identify the file from which each document was taken. This request is continuing in nature and requires you to supplement your production promptly if you obtain additional responsive documents.

## III.   RELEVANT PERIOD

Unless otherwise stated in this request, the "Relevant Period" for all requests is from September 11, 2000 until such time as production of responsive pleadings is complete.

## IV.   DOCUMENTS TO BE PRODUCED

REQUEST NO. 1:

All documents, including, but not limited to, screen shots showing the exact computer screens shown to the purchaser when they purportedly signed up for any Subscription-Based Program, as well as the entire content of the purchaser's member profile at Webloyalty, concerning:

a.      Plaintiff Joe Kuefler;
b.      Plaintiff Kim Krouse;
c.      Plaintiff Monica S. Staaf; and
d.      Plaintiff Alcides Melo.

REQUEST NO. 2:

Documents which show the number of times that any Subscription-Based Program was used or accessed, including, but not limited to, the number of times that the website of any Subscription-Based Program was logged onto, by:

a.      Plaintiff Joe Kuefler;
b.      Plaintiff Kim Krouse;
c.      Plaintiff Monica S. Staaf; and
d.      Plaintiff Alcides Melo.

REQUEST NO. 3:

All documents concerning contracts or agreements between Webloyalty and Priceline.

REQUEST NO. 4:

All documents evidencing any communications between Webloyalty and Priceline concerning any membership in a Subscription-Based Program into which purchasers of Priceline's products are enrolled.

REQUEST NO. 5:

All documents evidencing any communications between Webloyalty and Priceline.

REQUEST NO. 6:

All documents evidencing any communications between Priceline and any purchaser of any Subscription-Based Program through Priceline's websites.

REQUEST NO. 7:

All documents concerning any complaints communicated to Priceline concerning unsolicited or unauthorized charges to the credit or debit cards of purchasers of any Subscription-Based Program.

REQUEST NO. 8:

All documents evidencing content posted on Priceline's websites (including, but not limited to, the websites dedicated to each Subscription-Based Program) concerning any Subscription-Based Program.

REQUEST NO. 9:

Documents evidencing communications received by Priceline (including, but not limited to, complaint records) concerning charges for Subscription-Based Programs without the knowledge, permission or consent of the consumer.

REQUEST NO. 10:

Documents sufficient to show the total amount of money received by Priceline for any membership fee charged to purchasers of any Subscription-Based Program.

REQUEST NO. 11:

All documents concerning any monies refunded by Priceline to any purchaser of any Subscription-Based Program.

REQUEST NO. 12:

All documents concerning the cancellation of any membership (including total amount of cancellations) in any Subscription-Based Program.

REQUEST NO. 13:

All documents concerning Priceline's procedures and policies for billing their customers' credit or debit cards.

REQUEST NO. 14:

All documents concerning Priceline's procedures and policies for cancellation of membership in any Subscription-Based Program.

REQUEST NO. 15:

All documents concerning any training Priceline employees receive concerning the sales of Subscription-Based Programs, including, but not limited to, any scripts, drafts of scripts, or pre-approved language that are used during telephone or e-mail communications with consumers.

REQUEST NO. 16:

All transcripts and audio or video recordings of any communications between Priceline employees and consumers, including, but not limited to, all Quality Analyst tapes or recordings.

REQUEST NO. 17:

Documents sufficient to show the number of Webloyalty customers who changed their e-mail address information following enrollment in any Subscription-Based Program through Priceline.

REQUEST NO. 18:

Documents sufficient to show the number of rejected e-mail communications, including "bounce-backs" to any consumer who enrolled in a Subscription-Based Program through Priceline.

REQUEST NO. 19:

All scripts (including drafts) provided to Priceline employees for use in conversations with customers in relation to any Subscription-Based Programs, including, but not limited to, scripts for use by Priceline employees for handling customer complaints.

REQUEST NO. 20:

Documents sufficient to identify the Webloyalty employees responsible for the Enhansiv program.

REQUEST NO. 21:

All exemplar reports capable of being generated by the Enhansiv program.

REQUEST NO. 22:

All reports, spreadsheets or other compilation concerning complaints received by Webloyalty concerning the marketing or sale of any Subscription-Based Program through Priceline's websites.

REQUEST NO. 23:

All "Action Sheets" for customers of Webloyalty who cancelled their membership and any documents concerning the "Action Sheets" produced.