# EXHIBIT C
# Part III

Dockets.Justia.com

drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs, magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

12.    The term "electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers

and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

13.    The term "person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and governmental agencies and other agencies.

14.    The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail (including any attachments), telegram, overnight delivery, telephone, facsimile or telex.

15.    The term "concerning" or "evidencing" means relating to, referring to, describing, concerning, evidencing or constituting. Requests for documents "concerning" or "evidencing" any subject matter include documents concerning or evidencing communications regarding that subject matter.

16.    And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17.    All/Each.  The terms "all" and "each" shall be construed as all and each.

18.    The singular of any term shall include the plural, and the plural of any term shall include the singular.

## II.    INSTRUCTIONS

1.    In responding to these document requests, Defendants shall produce separately all documents available at the time of responding or which can be located or discovered by reasonably diligent efforts, including documents in the possession of its agents and representatives.

2.    References to an individual, partnership or corporation include any and all agents, employees, representatives and attorneys and all other persons or entities acting on his, her or its behalf or under his, her or its control.

3.    If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a privilege log identifying each document for which the privilege or other objection is claimed together with the following information: date, sender, recipient, persons to whom copies were furnished together with their job titles, subject matter, basis on which privilege or other objection is claimed, and the paragraph(s) of this request to which such document responds.  If you claim privilege or any other objection with regard to only part of a document, produce the part to which there is no objection.

4.    If any document that would otherwise be responsive to these document requests has been lost, stolen, or is for some reason beyond your control or no longer in your possession, please state and specify in detail for each such document: the type of document, the types of information contained therein, the date upon which it ceased to exist, the disposition that was made of it, the identity of all persons having knowledge of the circumstances of its disposition, and the identity of all persons having knowledge of the contents thereof.

5.    In responding to this request for production, produce all documents as kept in the normal course of business and identify the file from which each document was taken. This request is continuing in nature and requires you to supplement your production promptly if you obtain additional responsive documents.

## III.    RELEVANT PERIOD

Unless otherwise stated in this request, the "Relevant Period" for all requests is from September 11, 2000 until such time as production of responsive pleadings is complete.

## IV.    DOCUMENTS TO BE PRODUCED

REQUEST NO. 1:

All documents, including, but not limited to, screen shots showing the exact computer screens shown to the purchaser when they purportedly signed up for any Subscription-Based Program, as well as the entire content of the purchaser's member profile at Webloyalty, concerning:

    a.    Plaintiff Joe Kuefler;
    b.    Plaintiff Kim Krouse;
    c.    Plaintiff Monica S. Staaf; and
    d.    Plaintiff Alcides Melo.

REQUEST NO. 2:

Documents which show the number of times that any Subscription-Based Program was used or accessed, including, but not limited to, the number of times that the website of any Subscription-Based Program was logged onto, by:

    a.    Plaintiff Joe Kuefler;
    b.    Plaintiff Kim Krouse;
    c.    Plaintiff Monica S. Staaf; and
    d.    Plaintiff Alcides Melo.

REQUEST NO. 3:

All documents concerning contracts or agreements between Webloyalty and You, Justflowers and/or Giftbasketsasap.

REQUEST NO. 4:

All documents evidencing any communications between Webloyalty and You, Justflowers or Giftbasketsasap concerning any membership in a Subscription-Based Program into which purchasers of Justflowers or Giftbasketsasap products are enrolled.

REQUEST NO. 5:

All documents evidencing any communications between Webloyalty and You, Justflowers or Giftbasketsasap.

REQUEST NO. 6:

All documents evidencing any communications between Justflowers or Giftbasketsasap and any purchaser of any Subscription-Based Program through Justflowers or Giftbasketsasap websites.

REQUEST NO. 7:

All documents concerning any complaints communicated to You, Justflowers or Giftbasketsasap concerning unsolicited or unauthorized charges to the credit or debit cards of purchasers of any Subscription-Based Program.

REQUEST NO. 8:

All documents evidencing content posted on Justflowers or Giftbasketsasap websites (including, but not limited to, the websites dedicated to each Subscription-Based Program) concerning any Subscription-Based Program.

REQUEST NO. 9:

Documents evidencing communications received by You, Justflowers and/or Giftbasketsasap (including, but not limited to, complaint records) concerning charges for Subscription-Based Programs without the knowledge, permission or consent of the consumer.

REQUEST NO. 10:

Documents sufficient to show the total amount of money received by You, Justflowers and/or Giftbasketsasap for any membership fee charged to purchasers of any Subscription-Based Program.

REQUEST NO. 11:

All documents concerning any monies refunded by You, Justflowers and/or Giftbasketsasap to any purchaser of any Subscription-Based Program.

REQUEST NO. 12:

All documents concerning the cancellation of any membership (including total amount of cancellations) in any Subscription-Based Program.

REQUEST NO. 13:

All documents concerning Justflowers and/or Giftbasketsasap procedures and policies for billing their customers' credit or debit cards.

REQUEST NO. 14:

All documents concerning Justflowers and/or Giftbasketsasap procedures and policies for cancellation of membership in any Subscription-Based Program.

REQUEST NO. 15:

All documents concerning any training Justflowers and/or Giftbasketsasap employees receive concerning the sales of Subscription-Based Programs, including, but not limited to, any scripts, drafts of scripts, or pre-approved language that are used during telephone or e-mail communications with consumers.

REQUEST NO. 16:

All transcripts and audio or video recordings of any communications between Justflowers and/or Giftbasketsasap employees and consumers, including, but not limited to, all Quality Analyst

tapes or recordings.

REQUEST NO. 17:

Documents sufficient to show the number of Webloyalty customers who changed their e-mail address information following enrollment in any Subscription-Based Program through Justflowers and/or Giftbasketsasap.

REQUEST NO. 18:

Documents sufficient to show the number of rejected e-mail communications, including "bounce-backs" to any consumer who enrolled in Subscription-Based Program through Justflowers and/or Giftbasketsasap.

REQUEST NO. 19:

All scripts (including drafts) provided to Justflowers and/or Giftbasketsasap employees for use in conversations with customers in relation to any Subscription-Based Programs, including, but not limited to, scripts for use by Justflowers and/or Giftbasketsasap employees for handling customer complaints.

