# EXHIBIT C
# Part V

Dockets.Justia.com

digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

7.      The term "person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and governmental agencies and other agencies.

8.      The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail (including any attachments), telegram, overnight delivery, telephone, facsimile or telex.

9.      The term "concerning" or "regarding" means relating to, referring to, describing, concerning, evidencing or constituting.

## INSTRUCTIONS

10.      Information requested. In answering these Interrogatories, furnish all information, however obtained, that is available to You or Your reasonable inquiry, access or control, including information in Your actual or constructive possession, Your attorneys, or anyone else acting on Your behalf.

11.      Time period. Unless otherwise specifically stated herein, the "Relevant Time Period" is from September 11, 2000 until the date of Your response to these Interrogatories.

12.      Partial Response. If You cannot respond to all or part of any interrogatory after exercising due diligence to secure the full information to do so, so state and answer to the extent possible, specifying Your inability to answer the remainder. In any partial response, state whatever information or knowledge You have concerning the unanswered portion, and detail what efforts You have taken to secure the information.

13.      Objections. If You object to any part of an interrogatory, set forth the basis for Your objection and respond to all parts of the request to which You do not object.

4

14.    Privilege. For any privilege claimed as a ground for not answering any interrogatory or for withholding any information responsive to any interrogatory, provide all information required by the Federal Rules of Civil Procedure.

15.    Duty to Supplement. Pursuant to Federal Claims Rule 26(e), You have a duty to supplement these responses if the information disclosed becomes incomplete or incorrect or additional responsive information becomes known to You at any time.

16.    And/Or/Singular/Plural. The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a response that otherwise might be construed to be outside of its scope.

## **INTERROGATORIES**

INTERROGATORY NO. 1:

Identify the location, type and operation of all servers, electronic hardware, and software, including utilities, utilized by You in any way for the operation, analysis, development, maintenance or storage of data regarding Subscription-Based Programs.

INTERROGATORY NO. 2:

Identify and describe in detail any policy, procedure or practice concerning Your retention, preservation or destruction of documents, electronic data and databases.

INTERROGATORY NO. 3:

Describe in detail Your record keeping system for storage of information relating to the establishment, use, facilitation, offer, sales, enrollment, cancellation or payment for any Subscription-Based Program. In this context, "describe in detail" means to specifically identify the type of information stored with respect to each enrollment, cancellation, or payment,

including a specification of each field within any database, and to identify the brands and versions of all equipment or software used for such storage.

INTERROGATORY NO. 4:

Identify and describe in detail each contract, agreement or other arrangement that You have or previously had with Webloyalty relating to the establishment, use, facilitation, offer, or sale of any Subscription-Based Program.

INTERROGATORY NO. 5:

Identify and describe in detail all Subscription-Based Programs (by title of product or program) that were established, used, facilitated, offered, or sold by You during any point in the Relevant Time Period.

INTERROGATORY NO. 6

State the name of the person or persons employed by You who is most knowledgeable about Subscription-Based Programs.

INTERROGATORY NO. 7:

Identify each advertisement disseminated to the public through any medium regarding Subscription-Based Programs, including but not limited to advertisements in newspapers, magazines, TV, radio and the internet, and with respect to each, state the date of the first dissemination and the method of dissemination, the name of each entity in which the advertisement appeared, and identify any marketing agency or other third party that prepared or assisted in any way in the preparation and/or dissemination of each such advertisement.

INTERROGATORY NO. 8:

Identify all documents and persons involved during any point in the Relevant Time Period in the creation or development of any strategies regarding the establishment, use,

6

facilitation, marketing, sales, or retention of Subscription-Based Programs, and state with respect to each person, the person's title, a description of their responsibilities, whether they are currently employed by You, the dates of employment, and the last known address and telephone number of each such person.

INTERROGATORY NO. 9:

Identify and describe in detail all documents relating to Your decision to establish, use, facilitate, offer, or sell any Subscription-Based Program.

