# EXHIBIT A

Dockets.Justia.com

IN RE: WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. MDL 07-1820

|  |  |  |
|---|---|---|
| IN RE: | ) | TRANSCRIPT OF STATUS CONFERENCE |
|  | ) |  |
| WEBLOYALTY.COM, INC., | ) |  |
| MARKETING and SALES | ) |  |
| PRACTICES LITIGATION | ) |  |
|  | ) |  |

BEFORE:  The Honorable Joseph L. Tauro,
District Judge

John J. Moakley United States Courthouse
Courtroom No. 20
One Courthouse Way
Boston, Massachusetts  02210
Tuesday, April 24, 2007
2:15 p.m.

Marcia G. Patrisso, RPR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3507
Boston, Massachusetts  02210

(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 2

```
 1    APPEARANCES:
 2
        LERACH, COUGHLIN, STOIA, GELLER,
 3      RUDMAN & ROBBINS, LLP
        By: David J. George, Esq.
 4          Stuart A. Davidson, Esq.
        120 East Palmetto Park Road - Suite 500
 5      Boca Raton, Florida  33432
        -and-
 6      PHILLIPS & GARCIA, LLP
        By: Andrew J. Garcia, Esq.
 7      13 Ventura Drive
        North Dartmouth, Massachusetts  02747
 8      -and-
        WEXLER, TORISEVA & WALLACE, LLP
 9      By: Mark J. Tamblyn, Esq.
        1610 Arden Way - Suite 290
10      Sacramento, California  95815
        Attorneys for plaintiffs
11
12      WILMER CUTLER PICKERING HALE and DORR LLP
        By: Gabrielle R. Wolohojian, Esq.
13          Joan Mitrou, Esq.
            John J. Regan, Esq.
14      60 State Street
        Boston, Massachusetts  02109
15      -and-
        ROTHWELL, FIGG, ERNST & MANBECK, P.C.
16      By: Steven Lieberman, Esq.
        1425 K Street, NW, Suites 800
17      Washington, D.C.  20005
        Attorneys for defendant
18
19
20
21
22
23
24
25
```

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 3

1          THE CLERK:  All rise for the Honorable Court.

2          THE COURT:  Good afternoon, everybody.  I have a

3     different cast here.

4          THE CLERK:  This is MDL Number 07-1820, In Re:

5     Webloyalty.com, Inc., Marketing Practices.

6          Would counsel please identify themselves for the

7     record.

8          MR. GEORGE:  Good afternoon, your Honor.  David

9     George from Lerach, Coughlin on behalf of all

10    plaintiffs.  With me is my colleague, Stewart Davidson,

11    also from Lerach, Coughlin; Andrew Garcia from

12    Phillips & Garcia, who is our local counsel; and, your

13    Honor, Mark Tamblyn, who's not yet been admitted pro hac

14    in this case, but is co-counsel, for Wexler, Roriseva,

15    in California.

16         THE COURT:  You're filing a motion to get him

17    admitted?

18         MR. GEORGE:  Yes, your Honor.

19         THE COURT:  I think it's a hundred bucks or

20    something, right?

21         MR. GEORGE:  Yes.

22         THE COURT:  You have to do that, because the

23    money comes to us.  Every Friday we see how much is

24    there.

25              (Laughter.)

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 4

1      MR. GEORGE:  Excellent.  We will take care of

2  that right away.

3      THE COURT:  We'll look forward to having him.

4      How about the back table:  Who's here?

5      MS. WOLOHOJIAN:  Gabrielle Wolohojian, your

6  Honor, on behalf of all of the defendants.  With me is

7  my partner, Jack Regan, also with WilmerHale; Steve

8  Lieberman of Rothwell, Figg, who is our co-counsel in

9  this matter; and my partner, Joan Mitrou, is on the end.

10     THE COURT:  Okay.  It's an interesting case.  I

11 certainly don't have my arms around it the way you

12 people do, but I think I see how the case ought to be

13 managed, and let me just talk from that standpoint

14 rather than the merits of any, you know, summary

15 judgment motion.

16     I think that what you should do here is to

17 permit me to appoint a very qualified discovery master,

18 which I've done on cases like this.  And there's a

19 certain -- sometimes, you know, the first gut reaction

20 is, "No, we want" -- "My client wants a federal judge to

21 do it, not a discovery master."

