# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: WEBLOYALTY.COM, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL No. 1820 |
| | Lead Case 06-11620-JLT |
| | Hon.  Joseph L. Tauro |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF PROPOSED FORM OF NOTICE, AND SETTING OF FAIRNESS HEARING

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     SUMMARY OF THE LITIGATION ...............................................2

III.    THE SETTLEMENT ...........................................................................4

        A.      The Proposed Settlement Class...............................................4

        B.      Remedial Relief .......................................................................4

        C.      Monetary Relief .......................................................................6

        D.      The Notice Program .................................................................6

        E.      The Claims Process..................................................................7

IV.     ARGUMENT .......................................................................................8

        A.      The Court Should Certify the Proposed Class Pursuant to Federal
                Rules 23(a) and 23(b)(3) for Settlement Purposes........................9

                1.      The Requirements of Rule 23(a) Are Satisfied................9

                        a.      Fed. R. Civ. P. 23(a)(1): The Class is So Numerous
                                That Joinder of All Members Is Impracticable....................10

                        b.      Fed. R. Civ. P. 23(a)(2): There are Questions of Law
                                and Fact Common to Members of the Class.........................10

                        c.      Fed. R. Civ. P. 23(a)(3): Plaintiffs' Claims are Typical
                                of the Claims of the Members of the Class .........................11

                        d.      Fed. R. Civ. P. 23(a)(4): Class Counsel and
                                Representative Plaintiffs Will Fairly and Adequately
                                Protect the Interests of the Class..........................................12

                2.      The Requirements of Rule 23(b)(3) Are Satisfied............12

                        a.      Common Issues Predominate ................................12

                        b.      A Class Action is the Superior Method to Adjudicate
                                These Claims .......................................................13

        B.      Preliminarily Approval Is Appropriate .......................................14

                1.      The Settlement is the Product of Serious, Informed, and Non-
                        Collusive Negotiations....................................................15

2.     The Settlement Has No "Obvious Deficiencies" and Falls
Within the Range for Approval ........................................................17

C.    The Court Should Order That Notice Be Disseminated and Schedule
a Fairness Hearing....................................................................................18

V.    CONCLUSION ..................................................................................................21

# TABLE OF AUTHORITIES

## Federal Cases

*Air Lines Stewards and Stewardesses Ass'n Local 550 v. Am. Airlines,*
455 F.2d 101 (7th Cir. 1972) ................................................................................................... 19

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................................................. 8

*Andrews v. Bechtel Power Corp.,*
780 F.2d 124 (1st Cir. 1985, *cert. denied*, 476 U.S. 1172 (1986) ......................................... 10

*Armstrong v. Bd. of Sch. Dir.,*
616 F.2d 305 (7th Cir. 1980) ................................................................................................... 15

*Burstein v. Applied Extrusion Techs.,*
153 F.R.D. 488 (D. Mass. 1994) ............................................................................................. 11

*Carlough v. Amchem Prods., Inc.,*
158 F.R.D. 314 (E.D. Pa. 1993) .............................................................................................. 18

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,*
100 F.3d 1041 (1st Cir. 1996) ............................................................................................. 9, 16

*Donovan v. Estate of Fitzsimmons,*
778 F.2d 298 (7th Cir. 1985) ................................................................................................... 15

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
768 F.2d 884 (7th Cir. 1985) ................................................................................................... 15

*Eisen v. Calisle & Jacquelin,*
417 U.S. 156 (1974) ................................................................................................................ 18

*Fine v. America Online, Inc.,*
743 N.E. 2d 416 (Ohio Ct. App. 2000) ................................................................................... 19

*Flinn v. FMC Corp.,*
528 F.2d 1169 (4th Cir. 1975) ................................................................................................. 16

*Fraser v. Jamor League Soccer, LLC,*
180 F.R.D. 178 (D. Mass. 1998) ............................................................................................. 11

*Greenspun v. Bogan,*
492 F.2d 375 (1st Cir. 1974) ................................................................................................... 19

*Holton v. Rothschild, Unterberg, Towbin,*
118 F.R.D. 280 (D. Mass. 1987) ............................................................................................. 10

*In re Airline Ticket Comm'n Antitrust Litig.*,
    953 F. Supp. 280, (D. Minn. 1997) ................................................................ 19

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ..................................................................... 12

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ....................................................................... 16

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y 2004) .................................................................. 16

*In re Lupron Mktg. and Sales Practices Litig.*,
    228 F.R.D. 75, 88 (D. Mass. 2005) ............................................................. 10

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57(S.D.N.Y. 1993)..................................................................... 18

*In re Microstrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ......................................................... 20

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996).................................................................. 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997)................................................................... 14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997).................................................................. 15

*In re Screws Antitrust Litig.*,
    91 F.R.D. 52 (D. Mass. 1981) ..................................................................... 12

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996)........................................................................ 15

*Lessard v. Metro. Life Ins. Co.*,
    103 F.R.D. 608 (D. Me. 1984) ...................................................................... 9

*Levell v. Monsanto Research Corp.*,
    191 F.R.D. 543 (S.D. Ohio 2000) ................................................................ 8

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001)....................................................... 20

*Mowbray v. Waste Mgmt. Holdings, Inc.*,
    189 F.R.D. 194 (D. Mass. 1999) ................................................................. 12

