

ANDREW M. CUOMO  
Attorney General

STATE OF NEW YORK  
OFFICE OF THE ATTORNEY GENERAL

ERIC CORNGOLD  
Executive Deputy Attorney General  
Division of Economic Justice

JOY FEIGENBAUM  
Bureau Chief  
Bureau of Consumer Frauds & Protection

May 29, 2009

Honorable Joseph L. Tauro  
John Joseph Moakley United States Courthouse  
1 Courthouse Way  
Suite 2300  
Boston, MA 02210

Re:  *In Re Webloyalty.com, Inc. Marketing and Sales Practices Litigation*, MDL No. 07-01820 JLT, Lead Case: 06-11620-JLT (D. Mass.)

Dear Judge Tauro:

This letter is respectfully submitted on behalf of the New York State Attorney General's Office ("NYOAG") to urge this Court to reject the proposed settlement of the above-referenced class action lawsuit on the grounds that it is not fair, reasonable or adequate, as required by Fed. R. Civ. P. 23(e)(2).

The NYOAG received formal notice of the proposed settlement of the above-referenced class action lawsuit on February 6, 2009, as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711 et al. The NYOAG has a significant interest in this litigation, with more than 1.2 million New York consumers who are potentially affected by the outcome.

The NYOAG Bureau of Consumer Frauds & Protection has been investigating Webloyalty.com, Inc. ("Webloyalty") since May 2008 in connection with its solicitation of New York and other consumers for its membership programs. As set forth below, this Office believes that Webloyalty's advertising, solicitations and conduct are fraudulent and misleading and violate New York State's consumer protection statutes, Executive Law § 63(12) and General Business Law Article 22-A, §§ 349 and 350, as well as the consumer protection statutes of other states and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

Based upon our investigation, NYOAG has determined that Webloyalty uses a simple, yet highly deceptive scheme to trick consumers into unwittingly signing up for its membership programs through partnerships with online retailers. Consumers who make purchases from one of Webloyalty's retailer affiliates are offered, at the end of their transaction, a discount coupon toward a future purchase from that retailer. What many consumers do not realize is that by accepting the discount coupon, they are automatically enrolled in one of Webloyalty's membership programs for a 30-day trial period. Unbeknownst to consumers, Webloyalty also obtains the consumers' credit or debit card information from the retailer affiliates, and then charges consumers a monthly "membership" fee, without their authorization, after they fail to cancel their membership during the trial period.

It is the view of this Office that the proposed class action settlement suffers from a number of fundamental flaws, most significantly, that it does not remedy the deception and false advertising which the NYOAG has found and which lie at the heart of the Second Consolidated Amended Complaint (the "Complaint") in the consolidated cases before your Honor. Moreover, if approved, the settlement will result in few, if any, consumers receiving any meaningful redress for their injuries.

More specifically, as set forth more fully below, this Office objects to the proposed settlement on the grounds that: (1) the proposed settlement permits Webloyalty to continue to trick consumers because it does not require Webloyalty to make any meaningful changes to its deceptive solicitations through which millions of consumers have been signed up for trial memberships and thereafter charged; (2) the proposed settlement provides consumers who were deceived with nominal compensation that is inadequate to compensate many for their injuries; (3) the claims procedures are unnecessarily onerous and unreasonable and seem designed to discourage eligible consumers from submitting claims; (4) the proposed settlement provides notice via email alone, which is wholly insufficient; and (5) the content of the notice is inadequate to advise consumers of their rights under the settlement.

### I. The Attorney General's Investigation

Based upon evidence provided by Webloyalty in response to a request for information issued by the NYOAG on May 16, 2008, as well as other evidence gathered in connection with the NYOAG's investigation, including consumer complaints, survey evidence and other documentary evidence, this Office has concluded that Webloyalty's advertising, solicitations and enrollment procedures violate New York and federal law.

Specifically, the NYOAG believes Webloyalty has violated General Business Law §§ 349 (deceptive business conduct) and 350 (false advertising), and Executive Law § 63(12) (repeated and persistent fraud and illegality), and has deceived vast numbers of consumers into unwittingly signing up for trial memberships in Webloyalty's programs without understanding that they were enrolling and would be charged for such programs

at the end of the trial period. Indeed, consumer complaints and other evidence indicate that many consumers do not discover the unauthorized charges for months, or even years. Further, data provided by Webloyalty shows that: (1) only a small fraction of New York consumers who were enrolled in a membership program since May 1, 2006 obtained any benefit[1] from it; and (2) at least 40% of the enrolled New York consumers received refunds after complaining to Webloyalty, presumably because they were charged for the program without their authorization.[2]

## II. The proposed settlement is not fair, adequate, or reasonable.

### A. The proposed settlement does not require Webloyalty to end its deceptive solicitations, advertising and enrollment process.

