

| | | |
|---|---|---|
| ANDREW M. CUOMO<br>Attorney General | STATE OF NEW YORK<br>OFFICE OF THE ATTORNEY GENERAL | ERIC CORNGOLD<br>Executive Deputy Attorney General<br>Division of Economic Justice |

JOY FEIGENBAUM
Bureau Chief
Bureau of Consumer Frauds & Protection

July 7, 2009

**VIA ELECTRONIC MAIL AND OVERNIGHT MAIL**
Honorable Joseph L. Tauro
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 2300
Boston, MA 02210

Re:   *In Re Webloyalty.com, Inc. Marketing and Sales Practices Litigation*, MDL No. 07-01820 JLT, Lead Case: 06-11620-JLT (D. Mass.)

Dear Judge Tauro:

By letter dated May 29, 2009, the State of New York State Office of the Attorney General ("NYOAG") objected to the proposed settlement that was preliminarily approved by the Court on February 24, 2009 in the above-referenced matter ("proposed settlement") on the grounds that it was not fair, reasonable or adequate, as required by Fed. R. Civ. P. 23(e)(2). The NYOAG's objections were informed by the NYOAG's independent investigation of Webloyalty.com's business practices, which has been ongoing since May of 2008.[1]

On June 23, 2009, the parties to the class action filed additional papers with the Court that included, among other things, a joint motion requesting the Court to accept an "Amendment to January 29th Stipulation of Settlement," which makes numerous changes to the terms of the proposed settlement; and a motion by plaintiffs seeking Court approval of the proposed amended settlement (hereinafter "the proposed amendments"). Although the proposed amendments were apparently prompted, in large measure, by the NYOAG's letter of May 29, 2009, the amendments either do not remedy or fail to address the flaws cited by the NYOAG in its May 29, 2009 letter, and also raise a number of additional concerns. Accordingly, as set forth more fully below, we urge this Court to reject the proposed amended class action settlement on the grounds that it is not fair, reasonable or adequate, as required by Fed. R. Civ. P. 23(e)(2).

---

[1] Among the findings cited by the NYOAG in its May 29, 2009 letter was that only a small fraction of New York members who were enrolled in a membership program since May 1, 2006 actually received any benefit from it and at least 40% received refunds from Webloyalty after complaining to Webloyalty, presumably because they were charged for the program without their authorization.

Among the flaws cited by the NYOAG in its May 29, 2009 letter was that (1) the nominal compensation permitted under the proposed settlement did not adequately compensate the many class members who were charged for membership programs for months or years without their authorization; (2) the claims procedures were unnecessarily onerous and seemed designed to discourage eligible class members from submitting claims; (3) the proposed settlement only provided for initial notice to class members via email, which is an inadequate method of notification; (4) the class notices were misleading and did not adequately advise class members of their rights under the settlement; and (5) the settlement did not require Webloyalty to meaningfully change its deceptive solicitations.

The principal change set forth in the proposed amendments is the addition of a "third tier" of benefits that would potentially provide a full refund to class members who claim they did not authorize Webloyalty to charge them for a membership program. The proposed amendments also require a second round of email notices ("supplemental notices") to class members to advise them of this new benefit, as well as a revised claims form and claims process ostensibly to allow class members to seek these benefits. The proposed amendments also include certain additional minor modifications to Webloyalty's solicitations, and provide that the required changes would sunset after four years, instead of the two-year time frame contained in the original proposed settlement.

In reality, the full refunds allegedly available under the new "third tier" are largely illusory because few class members will receive full refunds, even though the bulk of the class members likely did not authorize Webloyalty to charge them for a membership program.[2] This is because (1) class members would only be notified of their potential right to these benefits through the same ineffective email notification procedures used to initially notify class members of their rights under the settlement, coupled with very limited publication notice; (2) the claims process for "tier three" benefits is even more onerous than the process set forth in the original proposed settlement; and (3) the proposed supplemental notices are misleading and confusing and create the false impression that only class members who already filed a claim can seek a full refund under "tier three."

Pursuant to Fed. R. Civ. P. 23(c)(2)(B), notice to class members must be the best that is practicable under the circumstances. As the NYOAG set forth in its May 29, 2009 letter, email notification is not the best notice practicable under the circumstances in this case. Indeed, in light of the fact that many class members were tricked online by Webloyalty and its partners, email notification seems especially suspect here. Under

---

[2] Indeed, Webloyalty's widespread deception has prompted the U.S. Senate Committee on Commerce, Science and Transportation to investigate Webloyalty in connection with the Committee's recently launched investigation into what it referred to as "mysterious monthly charges to consumer credit cards." See http://commerce.senate.gov/public/_files/52709RichardFernandesWebloyaltyletter.pdf.

2

these circumstances, and where Webloyalty possesses the mailing address of all class members, mail notification is both practicable and far superior.