REQUEST NO. 20:

Documents sufficient to identify the Webloyalty employees responsible for the Enhansiv program.

REQUEST NO. 21:

All exemplar reports capable of being generated by the Enhansiv program.

REQUEST NO. 22:

All reports, spreadsheets or other compilation concerning complaints received by Webloyalty concerning the marketing or sale of any Subscription-Based Program through Justflowers and/or Giftbasketsasap websites.

REQUEST NO. 23:

All "Action Sheets" for customers of Webloyalty who cancelled their membership and any documents concerning the "Action Sheets" produced.

REQUEST NO. 24:

All documents concerning Webloyalty being placed on "non-compliance" status by any Better Business Bureau, including, but not limited to, the Connecticut Better Business Bureau.

REQUEST NO. 25:

All documents concerning agreements between Webloyalty and any issuer of a credit, debit or stored value card, including, but not limited to, MasterCard, Visa, Discover and American Express.

REQUEST NO. 26:

All documents concerning Webloyalty having exceeded the limit on the number of charge backs allowed by MasterCard, Visa, Discover and American Express.

REQUEST NO. 27:

All grading reports or sheets for any Webloyalty employee.

REQUEST NO. 28:

All action plans or reports for any Webloyalty employee.

REQUEST NO. 29:

All documents concerning any incentives or commissions to Justflowers and/or Giftbasketsasap employees for sales of memberships, or retention of memberships, in any Subscription-Based Program.

REQUEST NO. 30:

All documents reflecting the length of time that members of any Subscription-Based Program

who sought to rescind or cancel a membership were charged for such membership prior to rescission or cancellation.

REQUEST NO. 31:

Any minutes, recordings (audio and video), or notes of any meeting in which any Webloyalty executive was present, including, but not limited to, those meetings held once per week in Norwalk, Connecticut.

REQUEST NO. 32:

Each insurance policy and each document concerning or relating to each insurance policy taken out by, or for the benefit of, Webloyalty, Justflowers or Giftbasketsasap, which provides, or may provide, for coverage for any claims asserted by Plaintiffs, including directors' and officers' liability and indemnity policies or comprehensive liability policies or reinsurance policies.

REQUEST NO. 33:

All documents concerning any policy, procedure or practice concerning the retention, preservation or destruction of documents, including, but not limited to, the documents (or type of documents) sought by these Requests.

REQUEST NO. 34:

All documents concerning any lawsuits, arbitrations or governmental investigations or enforcement actions (including Better Business Bureau investigations) that have been initiated against Webloyalty, or against Justflowers or Giftbasketsasap, due to their involvement with Webloyalty.

REQUEST NO. 35:

All documents concerning any disputes with retailers, merchants or service providers concerning any Subscription-Based Programs.

REQUEST NO. 36:

All documents concerning correspondence from credit and/or debit card companies regarding charges related to any Subscription-Based Programs.

REQUEST NO. 37:

All documents sufficient to identify retailers, merchants or services providers who have previously offered any Subscription-Based Program through their websites but no longer do so.

REQUEST NO. 38:

All documents concerning the total number of customers who, after being enrolled in any Subscription-Based Program, had no activity in any year of membership.

REQUEST NO. 39:

All documents concerning the usage rates for any Subscription-Based Program (this should include a breakdown by each program), including, but not limited to, documents from Webloyalty's Rebate Department.

REQUEST NO. 40:

Copies of any and all correspondence and reports issued by Justflowers and/or Giftbasketsasap to consumer protection agencies and attorneys general reflecting the percentage of Webloyalty memberships marketed to consumers after the effective date of any order, agreement or assurance of voluntary compliance entered into with any state in which Webloyalty does business.

REQUEST NO. 41:

Documents produced by Justflowers and/or Giftbasketsasap in any legal proceeding, governmental investigation or enforcement action, Better Business Bureau investigation or inquiry, in response to a subpoena or any other request for information, concerning any Subscription-Based Program.

REQUEST NO. 42:

Documents concerning any Subscription-Based Program for which Justflowers and/or Giftbasketsasap employees read scripts to consumers nationwide.

REQUEST NO. 43:

Exemplar membership kits mailed to persons residing in any state in the United States concerning any Subscription-Based Program.

REQUEST NO. 44:

Documents concerning revenue Justflowers and/or Giftbasketsasap received concerning its business relationship with Webloyalty, including, but not limited to, reports, analyses, spreadsheets, and bank statements showing fund transfers.

REQUEST NO. 45:

Documents concerning any monies Webloyalty refunded to any person for any Subscription-Based Program.

REQUEST NO. 46:

Complete and final monthly detailed general ledgers containing revenue accounts for any monies received in relation to any Subscription-Based Program.

REQUEST NO. 47:

State and Federal income tax returns for You, Justflowers and Giftbasketsasap.

REQUEST NO. 48:

Documents concerning communications with Justflowers' and Giftbasketsasap's auditors and/or financial advisors reflecting revenues concerning the marketing and sale of any Subscription-Based Program.

REQUEST NO. 49:

Copies of all training videos shown to any Justflowers or Giftbasketsasap employee concerning any Subscription-Based Program.

REQUEST NO. 50:

All documents received by You, Justflowers and/or Giftbasketsasap from any credit card, bank or billing company concerning Webloyalty's sales or billing practices.

REQUEST NO. 51:

All documents concerning any presentations, including PowerPoint materials, materials provided at conventions or trade shows, and any other informational materials, provided to web retailers concerning the offering of any Subscription-Based Program.

REQUEST NO. 52:

Documents concerning or describing any and all of the "money-saving discounts" offered by or through any Subscription-Based Program.

REQUEST NO. 53:

Documents identifying the "over 35,000 popular family restaurants" for which Webloyalty offers coupons through its Subscription-Based Programs.

REQUEST NO. 54:

Documents identifying the "over 17,000 top leisure attractions" for which Webloyalty offers coupons through its Subscription-Based Programs.

REQUEST NO. 55:

Documents showing the terms and conditions of all insurance benefits offered by Webloyalty through its membership programs, including, but not limited to, all coverage terms, exclusions and policy limits of all insurance policies.

REQUEST NO. 56:

Documents concerning communications between Webloyalty and You, Justflowers or Giftbasketsasap concerning complaints received about Webloyalty, including, but not limited to, spreadsheets and e-mails.