INTERROGATORY NO. 10:

Describe in detail the on-line marketing and sales strategies used – including but not limited to web-page layouts, page flows, screen orders, font style and size, word choice, color schemes, and text and graphical placement – to facilitate consumer memberships and retention in Subscription-Based Programs.

INTERROGATORY NO. 11:

Identify and describe in detail any study or documentation pertaining to consumer demographics and characteristics used to inform marketing and sales strategies relating to Subscription-Based Programs.

INTERROGATORY NO. 12:

Identify all documents and describe in detail Your policies, practices or procedures regarding consumer enrollment in any Subscription-Based Program.

INTERROGATORY NO. 13:

State on a monthly basis the number of consumers that enroll in each Subscription-Based Program established, used, facilitated, offered, or sold by You.

INTERROGATORY NO. 14:

State on a monthly basis all monies received by You from fees paid by persons or entities who enrolled in Subscription-Based Programs.

INTERROGATORY NO. 15:

State on a monthly basis all monies received by You from any person or entity resulting from your establishment, use, facilitation, offer, or sale of Subscription-Based Programs, or resulting from the enrollment of persons or entities in Subscription-Based Programs.

INTERROGATORY NO. 16:

Describe in detail the process and means by which a consumer's billing information is transferred from You to Webloyalty.com following a consumer's enrollment in a Subscription-Based Program.

INTERROGATORY NO. 17:

Identify and describe in detail each policy, practice or procedure You have concerning notification to consumers of their creation or activation of a membership in any Subscription-Based Program.

INTERROGATORY NO. 18:

State on a monthly basis the number of consumers who redeemed with You any "Cash Back Reward" or other discounts offered through Subscription-Based Programs established, used, facilitated, offered, or sold by You. .

INTERROGATORY NO. 19:

State on a monthly basis the number of complaints You received from consumers regarding Subscription-Based Programs.

INTERROGATORY NO. 20:

State the types of complaints You received from consumers regarding Subscription-

8

Based Programs.

INTERROGATORY NO. 21:

Identify and describe in detail each policy, practice or procedure You have concerning a consumer's cancellation of membership in any Subscription-Based Program.

INTERROGATORY NO. 22:

State on a monthly basis the number of memberships in Subscription-Based Programs established, used, facilitated, offered, or sold by You that are cancelled.

INTERROGATORY NO. 23:

Identify the average length of time a consumer remained enrolled in Subscription-Based Programs established, used, facilitated, offered or sold by You before successfully canceling the membership.

INTERROGATORY NO. 24:

Identify and describe in detail each policy, practice or procedure You have for providing refunds to consumers who are or were enrolled in Subscription-Based Program established, used, facilitated, offered or sold by You.

INTERROGATORY NO. 25:

State on a monthly basis the number of refunds issued to consumers who were enrolled in Subscription-Based Programs established, used, facilitated, offered, or sold by You.

INTERROGATORY NO. 26:

State on a monthly basis all monies paid by You for refunds issued to consumers who were enrolled in Subscription-Based Programs.

INTERROGATORY NO. 27:

Identify and describe in complete detail any study or other form of substantiation You

9

contend demonstrates the effectiveness of the disclosures --- either made by You or Webloyalty -

-- to consumers regarding enrollment in Subscription-Based Programs

INTERROGATORY NO. 28:

Identify all documents and persons involved during any point in the Relevant Time

Period in the creation or development of Your Privacy Policy and Terms of Use agreements.

INTERROGATORY NO. 29:

Have You been in the past 5 years or are You currently a defendant in any litigation

besides this litigation involving allegations that You violated the unfair trade practices statute in

any state or federal jurisdiction and/or similar statute dealing with deceptive consumer practices?

If so, please identify, as to each case, the court in which the case was filed, the names of all

parties, the case number, the particular violations alleged by plaintiff(s), whether a settlement or

verdict was reached and the details of the particular resolution, including the date and the type

and the amount, if applicable, of any relief provided.

INTERROGATORY NO. 30:

Identify and describe in detail any governmental investigations or enforcement actions

(including Better Business Bureau investigations) that have been conducted or are currently

being conducted against You.