22     But when I've had an opportunity to -- most of

23 the time it's just agreeable to the parties.  But when

24 there's been a little disagreement, once I explain to

25 them how it's really an economic benefit to the parties,

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 5

1   because it's cheaper -- less expensive, is a better way

2   to put it -- less expensive, in the long run, for you to

3   have a qualified person who really baby-sits your case.

4   Instead of having to file motions with me, you'll file

5   your motions with the master, and under my order the

6   master's decisions on all pretrial matters would be

7   final.  And you would move right along, much quicker

8   than if you have to keep waiting to come back to me.

9   You could get stuck in a 30-day trial the way we seem to

10  be occupied now.  You know, that means that we're not

11  going to see you.

12        So that's what I -- that's the first thing I

13  wondered.  And I'm springing it on you, and I think it's

14  too important for you to have to respond like a pop

15  quiz.

16        I could see that your associate here wants to

17  get your attention before you respond, so why -- do you

18  want to take a second and just sort of whisper it to

19  each other?

20        (Discussion off the record.)

21        THE COURT:  You split the cost.

22        MR. GEORGE:  Your Honor, we have no objection.

23        MS. WOLOHOJIAN:  Your Honor, we don't have an

24  objection to a discovery master once we reach the point

25  of having discovery disputes.  I don't think it resolves

37687136-7375-43fe-a4be-39b6af78a57d

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 6

1    the threshold issue that we believe we need the Court's

2    attention for, which is the summary judgment motion and

3    the Rule 56(f) motion that was filed in response.

4         What discovery would actually be entailed in

5    these cases will flow from a decision on the Rule 56(f)

6    motion.  It therefore seems to me to make sense

7    administratively and just --

8         THE COURT:  Let me just tell you this:  that

9    without giving you a look at tomorrow's newspaper and

10   without deciding it definitely, I think it's unlikely

11   that I would allow your motion for summary judgment,

12   okay?  I don't think the case is in a summary judgment

13   posture right now.  I think it does require discovery.

14        And one thing I just -- you know, I'd just toss

15   out, which is not, you know, with the formality of an

16   opinion or a citation or, you know, that I want to be

17   held to, the way -- when you look at the little squibs

18   that are at issue here, you know, the one that said

19   you'll pay $10 a month or something like that,

20   whatever -- where is it here?  The reservation reward

21   Fandango thing.

22        When you look at that, the first thing that

23   struck me is that it's really very similar to the

24   products liability cases that we have.  I know that they

25   don't necessarily follow.  But it's analogous, in a way,

37687136-7375-43fe-a4be-39b6af78a57d

IN RE: WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 7

1    to the products liability cases where the issue is not

2    was there a warning, but was the warning big enough; was

3    it the right color; was it deceiving; was it surrounded

4    by other material which may have made it less

5    meaningful?  And I think that's what you're stuck with

6    here.

7            And I'm having this conversation with you, you

8    know, because you are so professional.  Why should we --

9    you know, why should I kid you and take you down the

10   line?  I think that's -- I think that's what's going to

11   happen.  And I respectfully disagree with you.  I think

12   what you want to do is to get a discovery master in here

13   promptly who will serve you and make -- if there's going

14   to be a recommendation that something happen, you know,

15   that's something that the special master will be in a

16   position to jump right on it.

17           MS. WOLOHOJIAN:  Your Honor, if I may.

18           THE COURT:  Yes.

19           MS. WOLOHOJIAN:  With all due respect, I think

20   this is very different from a products liability case.

21           THE COURT:  I know it is.  I hesitated in

22   telling you and bringing that up because I didn't want

23   you to leap all over it, and then we're going to have an

24   argument about whether you have a case in -- I was

25   giving it to you as a reaction -- you know, as a

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 8

1   reaction to the situation.  And, you know, those kinds

2   of reactions have a way of permeating the case.  But

3   talk to me now.

4        MS. WOLOHOJIAN:  What I was going to say, your

5   Honor, is that in opposition to the Rule 56(f) motion,

6   we have not taken the position that there should be no

7   discovery; the dispute, rather, is what discovery is

8   required to address the summary judgment.

9        THE COURT:  I understand.  You and I aren't

10  having any quarrel about that.  A discovery master may

11  order retail discovery, you know, may -- I leave that up

12  to the discovery master.  Or the discovery master may

13  have, at various stages, a very tailored discovery

14  leading up to, perhaps, the filing of a motion to

15  dismiss.