*Randle v. SpecTran,*
    129 F.R.D. 386 (D. Mass 1988) .................................................................. 11

*Smilow v. Southwestern Bell Mobile Sys.,*
    323 F.3d 32 (1st Cir. 2003) ....................................................................... 9

*South Carolina Nat'l Bank v. Stone,*
    749 F. Supp. 1419 (D.S.C. 1990) ............................................................. 8

## **Federal Statutes**

12 C.F.R. § 226.1 *et seq.* ................................................................................. 17

15 U.S.C. § 1601-1667f ..................................................................................... 17

15 U.S.C. § 1693a-1693r ................................................................................... 17

28 U.S.C. § 1407 ................................................................................................. 2

Electronic Communications Privacy Act, 18 U.S.C. § 2510 ..................... 2, 20

Electronic Funds Transfer Act, 15 U.S.C. § 1693(e) .................................... 2

Federal Rules of Civil Procedure 16 ............................................................. 3

Federal Rules of Civil Procedure 23(a)(1) .................................................. 10

Federal Rules of Civil Procedure 23(a)(4) .................................................. 12

Federal Rules of Civil Procedure. 23(b)(3) .................................................. 13

Federal Rules of Civil Procedure 23(e) ...................................................... 1, 8

## **State Statutes**

Conn. Gen Stat. § 42-100c ............................................................................. 17

## **Miscellaneous**

A. Conte & H. Newberg,
    *Newberg on Class Actions* ("*Newberg*") § 18:2-18:4 (4th ed. 2002) ........... 10, 15, 16

*The Manual for Complex Litigation* ................................................... 14, 15, 17

# I. INTRODUCTION

After many months of hard-fought negotiations by experienced, capable counsel on both sides of the table, the parties have reached a settlement that resolves the claims of consumers who became enrolled in various membership programs provided by Webloyalty.com, Inc. ("Webloyalty") through online transactions with its online retail partners. Pursuant to Federal Rules of Civil Procedure 23(e) ("Rule 23(e)"), Plaintiffs, by and through Class Counsel, move the Court for preliminary approval of that settlement.

The Settlement Agreement, filed herewith, provides for significant therapeutic relief in the form of substantial changes to the presentation of Webloyalty's membership offer enrollment page, and to the manner of notice provided to consumers concerning their memberships. The Settlement also provides for cash payment of up to $10 million to eligible Settlement Class Members to receive reimbursement for up to two months of membership fees, for every membership Program in which they were enrolled.

The Settlement is fair, reasonable and adequate under Fed. R. Civ. P. 23(e). The Settlement was reached after lengthy sessions of intensive, arms-length negotiations between counsel and arrived at only after aggressively litigating this action. The Settlement takes into account the risks of litigation, including the risks inherent in certifying a litigation class, the expense of protracted litigation, the necessity of expensive expert analysis and testimony, and the prospect of appeals of certain decisions. Furthermore, Class Members interested in pursuing an alternate form of relief than that provided under the Settlement have the right to opt out of the Settlement to pursue such relief. This Settlement is well within the range of reasonableness, and thus merits preliminary approval.

In addition, because the proposed Settlement Class meets the requirements of Federal Rule 23, and the proposed Notice Plan would provide the best notice practicable under the circumstances and complies with constitutional due process requirements, this Court should conditionally certify the Settlement Class and approve the dissemination of Notice in the manner and form proposed herein.

## II.    SUMMARY OF THE LITIGATION

Beginning on September 11, 2006, various consumer class actions were filed in this District and in the Central District of California, alleging that Webloyalty, through its online retail partners, enrolled consumers throughout the country in its membership programs ("Programs")[1] without meaningful authorization and consent, and in addition unlawfully obtained consumers' confidential billing information to charge fees for such Programs on a monthly "negative-option" basis. Plaintiffs allege violations of state consumer protection statutes, the Electronic Funds Transfer Act, 15 U.S.C. § 1693(e), the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*, and common law, including invasion of privacy, money had and received, and unjust enrichment.

On February 15, 2007, after Plaintiffs filed motions pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the related actions to this Court for consolidated and/or coordinated pretrial proceedings.[2]

Prior to entry of the JPML's transfer order, and within *two* months of the case filing, Defendants demonstrated the aggressive manner in which they would approach every aspect of this action by moving for summary judgment in *Kuefler*, the designated lead case. Defendants contended that Plaintiff Kuefler must have seen, read and understood the material terms of Program enrollment based on Webloyalty's existing enrollment process and documents, and

---

[1] As set forth in the Settlement Agreement, these programs include: Reservations Rewards, Shoppers Discounts & Rewards, Members Specials, Buyer Assurance, Distinctive Privileges, PC Protection Plus, Travel Values, Travel Values Plus, Classmates Rewards, and Wallet Shield. Stipulation of Settlement ("Settlement Agreement"), §IV.L, attached hereto as Exh. 1.