The proposed settlement is not fair, adequate, or reasonable because it does little to rectify the problem on which the Complaint is based. The Complaint is based on the deceptive and misleading solicitations, advertisements and enrollment process that led consumers to unwittingly enroll in membership programs without understanding that they would be charged. However, the proposed settlement does not require Webloyalty to correct the deceptive solicitations, advertising and enrollment process. It requires only a few minor changes to the disclosures provided, such as the inclusion of the phrase "see details" or "see billing details," and additional disclosures concerning price. Importantly, the proposed settlement does not require that disclosures as to the nature and price of the program be made in a clear and conspicuous manner relative to incentive terms and graphics, or to enrollment buttons. The minor changes required under the proposed settlement are entirely inadequate to address the misleading nature of the solicitations, advertisements and enrollment process.

The danger here, and hence, the need for corrective change to the solicitations, advertising and enrollment process, is the fact that consumers' credit card and debit card information is passed directly to Webloyalty from retailer partners. Through its investigation, the NYOAG has determined that many consumers do not understand that their credit and debit card information is being transferred to Webloyalty by the retailers from whom they made purchases, let alone that their credit and debit card accounts will be charged. Accordingly, a fair and adequate settlement must ensure that the consumers

---

[1] The primary benefit Webloyalty purportedly provides to consumers through the Reservaion Rewards membership program is access to a website, where consumers can search for and download certain discount coupons for restaurants and other entertainment venues. The NYOAG found that only a small fractionof New York Webloyalty members actually downloaded a coupon from the website, and even fewer benefited from some of the other services available through the membership program

[2] This statistic reflects the percentage of New York members to whom Webloyalty issued refunds pursuant to what Webloyalty has represented as its "no questions asked" refund policy.

3

are not misled through the solicitations, advertising and enrollment process, and further, that only consumers who knowingly enroll in Webloyalty's programs and knowingly authorize charges to their credit and debit card accounts will be charged. Yet, the proposed settlement does not require Webloyalty to implement effective safeguards or to make any significant changes to their solicitations, advertisements and enrollment process. In fact, the proposed settlement requires only token changes that would not adequately modify the deceptive net impression of the solicitations, advertising and enrollment page. As such, the changes are unlikely to decrease the number of consumers who are deceived into enrolling in Webloyalty's membership programs.

Moreover, the proposed settlement should also be rejected because it provides that the changes to Webloyalty's solicitations, insufficient as they are, need only be implemented for a period of less than two years. In fact, in view of the capacity for deception and actual deception that occurred in this case, there can be no justification for remedial disclosures to sunset in such a short period, if ever.

    B.    <u>The refunds available under the proposed settlement are inadequate to compensate many consumers.</u>

This Office's investigation revealed that many consumers do not discover the unauthorized monthly charges on their accounts for months or even years. The proposed settlement, however, does not distinguish between consumers who discovered the unauthorized charges after one or two months and consumers who discovered the unauthorized charges after many months or even years. Under the proposed settlement, the maximum refunds equal one or two months of membership fees (no more than $24), amounts which are inadequate to compensate many consumers. The failure to distinguish between and provide separate representation for these two subclasses of consumers – those who learned quickly of the unauthorized charges and those who were deceived for longer periods – is further reason for this Court to reject the proposed settlement. In addition, limiting the refunds available under the proposed settlement to only one or two months of charges is likely to have the effect of chilling eligible consumers from submitting claims, as they are likely to conclude that the nominal amount available is insufficient to justify the effort required to submit a claim.

    C.    <u>The claims process is unduly burdensome and will discourage eligible consumers from submitting claims.</u>

The proposed settlement provides that class members must fill out and mail or email a claim form on which they must provide either: (a) a membership number; or (b) both the program name in which consumers were enrolled and the email address they used to "enroll" in the program, as well as either: (i) the month and year of enrollment; or

4

(ii) the last four digits of the account on which the charges appeared. The requirements of both options are unnecessary because Webloyalty has records of the membership information pertaining to each of the class members. Moreover, the requirements will discourage and chill consumers from submitting claims.