Importantly, the June 23, 2009 filing with the Court confirms that the grave concerns expressed by the NYOAG in its letter of May 29, 2009 regarding the effectiveness of email notice are well founded. The June 23, 2009 Declaration of Jennifer M. Keough, Executive Vice President at Garden City Group, the claims administrator, reflects that the email notices sent to class members in February and March of 2009 have yielded a very low response. As of June 23, 2009, only approximately 330,000 of the more than 20,000,000 class members[3] have obtained a claim form, either by downloading it from the website, or requesting a mailing of the Long Form Notice from the administrator,[4] and the settlement website has had only 492,318 visits. See Keough Declaration, paras. 11, 15, 22. Thus, only approximately 1.65% of class members have obtained a claim form, and at most, 2.46%[5] have visited the settlement website.

In light of the proven ineffectiveness of email notification for the initial notices, using this same notice method to advise class members of their right to file a claim for "tier three" benefits is unfair because many class members simply will not learn of the settlement, and therefore will not have an opportunity participate in it. Yet, they will forfeit any claim for unauthorized charges incurred during the class settlement period they may have against Webloyalty.

Effective notice, both as to method and content[6], is especially important in this case because many class members are current Webloyalty "members" who have yet to realize that they are being charged monthly for a membership. Thus, effective notice would not only afford them the opportunity to file a claim for compensation, but also, would alert them to the fact that they are being charged so they can cancel their

---

[3] According to the CAFA notice received by the NYOAG, there are 1,281,103 New York consumers who are members of the class and who collectively comprise 6.22% of the nationwide class. Based on these figures, it appears that the entire class is comprised of approximately 20,596,511 consumers.

[4] Although it would certainly be instructive to know how many class members have actually filed claims to date, curiously, the Keough Declaration does not reveal this information. Although the deadline for filing a claim is September 2, 2009, in all likelihood, many, if not most, of the class members who intend to file a claim have already done so.

[5] The raw number provided by Ms. Keough simply reflects the number of "visits." The number of class members who visited the website may actually be substantially lower, as the number of visits most likely includes multiple visits to the site by the same class member.

[6] As the NYOAG noted in its May 29, 2009 letter, the initial notices sent to class members described the claims alleged in the class action so vaguely that many class members would not realize that they were, in fact, affected by the lawsuit.

membership and thereby avoid being further victimized by Webloyalty. Without effective notice, these class members will have no recourse against Webloyalty when they inevitably discover the unauthorized charges[7] because they will be deemed to have waived their right to seek redress against Webloyalty for its fraudulent conduct.

Further, the content of the supplemental notices, which purport to advise consumers that they can claim a full refund under "tier three" if they did not authorize Webloyalty to charge them for a membership program, is misleading and confusing, and, at best, creates the false impression that only class members who have already filed claims are eligible for these "additional" benefits. For example, the email notice, entitled "Supplemental Notice of Additional Benefits Available under Class Action Settlement," contains an eye-catching shaded box that advises that class members who already submitted a form and are "satisfied" with the benefits claimed "**need to do nothing more**" or they can make a claim for "additional cash benefits" described in the notice. (emphasis in original). There is no information in the box pertaining to class members who did not file a claim, creating the impression that only class members who already filed a claim can seek "tier three" benefits. This false impression is reinforced throughout the notice, and indeed, on the claim form itself, which is entitled "Additional Benefits Claim Form." The proposed postcard mail notice which is to be sent only to those class members whose email notifications actually bounce, is even more misleading. The description of the "additional" benefits, which is contained in the final paragraph of the postcard begins: "If you previously submitted a Claim Form to the Settlement Administrator, you may submit an Additional Benefits Claim Form...." Nowhere in the notice are class members clearly advised that they are eligible to claim a full refund under "tier three" if they did not authorize the membership charges, regardless of whether they filed a claim previously.

Although the proposed supplemental notices also attempt to address the NYOAG's concern that the initial notices did not provide sufficient information to alert consumers that they were affected by the lawsuit, the additional descriptive information contained in the supplemental notice cannot remedy the harm caused by the initial, defective notices. Many class members who read the initial misleading and vague notice likely concluded, incorrectly, that they were not affected by the class action (see May 29, 2009 letter, pg. 5 § D), and therefore will not bother to read the supplemental notice altogether.

Further, the small percentage of class members who actually (a) read the notice; and (b) realize that they may be eligible for a full refund, will likely be discouraged or prevented from filing a claim because the procedures for doing so are even more onerous than those required under the original proposed settlement, requiring them to complete a multi-step process. First, class members must acquire, complete, and submit a sworn

---

[7] The NYOAG's investigation has revealed that many consumers do not discover the unauthorized charges for months or even years.

claim form. The claim form requires them not only to supply the same unnecessary information that was required under the original settlement, and which many are unlikely to have readily available, (see May 29, 2009 letter, pgs. 4-5, § C),[8] but also to answer a number of additional, unnecessary questions. After the consumer acquires, completes and submits the claim form, the administrator would then email the consumer (1) the enrollment page that he or she allegedly viewed when he or she was enrolled as a member; as well as (2) an Attestation Form. The claimant would then be required to (a) review the enrollment page, and then (b) complete a sworn "Attestation Form," which requires the consumer to answer a series of seven additional questions concerning the unauthorized charges and enrollment. The claimant would then be required to submit this Attestation Form. Further, under the proposed amendments, consumers may be given only twenty-one days to complete and submit the Attestation Form. See Amendment to January 29th Stipulation of Settlement, C(ii)(c).