REQUEST NO. 57:

Documents sufficient to identify the web retailers through which Webloyalty offers Subscription-Based Programs.

REQUEST NO. 58:

Documents sufficient to identify all third-party vendors or providers of any purported benefits made available through any Subscription-Based Program.

REQUEST NO. 59:

Documents sufficient to identify the number of consumers who redeemed any "Cash Back Reward" regarding any Subscription-Based Program.

REQUEST NO. 60:

All documents concerning any changes made to any advertisements and disclosures by Webloyalty to consumers making purchases from Justflowers and/or Giftbasketsasap.

REQUEST NO. 61:

Documents sufficient to identify the total number of customers who signed up for any Subscription-Based Program through Justflowers or Giftbasketsasap.

REQUEST NO. 62:

Documents sufficient to identify the total number of customers who cancelled their membership in any Subscription-Based Program before the first charge to their debit or credit card account.

REQUEST NO. 63:

Documents sufficient to identify the retention rates for Webloyalty customers.

REQUEST NO. 64:

Documents sufficient to identify the total number of customers who cancelled their membership in any Subscription-Based Program after the first charge to their debit or credit card account, but before the second charge to their debit or credit card account.

REQUEST NO. 65:

Documents which show the percentage of Justflowers and/or Giftbasketsasap customers who have used or accessed any Subscription-Based Program, including, but not limited to, the number of times members log on to a Subscription-Based Program website.

REQUEST NO. 66:

Documents that show the reasons given by consumers to Justflowers or Giftbasketsasap's customer service departments for canceling memberships in any Subscription-Based Program and/or demanding refunds.

REQUEST NO. 67:

Documents constituting or concerning all agreements, terms of service or conditions, or other documents, reflecting any agreement between consumers and Webloyalty.

REQUEST NO. 68:

All documents reflecting the manner of notification by Webloyalty to consumers, including, but not limited to, screen-shots and e-mails, of the creation or activation of a membership in any Subscription-Based Program.

REQUEST NO. 69:

Documents sufficient to identify, including by name and address, all current and former

employees of Webloyalty responsible for the following:

    a.        Customer Service;
    b.        Rebate Department;
    c.        Quality Assurance Department;
    d.        Internet website design; and
    e.        Information Technology.


Dated: _____, 2007

                          **PHILLIPS & GARCIA, LLP**
                          CARLIN J. PHILLIPS
                          ANDREW J. GARCIA

                          _____

                          Andrew J. Garcia, MA BBO # 559084
                          13 Ventura Drive
                          North Dartmouth, MA  02747
                          Telephone:  508/998-0800
                          508/998-0919 (fax)
                          *Proposed Liaison Counsel for Plaintiffs*
                          *and the Class*

                          **LERACH COUGHLIN STOIA GELLER**
                            **RUDMAN & ROBBINS LLP**
                          DAVID J. GEORGE
                          STUART A. DAVIDSON
                          MARISA N. DEMATO
                          JAMES L. DAVIDSON
                          120 E. Palmetto Park Road, Suite 500
                          Boca Raton, FL  33432-4809
                          Telephone:  561/750-3000
                          561/750-3364 (fax)
                          *Proposed Co-Lead Counsel for Plaintiffs*
                          *and the Class*

                          **WEXLER TORISEVA WALLACE LLP**
                          MARK J. TAMBLYN
                          1610 Arden Way, Suite 290
                          Sacramento, CA  95815
                          Telephone:  916/568-1100
                          916/568-7890 (fax)

**WEXLER TORISEVA WALLACE LLP**
KENNETH A. WEXLER
MARK R. MILLER
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: 312/346-2222
312/346-0022 (fax)
*Proposed Co-Lead Counsel for Plaintiffs
and the Class*

**LEE & AMTZIS, P.L.**
ERIC A. LEE
GINA GREENWALD
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: 561/ 981-9988
561/981-9980 (fax)

**McCALLUM HOAGLUND COOK
  & IRBY LLP**
CHARLES M. MCCALLUM
R. BRENT IRBY
2062 Columbiana Road
Vestavia Hills, AL 35216
Telephone: 205/824-7768
205/824-7767 (fax)

**GREEN WELLING LLP**
ROBERT S. GREEN
CHARLES D. MARSHALL
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: 415/477-6700
415/477-6710 (fax)

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Andrew J. Garcia, hereby certify that a true and correct copy of the foregoing has been

furnished by U.S. Mail this _____ day of _____, 2007, to the following:

| | |
|---|---|
| Gabrielle R. Wolohojian | Steven Lieberman |
| John J. Regan | Anne M. Sterba |
| Joan S. Mitrou | C. Nichole Gifford |
| WILMER CUTLER PICKERING | ROTHWELL, FIGG, ERNST |
|   HALE AND DORR LLP |   & MANBECK, P.C. |
| 60 State Street | 1425 K Street N.W., Suite 800 |
| Boston, MA  02109 | Washington, D.C.  20005 |
| Telephone:  617/526-6000 | Telephone:  202/783-6040 |
| 617/526-5000 (fax) | 202/783-6031 (fax) |
| **Counsel for Defendants** | **Co-Counsel for Defendants** |

 

_____
Andrew J. Garcia
PHILLIPS & GARCIA, LLP

G:\jdavidson\Webloyalty\Pleadings\Request for Production to Khokhlov.doc

19

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| IN RE: WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 07-01820 - JLT |
|---|---|
| | Lead Case: 06-11620-JLT |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFENDANT NELSON SHANE GARRETT**

Plaintiffs, pursuant to Fed. R. Civ. P. 26 and 34, on behalf of themselves and all others similarly situated, hereby request that Defendant Nelson Shane Garrett, Individually and d/b/a Justflowers.com and Giftbasketsasap.com, produce the documents described below for inspection and copying at the offices of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 120 E. Palmetto Park Road, Suite 500, Boca Raton, Florida 33432, within the time specified in the Rule, or at such other location and date upon which the parties may mutually agree.

**I.    DEFINITIONS**

1.    "Webloyalty" means Defendant Webloyalty.com, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

2.    "Fandango" means Defendant Fandango, Inc. d/b/a Fandango.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

3.    "Priceline" means Defendant Priceline.com, Inc. d/b/a Priceline.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

4.    "Justflowers" means Justflowers.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or

purporting to act on their behalf.