INTERROGATORY NO. 31:

Identify and describe in detail all contracts, agreements or other arrangements between

You and Webloyalty regarding the issuance of a credit, debit or stored value card.

INTERROGATORY NO. 32:

Identify any insurance policy taken out by You, or for the benefit of You, which

provides, or may provide, for coverage for any claims asserted by Plaintiff.

INTERROGATORY NO. 33:

Identify all third-party vendors or providers of any purported services or benefits made available through any Subscription-Based Program.

INTERROGATORY NO. 34:

Identify all persons who contributed information, or were consulted, to answer each of the following interrogatories and, as to each person, identify each interrogatory number or numbers and subparts thereof to which that person contributed information.

Dated: August __, 2007

**PHILLIPS & GARCIA, LLP**
CARLIN J. PHILLIPS
ANDREW J. GARCIA

_____
ANDREW J. GARCIA

13 Ventura Drive
North Dartmouth, MA  02747
Telephone:  (508) 998-0800
Facsimile:  (508) 998-0919

*Proposed Liaison Counsel for Plaintiffs and the Class*

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**
DAVID J. GEORGE
STUART A. DAVIDSON
MARISA N. DEMATO
JAMES L. DAVIDSON
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364

**WEXLER TORISEVA WALLACE LLP**
MARK J. TAMBLYN

11

1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

**WEXLER TORISEVA WALLACE LLP**
KENNETH A. WEXLER
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

*Proposed Co-Lead Counsel for Plaintiffs and the Class*

**LEE & AMTZIS, P.L.**
ERIC A. LEE
GINA GREENWALD
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: (561) 981-9988
Facsimile: (561) 981-9980

**McCALLUM HOAGLUND COOK
& IRBY LLP**
CHARLES M. MCCALLUM
R. BRENT IRBY
2062 Columbiana Road
Vestavia Hills, Alabama 35216
Telephone: (205) 824-7768
Facsimile: (205) 824-7767 (

**GREEN WELLING LLP**
ROBERT S. GREEN
CHARLES D. MARSHALL
595 Market Street, Suite 2750
San Francisco, California 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

*Counsel for Plaintiffs*

12

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE WEBLOYALTY.COM, INC.
MARKETING AND SALES PRACTICES
LITIGATION

MDL No. 07-01820

Lead Case:  06-11620-JLT

## PLAINTIFFS' FIRST SET OF INTERROGATORIES
## TO DEFENDANT NELSON SHANE GARRETT INDIVIDUALLY AND D/B/A/
## JUSTFLOWERS.COM AND GIFTBASKETASAP.COM

Plaintiffs, pursuant to Fed. R. Civ. P. 33, on behalf of themselves and all others similarly

situated, hereby direct the following Interrogatories to defendant Nelson Shane Garrett,

individually and d/b/a Justflowers.com and Giftbasketasap.com, to be answered in writing,

separately and fully, within thirty (30) days of service.  Each interrogatory is subject to the

Instructions and Definitions following the specific requests.

### DEFINITIONS

1.      "Webloyalty" means defendant Webloyalty.com, Inc. and its parent companies,

predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or

anyone acting or purporting to act on their behalf.

2.      "You" or "Defendant" mean Nelson Shane Garrett, individually and d/b/a

Justflowers.com and  Giftbasketasap.com, any parent companies, predecessors, successors,

divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting

to act on Your behalf.

3.      For purposes of these Interrogatories "identify" is defined as follows:

   a.  The term "identify," when referring to a person, means to give, to the extent
       known, the person's full name, present or last known address, and when referring
       to a natural person, additionally, the present or last known place of employment,
       job title, and date of separation from employment.  Once a person has been
       identified in accordance with this paragraph, only the name of that person need be

1

listed in any response to subsequent discovery requesting the identification of that person.

b.  The term "identify," when referring to a document, means to give, to the extent known, the (a) type of document, (b) general subject matter, (c) date of the document, and (d) author(s), addressee(s), and recipient(s).

c.  The term "identify," when referring to a database, means to state the name and structure of the database, the hardware and software that operates it, the person(s) or entities who developed the database or any modifications thereto, the name, address and telephone number of the current custodian of the database. If any such database was but is no longer in Your possession or subject to Your control, state what disposition was made of it, including the date that it left Your possession or control and identify the person or entity to whom You transferred it.