16       The first thing I think you need in a case like

17  this is a consolidated motion and a consolidated

18  complaint.  You may say that you really don't need it

19  because you were sent, you know --

20       MS. WOLOHOJIAN:  The consent?

21       MR. GEORGE:  The consent.

22       THE COURT:  The consent is the key issue, and

23  you don't need a consolidation.  I don't think so.  I

24  think you do need a consolidated complaint.  I've had

25  many of them, and I've never had one that we didn't have

IN RE:   WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 9

1    a consolidated complaint.

2            MS. WOLOHOJIAN:  Your Honor, actually --

3            THE COURT:  And then, perhaps, there ought to be

4    a motion to dismiss it, you know, your challenges to a

5    consolidated complaint.

6            MS. WOLOHOJIAN:  Your Honor, if I may on the

7    consolidated complaint issue.  I don't think that's

8    possible here because of the different defendants that

9    have been named in the various cases.  In each case

10   there is a common defendant, who is Webloyalty, but

11   there's also a defendant who is particular to the

12   specific case.  There is -- so there is not an identity

13   of defendant.

14           The same claims could not be brought by the same

15   plaintiffs against all of those defendants; in other

16   words, the plaintiff who conducted his or her

17   transaction through Fandango would not be able to

18   maintain a claim against Priceline.  So that there --

19   you really couldn't have a unified complaint.  Because

20   there is not a common set of claims against all of the

21   defendants, you're also never going to be able to have a

22   common class against those defendants for the same

23   reasons.

24           On top of that, though, there are different

25   legal claims asserted in different complaints.  There

IN RE:   WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 10

1    are claims asserted in the Melo complaint, for example,

2    that are under California state law that aren't brought

3    in any of the other claims.  And, you know, there's the

4    ancillary issues as to which law's going to apply to

5    each of these cases given that the plaintiffs are in

6    different forms or residents of different states.  So I

7    don't believe that, actually, you could consolidate this

8    complaint given these differences.

9         THE COURT:  Let me stop you there.  Let me just

10   see how the plaintiff may agree with you.  Let's see how

11   far that goes.  Go ahead.

12        MR. GEORGE:  We don't agree, your Honor.  We

13   believe that we should have an opportunity to plead a

14   consolidated complaint; we believe that because the

15   essence of the complaint is that the defendants

16   undertake a uniformed course of conduct with respect to

17   all consumers, that we can plead claims that go across

18   all of their business practices, and we certainly should

19   have an opportunity to do that.

20        If they want to argue on a motion to dismiss

21   that we can't, or they're even talking about class

22   certification and things that happen right down the

23   line, they should have an opportunity to move to dismiss

24   if they so choose, but we believe with your Honor that,

25   in MDL context, we should certainly have at least an

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 11

1   opportunity to file a consolidated complaint, and we

2   believe that we're in a position to do that.  And we've,

3   in fact, asked and brought a proposed agenda, that the

4   Court issue an order giving us 30 days to do that.

5           THE COURT:  Yeah, I recall that.

6           MR. GEORGE:  And to do so.

7           MS. WOLOHOJIAN:  I don't think that addresses

8   any of the points that I've raised, with all due

9   respect, your Honor.  Mr. George hasn't said anything

10  about how to deal with the fact that there are different

11  claims against different defendants and --

12          THE COURT:  That goes to his motion to -- the

13  motion to consolidate, I take it, anticipating you

14  filing an objection to that motion or a motion to

15  dismiss.  So I'm not prepared to deal with the substance

16  now, but I am prepared to deal with the practicality of

17  my suggestion, which I still think you people should

18  adopt, and that is to have someone here who's going to

19  be an experienced lawyer and, you know, would be of

20  assistance to me and of assistance to everybody in

21  getting this case in shape for resolution.

22          MS. WOLOHOJIAN:  And on that point, your Honor,

23  I don't see how discovery -- the questions of

24  discovery can be addressed, divorced from the issues

25  that are raised in our summary judgment motion.  It's a

37687136-7375-43fe-a4be-39b6af78a57d

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 12

1  very limited issue of law and whether the disclosure

2  constituted sufficient legal consent, essentially.

3         There are a very small number of facts.  They

4  are in our Rule 56(f) statement of undisputed facts.

5  The plaintiffs have not come back to say they dispute

6  those facts, but if they do, they should come forward;

7  we should see if there's a dispute.  We're willing to

8  provide them, and, in fact, we always have voluntarily

9  provided them all the documents concerning the

10 plaintiffs' transactions.