[2] *See In re Webloyalty.com, Inc. Marketing and Sales Practices Litig.*, 474 F. Supp. 2d 1353 (J.P.M.L. Feb. 15, 2007). At the time of entry of the JPML's Transfer Order, there were a total of four actions pending in the District of Massachusetts and in the Central District of California, entitled: *Kuefler, et al. v. Webloyalty.com, Inc., et al.*, No. 06-11620-JLT (D. Mass.) (filed Sept. 11, 2006); *Melo v. Webloyalty.com, Inc., et al.*, No. 06-0632-DSF (C.D. Cal.) (filed Oct. 4, 2006); *Crouse v. Webloyalty.com, Inc., et al.*, No. 06-11834-JLT (D. Mass.) (filed Oct. 11, 2006); and *Staaf v. Webloyalty.com.Inc., et al.*, No. 06-11835-JLT (D. Mass.) (filed Oct. 11, 2006). A fifth action was filed on September 11, 2007 in this Court, entitled *DeDomenico v. Webloyalty.com, Inc., et al.*, No. 07-11696-JLT (D. Mass.), which became part of this consolidated action.

were therefore entitled to judgment as a matter of law. [Dkt. Nos. 16-20]. In response, Plaintiff Kuefler filed a motion for discovery pursuant to Rule 56(f), which Defendants opposed. [Dkt. Nos. 24, 26]. Not long after the close of briefing on Defendants' summary judgment motion, and on Plaintiff's Rule 56(f) motion, Defendants also moved for sanctions against Plaintiff Kuefler and Plaintiff's counsel based on the premature issuance of a third-party subpoena due to a clerical error. [Dkt. Nos. 30-32].

This Court held an initial practice and procedure conference on April 24, 2007, at which time, after argument, the Court removed from its calendar Defendants' summary judgment motion as being premature; ordered that Plaintiffs file a motion for leave to file a consolidated complaint (having all related actions then before the Court); and denied Defendants' sanctions motion. The Court also stated its intention to appoint a Special Master to manage the conduct of this consolidated action. [Dkt. No. 44]. On June 18, 2007, the Court entered an order appointing Mr. Gael Mahony as Special Master, which sets forth his responsibilities including but not limited to: (1) supervise all aspects of discovery; (2) decide all non-dispositive pretrial motions; (3) make recommendations to the Court regarding dispositive motions; and (4) assist the parties with settlement. Order, dated June 18, 2007 [Dkt. No. 52].[3]

On July 20, 2007, Defendants in *Kuefler* answered the Amended Complaint, and re-filed their summary judgment motion. [Dkt. Nos. 55-63]. As with respect to the prior summary judgment motion, Plaintiffs moved pursuant to Rule 56(f). [Dkt. Nos. 64-65].

Special Master Mr. Gael Mahony conducted a scheduling and discovery conference pursuant to Fed. R. Civ. P. 16 and 26 on September 27, 2007, during which time the Special Master heard extensive argument from the parties concerning the conduct of this action, the contours of discovery, and the pendency of Defendants' summary judgment motion. The Special Master entered a Scheduling Order on October 30, 2007, which described in detail the subjects of discovery, appointed the firms Wexler Wallace LLP and Coughlin Stoia Geller

---

[3] The Court's June 18 Order also authorized the filing of Plaintiffs' proposed Consolidated Amended Class Action Complaint, which Plaintiffs duly filed on June 22, 2007.

Rudman & Robbins LLP as Plaintiffs' Co-Lead Counsel, and setting summary judgment proceedings for a time after completion of appropriate discovery. [Dkt. No. 76].

Immediately after the September 27 conference, the parties also met in person in Boston, New York, and Chicago to discuss the possibility of settlement, followed by numerous lengthy conference calls and exchanges of information. During the course of many months thereafter, the parties negotiated at arms-length the terms of a resolution that would provide for meaningful changes to the manner in which Webloyalty programs are presented to consumers, the methods of further follow-up communications with its customers, and a significant financial benefit to those consumers who became enrolled in Webloyalty's Programs. Negotiations were difficult, time-consuming, and there were several occasions on which it appeared settlement would not occur. Ultimately, the parties reached an agreement, which Plaintiffs now respectfully submit is the product of serious, non-collusive and informed negotiations and which falls well within the range of reasonableness to permit notice to the Settlement Class of its terms.

### III. THE SETTLEMENT

#### A. The Proposed Settlement Class

In connection with preliminary approval, Plaintiffs request that the Court certify the following class pursuant to Rule 23(a) and Rule 23(b)(3) for purposes of the settlement only: all consumers who enrolled in or were members of a Program during the Class Period, excluding (1) those consumers who both were residents in the United Kingdom and enrolled in Webloyalty International, Ltd. Program; (2) those consumers who received a complimentary Program membership; and (3) those Webloyalty employees who were members of a Program for purposes of fulfilling their job functions. Settlement Agreement, § IV.1.Q.