In addition to the information being unnecessary, in many cases, consumers are unlikely to be able to provide the information requested on the claim forms, and thus, the requested information seems designed to or will have the effecting of lowering consumer response rates. In particular, consumers who did not knowingly enroll in a membership program are unlikely to have their membership number. They are likely to have deleted or ignored as junk mail any email communications from Webloyalty. Under these circumstances, it is unreasonable to require consumers to provide a "membership number" to submit a claim for compensation. Although consumers have the option of providing alternate information in lieu of a membership number, the alternative is equally onerous and unreasonable. Consumers are unlikely to know the name of the program for which they were charged or the exact time frame when the charges appeared. Thus, most consumers will not be able to supply the required information. Moreover, the informational website established for the settlement, found at www.WebMarketingSettlement.com, does not provide any guidance for consumers who do not have the necessary information and seek to inquire as to how they may obtain it.

Finally, in addition to the above mentioned requirements, consumers are required to provide both their date of birth and the last four digits of their social security numbers in their claim forms. It is difficult to imagine how this personal information will be used, or why it is required. The information cannot be used to verify consumers' identity, as Webloyalty would have no reason to be in possession of either consumers' dates of birth or their social security numbers. The request for this unnecessary information seems designed to and will, in all likelihood, further chill consumers from submitting claims, since consumers are likely to be reluctant to provide such personal information, especially in light of the fact that they have already been the victim of unauthorized charges on their credit or debit card accounts.

D.  <u>The notice procedures are insufficient to adequately advise consumers of their rights.</u>

Some of the language of the proposed notification to class members is inaccurate or confusing, and is insufficient to adequately advise consumers of their rights. It is again likely to have the effect of chilling consumer responses. Although, by definition, any consumer who receives notice is one who was, in fact, enrolled in a Webloyalty membership program during the relevant period, the initial paragraph of the notice, which appears in bold type, advises consumers that they "**may** be eligible to receive compensation from a proposed class action settlement **if** [they] enrolled in or were a member[s] of [certain named Webloyalty membership programs] between September 11,

5

2000 and September 30, 2008."(emphasis supplied). This language is inaccurate, since those class members who receive the notice have been determined to have been enrolled in those programs during those dates.

Further, the notice describes the conduct at issue in only the vaguest of terms as follows:

> The settlement will resolve a lawsuit in which claims are made that [Webloyalty], among other things, failed to disclose program enrollment details regarding monthly billing and transfer of billing information causing consumers to enroll in Programs without full consent in violation of state and federal law.

This notice is insufficient to apprise current members, who may not realize that they are enrolled in a membership program and are entitled to compensation. For example, the notice does not explain that affected consumers were enrolled in a membership program by accepting an offer for a discount coupon after making an online purchase. Nor does the notice list the retailers on whose websites such solicitations were made.

Finally, the proposed settlement provides for only email notification for most class members. Defendants have records containing the class members' names and mailing addresses. In light of this fact, it is difficult to understand why the proposed settlement does not call for mail notice, with email notice as only a secondary, supplemental method. Consumers may have e-mail accounts that they do not check regularly, or may have separate folders for junk mail that they do not ever check. Consumers may discard email from sources they are not familiar with. Accordingly, email notification alone is not a sufficient substitute for mailed notice.

## Conclusion

This Office urges the Court to reject the proposed settlement as neither fair, reasonable, nor adequate because: (1) it does not adequately address the deceptive and illegal practices that form the basis for the Complaint; (2) it provides inadequate compensation to many of the injured consumers; (3) the claims procedures are onerous and unreasonable and will discourage eligible consumers from submitting claims;

(4) notice via email alone is insufficient; and (5) the content of the notice is inadequate to advise consumers of their rights under the proposed settlement.

Respectfully submitted,

Amy Schallop
Assistant Attorney General

Mailed under separate cover to the Clerk of the Court

cc: Mark J. Tamblyn
    WEXLER WALLACE LLP
    455 Capitol Mall, Suite 231
    Sacramento, CA 95814

    David J. George
    COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
    120 E Palmetto Park Road
    Suite 500
    Boca Raton, FL 33432

    Settlement Administrator
    c/o The Garden City Group, Inc.
    PO Box 9265
    Dublin, OH 43017-4665