In sum, the notice and claims procedures are deeply flawed and will result in few consumers obtaining meaningful relief. Indeed, the fact that under the proposed amendments, Webloyalty has agreed to remove the $10 million restitution cap contained in the original proposed settlement, notwithstanding the fact that ostensibly, class members are eligible for full refunds, reflects Webloyalty's utter confidence that the ineffective email notice, coupled with the misleading notices and onerous claims process, will deter or prevent all but the most determined and sophisticated class members from filing a claim.

Finally, the changes to Webloyalty's solicitations required under the proposed amendments are quite modest and do not remedy their deceptive nature. For example, Webloyalty is ostensibly required to provide consumers with a "clear and conspicuous" disclosure advising that they are consenting to the transfer of their credit/debit information for billing purposes, and must require consumers to take an affirmative step to acknowledge the foregoing. Yet, "clear and conspicuous" is defined quite the opposite--requiring only that the information be presented in a "font that is at least the same size as a majority of the copy size of all other text on the page." Thus, Webloyalty is permitted to continue its practice of presenting this important information in the same small print as the bulk of the information that clutters the enrollment page. Thus, the

---

[8] The ostensible reason provided by Webloyalty for requiring class members to supply information that few will likely be able to provide is the need to prevent fraudulent claims. See Defendants' Joinder in Plaintiffs' Memorandum in Support of Final Approval of Proposed Settlement, As Amended, pg. 10, fn. 6. This justification is clearly pretextual. In fact, the original proposed settlement included these same onerous requirements, even though the maximum recovery permitted was a mere $24, hardly a sum that would inspire a rash of fraudulent claims. To the extent there may be a genuine concern about fraudulent claims, the administrator could require additional information from a claimant whose claim form raises suspicions. Yet requiring all claimants to submit membership identification numbers or other information consumers who were tricked are unlikely to know seems designed more to prevent class members from submitting claims than to prevent fraud on Webloyalty.

"affirmative step" that consumers are required to take is practically meaningless, because it is not accompanied by a genuine "clear and conspicuous disclosure" advising that, by taking the affirmative step, consumers are consenting to the transfer of their account information for billing purposes.

Although the skillful, piecemeal dissection and enlargement of Webloyalty's solicitations contained in the affidavit of Martin Isaac attempts to create the impression that both Webloyalty's pre-settlement and sample post-settlement solicitations clearly disclose the billing and enrollment information, this presentation bears no relationship to the actual experience of consumers, who view the solicitation after completing a purchase with an online merchant. In reality, when the solicitations are viewed as a whole in context, neither the pre-settlement nor proposed post-settlement solicitation conspicuously discloses the important billing and enrollment information. Instead, it is placed inconspicuously in small print, where it is likely to be overlooked by consumers.[9] See, e.g., Exhibit F, of the Isaac Declaration, Webloyalty's sample solicitation that allegedly incorporates the changes required under the proposed amended settlement.[10]

## Conclusion

The NYOAG urges the Court to reject the proposed amended settlement as neither fair, reasonable nor adequate. Few consumers are likely to obtain meaningful relief because (a) the proposed email notices are ineffective; (b) the content of the proposed supplemental notices purportedly advising consumers of their potential right to claim a full refund under "tier three" are misleading; and (c) the onerous claims process will discourage or prevent the vast majority of those class members who receive the notice from filing claims. In addition, the proposed amended settlement does not require Webloyalty to meaningfully change its misleading solicitations and permits it to continue

---

[9] The result of studies of consumer behavior online is detailed in a January 2009 report issued by the FTC on negative option marketing. See FTC Negative Options: A Report by the staff of the FTC's Division of Enforcement (January 2009), available at http://www.ftc.gov/os/2009/02/P064202negativeoptionreport.pdf. The report makes a number of recommendations to reduce the likelihood that consumers are misled by such negative option solicitations. Significantly, Webloyalty's solicitation does not satisfy many of those recommendations, including the recommendation that disclosures should not be placed near distracting features or buried in long paragraphs of dense text.

[10] Although the sample solicitation in Exhibit F requires consumers to take the "affirmative step" of inputting the last four digits of their credit/debit card account, the proposed amended settlement does not specify any particular form that the "affirmative step" must take. Thus, the deceptive solicitations that misled countless class members, which required consumers to take the affirmative step of inputting their email addresses twice, would also presumably comply with the proposed amended settlement.

charging current members who were unwittingly enrolled in a membership program, but were not given adequate notice of the proposed settlement or a meaningful opportunity to cancel their membership.

Respectfully submitted,

Amy Schallop
Assistant Attorney General

**VIA OVERNIGHT MAIL**

cc: Mark J. Tamblyn
 WEXLER WALLACE LLP
 455 Capitol Mall, Suite 231
 Sacramento, CA 95814

 David J. George
 COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
 120 E Palmetto Park Road
 Suite 500
 Boca Raton, FL 33432

**VIA REGULAR MAIL**

 Settlement Administrator
 c/o The Garden City Group, Inc.
 PO Box 9265
 Dublin, OH 43017-4665

7