5.    "Giftbasketsasap" means Giftbasketsasap.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

6.    "ValueClick" means Defendant ValueClick, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

7.    "E-Babylon" means Defendant E-Babylon, Inc. d/b/a 123Inkjets.com and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

8.    "Defendants" means Defendants Nelson Shane Garrett, Maxim O. Khokhlov, Webloyalty, Fandango, Priceline, E-Babylon, Valueclick, and their parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

9.    "Subscription-Based Program(s)" means Webloyalty's web-based programs, including, but not limited to: Reservation Rewards, Travel Values Plus, Buyer Assurance, Wallet Shield, Shopper Discounts & Rewards, and Distinct Privileges.

10.    "Complaint" means the Class Action Complaint filed in the above-captioned case.

11.    The term "document" or "documents" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices,

drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs, magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

12.    The term "electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers

3

and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

13.    The term "person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and governmental agencies and other agencies.

14.    The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail (including any attachments), telegram, overnight delivery, telephone, facsimile or telex.

15.    The term "concerning" or "evidencing" means relating to, referring to, describing, concerning, evidencing or constituting. Requests for documents "concerning" or "evidencing" any subject matter include documents concerning or evidencing communications regarding that subject matter.

16.    And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17.     All/Each.  The terms "all" and "each" shall be construed as all and each.

18.     The singular of any term shall include the plural, and the plural of any term shall include the singular.

## II.    INSTRUCTIONS

1.     In responding to these document requests, Defendants shall produce separately all documents available at the time of responding or which can be located or discovered by reasonably diligent efforts, including documents in the possession of its agents and representatives.

2.     References to an individual, partnership or corporation include any and all agents, employees, representatives and attorneys and all other persons or entities acting on his, her or its behalf or under his, her or its control.

3.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a privilege log identifying each document for which the privilege or other objection is claimed together with the following information: date, sender, recipient, persons to whom copies were furnished together with their job titles, subject matter, basis on which privilege or other objection is claimed, and the paragraph(s) of this request to which such document responds.  If you claim privilege or any other objection with regard to only part of a document, produce the part to which there is no objection.

4.     If any document that would otherwise be responsive to these document requests has been lost, stolen, or is for some reason beyond your control or no longer in your possession, please state and specify in detail for each such document: the type of document, the types of information contained therein, the date upon which it ceased to exist, the disposition that was made of it, the identity of all persons having knowledge of the circumstances of its disposition, and the identity of all persons having knowledge of the contents thereof.

5.    In responding to this request for production, produce all documents as kept in the normal course of business and identify the file from which each document was taken. This request is continuing in nature and requires you to supplement your production promptly if you obtain additional responsive documents.

## III.    RELEVANT PERIOD

Unless otherwise stated in this request, the "Relevant Period" for all requests is from September 11, 2000 until such time as production of responsive pleadings is complete.

## IV.    DOCUMENTS TO BE PRODUCED

REQUEST NO. 1:

All documents, including, but not limited to, screen shots showing the exact computer screens shown to the purchaser when they purportedly signed up for any Subscription-Based Program, as well as the entire content of the purchaser's member profile at Webloyalty, concerning:

    a.    Plaintiff Joe Kuefler;
    b.    Plaintiff Kim Krouse;
    c.    Plaintiff Monica S. Staaf; and
    d.    Plaintiff Alcides Melo.

REQUEST NO. 2:

Documents which show the number of times that any Subscription-Based Program was used or accessed, including, but not limited to, the number of times that the website of any Subscription-Based Program was logged onto, by:

    a.    Plaintiff Joe Kuefler;
    b.    Plaintiff Kim Krouse;
    c.    Plaintiff Monica S. Staaf; and
    d.    Plaintiff Alcides Melo.

REQUEST NO. 3:

All documents concerning contracts or agreements between Webloyalty and You, Justflowers and/or Giftbasketsasap.

6

REQUEST NO. 4:

All documents evidencing any communications between Webloyalty and You, Justflowers or Giftbasketsasap concerning any membership in a Subscription-Based Program into which purchasers of Justflowers or Giftbasketsasap products are enrolled.

REQUEST NO. 5:

All documents evidencing any communications between Webloyalty and You, Justflowers or Giftbasketsasap.

REQUEST NO. 6:

All documents evidencing any communications between Justflowers or Giftbasketsasap and any purchaser of any Subscription-Based Program through Justflowers or Giftbasketsasap websites.

REQUEST NO. 7:

All documents concerning any complaints communicated to You, Justflowers or Giftbasketsasap concerning unsolicited or unauthorized charges to the credit or debit cards of purchasers of any Subscription-Based Program.

REQUEST NO. 8:

All documents evidencing content posted on Justflowers or Giftbasketsasap websites (including, but not limited to, the websites dedicated to each Subscription-Based Program) concerning any Subscription-Based Program.

REQUEST NO. 9:

Documents evidencing communications received by You, Justflowers and/or Giftbasketsasap (including, but not limited to, complaint records) concerning charges for Subscription-Based Programs without the knowledge, permission or consent of the consumer.

REQUEST NO. 10:

Documents sufficient to show the total amount of money received by You, Justflowers and/or Giftbasketsasap for any membership fee charged to purchasers of any Subscription-Based Program.

REQUEST NO. 11:

All documents concerning any monies refunded by You, Justflowers and/or Giftbasketsasap to any purchaser of any Subscription-Based Program.

REQUEST NO. 12:

All documents concerning the cancellation of any membership (including total amount of cancellations) in any Subscription-Based Program.

REQUEST NO. 13:

All documents concerning Justflowers and/or Giftbasketsasap procedures and policies for billing their customers' credit or debit cards.

REQUEST NO. 14:

All documents concerning Justflowers and/or Giftbasketsasap procedures and policies for cancellation of membership in any Subscription-Based Program.

REQUEST NO. 15:

All documents concerning any training Justflowers and/or Giftbasketsasap employees receive concerning the sales of Subscription-Based Programs, including, but not limited to, any scripts, drafts of scripts, or pre-approved language that are used during telephone or e-mail communications with consumers.