4.   "Subscription-Based Program(s)" means Webloyalty's web-based programs, including but not limited to: Reservation Rewards, Travel Values Plus, Buyer Assurance, Wallet Shield, Shopper Discounts & Rewards, and Distinct Privileges.

5.   The term "document" or "documents" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs, magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news

releases, trade releases, advertisements, press books, teletype messages, licenses, financial

statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or

facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term

"document" also includes preliminary drafts or revisions or copies of any such document if the

copy is in any way different from the original, now in Your possession, custody or control, or in

the possession, custody or control of Your advisors, agents, employees, servants, representatives,

trustees, counsel or other persons acting or purporting to act on Your behalf.

      6.    The term "electronic data" refers to any original and any non-identical copies

(whether non-identical because of notes made on copies or attached comments, annotations,

marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic,

magnetic, digital or other programs (whether private, commercial, or work-in-progress),

programming notes or instructions, activity listings of electronic mail receipts or transmittals,

output resulting from the use of any software program, including word processing documents,

spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal

digital assistant ("PDA") messages, instant messenger messages, operating systems, source code

of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF

files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any

and all miscellaneous files or file fragments, regardless of the media on which they reside and

regardless of whether said electronic data consists of an active file, deleted file or file fragment.

"Electronic data" also includes any and all items stored on computer memory or memories, hard

disks, floppy disks, zip drives, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic

tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including,

but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other vehicle for

digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

7.      The term "person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and governmental agencies and other agencies.

8.      The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail (including any attachments), telegram, overnight delivery, telephone, facsimile or telex.

9.      The term "concerning" or "regarding" means relating to, referring to, describing, concerning, evidencing or constituting.

## INSTRUCTIONS

10.     Information requested. In answering these Interrogatories, furnish all information, however obtained, that is available to You or Your reasonable inquiry, access or control, including information in Your actual or constructive possession, Your attorneys, or anyone else acting on Your behalf.

11.     Time period. Unless otherwise specifically stated herein, the "Relevant Time Period" is from September 11, 2000 until the date of Your response to these Interrogatories.

12.     Partial Response. If You cannot respond to all or part of any interrogatory after exercising due diligence to secure the full information to do so, so state and answer to the extent possible, specifying Your inability to answer the remainder. In any partial response, state whatever information or knowledge You have concerning the unanswered portion, and detail what efforts You have taken to secure the information.

13.     Objections. If You object to any part of an interrogatory, set forth the basis for Your objection and respond to all parts of the request to which You do not object.

14.     Privilege.  For any privilege claimed as a ground for not answering any interrogatory or for withholding any information responsive to any interrogatory, provide all information required by the Federal Rules of Civil Procedure.

15.     Duty to Supplement.  Pursuant to Federal Claims Rule 26(e), You have a duty to supplement these responses if the information disclosed becomes incomplete or incorrect or additional responsive information becomes known to You at any time.

16.     And/Or/Singular/Plural.  The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a response that otherwise might be construed to be outside of its scope.

## INTERROGATORIES

INTERROGATORY NO. 1:

Identify the location, type and operation of all servers, electronic hardware, and software, including utilities, utilized by You in any way for the operation, analysis, development, maintenance or storage of data regarding Subscription-Based Programs.

INTERROGATORY NO. 2:

Identify and describe in detail any policy, procedure or practice concerning Your retention, preservation or destruction of documents, electronic data and databases.