11        That limited question should be decided by the

12 Court.  And whether it comes out for us or against us,

13 it will be useful for all the subsequent stages of the

14 litigation.  If it comes out for us, obviously it

15 disposes of the central legal question; if it comes out

16 against us, the plaintiff has suffered no prejudice

17 other than a question of timing, whether they get this

18 broader discovery later rather than now.  And it, too,

19 understanding how you are going to apply and interpret

20 the law for this case, will help frame all of the

21 discovery that would follow from it.

22        So with all due respect, I really do think that

23 the discovery cannot be considered without the summary

24 judgment issue as part of that deliberation, and for

25 that, we would need your attention.

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 13

1    THE COURT:  Well, you've indicated that some

2    discovery is necessary for -- even if I went directly to

3    the motion for summary judgment.

4    MS. WOLOHOJIAN:  Yes.  And we've set that out in

5    our opposition to the Rule 56(f) motion, your Honor.  I

6    believe it's on pages 5 and 6.  I don't quite remember

7    the page numbers.  But we set out the specific

8    categories.  Some of that we have already voluntarily

9    turned over to the plaintiffs:  all of the screens that

10   their clients saw, their customer service records.

11   Beyond that, it would be a very limited amount

12   of discovery, 30(b)(6) deposition on the topics that are

13   identified there.  We've said they can depose the

14   affiants.  We've agreed that they can depose the

15   affiants who have submitted the affidavits.

16   THE COURT:  Even that is an ambitious discovery

17   schedule.

18   MS. WOLOHOJIAN:  Your Honor, I believe we could

19   have it all completed within two months.  Maybe six

20   weeks.

21   THE COURT:  Maybe what?

22   MS. WOLOHOJIAN:  Maybe six weeks.  And then it

23   would be a matter of having the summary judgment -- they

24   would file their -- we've already previously filed an

25   agreed-to schedule.

IN RE:   WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 14

1        THE COURT:  I still think you should have a

2   discovery master.  If you want to say "no," say "no,"

3   but I don't want to be vague.

4        MS. WOLOHOJIAN:  Would the Rule 56(f) motion and

5   the summary judgment motion be referred to the discovery

6   master?

7        THE COURT:  Yes; for recommendation.

8        MS. WOLOHOJIAN:  Including the --

9        THE COURT:  The discovery master may agree with

10  you and think that this should go -- that should go

11  first.  When I've appointed a discovery master in a case

12  like this, I give -- I don't have the discovery master

13  on a string.  I appoint someone who does not need a

14  job -- you know, the successful lawyer who doesn't need

15  a job -- who's going to get paid, and paid properly, for

16  his or her services.

17        But I don't preordain the results.  I don't tell

18  them how I want it to come out.  And the discovery

19  master may carve it up in a way that sort of surprises

20  me and it turns out to be fine.

21        MS. WOLOHOJIAN:  Well, then, your Honor, what I

22  would suggest is that if the pending motions will be

23  referred to the discovery master for recommendation,

24  that --

25        THE COURT:  And anything can be resolved.   In

37687136-7375-43fe-a4be-39b6af78a57d

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 15

1    other words, a motion that requires something on the

2    merits, naturally a discovery master can only make the

3    recommendation.  But there will be other motions,

4    non-dispositive, that I will refer to the discovery

5    master for resolution.  There could be, you know, some

6    dispute at a deposition as to whether somebody has to

7    answer a question.  They're not going to come back to me

8    for that.

9         If you agree to go to a discovery master -- and

10   it may be that some depositions are going to be on the

11   thorny side, and it's been my experience that it's

12   useful to have the discovery master to actually preside

13   at the deposition.  You know, you get the matter

14   resolved right away.

15        MS. WOLOHOJIAN:  Your Honor, I'm very concerned

16   that having a discovery master appointed will, in and of

17   itself, put the cart before the horse and prevent the

18   legal issue that really is a threshold issue here.

19        THE COURT:  Yeah, but you're saying there has to

20   be some discovery.

21        MS. WOLOHOJIAN:  A very limited amount.

22        THE COURT:  Well, you say "a limited amount."

23   That all depends on your attitude.

24        MS. WOLOHOJIAN:  If the discovery master would

25   be considering the summary judgment motion and the

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 16

1    pending -- the pending motions first --

2         THE COURT:  The discovery master would be

3    considering those.  Now, what went first would be up to

4    the discovery master.  I thought you and I had an

5    understanding.