#### B. Remedial Relief

The Settlement Agreement sets forth extensive therapeutic relief that meaningfully enhances consumer awareness of the nature of the Programs, the terms of such Programs, and the fact of billing for them. In summary, the Settlement Agreement provides:

- elimination of the words "award" or "reward" when referring to an offer or solicitation to join a Program;

- disclosures on the Enrollment Pages of the Program price in at least two locations, in addition to the Offer and Billing Details[4];

- disclosure in any graphic depicting an incentive coupon a reference to "See Billing Details," and proximate to any such graphic disclosure of the Program cost, the free trial term, and the billing method;

- disclosure of the Program cost proximate to any enrollment button, or other direction for the consumer to take action to become enrolled;

- disclosure of the entire Offer and Billing Details for the Programs on the Enrollment Page, near the location where consumers take action to enroll and without the use of a separate box that requires scrolling;

- disclosure of all terms of the Offer and Billing Details in the same size font as that used in the majority of text on the Enrollment Page;

- disclosure in bold font information on Program cost, billing method, and membership cancellation in the Offer and Billing Details on the Enrollment Page;

- inclusion on emails sent to Program members sent more than thirty (30) days after enrollment:  (1) a toll-free number that may be used to contact customer service and cancel a Program membership; and (2) a link and reference to the member's billing detail that allows the member to click and view the method by which they are being billed and the Program fee;

- inclusion on all post-enrollment emails to members a link that may be used to contact customer service and cancel a Program membership;

- sending of a periodic Reminder Mailing to all those for whom, after the first 30 days of a member's join date, Webloyalty lacks a valid email address.  The

---

[4] The meaning of capitalized terms used herein have the same meaning as those terms defined in the Settlement Agreement.

Reminder Mailing will include: (1) the member's Program information, including the website of the Program; (2) a toll-free number the member may use to cancel membership; (3) information on how to obtain billing information; and (4) use of the terms "member" or "membership" to indicate the consumer has been enrolled. Settlement Agreement, § IV.3.B.

In sum, the extensive remedial relief set forth in detail in the Settlement Agreement affords consumers an enhanced understanding of the Programs and their terms, providing long-term future benefits to potentially millions of online retail consumers.

### C.     Monetary Relief

The proposed Settlement also requires Defendants to pay up to ten million dollars ($10,000,000.00) to eligible Settlement Class Members, upon minimal showing in a simple, plain-English Claim Form. Settlement Agreement, § IV.3.C. Settlement Class Members may receive reimbursement equal to up to two (2) months of the cost of each Program in which they were enrolled. If a consumer was charged for one month of membership, he or she is eligible to receive a payment equal to the cost for one month's membership. *Id.* If the consumer was charged for two or more months of membership, he or she is eligible to receive a payment equal to the cost for two month's membership or the cost for one month's membership if the consumer accessed the Webloyalty website. *Id.* Settlement Class Members are eligible if: (a) they provide the basic identifying information required in the two-page Claim Form; (b) they did not cancel their Membership during a free trial period; (c) they did not enter their credit or debit card number as a payment method at the time of enrollment; (d) they incurred fees for a Membership; and (e) they did not already receive some form of a refund already. *Id.*

### D.     The Notice Program

The proposed Notice Program is fully described in Section IV.5 and Exhibits 1 through 4 to Exhibit A to the Settlement Agreement.

Notice will be facilitated through the agreed-upon third party Settlement Administrator – The Garden City Group, Inc. – one of the most experienced class action notice firms in the

country. *See*, accompanying Declaration of Jennifer M. Keough Regarding Settlement Administration, ¶'s 3-5. Notice will be disseminated through a full-length Long Form Notice, by electronic mail, by publication, and by direct mail to those potential Settlement Class Members for whom an email address appears to be invalid, to their last known address. A settlement website will be established that will supply all of the information concerning the Settlement, including a frequently-asked questions section, and will provide the ability for anyone to easily obtain and download the Settlement Agreement, the full-length Notice, and the Claim Form.

The Email Notice will be implemented by emailing each Settlement Class Member at each member's last known email address as recorded in Webloyalty's customer database. Settlement Agreement, § IV.5.C. Each Email Notice will contain an embedded link, through which the recipient may access the Settlement Website, including the full Notice and the Claim Form. *Id.* Email Notice will also be supplemented by Mailed Notice to all those for whom Webloyalty has valid mailing addresses, and to whom the Email Notice is "bounced back" or otherwise appears undeliverable. *Id.* at IV.5.D.

The Publication Notice, in the proposed form attached as Exhibit 4 to Exhibit A to the Settlement Agreement, provides the salient terms of the Settlement, describes the definition of the Settlement Class and directs the reader to obtain more information from the Settlement Administrator by visiting the settlement website or by calling a toll-free number. Publication Notice will be made by publication twice in *USA Today* on any two days between Monday and Thursday within seven (7) days of transmission of the first Mailed Notice. Publication Notice will also be available for download on the settlement website.

In addition, a toll-free number will be established and a settlement website available through which any potential Settlement Class member can reach the Settlement Administrator, obtain information through an interactive voice-response system, and through live assistance.

### E.     The Claims Process

Each Settlement Class Member must complete the Claim Form attached as Exhibit 5 to Exhibit A of the Settlement Agreement, providing the basic information needed to verify the

accuracy of a given claim, and as to each Program membership for which the Settlement Class Member is seeking a payment. This information includes the Settlement Class Member's: (a) name; (b) current address; (c) current email address; (d) date of birth; and (e) the last four digits of his/her social security number. Finally, the Settlement Class Member is asked to provide their Membership number _or_ the name of the Program, the email address he or she used to enroll, the month and year of enrollment, and the last four digits of the billing mechanism. The Claim Form also provides an opportunity for current, active members in the Programs to cancel their memberships. Settlement Agreement, Exh. A, Exh. 5.