REQUEST NO. 16:

All transcripts and audio or video recordings of any communications between Justflowers and/or Giftbasketsasap employees and consumers, including, but not limited to, all Quality Analyst

tapes or recordings.

REQUEST NO. 17:

Documents sufficient to show the number of Webloyalty customers who changed their e-mail address information following enrollment in any Subscription-Based Program through Justflowers and/or Giftbasketsasap.

REQUEST NO. 18:

Documents sufficient to show the number of rejected e-mail communications, including "bounce-backs" to any consumer who enrolled in Subscription-Based Program through Justflowers and/or Giftbasketsasap.

REQUEST NO. 19:

All scripts (including drafts) provided to Justflowers and/or Giftbasketsasap employees for use in conversations with customers in relation to any Subscription-Based Programs, including, but not limited to, scripts for use by Justflowers and/or Giftbasketsasap employees for handling customer complaints.

REQUEST NO. 20:

Documents sufficient to identify the Webloyalty employees responsible for the Enhansiv program.

REQUEST NO. 21:

All exemplar reports capable of being generated by the Enhansiv program.

REQUEST NO. 22:

All reports, spreadsheets or other compilation concerning complaints received by Webloyalty concerning the marketing or sale of any Subscription-Based Program through Justflowers and/or Giftbasketsasap websites.

REQUEST NO. 23:

All "Action Sheets" for customers of Webloyalty who cancelled their membership and any documents concerning the "Action Sheets" produced.

REQUEST NO. 24:

All documents concerning Webloyalty being placed on "non-compliance" status by any Better Business Bureau, including, but not limited to, the Connecticut Better Business Bureau.

REQUEST NO. 25:

All documents concerning agreements between Webloyalty and any issuer of a credit, debit or stored value card, including, but not limited to, MasterCard, Visa, Discover and American Express.

REQUEST NO. 26:

All documents concerning Webloyalty having exceeded the limit on the number of charge backs allowed by MasterCard, Visa, Discover and American Express.

REQUEST NO. 27:

All grading reports or sheets for any Webloyalty employee.

REQUEST NO. 28:

All action plans or reports for any Webloyalty employee.

REQUEST NO. 29:

All documents concerning any incentives or commissions to Justflowers and/or Giftbasketsasap employees for sales of memberships, or retention of memberships, in any Subscription-Based Program.

REQUEST NO. 30:

All documents reflecting the length of time that members of any Subscription-Based Program

who sought to rescind or cancel a membership were charged for such membership prior to rescission or cancellation.

REQUEST NO. 31:

Any minutes, recordings (audio and video), or notes of any meeting in which any Webloyalty executive was present, including, but not limited to, those meetings held once per week in Norwalk, Connecticut.

REQUEST NO. 32:

Each insurance policy and each document concerning or relating to each insurance policy taken out by, or for the benefit of, Webloyalty, Justflowers or Giftbasketsasap, which provides, or may provide, for coverage for any claims asserted by Plaintiffs, including directors' and officers' liability and indemnity policies or comprehensive liability policies or reinsurance policies.

REQUEST NO. 33:

All documents concerning any policy, procedure or practice concerning the retention, preservation or destruction of documents, including, but not limited to, the documents (or type of documents) sought by these Requests.

REQUEST NO. 34:

All documents concerning any lawsuits, arbitrations or governmental investigations or enforcement actions (including Better Business Bureau investigations) that have been initiated against Webloyalty, or against Justflowers or Giftbasketsasap, due to their involvement with Webloyalty.

REQUEST NO. 35:

All documents concerning any disputes with retailers, merchants or service providers concerning any Subscription-Based Programs.

REQUEST NO. 36:

All documents concerning correspondence from credit and/or debit card companies regarding charges related to any Subscription-Based Programs.

REQUEST NO. 37:

All documents sufficient to identify retailers, merchants or services providers who have previously offered any Subscription-Based Program through their websites but no longer do so.

REQUEST NO. 38:

All documents concerning the total number of customers who, after being enrolled in any Subscription-Based Program, had no activity in any year of membership.

REQUEST NO. 39:

All documents concerning the usage rates for any Subscription-Based Program (this should include a breakdown by each program), including, but not limited to, documents from Webloyalty's Rebate Department.

REQUEST NO. 40:

Copies of any and all correspondence and reports issued by Justflowers and/or Giftbasketsasap to consumer protection agencies and attorneys general reflecting the percentage of Webloyalty memberships marketed to consumers after the effective date of any order, agreement or assurance of voluntary compliance entered into with any state in which Webloyalty does business.

REQUEST NO. 41:

Documents produced by Justflowers and/or Giftbasketsasap in any legal proceeding, governmental investigation or enforcement action, Better Business Bureau investigation or inquiry, in response to a subpoena or any other request for information, concerning any Subscription-Based Program.

REQUEST NO. 42:

Documents concerning any Subscription-Based Program for which Justflowers and/or Giftbasketsasap employees read scripts to consumers nationwide.

REQUEST NO. 43:

Exemplar membership kits mailed to persons residing in any state in the United States concerning any Subscription-Based Program.

REQUEST NO. 44:

Documents concerning revenue Justflowers and/or Giftbasketsasap received concerning its business relationship with Webloyalty, including, but not limited to, reports, analyses, spreadsheets, and bank statements showing fund transfers.

REQUEST NO. 45:

Documents concerning any monies Webloyalty refunded to any person for any Subscription-Based Program.

REQUEST NO. 46:

Complete and final monthly detailed general ledgers containing revenue accounts for any monies received in relation to any Subscription-Based Program.

REQUEST NO. 47:

State and Federal income tax returns for You, Justflowers and Giftbasketsasap.

REQUEST NO. 48:

Documents concerning communications with Justflowers' and Giftbasketsasap's auditors and/or financial advisors reflecting revenues concerning the marketing and sale of any Subscription-Based Program.

REQUEST NO. 49:

Copies of all training videos shown to any Justflowers or Giftbasketsasap employee concerning any Subscription-Based Program.

REQUEST NO. 50:

All documents received by You, Justflowers and/or Giftbasketsasap from any credit card, bank or billing company concerning Webloyalty's sales or billing practices.

REQUEST NO. 51:

All documents concerning any presentations, including PowerPoint materials, materials provided at conventions or trade shows, and any other informational materials, provided to web retailers concerning the offering of any Subscription-Based Program.