INTERROGATORY NO. 3:

Describe in detail Your record keeping system for storage of information relating to the establishment, use, facilitation, offer, sales, enrollment, cancellation or payment for any Subscription-Based Program.  In this context, "describe in detail" means to specifically identify the type of information stored with respect to each enrollment, cancellation, or payment,

5

including a specification of each field within any database, and to identify the brands and versions of all equipment or software used for such storage.

INTERROGATORY NO. 4:

Identify and describe in detail each contract, agreement or other arrangement that You have or previously had with Webloyalty relating to the establishment, use, facilitation, offer, or sale of any Subscription-Based Program.

INTERROGATORY NO. 5:

Identify and describe in detail all Subscription-Based Programs (by title of product or program) that were established, used, facilitated, offered, or sold by You during any point in the Relevant Time Period.

INTERROGATORY NO. 6

State the name of the person or persons employed by You who is most knowledgeable about Subscription-Based Programs.

INTERROGATORY NO. 7:

Identify each advertisement disseminated to the public through any medium regarding Subscription-Based Programs, including but not limited to advertisements in newspapers, magazines, TV, radio and the internet, and with respect to each, state the date of the first dissemination and the method of dissemination, the name of each entity in which the advertisement appeared, and identify any marketing agency or other third party that prepared or assisted in any way in the preparation and/or dissemination of each such advertisement.

INTERROGATORY NO. 8:

Identify all documents and persons involved during any point in the Relevant Time Period in the creation or development of any strategies regarding the establishment, use,

6

facilitation, marketing, sales, or retention of Subscription-Based Programs, and state with respect to each person, the person's title, a description of their responsibilities, whether they are currently employed by You, the dates of employment, and the last known address and telephone number of each such person.

INTERROGATORY NO. 9:

Identify and describe in detail all documents relating to Your decision to establish, use, facilitate, offer, or sell any Subscription-Based Program.

INTERROGATORY NO. 10:

Describe in detail the on-line marketing and sales strategies used – including but not limited to web-page layouts, page flows, screen orders, font style and size, word choice, color schemes, and text and graphical placement – to facilitate consumer memberships and retention in Subscription-Based Programs.

INTERROGATORY NO. 11:

Identify and describe in detail any study or documentation pertaining to consumer demographics and characteristics used to inform marketing and sales strategies relating to Subscription-Based Programs.

INTERROGATORY NO. 12:

Identify all documents and describe in detail Your policies, practices or procedures regarding consumer enrollment in any Subscription-Based Program.

INTERROGATORY NO. 13:

State on a monthly basis the number of consumers that enroll in each Subscription-Based Program established, used, facilitated, offered, or sold by You.

INTERROGATORY NO. 14:

State on a monthly basis all monies received by You from fees paid by persons or entities who enrolled in Subscription-Based Programs.

INTERROGATORY NO. 15:

State on a monthly basis all monies received by You from any person or entity resulting from your establishment, use, facilitation, offer, or sale of Subscription-Based Programs, or resulting from the enrollment of persons or entities in Subscription-Based Programs.

INTERROGATORY NO. 16:

Describe in detail the process and means by which a consumer's billing information is transferred from You to Webloyalty.com following a consumer's enrollment in a Subscription-Based Program.

INTERROGATORY NO. 17:

Identify and describe in detail each policy, practice or procedure You have concerning notification to consumers of their creation or activation of a membership in any Subscription-Based Program.

INTERROGATORY NO. 18:

State on a monthly basis the number of consumers who redeemed with You any "Cash Back Reward" or other discounts offered through Subscription-Based Programs established, used, facilitated, offered, or sold by You. .

INTERROGATORY NO. 19:

State on a monthly basis the number of complaints You received from consumers regarding Subscription-Based Programs.

INTERROGATORY NO. 20:

State the types of complaints You received from consumers regarding Subscription-

8

Based Programs.

INTERROGATORY NO. 21:

Identify and describe in detail each policy, practice or procedure You have concerning a consumer's cancellation of membership in any Subscription-Based Program.

INTERROGATORY NO. 22:

State on a monthly basis the number of memberships in Subscription-Based Programs established, used, facilitated, offered, or sold by You that are cancelled.