6         MS. WOLOHOJIAN:  I didn't understand that.  I

7    understood that what would happen is that the case, in

8    its current posture, which has a couple of pending

9    motions, would go to the discovery master either for

10   disposition depending on the nature of the motion or

11   recommendation to you, and that the discovery master

12   would then deal with the pending motions, make either a

13   decision or recommendation, and we would proceed from

14   there.

15        MR. GEORGE:  Your Honor, may I be heard for a

16   moment, please?

17        THE COURT:  Yeah, go ahead.

18        MR. GEORGE:  If your Honor permits us to file a

19   consolidated complaint, all of the pending motions in

20   the Fandango case will be mooted.  If they decide later

21   on, or whatever time they want to, that they want to

22   file a motion for summary judgment with respect to a

23   consolidated complaint, so be it.  What I see defense

24   counsel arguing is that they're only willing to agree to

25   your Honor's suggestion in the event that there's going

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 17

1    to be a disposition of those pending motions first.

2          And frankly, if we're permitted to file a

3    consolidated complaint, they're moot.  There will be no

4    Fandango complaint in and of itself; there will be a

5    complaint that addresses all defendants.  And they may

6    choose to move for summary judgment at the very outset

7    of the case, and that's certainly their prerogative, but

8    if your Honor's inclined to allow us to file a

9    consolidated complaint, we're still all for a discovery

10   master, but it moots what they're trying to do.

11         THE COURT:  And I thought I made clear that I'm

12   going to do that.  I'm going to allow a motion for a

13   consolidated complaint.

14         MS. WOLOHOJIAN:  Your Honor, I respectfully

15   object to that, and in part, because this is permitting

16   them to do something that really should not be allowed.

17         They pled the complaint to say they received no

18   disclosures at the time of this program.  We had moved

19   for summary judgment.  They did not in all the months

20   subsequent to that file a motion to amend their

21   complaint or change the nature of the case.  That is

22   what they are trying to do now.

23         THE COURT:  We just got it as an MDL case.  How

24   long --

25         MS. WOLOHOJIAN:  They were filed individually,

37687136-7375-43fe-a4be-39b6af78a57d

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 18

1    your Honor, in November.

2         THE COURT:  I know, but I'm dealing with it now.

3    I'm not talking about then; I'm dealing with it now.

4    And my practice has been, and my experience has been,

5    that in these MDL cases, you try to get a consolidated

6    complaint.

7         MS. WOLOHOJIAN:  It should not be a back door,

8    your Honor, to what I hear is going to happen, which is

9    to subvert the summary judgment motion, to change the

10   factual pleadings in the complaint, or to change the

11   legal theories.  Those -- being permitted to consolidate

12   a complaint simply because the cases have been MDL'd, to

13   change the nature of this case, should not be permitted.

14        THE COURT:  Okay.  You filed your opposition.

15        Have you filed a motion to consolidate?

16        MR. GEORGE:  No, your Honor.  Your Honor had

17   actually already issued an order consolidating the

18   cases, and so we anticipated that we would address that

19   issue here at the status conference, and when we

20   submitted the agenda, that is exactly what we asked the

21   Court to do, was to permit us 30 days to file a

22   consolidated complaint.

23        We hadn't filed a formal motion.  We could

24   certainly do that if it's the Court's desire, but I

25   thought the issue was framed.

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 19

1      THE COURT:  I think since there's going to be an
2  opposition, you ought to file a motion and give her a
3  chance to respond to the motion.  But that's probably a
4  good place to start.
5      MR. GEORGE:  So may we have 30 days to file a
6  motion?
7      THE COURT:  Yes, you may.
8      MR. GEORGE:  Thank you, your Honor.
9      THE COURT:  And how much time do you need to
10  respond?
11      MS. WOLOHOJIAN:  Three weeks, your Honor.
12      THE COURT:  All right.  Three weeks.
13      And then in the meantime --
14      MS. WOLOHOJIAN:  And would that be referred to
15  the master?
16      THE COURT:  Will that be referred to the master?
17      MS. WOLOHOJIAN:  That motion.
18      THE COURT:  Well, I don't have a master yet
19  because you've got to pay for him, and until you smile
20  and say you're going to pay for it, then there is no
21  master.
22      MS. WOLOHOJIAN:  If all of these matters will be
23  referred to the master, your Honor, we would assent to
24  it.
25      THE COURT:  Okay.  So you are assenting to it?