Settlement Class Members will have up to and through forty-five (45) days after the fairness hearing to submit their claims.

## IV.    ARGUMENT

A class action cannot be compromised or settled without the approval of the Court. Fed. R. Civ. P. 23(e). Prior to addressing the adequacy of the proposed settlement, however, the Court must determine whether the Class, as agreed to by the parties, may be certified for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). A court may grant conditional approval of a class action where, as here, the Class proposed satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See, e.g., id.* at 613; *see also South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990).[5]

If the Court determines that a Settlement Class should be certified, the Court must then follow the three-step process prior to granting final approval of a proposed settlement. *See, e.g., Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000). First, the Court must preliminarily approval the proposed Settlement. *Id.* at 547. Second, members of the Settlement

---

[5] As the certification sought is for settlement purposes only, the parties have agreed that if the settlement is not finally approved by the Court, any preliminary and/or final order certifying the Settlement Class and any preliminary and/or final findings regarding class certification shall be automatically null and void and vacated. Settlement Agreement, §IV(4)(B).

Class must then be given notice of the proposed settlement. *Id.* Third, a hearing must be held, after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the Settlement Class as a whole, and consistent with the public interest. *Id.* This protects the Settlement Class Member's procedural due process rights and enables the Court to fulfill its role as the guardian of the Settlement Class's interests. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See, e.g., City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996).

## A. The Court Should Certify the Proposed Class Pursuant to Federal Rules 23(a) and 23(b)(3) for Settlement Purposes.

Class actions have long been recognized by the courts as an essential tool for the adjudication of cases involving multiple claims that are susceptible of similar factual and/or legal inquiries, and for which individual recovery might be too modest to warrant prosecution of the case on an individual basis. The policies underlying the need for class action litigation require that certification under Rule 23 be "liberally construed." *Lessard v. Metro. Life Ins. Co.,* 103 F.R.D. 608, 610 (D. Me. 1984) ("Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule."). Here, preliminary certification of the Settlement Class is appropriate because the four requisites of Rule 23(a) and a part of Rule 23(b) are satisfied.

### 1. The Requirements of Rule 23(a) Are Satisfied.

The Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation. *See, e.g., Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003) (citing *Amchem*, 521 U.S. at 613). In connection with preliminary approval, the Parties request that the Court certify the following settlement class pursuant to Rule 23(a) and Rule 23(b)(3).

All consumers who enrolled in or were members of a Program during the Class Period,[6] excluding (1) those consumers who both were residents in the United Kingdom and

---

[6] The Class Period is defined as the period between September 11, 2000 through September 30, 2008. Settlement Agreement, § IV.1.D.

enrolled in a Webloyalty International, Ltd. Program, (2) those consumers who received complimentary Program membership, and (3) those Webloyalty employees who were members of a Program for purposes of fulfilling their job functions.

*See* Settlement Agreement, § IV.1. Q

### a. Fed. R. Civ. P. 23(a)(1): The Class is So Numerous That Joinder of All Members Is Impracticable

Numerosity requires that the class include so many members that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). Although there is no magic number of class members that will qualify for class certification, courts have generally found groups of more than fifty to satisfy the numerosity requirement. *See, e.g., Holton v. Rothschild, Unterberg, Towbin,* 118 F.R.D. 280, 282 (D. Mass. 1987) (50 or 60 members "is sufficiently large" to warrant class certification). Precise quantification of class members is not necessary, and a court may make common sense assumptions to support a finding of numerosity. *See, e.g., McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 167 (1st Cir. 1987); *see also Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 131-32 (1st Cir. 1985, *cert. denied,* 476 U.S. 1172 (1986) (The court can consider economy, geographic dispersion and the ability of individual members to bring suit); A. Conte & H. Newberg, *Newberg on Class Actions ("Newberg")* § 18:2-18:4 (4th ed. 2002).

Here, the proposed Settlement Class consists of persons and entities geographically dispersed throughout the United States who enrolled in a Program during the Class Period. The proposed Settlement Class consists of potentially several million members throughout the United States. Joinder of these parties is not just impracticable, it is virtually impossible. Accordingly, the numerosity requirement is satisfied.

### b. Fed. R. Civ. P. 23(a)(2): There are Questions of Law and Fact Common to Members of the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the members of the class." "The threshold of 'commonality,' is not high." *In re Lupron Mktg. and Sales Practices Litig.,* 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted). "[T]he rule requires only that resolution of the common questions affect all or a substantial number of class members." *Id.*

(citation omitted). The numerous common factual and legal questions, applicable to all Settlement Class Members include: whether Defendants engaged in unfair methods of competition and deceptive acts in enrolling Settlement Class Members in the Programs and charging consumers; whether Defendants transmitted consumers' confidential billing information without meaningful authorization in violation of federal and state privacy laws; whether Defendants were unjustly enriched at consumers' expense; and whether Settlement Class Members sustained damages and, if so, the proper measure of those damages.

Plaintiffs' claims arise out of the same or similar course of conduct and are based on the same legal theories as those of the absent Settlement Class Members. Plaintiffs and Settlement Class Members were all allegedly damaged by the same or similar conduct. Thus, Rule 23(a)(2) is readily satisfied.