REQUEST NO. 52:

Documents concerning or describing any and all of the "money-saving discounts" offered by or through any Subscription-Based Program.

REQUEST NO. 53:

Documents identifying the "over 35,000 popular family restaurants" for which Webloyalty offers coupons through its Subscription-Based Programs.

REQUEST NO. 54:

Documents identifying the "over 17,000 top leisure attractions" for which Webloyalty offers coupons through its Subscription-Based Programs.

REQUEST NO. 55:

Documents showing the terms and conditions of all insurance benefits offered by Webloyalty through its membership programs, including, but not limited to, all coverage terms, exclusions and policy limits of all insurance policies.

REQUEST NO. 56:

Documents concerning communications between Webloyalty and You, Justflowers or Giftbasketsasap concerning complaints received about Webloyalty, including, but not limited to, spreadsheets and e-mails.

REQUEST NO. 57:

Documents sufficient to identify the web retailers through which Webloyalty offers Subscription-Based Programs.

REQUEST NO. 58:

Documents sufficient to identify all third-party vendors or providers of any purported benefits made available through any Subscription-Based Program.

REQUEST NO. 59:

Documents sufficient to identify the number of consumers who redeemed any "Cash Back Reward" regarding any Subscription-Based Program.

REQUEST NO. 60:

All documents concerning any changes made to any advertisements and disclosures by Webloyalty to consumers making purchases from Justflowers and/or Giftbasketsasap.

REQUEST NO. 61:

Documents sufficient to identify the total number of customers who signed up for any Subscription-Based Program through Justflowers or Giftbasketsasap.

REQUEST NO. 62:

Documents sufficient to identify the total number of customers who cancelled their membership in any Subscription-Based Program before the first charge to their debit or credit card account.

REQUEST NO. 63:

Documents sufficient to identify the retention rates for Webloyalty customers.

REQUEST NO. 64:

Documents sufficient to identify the total number of customers who cancelled their membership in any Subscription-Based Program after the first charge to their debit or credit card account, but before the second charge to their debit or credit card account.

REQUEST NO. 65:

Documents which show the percentage of Justflowers and/or Giftbasketsasap customers who have used or accessed any Subscription-Based Program, including, but not limited to, the number of times members log on to a Subscription-Based Program website.

REQUEST NO. 66:

Documents that show the reasons given by consumers to Justflowers or Giftbasketsasap's customer service departments for canceling memberships in any Subscription-Based Program and/or demanding refunds.

REQUEST NO. 67:

Documents constituting or concerning all agreements, terms of service or conditions, or other documents, reflecting any agreement between consumers and Webloyalty.

REQUEST NO. 68:

All documents reflecting the manner of notification by Webloyalty to consumers, including, but not limited to, screen-shots and e-mails, of the creation or activation of a membership in any Subscription-Based Program.

REQUEST NO. 69:

Documents sufficient to identify, including by name and address, all current and former

employees of Webloyalty responsible for the following:

a.    Customer Service;
b.    Rebate Department;
c.    Quality Assurance Department;
d.    Internet website design; and
e.    Information Technology.


Dated: _____, 2007

**PHILLIPS & GARCIA, LLP**
CARLIN J. PHILLIPS
ANDREW J. GARCIA

_____

Andrew J. Garcia, MA BBO # 559084
13 Ventura Drive
North Dartmouth, MA  02747
Telephone:  508/998-0800
508/998-0919 (fax)
*Proposed Liaison Counsel for Plaintiffs
and the Class*

**LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP**
DAVID J. GEORGE
STUART A. DAVIDSON
MARISA N. DEMATO
JAMES L. DAVIDSON
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  561/750-3000
561/750-3364 (fax)
*Proposed Co-Lead Counsel for Plaintiffs
and the Class*

**WEXLER TORISEVA WALLACE LLP**
MARK J. TAMBLYN
1610 Arden Way, Suite 290
Sacramento, CA  95815
Telephone:  916/568-1100
916/568-7890 (fax)

**WEXLER TORISEVA WALLACE LLP**
KENNETH A. WEXLER
MARK R. MILLER
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: 312/346-2222
312/346-0022 (fax)
*Proposed Co-Lead Counsel for Plaintiffs*
*and the Class*

**LEE & AMTZIS, P.L.**
ERIC A. LEE
GINA GREENWALD
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: 561/ 981-9988
561/981-9980 (fax)

**McCALLUM HOAGLUND COOK**
  **& IRBY LLP**
CHARLES M. MCCALLUM
R. BRENT IRBY
2062 Columbiana Road
Vestavia Hills, AL 35216
Telephone: 205/824-7768
205/824-7767 (fax)

**GREEN WELLING LLP**
ROBERT S. GREEN
CHARLES D. MARSHALL
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: 415/477-6700
415/477-6710 (fax)

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Andrew J. Garcia, hereby certify that a true and correct copy of the foregoing has been

furnished by U.S. Mail this _____ day of _____, 2007, to the following:

Gabrielle R. Wolohojian
John J. Regan
Joan S. Mitrou
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  617/526-6000
617/526-5000 (fax)
***Counsel for Defendants***

Steven Lieberman
Anne M. Sterba
C. Nichole Gifford
ROTHWELL, FIGG, ERNST
   & MANBECK, P.C.
1425 K Street N.W., Suite 800
Washington, D.C.  20005
Telephone:  202/783-6040
202/783-6031 (fax)
***Co-Counsel for Defendants***


                _____
                Andrew J. Garcia
                PHILLIPS & GARCIA, LLP


G:\jdavidson\Webloyalty\Pleadings\Request for Production to Garrett.doc

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 07-01820 <br><br> Lead Case: 06-11620-JLT |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT WEBLOYALTY.COM, INC.

Plaintiffs, pursuant to Fed. R. Civ. P. 33, on behalf of themselves and all others similarly situated, hereby direct the following Interrogatories to defendant Webloyalty.Com, Inc., to be answered in writing, separately and fully, within thirty (30) days of service. Each interrogatory is subject to the Instructions and Definitions following the specific requests.