INTERROGATORY NO. 23:

Identify the average length of time a consumer remained enrolled in Subscription-Based Programs established, used, facilitated, offered or sold by You before successfully canceling the membership.

INTERROGATORY NO. 24:

Identify and describe in detail each policy, practice or procedure You have for providing refunds to consumers who are or were enrolled in Subscription-Based Program established, used, facilitated, offered or sold by You.

INTERROGATORY NO. 25:

State on a monthly basis the number of refunds issued to consumers who were enrolled in Subscription-Based Programs established, used, facilitated, offered, or sold by You.

INTERROGATORY NO. 26:

State on a monthly basis all monies paid by You for refunds issued to consumers who were enrolled in Subscription-Based Programs.

INTERROGATORY NO. 27:

Identify and describe in complete detail any study or other form of substantiation You

9

contend demonstrates the effectiveness of the disclosures --- either made by You or Webloyalty - -- to consumers regarding enrollment in Subscription-Based Programs

INTERROGATORY NO. 28:

Identify all documents and persons involved during any point in the Relevant Time Period in the creation or development of Your Privacy Policy and Terms of Use agreements.

INTERROGATORY NO. 29:

Have You been in the past 5 years or are You currently a defendant in any litigation besides this litigation involving allegations that You violated the unfair trade practices statute in any state or federal jurisdiction and/or similar statute dealing with deceptive consumer practices? If so, please identify, as to each case, the court in which the case was filed, the names of all parties, the case number, the particular violations alleged by plaintiff(s), whether a settlement or verdict was reached and the details of the particular resolution, including the date and the type and the amount, if applicable, of any relief provided.

INTERROGATORY NO. 30:

Identify and describe in detail any governmental investigations or enforcement actions (including Better Business Bureau investigations) that have been conducted or are currently being conducted against You.

INTERROGATORY NO. 31:

Identify and describe in detail all contracts, agreements or other arrangements between You and Webloyalty regarding the issuance of a credit, debit or stored value card.

INTERROGATORY NO. 32:

Identify any insurance policy taken out by You, or for the benefit of You, which provides, or may provide, for coverage for any claims asserted by Plaintiff.

INTERROGATORY NO. 33:

Identify all third-party vendors or providers of any purported services or benefits made available through any Subscription-Based Program.

INTERROGATORY NO. 34:

Identify all persons who contributed information, or were consulted, to answer each of the following interrogatories and, as to each person, identify each interrogatory number or numbers and subparts thereof to which that person contributed information.

Dated: August __, 2007

**PHILLIPS & GARCIA, LLP**
CARLIN J. PHILLIPS
ANDREW J. GARCIA

_____
ANDREW J. GARCIA

13 Ventura Drive
North Dartmouth, MA  02747
Telephone:  (508) 998-0800
Facsimile:  (508) 998-0919

*Proposed Liaison Counsel for Plaintiffs and the Class*

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**
DAVID J. GEORGE
STUART A. DAVIDSON
MARISA N. DEMATO
JAMES L. DAVIDSON
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364

**WEXLER TORISEVA WALLACE LLP**
MARK J. TAMBLYN
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

**WEXLER TORISEVA WALLACE LLP**
KENNETH A. WEXLER
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

*Proposed Co-Lead Counsel for Plaintiffs and the Class*

**LEE & AMTZIS, P.L.**
ERIC A. LEE
GINA GREENWALD
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: (561) 981-9988
Facsimile: (561) 981-9980

**McCALLUM HOAGLUND COOK & IRBY LLP**
CHARLES M. MCCALLUM
R. BRENT IRBY
2062 Columbiana Road
Vestavia Hills, Alabama 35216
Telephone: (205) 824-7768
Facsimile: (205) 824-7767 (

**GREEN WELLING LLP**
ROBERT S. GREEN
CHARLES D. MARSHALL
595 Market Street, Suite 2750
San Francisco, California 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