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 20

1      MS. WOLOHOJIAN:  If the notion is that

2   everything would be transferred.  I don't want things to

3   go piecemeal, one place to another.  So if the motion to

4   consolidate is going to go to the master, and any

5   discovery disputes will go to the master, and the

6   pending summary judgment motion and Rule 56(f) motion

7   would all go to the master, then it seems to me that

8   that would be acceptable to us.

9      MR. GEORGE:  Your Honor, I apologize for being

10   difficult, but it's clear -- you've already indicated

11   your strong desire to allow a consolidated complaint.

12   And the request that that motion in and of itself be

13   sent to a master, I think there's an obvious reason why.

14   We would ask that you consolidate it --

15      THE COURT:  No.  No.  Maybe I misunderstood.

16   What I said I'm going to do is get your motion for

17   consolidation, which I expect there may be some

18   opposition to, but I expect that I'm going to allow it.

19   Then the consolidated complaint -- I think this is what

20   you're talking about:  The consolidated complaint and

21   all of -- any motions that may still exist after that,

22   assuming they're not mooted by the allowance of the

23   motion, then they will all go to the master who will

24   convene this body again and come up with a schedule of

25   events.

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 21

1    And it may be that the master will think that

2    the first thing that ought to be dealt with is a revised

3    motion for summary judgment, if you have to tweak it in

4    some fashion, because you're dealing with a consolidated

5    complaint, or he may be dealing with a motion to dismiss

6    the consolidated complaint.

7        MR. GEORGE:  We have no objection to that, your

8    Honor.

9        THE COURT:  And, you know, that -- I can't

10   anticipate, you know, everything that's going to come

11   up, although I guess reasonably I can anticipate that,

12   you know, a motion to dismiss the consolidated complaint

13   may be filed, or a motion for summary judgment on the

14   consolidated complaint might be filed.

15       But assuming that it goes forward after that,

16   then I expect that -- and it would be part of my order,

17   that the special master schedule with you an agenda of

18   events that would take us down to the end, you know, so

19   that certain whatever kind of discovery is necessary,

20   and when that's going to be completed -- has to be

21   completed.

22       MS. WOLOHOJIAN:  Your Honor, on filing a motion

23   for leave to file a consolidated complaint, I understand

24   that you would deal with that motion.  You would decide

25   that motion before a referral --

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 22

1        THE COURT:  The motion to file a consolidated

2    complaint?  Yes.

3        MS. WOLOHOJIAN:  Right.  Before a referral to a

4    discovery master?

5        THE COURT:  Right.

6        MS. WOLOHOJIAN:  And am I also correct in

7    understanding the case would not be referred to a

8    discovery master until you made a decision on that

9    motion?

10        THE COURT:  That's either allowed or denied.  I

11    am not one who believes in 5,000 words for a one-word

12    answer:  "allowed," "denied."  That's that.  And as my

13    former Chief Judge Young used to say:  What part of the

14    word "denied" don't you understand and what part of

15    "allowed" don't you understand?

16        MS. WOLOHOJIAN:  And then the currently-pending

17    motions -- specifically, the summary judgment motion --

18        THE COURT:  They may continue to exist or they

19    may be mooted by --

20        MS. WOLOHOJIAN:  Will your order specifically

21    refer to them as being referred to the discovery master?

22        THE COURT:  Yup.

23        MS. WOLOHOJIAN:  Okay.  If I may confer, then,

24    your Honor.

25        THE COURT:  Sure.  And understand, just so it's

IN RE:   WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 23

1  very, very clear, whatever the -- whatever the cost of

2  the special master is, you divide it.  And then usually

3  I require payment every two weeks.  Within two weeks

4  after a periodic bill is then sent.

5          (Discussion off the record.)

6          THE COURT:  Are you ready for me?  Go ahead.

7          MS. WOLOHOJIAN:  I am, your Honor.

8          Provided that your referral order makes clear

9  that the discovery master will have the authority to

10  decide discovery matters and make recommendations on all

11  of the dispositive matters, such as motions to

12  dismiss --

13          THE COURT:  Have you got a copy of my --

14          THE CLERK:  I may, Judge.  I'm not sure if I

15  have one up here.  Do we have one?