### c. Fed. R. Civ. P. 23(a)(3): Plaintiffs' Claims are Typical of the Claims of the Members of the Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." "A sufficient nexus is established [to show typicality] if the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same legal theory." *Lupron*, 228 F.R.D. at 89 (citations omitted). Plaintiffs' claims are typical of the claims of the Settlement Class in that they were allegedly enrolled in and charged for Programs through online retail transactions with Webloyalty's business partners, and through the same or similar means. Indeed, when the same alleged conduct affects both the named plaintiff and the class sought to be represented, "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Randle v. SpecTran*, 129 F.R.D. 386, 391 (D. Mass 1988); *Fraser v. Jamor League Soccer, LLC*, 180 F.R.D. 178, 181 (D. Mass. 1998); *Burstein v. Applied Extrusion Techs.*, 153 F.R.D. 488, 491 (D. Mass. 1994). Accordingly, Plaintiffs' interests are typical of Settlement Class Members' interests.

### d. Fed. R. Civ. P. 23(a)(4): Class Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two parts: the moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation. *See, e.g., Andrews*, 780 F.2d at 130.

The Plaintiffs do not have any interests that are antagonistic to those of the Class. The central issues in this case are common to the claims of the Plaintiffs and to the Settlement Class. Each representative Plaintiff, like each absent Settlement Class Member, has a strong interest in proving the existence of the Defendants' alleged scheme to deceptively enroll consumers in Programs for which it charges a monthly fee. There is no conflict between the Plaintiffs and the Settlement Class. Moreover, Plaintiffs have retained Class Counsel that are qualified, experienced and thoroughly familiar with complex consumer class action litigation.[7]

### 2. The Requirements of Rule 23(b)(3) Are Satisfied.

The Settlement Class should be certified because, in addition to having satisfied the prerequisites of Rule 23(a), the Class also satisfies those of Rule 23(b)(3): namely, (1) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of this matter. *See, e.g., Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 196-97 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000); *In re Screws Antitrust Litig.*, 91 F.R.D. 52, 55 (D. Mass. 1981); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 204 (D. Me. 2003).

### a. Common Issues Predominate

The Rule 23(b) predominance inquiry is satisfied "unless it is clear that individual issues

---

[7] The resumes of the firms appointed by the Special Master as Plaintiffs' Co-Lead Counsel are attached hereto as Exhibits 2 and 3.

will overwhelm the common questions and render the class action valueless." *In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 517 (S.D.N.Y. 1996). In determining whether common questions of law or fact predominate, a court should determine if the various claims of the Plaintiffs are sufficiently cohesive to justify treating them all in one, single judicial forum. *See Amchem,* 521 U.S. at 624 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of antitrust laws"); *see also Smilow,* 323 F.3d at 41-42 (classes of consumers "are especially likely to satisfy the predominance requirement").

It is clear that individual issues in this case will not overwhelm the common questions of law or fact, because the central question is whether the Defendants mislead consumers into enrolling in Programs to which they purportedly did not consent. There is no doubt that the Plaintiffs would present common evidence regarding the existence and scope of Defendants' alleged scheme to enroll consumers in Programs and to profit from monthly charges they paid.

**b. A Class Action is the Superior Method to Adjudicate These Claims**

With respect to the superiority requirement, a court must consider: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). However the Supreme Court recognized that where a court is "[c]onfronted with a request for settlement-only class certification, a court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620 (citation omitted).

Here, the large class size, the relatively small potential recovery for the Settlement Class, the risk and complexity of the litigation and the cost of litigation, all render a class action the superior method of adjudicating the claims presented here. The interests of the Settlement Class in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. It would be a waste of judicial and the parties' resources to require

thousands or millions of separate prosecutions. Individualized litigation of the issues raised by this action would increase the delay and expense to all parties and the court system. Furthermore, it would be virtually impossible for the Settlement Class, on an individual basis, to obtain redress for wrongs done to them. Such an approach would necessarily risk inconsistent adjudications establishing varying standards for identical conduct. As a result, a class action is the superior method for resolving these claims.

**B.    Preliminarily Approval Is Appropriate**

Plaintiffs respectfully submit, as they will demonstrate at the fairness hearing, that: (i) the Settlement is in all respects fair, reasonable and adequate to the Class; (ii) they have investigated the pertinent legal and factual issues; (iii) continued litigation will require significant expense and risk to Settlement Class; and (iv) there is no hint of collusion between or among the parties. At the fairness hearing the Court must undertake a detailed assessment of the terms of the Settlement, the interests of the Settlement Class as well as any third parties that might be affected by the settlement, the circumstances of the litigation and the proposed settlement. *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 2, 7 (1st Cir. 1999); *Durett v Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).

At this stage of the settlement process, the Court conducts only a preliminary evaluation to determine whether the proposed Settlement is within the range of possible final approval, and thus whether notice to the Class of the terms and conditions of the proposed Settlement, and the scheduling of a formal Fairness Hearing, are appropriate. *See, e.g., White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The MANUAL FOR COMPLEX LITIGATION, FOURTH ("*Manual*") characterizes the preliminary approval inquiry as a court's "initial assessment" of the fairness of the proposed settlement, made on the basis of written submissions and informal presentation from the settling parties, and summarizes the preliminary approval criteria as follows:

If the preliminary evaluation of the proposed settlement does not disclose grounds

to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the Class Members of a formal Fairness Hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual* § 30.41; *see also* 2 *Newberg*, § 1.25

As detailed below, the proposed Settlement falls well within the range of reasonableness, and thus merits preliminary approval.