### DEFINITIONS

1.      "Webloyalty" means defendant Webloyalty.com, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

8.      "You" or "Defendant" means Webloyalty and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

9.      For purposes of these Interrogatories "identify" is defined as follows:

   a.   The term "identify," when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment, job title, and date of separation from employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in any response to subsequent discovery requesting the identification of that person.

   b.   The term "identify," when referring to a document, means to give, to the extent known, the (a) type of document, (b) general subject matter, (c) date of the

1

document, and (d) author(s), addressee(s), and recipient(s).

c.  The term "identify," when referring to a database, means to state the name and structure of the database, the hardware and software that operates it, the person(s) or entities who developed the database or any modifications thereto, the name, address and telephone number of the current custodian of the database. If any such database was but is no longer in Your possession or subject to Your control, state what disposition was made of it, including the date that it left Your possession or control and identify the person or entity to whom You transferred it.

10.    "Subscription-Based Program(s)" means Webloyalty's web-based programs, including but not limited to: Reservation Rewards, Travel Values Plus, Buyer Assurance, Wallet Shield, Shopper Discounts & Rewards, and Distinct Privileges.

11.    The term "document" or "documents" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs, magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or

2

facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in Your possession, custody or control, or in the possession, custody or control of Your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on Your behalf.

12.    The term "electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

3

13.     The term "person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and governmental agencies and other agencies.

14.     The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail (including any attachments), telegram, overnight delivery, telephone, facsimile or telex.

15.     The term "concerning" or "regarding" means relating to, referring to, describing, concerning, evidencing or constituting.

## INSTRUCTIONS

16.     Information requested.  In answering these Interrogatories, furnish all information, however obtained, that is available to Your or Your reasonable inquiry, access or control, including information in Your actual or constructive possession, Your attorneys, or anyone else action on Your behalf.

17.     Time period.  Unless otherwise specifically stated herein, the "Relevant Time Period" is from September 11, 2000 until the date of Your response to these Interrogatories.

18.     Partial Response.  If You cannot respond to all or part of any interrogatory after exercising due diligence to secure the full information to do so, so state and answer to the extent possible, specifying Your inability to answer the remainder.  In any partial response, state whatever information or knowledge You have concerning the unanswered portion, and detail what efforts have been taken to secure the information.

19.     Objections.  If any part of any interrogatory is objected to, set forth the basis for Your objection and respond to all parts of the request to which You do not object to the extent not objectionable.

20.     Privilege.  For any privilege claimed as a ground for not answering any

4

interrogatory or for withholding any information responsive to any interrogatory, provide all information required by the Federal Rules of Civil Procedure.

21.    Duty to Supplement.  Pursuant to Federal Claims Rule 26(e), You have a duty to supplement these responses if the information disclosed becomes incomplete or incorrect or additional responsive information becomes known to You at any time.

22.    And/Or/Singular/Plural.  The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a responses that otherwise might be construed to be outside of its scope.

### INTERROGATORIES

INTERROGATORY NO. 1:

Identify the location, type and operation of all servers, electronic hardware, and software, including utilities, utilized by You in any way for the operation, analysis, development, maintenance or storage of data regarding Subscription-Based Programs.

INTERROGATORY NO. 2:

Identify and describe in detail any policy, procedure or practice concerning Your retention, preservation or destruction of documents, electronic data and databases.

INTERROGATORY NO. 3:

Describe in detail Your record keeping system for storage of information relating to the enrollment, cancellation or payment for any Subscription-Based Program.  In this context, "describe in detail" means to specifically identify the type of information stored with respect to each enrollment, cancellation or payment, including a specification of each field within any database, and to identify the brands and versions of all equipment or software used for such

5

storage.

INTERROGATORY NO. 4:

Identify and describe in detail each contract, agreement or other arrangement that You have or previously had with any online retailer who offers, or facilitates the offering, of any Subscription-Based Program.

INTERROGATORY NO. 5:

State on a monthly basis the number of online retailers who offered Subscription-Based Programs.

INTERROGATORY NO. 6:

Identify each online retailer that formerly offered or currently offers Subscription-Based Programs.

INTERROGATORY NO. 7:

Identify and describe in detail all Subscription-Based Programs (by title of product or program) that were sold by You during any point in the Relevant Time Period.

INTERROGATORY NO. 8:

State the name of the person or persons employed by You who is most knowledgeable about Subscription-Based Programs.

INTERROGATORY NO. 9:

Identify each advertisement disseminated to the public through any medium regarding Subscription-Based Programs, including but not limited to advertisements in newspapers, magazines, TV, radio and the internet, and with respect to each, state the date of the first dissemination and the method of dissemination, the name of each entity in which the advertisement appeared, and identify any marketing agency or other third party that prepared or

6

assisted in any way in the preparation and/or dissemination of each such advertisement.

INTERROGATORY NO. 10:

Identify all documents and persons involved during any point in the Relevant Time Period in the creation or development of any strategies regarding the marketing, sales or retention of Subscription-Based Programs, and state with respect to each person, the person's title, a description of their responsibilities, whether they are currently employed by You, the dates of employment, and the last known address and telephone number of each such person.

INTERROGATORY NO. 11:

Describe in detail the on-line marketing and sales strategies used – including but not limited to web-page layouts, page flows, screen orders, font style and size, word choice, color schemes, and text and graphical placement – to facilitate consumer memberships and retention in Subscription-Based Programs.

INTERROGATORY NO. 12:

Identify and describe in detail any study or documentation pertaining to consumer demographics and characteristics used to inform marketing and sales strategies relating to Subscription-Based Programs.

INTERROGATORY NO. 13:

Identify all documents and describe in detail Your policies, practices or procedures regarding consumer enrollment in any Subscription-Based Program.

INTERROGATORY NO. 14:

State on a monthly basis the number of consumers that enroll in any Subscription-Based

Program.

INTERROGATORY NO. 15:

State on a monthly basis all monies received by You from fees paid by persons or entities who enrolled in Subscription-Based Programs.

INTERROGATORY NO. 16:

Describe in detail the process and means by which a consumer's billing information is transferred from an online retailer to Webloyalty.com following a consumer's enrollment in a Subscription-Based Program.

INTERROGATORY NO. 17:

Identify and describe in detail each policy, practice or procedure You have concerning billing a consumer while enrolled in a Subscription-Based Program.

INTERROGATORY NO. 18:

Identify and describe in detail each policy, practice or procedure You have concerning notification to consumers of their creation or activation of a membership in any Subscription-Based Program.