*Counsel for Plaintiffs*

12

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

SOUTHERN                                    NEW YORK
——————————— DISTRICT OF ———————————

In Re: Webloyalty.com, Inc. Marketing and Sales
Practices Litigation

**V.**

## SUBPOENA IN A CIVIL CASE

CASE NUMBER:[1]   MDL 07-1820
Lead Case: 06-11620-JLT
District of Massachusetts

TO:   American International Specialty Lines Ins. Co.
70 Pine Street
New York, New York  10270

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached "Exhibit A"

| PLACE<br>Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, 120 E. Palmetto Park Road, Suite 500<br>Boca Raton, Florida 33432        Telephone: (561)750-3000; Facsimile: (561)750-3364 | DATE AND TIME<br>By July 23, 2007 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David J. George, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, 120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432        Telephone: (561)750-3000        Facsimile: (561)750-3364

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| | June 22, 2007 | |
| SERVED | American International Specialty Lines Ins. Co. | 70 Pine Street, New York, New York  10270 |

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
|---|---|---|
| David J. George | Attorney | Certified Mail/Return Receipt Requested |
| SERVED BY (PRINT NAME) | | TITLE |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____June 22, 2007_____
                            DATE

SIGNATURE OF SERVER

120 E. Palmetto Park Road, Suite 500

ADDRESS OF SERVER

Boca Raton, Florida  33432

---

Rule 45. Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

### I.    DEFINITIONS

1.    "Webloyalty" means defendant Webloyalty.com, Inc. and its parent companies, predecessors, successors, divisions, subsidiaries, and officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

2.    "Subscription-Based Program(s)" means Webloyalty.com's web-based programs, including but not limited to: Reservation Rewards, Travel Values Plus, Buyer Assurance, Wallet Shield, Shopper Discounts & Rewards, and Distinct Privileges.

### II.    RELEVANT PERIOD

Unless otherwise stated in this request, the "Relevant Period" for all requests is from September 11, 2000 until such time as production of responsive pleadings is complete.

### III.    DOCUMENTS TO BE PRODUCED

1.    Copies of any and all contracts or agreements between you and Webloyalty or any Webloyalty affiliate.

2.    All documents evidencing any communications between you and Webloyalty or any Webloyalty affiliate.

3.    All documents which evidence, refer, or relate to any monies exchanged or revenues shared between you and Webloyalty or any Webloyalty affiliate.

4.    All documents concerning any study, review, analysis, survey, investigation, or estimation about claims rates or loss ratios for the services, insurance, or protection you make available by membership into any Webloyalty Subscription Based Program.

5.    All documents which evidence, refer, or relate to the means and manner in which you are able to identify those individuals who have submitted claims for your services, insurance,

or protection by virtue of the individual's membership into any Webloyalty Subscription Based Program.

6.    All documents sufficient to evidence the total number of individuals who, from 2002 to the present, have submitted claims for your services, insurance, or protection by virtue of the individual's membership into any Webloyalty Subscription Based Program.

7.    All documents sufficient to evidence the total monetary amount, beginning from 2002 to the present, of claims paid by you by virtue of the claimant's membership into any Webloyalty Subscription Based Program.

8.    All documents sufficient to evidence the total number of claims that have been made to you for services, insurance, or protection by virtue of the individual's membership into any Webloyalty Subscription Based Program.

9.    All documents which evidence, refer, or relate to your claims-making and claims-handling procedure and protocol for those services, insurance, or protections made available to individuals by virtue of their membership into any Webloyalty Subscription Based Program.

10.    All documents concerning any services, insurance, or protections made available to individuals by virtue of your agreement and relationship with Webloyalty or any Webloyalty affiliate.

11.    All documents which evidence, refer, or relate to any claims you have denied to individuals who have submitted claims to you for services, insurance, or protection made available by virtue of their membership into any Webloyalty Subscription Based Program.

12.    All documents concerning any complaints or disputes with Webloyalty or any Webloyalty affiliate, or with any protections or services made available by virtue of your agreement and relationship with Webloyalty or any Webloyalty affiliate.