16          LAW CLERK:  Diversified Biotech.

17          THE COURT:  I think the last one we did.

18          LAW CLERK:  Diversified Biotech had a special

19  master.

20          THE COURT:  It's a very broad order that I give.

21  I give the special master the authority to do

22  everything.  And it's very selfish on my part because I

23  hope I don't see you on the case again until the

24  conclusion when I get the pat on the back that I've done

25  a nice job.

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 24

1    (Laughter.)

2    MS. WOLOHOJIAN:  Our concern was, your Honor,

3    that -- making sure that the order was explicit that the

4    special master had the power to make recommendations on

5    the dispositive motions.  As long as that's the case, as

6    well as the discovery masters, we would agree to that.

7    THE COURT:  No.  Everything other than the

8    dispositive motions the master will decide just as

9    though it's me.

10    MS. WOLOHOJIAN:  Right.  And as to dispositive

11    motions --

12    THE COURT:  Dispositive motions you'd be in the

13    position of a magistrate judge making a recommendation.

14    MS. WOLOHOJIAN:  That's fine, your Honor.  Then

15    we're amenable to your suggestion.

16    THE COURT:  All right.  I think you'll find it

17    works out.  I'll get you a good, hard-working, talented

18    special master.

19    Now, just as I was making sure that we got paid

20    our fee for -- what is it, pro hac vice, I want to make

21    sure that you understand the terms of the engagement of

22    the special master.  I don't want to have any -- only

23    once did I have a problem, you know, with people paying

24    the special master, and it's very insulting.  I mean, I

25    can't conceive it's going to happen as far as you people

37687136-7375-43fe-a4be-39b6af78a57d

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 25

1    are concerned, counsel here.  I just want to make sure

2    that we're sure that you won't have any problem with any

3    clients who aren't going to pay the master.  Are you

4    sure?

5        MS. WOLOHOJIAN:  I don't anticipate there will

6    be any problem, your Honor.

7        THE COURT:  Okay.  I don't mean to belabor the

8    point, but I just want to make sure it's been covered

9    and there's no misunderstanding.

10       And you the same, right?

11       MR. GEORGE:  Yes, your Honor.

12       THE COURT:  I have a form of an order in another

13   case which is a matter of public record, but I don't

14   know whether I...

15       (Discussion off the record.)

16       THE COURT:  Here.  Why don't you look at this.

17   I'll --

18       Just let them look at it.

19       That will be essentially the form of order.

20       (Pause.)

21       THE COURT:  Having in mind nothing's ever been

22   written that can't be rewritten, do you understand, at

23   least, the nature of the order?

24       MR. GEORGE:  Yes, your Honor.

25       THE COURT:  Do you have any objection?

IN RE:  WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 26

1    MR. GEORGE:  No, your Honor.

2    THE COURT:  Okay.

3    MS. WOLOHOJIAN:  Your Honor, the only thing I

4    can think to add would be that all pending motions are

5    being referred.  I don't know if that was the situation

6    in that case, but it might be worth saying in this

7    particular circumstance.

8    THE COURT:  Well, I don't think it's necessary,

9    but let me look at it.  If I think it would clarify

10    things, then I will.  I think what it says is that I'm

11    appointing her for the entire case.

12    I have no quarrel with that; I just want to see

13    it.

14    Do you have any quarrel with the form of order?

15    MS. WOLOHOJIAN:  Otherwise, no, your Honor.

16    THE COURT:  Okay.  All right.  Thank you very

17    much.  We'll attend to all of this as soon as we

18    possibly can.  Right now we'll get back to this trial.

19    Thank you for coming.

20    COUNSEL IN UNISON:  Thank you, your Honor.

21    (The proceedings adjourned at 2:46 p.m.)

22

23

24

25

IN RE:   WEBLOYALTY.COM, INC. MARKETING & SALES PRACTICES
Status Conference

Page 27

1               C E R T I F I C A T E

2

3          I, Marcia G. Patrisso, RPR, CRR, Official

4     Reporter of the United States District Court, do hereby

5     certify that the foregoing transcript constitutes, to

6     the best of my skill and ability, a true and accurate

7     transcription of my stenotype notes taken in the matter

8     of MDL 07-1820, In Re:  Webloyalty.com, Inc., Marketing

9     and Sales Practices Litigation.

10

11

                    MARCIA G. PATRISSO, RPR, CRR
12                  Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25