Initially, Plaintiffs note that the law has long favored settlement. This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of prolonged litigation. In addition, there is an overriding public interest in favor of settlement of complex class action suits, especially where the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985). By supporting the settlement of complex, class action disputes, the judicial system can help minimize litigation expenses on both sides, reduce the strain on scarce judicial resources, and avoid the risk of trial as to both parties. *Manual*, §§ 23, 30.4 (1995).

Moreover, the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether Settlement Class Members will receive as much from a settlement as they might have recovered from victory at trial. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998), *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Courts challenged with evaluating a proposed class action settlement recognize that the "essence of settlement is compromise" and will not represent a total win for either side. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Bd. of Sch. Dir.*, 616 F.2d 305, 315 (7th Cir. 1980).

### 1. The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations

There is a presumption of correctness attached to a class settlement reached in arms-

length negotiations between experienced, capable counsel. *See, e.g., City P'ship Co.*, 100 F.3d at 1043; *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) ("While opinion and recommendation of experienced counsel should not be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."); *see also, Newberg* § 11.41, at 87-89.

In this matter, the parties actively engaged in many rounds of negotiations over many months. The negotiations involved submissions of proposals, counter-proposals, evaluation of discovery, and consultation with experts. There were numerous occasions on which discussions broke down, and it appeared that resolution could not be obtained.

Plaintiffs' Lead Counsel were well-informed at the commencement and throughout these discussions. They retained and consulted with two of the nation's preeminent consumer marketing experts, who have particular expertise in consumer behavior and Internet marketing. Since all of what Webloyalty displays to consumers during enrollment is publicly accessible, Plaintiffs' consultants were able to carefully study the overall presentation of Webloyalty's Programs to consumers, and advise Plaintiffs of their opinions. Plaintiffs' Lead Counsel also had conducted exhaustive legal research into the viability of all legal claims and the availability of potential damages. In sum, Plaintiffs' Lead Counsel were well-informed as to the facts of the case and the strength of the claims asserted when the terms of the Settlement Agreement were negotiated. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y 2004) ("Formal discovery is not a prerequisite; the questions is whether the parties had adequate information about their claims") (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). Moreover, after the substantive terms of settlement were achieved, Plaintiffs conducted confirmatory discovery, that included a further production of documents and interviews of Webloyalty's Vice President of Marketing and Vice President of Information Technology.

In light of Plaintiffs' Lead Counsel's prior collective experience in complex consumer class actions, their knowledge of the strengths and weaknesses of their case, and their assessment of the class's likely recovery following trial and appeal, Plaintiffs' Lead Counsel have concluded

that the proposed Settlement Agreement is fair, reasonable and adequate, and is in the best interests of the Settlement Class. There is nothing in the course of the negotiations or the substance of the Settlement that "disclose[s] grounds to doubt its fairness." *Manual,* § 30.41. Plaintiffs' decision to submit the proposed Settlement for Court approval reflects their consideration of the very real benefits conferred on the Settlement Class by the proposed Settlement weighed against the very real risks of continued litigation.

### 2. The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval

The settlement has no "obvious deficiencies" and is well within the range of reasonableness. As set forth above, and in the Settlement Agreement at section IV.3, the remedial relief to be implemented by Webloyalty is considerable, and will result in meaningful changes to the manner in which Webloyalty's Program offers are presented to the consuming public, and the manner in which those consumers join a Program. The monetary benefits of the Settlement are equally significant. Consistent with the 60-day period frequently specified in many federal and state statues and regulations as the time by which consumers are to identify and report billing errors and/or dispute charges (*see e.g.,* 15 U.S.C. § 1601-1667f, *as amended,* 15 U.S.C. § 1693a-1693r, 12 C.F.R. § 226.1 *et seq.,* Conn. Gen Stat. § 42-100c), Settlement Class members may receive reimbursement equal to up to two (2) months of the cost of each Program in which they were enrolled. Webloyalty will be required to pay cash to eligible Settlement Class Members a total amount of up to $10 million. In a case where class liability is uncertain – because, among other things, Defendants would argue such liability depends on individual consumer perception – the Settlement represents an extraordinary result.

There can be no doubt that continuing this litigation would entail a lengthy and highly expensive legal battle, involving complex legal and factual issues. Defendants, for instance, would oppose certification of a litigation class. Even if a litigation class were certified and such certification withstood appeal, Defendants would present various defenses at the liability and damages phases of the proceedings and would re-file their summary judgment motion based on a

full record. If the case were to proceed to trial, as is always the case, the outcome is uncertain for all parties. Further, even if Plaintiffs prevailed at trial, there would likely be lengthy appeals. *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success").

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the Settlement Class. The extensive remedial relief provided by the Settlement Agreement, along with up to $10 million in cash payments, provides for significant compensation to the Settlement Class that will be available earlier – perhaps years earlier – than would be the case if litigation against Defendants continued through class certification, trial and appeal and were ultimately successful.