INTERROGATORY NO. 19:

State on a monthly basis the number of members in Subscription-Based Programs that changed their e-mail address information following enrollment in any Subscription-Based Program, which number includes customers whose e-mail addresses provided You with an e-mail delivery failure notification when You sent them an email.

8

INTERROGATORY NO. 20:

State on a monthly basis the number of consumers who redeemed any "Cash Back Reward" or other discounts offered on any online retailer's website subsequent to enrollment in any Subscription-Based Program.

INTERROGATORY NO. 21:

State on a monthly basis the percentage of Subscription-Based Program members who used or accessed a Subscription-Based Program, including but not limited to the number of times members log on to a Subscription-Based program website.

INTERROGATORY NO. 22:

State on a monthly basis the number of complaints You received from consumers regarding Subscription-Based Programs.

INTERROGATORY NO. 23:

State the types of complaints You received from consumers regarding Subscription-Based Programs.

INTERROGATORY NO. 24:

Identify and describe in detail each policy, practice or procedure You have concerning a consumer's cancellation of membership in any Subscription-Based Program.

INTERROGATORY NO. 25:

State on a monthly basis the number of memberships in Subscription-Based Programs that are cancelled.

INTERROGATORY NO. 26:

Identify the average length of time a consumer remained enrolled in Subscription-Based Programs before successfully canceling the membership.

INTERROGATORY NO. 27:

Identify and describe in detail each policy, practice or procedure You have for providing refunds to consumers who are or were enrolled in Subscription-Based Program.

INTERROGATORY NO. 28:

State on a monthly basis the number of refunds issued to consumers who were enrolled in Subscription-Based Programs.

INTERROGATORY NO. 29:

State on a monthly basis all monies paid by You for refunds issued to consumers who were enrolled in Subscription-Based Programs.

INTERROGATORY NO. 30:

Identify and describe in complete detail any study or other form of substantiation You contend demonstrates the effectiveness of Your disclosures to consumers regarding enrollment in Subscription-Based Programs.

INTERROGATORY NO. 31:

Identify all documents and persons involved during any point in the Relevant Time Period in the creation or development of Your Privacy Policy and Terms of Use agreements.

INTERROGATORY NO. 32:

Have You been in the past 5 years or are You currently a defendant in any litigation besides this litigation involving allegations that You violated the unfair trade practices statute in any state or federal jurisdiction and/or similar statute dealing with deceptive consumer practices? If so, please identify, as to each case, the court in which the case was filed, the names of all parties, the case number, the particular violations alleged by plaintiff(s), whether a settlement or verdict was reached and the details of the particular resolution, including the date and the type

and the amount, if applicable, of any relief provided.

INTERROGATORY NO. 33:

Identify and describe in detail any governmental investigations or enforcement actions (including Better Business Bureau investigations) that have been conducted or are currently being conducted against You.

INTERROGATORY NO. 34:

Describe in detail the Enhansiv program. In this context, "describe in detail" means to specifically describe the function of the Enhansiv program, the type of information stored with respect to this program, and all hardware or other programs that are used in conjunction with this program.

INTERROGATORY NO. 35:

Identify and describe in detail all contracts, agreements or other arrangements between Webloyalty and any issuer of a credit, debit or stored value card.

INTERROGATORY NO. 36:

Identify any insurance policy taken out by You, or for the benefit of You, which provides, or may provide, for coverage for any claims asserted by Plaintiff.

INTERROGATORY NO. 37:

Identify all third-party vendors or providers of any purported services or benefits made available through any Subscription-Based Program.

INTERROGATORY NO. 38:

Identify all persons who contributed information, or were consulted, to answer each of the following interrogatories and, as to each person, identify each interrogatory number or numbers and subparts thereof to which that person contributed information.

11

Dated:  August __, 2007

**PHILLIPS & GARCIA, LLP**
CARLIN J. PHILLIPS
ANDREW J. GARCIA

_____

ANDREW J. GARCIA

13 Ventura Drive
North Dartmouth, MA  02747
Telephone:  (508) 998-0800
Facsimile:  (508) 998-0919

*Proposed Liaison Counsel for Plaintiffs and the Class*

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**
DAVID J. GEORGE
STUART A. DAVIDSON
MARISA N. DEMATO
JAMES L. DAVIDSON
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364

**WEXLER TORISEVA WALLACE LLP**
MARK J. TAMBLYN
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone:  (916) 568-1100
Facsimile:  (916) 568-7890

**WEXLER TORISEVA WALLACE LLP**
KENNETH A. WEXLER
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022

*Proposed Co-Lead Counsel for Plaintiffs and the Class*

**LEE & AMTZIS, P.L.**
ERIC A. LEE
GINA GREENWALD
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: (561) 981-9988
Facsimile: (561) 981-9980

**McCALLUM HOAGLUND COOK
& IRBY LLP**
CHARLES M. MCCALLUM
R. BRENT IRBY
2062 Columbiana Road
Vestavia Hills, Alabama 35216
Telephone: (205) 824-7768
Facsimile: (205) 824-7767 (

**GREEN WELLING LLP**
ROBERT S. GREEN
CHARLES D. MARSHALL
595 Market Street, Suite 2750
San Francisco, California 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

*Counsel for Plaintiffs*

13

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 07-01820<br><br>Lead Case:  06-11620-JLT |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES
## TO DEFENDANT FANDANGO, INC.

Plaintiffs, pursuant to Fed. R. Civ. P. 33, on behalf of themselves and all others similarly situated, hereby direct the following Interrogatories to defendant Fandango, Inc. d/b/a Fandango.com to be answered in writing, separately and fully, within thirty (30) days of service. Each interrogatory is subject to the Instructions and Definitions following the specific requests.

### DEFINITIONS

1.     "Webloyalty" means defendant Webloyalty.com, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

2.      "You" or "Defendant" mean Fandango, Inc., d/b/a Fandango.com its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on its behalf.

3.     For purposes of these Interrogatories "identify" is defined as follows:

   a.   The term "identify," when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment, job title, and date of separation from employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in any response to subsequent discovery requesting the identification of that person.

   b.   The term "identify," when referring to a document, means to give, to the extent known, the (a) type of document, (b) general subject matter, (c) date of the

1