## C.    The Court Should Order That Notice Be Disseminated and Schedule a Fairness Hearing

Under Rule 23(c)(2), courts "shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all class members who can be identified through reasonable efforts." *Eisen v. Calisle & Jacquelin*, 417 U.S. 156, 173 n.11 (1974); *see also Reppert v. Marvin Lumber and Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004). Rule 23(e) requires notice of a proposed settlement "in such manner as the court directs." Fed. R. Civ. P. 23(e). In a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Rules 23(c)(2) and 23(e). *See, e.g., Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993).

The *Manual* sets forth several elements of the "proper" content of notice. If these requirements are met, a notice satisfies Rule 23(c)(2), Rule 23(e), due process, and binds all members of the Settlement Class. The Notice should:

1.    Describe the essential terms of the Settlement;
2.    Disclose any special benefits or incentives to the class representatives;
3.    Provide information regarding attorneys' fees;
4.    Indicate the time and place of the hearing to consider approval of the Settlement, and the method for objection to and/or opting out of the Settlement;
5.    Explain the procedures for allocating and distributing Settlement funds; and

6. Prominently display the address of class counsel and the procedure for making inquiries.

*Manual,* ¶ 30.212 (3rd Ed.1995); *see also Air Lines Stewards and Stewardesses Ass'n Local 550 v. Am. Airlines,* 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of proceedings to date, notified of significance of judicial approval of settlement and informed of opportunity to object at the hearing satisfied due process); *Greenspun v. Bogan,* 492 F.2d 375, 382 (1st Cir. 1974). The proposed forms of notice attached to the Settlement Agreement are clear, precise, informative and plainly satisfy the standards for notice. *See* Settlement Agreement, Exhibit A, Exhibits 1-4.

Settlement Class Members will receive individual notice, which will be sent to each Settlement Class Member's email address as identified in Webloyalty's records. Notice provided by email is particularly appropriate in this case, where email addresses are used as a universal means of enrollment in the Programs. Courts have found individual emailed notice particularly appropriate where the business or conduct at issue was conducted largely electronically. *See, e.g., In re Airline Ticket Comm'n Antitrust Litig.,* 953 F. Supp. 280, 281-82 (D. Minn. 1997) ("The Court notes that notice was provided electronically to the class. Such notice was unusually effective with this industry, which conducts much of its business by electronic network."); *see also Fine v. America Online, Inc.,* 743 N.E. 2d 416 (Ohio Ct. App. 2000) (recognizing propriety of emailed notice to customers of Internet service provider AOL). Settlement Class Members are those who have completed online retail transactions, and who necessarily inputted their email address to establish a membership in a Program. Emailed individual notice is logically the best way to reach the members of this particular Settlement Class.

A direct mail notice (in the form of Exhibit 3 to Exhibit A to the Settlement Agreement) will also be sent to the last known physical mail address of any Settlement Class Member for whom it appears emailed notice is "bounced back" or otherwise undeliverable. This notice also contains the essential information provided for in the *Manual.*

Furthermore, Notice will be published through two placements in national weekday editions of *USA Today*, in the form of the summary Publication Notice (in the form of Exhibit 4 to Exhibit A to the Settlement Agreement). This summary notice, as with the other forms of notice, contains the critical information concerning the Settlement, and provides consumers with precise information on how to receive additional and complete information. This form of publication notice is in addition to the establishment of a settlement website where all information pertinent to the Settlement may be obtained, and downloaded including the Claim Form.

Notice by first class mail, publication in nationwide papers and magazines and website publication are all avenues for notice that have been approved by various courts. *See, e.g., White*, 822 F. Supp. at 1400 (notice by mail to identified class members and publication once in *USA Today* "clearly satisfy both Rule 23 and due process requirements"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving as reasonable notice by third class mail to identified class members and publication two times in the national edition of *USA Today*); *Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."); *see also In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669-70 (E.D. Va. 2001) (approving publication of summary notice in nationwide newspapers and posting full notice on websites maintained by co-lead counsel); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (approving notice mailed to the last known address of all class members, published in summary form three days in *USA Today*, and published with other pertinent information on the Internet).

Plaintiffs submit that the proposed forms of notice will fairly apprise Settlement Class Members of the Settlement and their options, and should therefore be approved. In addition, the Court should set a hearing date for the final determination of the fairness, adequacy and reasonableness of this Settlement.

# V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement, enter an order substantially in the form of the accompanying Proposed Order Granting Preliminary Approval of Proposed Settlement, Provisionally Certifying the Class, and Directing Dissemination of Notice to the Class.


DATED:  January 29, 2009                        Respectfully submitted,

                                                **WEXLER WALLACE LLP**


                                                By /s/ Mark J. Tamblyn
                                                    Mark J. Tamblyn

                                                455 Capitol Mall Suite 231
                                                Sacramento, California 95814
                                                Telephone: 916-492-1100
                                                Facsimile: 916-492-1124

                                                David J. George
                                                Stuart A. Davidson
                                                **COUGHLIN STOIA GELLER**
                                                **RUDMAN & ROBBINS LLP**
                                                197 South Federal Highway, Suite 200
                                                Boca Raton, Florida 33432
                                                Telephone:  (561) 750-3000
                                                Facsimile:  (561) 750-3364

                                                ***Co-Lead Counsel for Plaintiffs***